DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |
| | **Re: ECF Nos. 17, 131** |

**CERTIFICATE OF NO OBJECTION REGARDING MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS' ASSETS, (B) APPROVING THE DESIGNATION OF SNBR INC., AN AFFILIATE OF SLEEP COUNTRY CANADA, INC., AS THE STALKING HORSE BIDDER FOR THE ASSETS, (C) AUTHORIZING AND APPROVING ENTRY INTO THE STALKING HORSE ASSET PURCHASE AGREEMENT, (D) APPROVING BID PROTECTIONS, (E) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF THE DEBTORS' ASSETS, (F) APPROVING THE FORM AND MANNER OF NOTICES OF SALE, AUCTION, AND SALE HEARING, AND (G) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

Pursuant to 28 U.S.C. § 1746 and Rule 9013-3 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the undersigned hereby certifies as follows:

1.      On June 12, 2026, the Debtors filed the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17] (the "**Motion**").[2]  A proposed form of order granting the relief requested in the Motion was attached to the Motion as Exhibit A (the "**Proposed Order**"), and the Stalking Horse Agreement was attached to the Motion as Exhibit B.

2.      Objections and responsive pleadings to the Motion were due by June 26, 2026 at 4:00 p.m.[3] (the "**Objection Deadline**"); *provided*, that, the Objection Deadline was extended solely for the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") to June 29, 2026 at 4:00 p.m. (the "**UCC Extended Objection Deadline**" and, together with the Objection Deadline, the "**Objection Deadlines**").

3.      Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent, served the Motion on June 15, 2026.  *See* Aff. of Serv., ECF No. 113.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]  All times herein are expressed in prevailing Eastern Time.

4.      In accordance with Local Rule 9013-3, the undersigned counsel represents that (a) the Objection Deadlines have passed more than 48 hours ago, (b) counsel is unaware of any unresolved objection, responsive pleading, or hearing request with respect to the Motion, (c) the sole objection filed—i.e., the *Conditional Objection of Nevada Holding Co., L.P. to "Bidding Procedures Motion" Filed by Debtors* [ECF No. 131] (the "**Conditional Objection**") filed by Nevada Holding Co., L.P. ("**Nevada Holding**")—has been resolved for purposes of the Motion as described below, and (d) counsel has reviewed the Court's docket in the Chapter 11 Cases no less than 48 hours after the Objection Deadlines passed and no unresolved objection, responsive pleading, or hearing request with respect to the Motion appears thereon.  Accordingly, in accordance with Local Rule 9013-3, the Court may grant the Motion without further pleading or hearing with respect thereto.

5.      The Debtors hereby submit a revised form of the Proposed Order, attached hereto as **Exhibit A** (the "**Revised Proposed Order**"), which includes (a) revisions to address informal comments received from certain of the Debtors' landlord counterparties and the Creditors' Committee and (b) revisions agreed to with Nevada Holding to resolve, in accordance with the terms of the Revised Proposed Order, the Conditional Objection for purposes of the Motion.  A redline comparison of the Revised Proposed Order marked against the Proposed Order is attached hereto as **Exhibit B**.

6.      In addition, the Debtors, the Stalking Horse Bidder, and the Creditors' Committee have agreed to certain amendments to the Stalking Horse Agreement, which will be reflected in an amended Stalking Horse Agreement filed with the Court following the filing of this certificate of no objection.

7.  Accordingly, the Debtors respectfully request that the Court enter the Revised Proposed Order granting the Motion.

8.  Copies of the Motion, the Revised Proposed Order, and all other documents publicly filed in the Chapter 11 Cases can be accessed free of charge at the Debtors' case website located at https://restructuring.ra.kroll.com/SleepNumber/.

[*Remainder of page intentionally left blank*]

Dated:   July 1, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

By:   /s/ *Brian M. Resnick*
      450 Lexington Avenue
      New York, New York 10017
      Tel.: (212) 450-4000
      Brian M. Resnick
      Angela M. Libby
      Stephen D. Piraino
      Richard J. Steinberg
      Sihui (Sophy) Ma
      Mordechai Rivkin

      *Proposed Counsel to the Debtors and Debtors in
      Possession*

**Exhibit A**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION,** *et al.*, | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS'
ASSETS, (B) APPROVING THE DESIGNATION OF SNBR INC., AN AFFILIATE OF
SLEEP COUNTRY CANADA, INC., AS THE STALKING HORSE BIDDER FOR THE
ASSETS, (C) AUTHORIZING AND APPROVING ENTRY INTO THE STALKING
HORSE ASSET PURCHASE AGREEMENT, (D) APPROVING BID PROTECTIONS,
(E) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF
THE DEBTORS' ASSETS, (F) APPROVING THE FORM AND MANNER OF NOTICES
OF SALE, AUCTION, AND SALE HEARING, AND (G) APPROVING THE
ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED
RELIEF**

Upon the motion (the "**Motion**")[2] of Sleep Number Corporation and its direct and
indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in
possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an
order, pursuant to sections 105(a), 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy
Rules 2002, 6004, 6006, and 9007, Local Rules 6004-1 and 6006-1, and the Court's Sale
Guidelines, (a) approving Bidding Procedures for the sale of the Assets, (b) approving
designation of SNBR Inc. as the Stalking Horse Bidder for the Assets, (c) authorizing and
approving entry into the Stalking Horse Agreement, (d) approving the Bid Protections, (e)

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as
follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada
Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors'
mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

scheduling an Auction for, and a hearing to approve, the sale of the Assets, (f) approving the form and manner of notices of sale, auction, and Sale Hearing, (g) approving the Assumption and Assignment Procedures, and (h) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the First Day Declaration, and the Gottlieb Declaration; and the Court having considered the relief requested in the Motion, including at any hearing thereon; and the Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration, and the Gottlieb Declaration establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice (except as otherwise provided herein); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings

2

of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors' proposed notice of the Motion (including any hearing thereon), the Bidding Procedures, and the proposed entry of the Bidding Procedures Order are (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities, including the Notice Parties.

C.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate, and are designed to maximize recoveries from a sale of the Assets.

D.      The Bidding Procedures were negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder, and the Stalking Horse Agreement was negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder. The Stalking Horse Agreement represents the highest or otherwise best offer that the Debtors have received to date to purchase the Assets. The process for selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates and their stakeholders.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bidding Procedures Order and, thereby, (i) approve the Bidding Procedures, (ii) approve the designation of the Stalking Horse Bidder, (iii) authorize and approve entry into the Stalking Horse Agreement, (iv) approve the Bid Protections under the terms and

conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, (v) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines as set forth in the Bidding Procedures, (vi) approve the Noticing Procedures and the forms of notice, and (vii) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion and the Gottlieb Declaration and on the record at any hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bid Protections, as approved by this Bidding Procedures Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders and represent a prudent exercise of the Debtors' sound business judgment.

G.      If triggered in accordance with the terms of the Stalking Horse Agreement, the payment of the Bid Protections, under this Bidding Procedures Order and upon the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code and shall constitute an allowed administrative expense claim against the Debtors, on a joint and several basis, and (ii) reasonably tailored to facilitate, rather than hinder, bidding for the Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and encouraging the participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors would receive the highest and best possible price for the Assets. The Bid Protections are, accordingly, (a) of substantial benefit to the Debtors' estates, their stakeholders, and all parties in interest, (b) reasonable and appropriate, (c) a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Assets, and (d) reasonable in relation

4

to the Stalking Horse Bidder's efforts, the magnitude and complexity of the Sale Transaction, and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing a Sale Transaction.  Without the Bid Protections, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures and the Stalking Horse Agreement).

H.      The Stalking Horse Bidder is a third-party purchaser and is unrelated to any of the Debtors. Neither the Stalking Horse Bidder, nor any of its affiliates, subsidiaries, officers, directors, members, partners, or principals, nor any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

I.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

J.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2**, the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3** and the Proposed Assumption and Assignment Notice attached hereto as **Exhibit 4**) are reasonably calculated to provide (i) all interested parties with timely and proper notice of the sale of the Assets and  the Successful Bid(s) and (ii) each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with proper notice of (A) the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts to the Successful Bidder (or the Stalking Horse Bidder, as applicable) or any of their

5

known proposed assignees (if different from the Successful Bidder) and (B) the requirement that each such Counterparty assert any objection to the notices by the applicable deadlines or otherwise, in each case, be barred from asserting claims arising from events occurring prior to the effective date of the assumption and assignment of such Proposed Assumed Contracts or any later applicable effective date following assumption and assignment of such Proposed Assumed Contracts.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      Any objections to or reservations of rights regarding the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits with prejudice (except as otherwise provided herein).

2.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Bidding Procedures Order and the Debtors are authorized to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

3.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is deemed a Qualified Bid. In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder, in accordance with the terms and conditions of this Order (including the Bidding Procedures) and the Stalking Horse Agreement.

4.      The Debtors are hereby authorized to enter into the Stalking Horse Agreement, and the Stalking Horse Agreement, and all other ancillary documents and all terms and

6

conditions thereof, are hereby approved, subject to the terms and conditions of this Bidding Procedures Order (including the Bidding Procedures) and the entry of the Sale Order.

5.      Nothing herein shall prejudice the rights of the Debtors to seek, by separate motion, in the exercise of their sound business judgment and fiduciary duties, the authority to sell assets of the Debtors' estates pursuant to section 363 of the Bankruptcy Code subject to the terms of the Stalking Horse Agreement.

6.      Bid Deadline.  As further described in the Bidding Procedures and in accordance therewith, the Bid Deadline shall be at **July 8, 2026 at 4:00 p.m.**[3]

7.      Auction.  In the event that the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 on **July 13, 2026 at 10:00 a.m.** or such later time on such day, such other day, or such other place (including remotely via teleconference) as the Debtors shall notify all Participating Parties.  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

8.      If no Qualified Bids other than the Stalking Horse Bid are submitted by the Bid Deadline, the Debtors shall, within two (2) business days after the Bid Deadline, cancel the Auction and seek approval of the Sale Transaction contemplated in the Stalking Horse Bid at the Sale Hearing.

9.      Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

---

[3] All times herein are expressed in prevailing Eastern Time.

10.     The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

11.     As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email if available or otherwise by first class mail) upon the following parties (or counsel thereto):  (i) the U.S. Trustee; (ii) counsel to the DIP Agent; (iii) counsel to the Stalking Horse Bidder; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; (v) Counterparties to Contracts and Leases; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; (ix) the state attorneys general for states in which the Debtors conduct business; (x) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (xi) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Assets; (xii) all other known parties with any interest in the Assets; and (xiii) any other party that is identified on Sleep Number's master service list,[4] is entitled to notice under rule 9013-1(c) of the Local Rule, or has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**"); provided that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, either an email or physical address as of the entry of the Bidding Procedures Order; provided, further, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors'

---

[4] Accessible by visiting https://restructuring.ra.kroll.com/Sleepnumber.

books and records and no other email or physical address could be obtained after reasonable diligence. The Debtors will also cause the Sale Notice to be published once in the national edition of the *Wall Street Journal* or another publication with similar national circulation as soon as practicable following entry of the Bidding Procedures Order and will post the Sale Notice and the Bidding Procedures Order on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber (the "**Case Information Website**").

12. Service of the Sale Notice on the Sale Notice Parties in the manner described in this Bidding Procedures Order constitutes good and sufficient notice of the Auction, the Sale Hearing, and the Sale Objection Deadline. No other or further notice is required.

13. Promptly after the conclusion of the Auction (if any) and the selection of the Successful Bid and Alternate Bid (if any), the Debtors shall file with the Court and post on the Case Information Website a notice identifying such Successful Bid and Alternate Bid.

14. Sale Objections. Objections to the Sale Transaction other than objections related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder)) must (i) be in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state, with specificity, the legal and factual bases thereof, (iv) be filed with the Court no later than **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**"), and (v) be served on the following parties so that they are received by such parties by the Sale Objection Deadline: (A) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (B) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger;

(C) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (D) counsel to any statutory committee appointed in the Chapter 11 Cases; and (E) the U.S. Trustee (collectively, the "**Objection Notice Parties**").

15.    Post-Auction Objections. Objections related solely to (i) the conduct of the Auction must be filed with the Court no later than **July 14, 2026 at 4:00 p.m.** (the "**Post-Auction Objection Deadline**") and (ii) the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder) must be filed with the Court no later than fourteen (14) days after the filing of the Notice of Auction Results; provided that, in the event the Stalking Horse Bidder is not the Successful Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period (including, for the avoidance of doubt, any objection to the identity of the Successful bidder). Each objection must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be served on the Objection Notice Parties and the Successful Bidder so that they are received by such parties by the applicable objection deadline.

16.    Sale Hearing.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Southern District of New York, [●], New York, NY 10014, on **July 15, 2026 at [●].m.** (the "**Sale Hearing**"), subject to Court availability, or such other date and time that the Court may later direct; provided that the Sale Hearing may be adjourned by the announcement at a hearing before the Court or by filing a notice on the Court's docket.

17.     As soon as reasonably practicable after the completion of the Auction or following the cancellation of the Auction if there are no Qualified Bids other than the Stalking Horse Bid submitted by the Bid Deadline, the Debtors shall file a final form of proposed Sale Order as agreed upon between the Debtors and the Successful Bidder.

18.     Bid Protections.  Pursuant to sections 105, 363 and 503 of the Bankruptcy Code, the Debtors are hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Bidding Procedures and the Stalking Horse Agreement without further order of this Court. The dollar amounts of the Break-Up Fee and Expense Reimbursement are hereby approved. The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse Agreement and the Bidding Procedures without further action or order of the Court. Upon entry of this Bidding Procedures Order, the Break-Up Fee and Expense Reimbursement shall each constitute an allowed administrative expense claim against the Debtors, on a joint and several basis, pursuant to section 503(b) of the Bankruptcy Code. Any Qualified Bid shall, at a minimum, include a cash component sufficient to satisfy the Bid Protections.

19.     The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Stalking Horse Agreement, dismissal or conversion of these Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation.

20.     The Stalking Horse Bidder shall be entitled, but not obligated, to credit bid the full amount of the Bid Protections as part of any subsequent bid at the Auction, which credit bid amount shall be deemed the equivalent of cash consideration for all purposes of bid evaluation.

21.     Assumption and Assignment Procedures.   The assumption and assignment procedures set forth herein (the "**Assumption and Assignment Procedures**") are hereby approved.

22.     Potential Assumption and Assignment Notice.   On the Potential Assumption Notice Deadline, the Debtors shall have filed the Potential Assumption and Assignment Notice with the Court (other than any Contracts or Leases that have been previously rejected or are subject to a pending motion to reject in the Chapter 11 Cases) and shall serve the Potential Assumption and Assignment Notice on counsel to Counterparties to Potential Assumed Contracts, if known, which shall (i) include a list of the Potential Assumed Contracts, (ii) include a list of the Debtors' good faith calculation of the Cure Costs with respect to the Contracts identified on the Potential Assumption and Assignment Notice, which shall include (x) all prepetition arrears, *plus* (y) a good faith estimate of all unpaid post-petition amounts accrued under an Assumed Contract or Assumed Lease from the Petition Date through the anticipated date of assumption and assignment of such Assumed Contract or Assumed Lease (the "**Proposed Cure Costs**"), (iii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (iv) prominently display the deadline to file a Cure Objection (as defined below), and (v) prominently display the date, time, and location of the Sale Hearing.   Upon request by the affected Counterparties, adequate assurance information for the Stalking Horse Bidder shall be provided to affected Counterparties to Potential Assumed Contracts at the notice address identified in the Potential Assumed Contracts (and upon counsel of record via email, if known) at the same time as the Potential Assumption and Assignment Notice.   The Debtors shall update the Potential Assumption and Assignment Notice from time to time, but no less frequently than once per

12

month, in the event that they (i) identify additional Contracts that were not previously included in the initial Potential Assumption and Assignment Notice, or (ii) determine that a Proposed Cure Cost for any Potential Contract should be modified.

23.     Proposed Assumption and Assignment Notice. If the Successful Bidder is not the Stalking Horse Bidder, on the Post-Auction Notice Deadline, in conjunction with the filing of the Notice of Auction Results, the Debtors shall also file the Proposed Assumption and Assignment Notice, which shall (i) include a schedule of the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**"), (ii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (iii) prominently display the deadline to file a Post-Auction Assumption Objection (as defined below), and (iv) prominently display the date, time, and location of the Sale Hearing; provided that, any non-residential real property lease on the Proposed Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period. If the Stalking Horse Bidder is the Successful Bidder, within three (3) Business Days prior to the Closing Date, the Debtors shall file a Proposed Assumption and Assignment Notice which shall be effective as of the Closing Date pursuant to the Sale Order.

24.     Designation Rights Period Assumption and Assignment/Rejection Notices. During the period following the Closing Date until the earlier of (i) no less than fourteen (14) days prior to the date on which a hearing is held before the Court on confirmation of a plan of reorganization or liquidation in the Chapter 11 Cases (the "**Confirmation Hearing**"), or (ii) the date that is sixty (60) days after the Closing Date (the "**Designation Rights Period**"), the Purchaser may, in its sole discretion, designate any Contract or Lease not otherwise assumed and

13

assigned to the Purchaser at Closing pursuant to the Sale Order or previously rejected in the Chapter 11 Cases (each, a "**Designated Contract**") for either (x) assumption and assignment to the Purchaser, or (y) rejection, in each case, by providing written notice to the Debtors (a "**Purchaser Designation Notice**"); provided that, the Purchaser shall provide the Debtors with a Purchaser Designation Notice in respect of any Designated Contract at least seven (7) Business Days prior to the expiration of the Designation Rights Period. Each Purchaser Designation Notice for a Designated Contract that is to be assumed and assigned to the Purchaser shall include the Proposed Cure Cost associated with such Designated Contract. Within three (3) Business Days of the Debtors' receipt of a Purchaser Designation Notice, the Debtors shall  file with the Court and serve on counsel to affected Counterparties to such Designated Contracts (i) a supplemental assumption notice (each, a "**Designation Rights Period Assumption and Assignment Notice**"), which shall include the updated Proposed Assumed Contracts Schedule and associated Proposed Cure Costs and/or (ii) a rejection notice (the "**Designation Rights Rejection Notice**" and, together with the Potential Assumption and Assignment Notice, the Proposed Assumption and Assignment Notice and the Designation Rights Period Assumption and Assignment Notice(s), the **"Assumption/Rejection Notices**"), as applicable, which shall include a schedule of the Designated Contracts to be rejected. Each notice shall prominently display the deadline to file a Designation Rights Period Notice Objection (as defined below). With respect to any non-residential real property lease that is a Designated Contract, the applicable Assumption/Rejection Notices shall include the applicable store number, store address, landlord entity name, tenant debtor entity, and proposed assignee, and be accompanied by a proposed form of assumption and assignment or rejection order.  Upon request by the affected Counterparties, current adequate assurance information for the Successful Bidder shall

be provided to the affected Counterparties by the Debtors at the same time as the Designation Rights Period Assumption and Assignment Notice.  The expiration of the Designation Rights Period may be extended as to any Contract or Lease with the consent of the Debtors and the Successful Bidder (or the Stalking Horse Bidder, as applicable) and, to the extent that the deadline to assume or reject real property Leases under 11 U.S.C. § 365(d)(4) would expire during such extension period, with the consent of the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable) and the applicable Counterparty to such real property Lease. Purchaser shall be responsible for any and all liabilities of the Debtors under the Designated Contracts in each case that are incurred and come due and payable during the Designation Rights Period through the effective date of (i) any such Designated Contract's assumption and assignment to Purchaser, (ii) rejection by the Debtors, or (iii) deemed rejection, in each case, in accordance with the applicable definitive agreement; provided, however, that nothing herein modifies or relieves the Debtors of their obligation to timely perform lease obligations as they come due pursuant to Section 365(d)(3) (including, for the avoidance of doubt, during the Designation Rights Period). The Debtors shall cause each Assumption/Rejection Notice (as applicable) to be published on the Case Information Website and served on each applicable Counterparty by email or ECF where available, or otherwise by first class mail.

25.     Final Assumption and Assignment Notice.  Upon expiration of the Designation Rights Period, the Debtors shall file a notice which shall include a final register of the Assumed Contracts and Assumed Leases and associated Cure Costs.

26.     For the avoidance of doubt, any objections by any landlord of a non-residential real property lease to (i) the proposed use and occupancy of the Debtors' leased real property by

the Stalking Horse Bidder (or its designee) or any other Successful Bidder during the Designation Rights Period, or (ii) the effective date of the applicable assumption and assignment, or rejection, of an applicable non-residential real property lease, together with any rights, responses, and claims by Debtors or a Successful Bidder thereto, shall be fully reserved for determination at the Sale Hearing to the extent such objections are asserted in a timely Sale Objection.

27.     **Assumption/Rejection Objections**.

i.      Cure Objections.  Any Counterparty may object to its Proposed Cure Cost or the Potential Assumption and Assignment Notice, including objections to the identity of the Stalking Horse Bidder and adequate assurance of the Stalking Horse Bidder (any such objection, a "**Cure Objection**") by **July 10, 2026 at 4:00 p.m.**, with the exception of objections solely related to the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder).

ii.     Post-Auction Assumption Objections. If the Successful Bidder is not the Stalking Horse Bidder, any Counterparty may object to the Proposed Assumption and Assignment Notice solely as to (A) the identity of the Successful Bidder, including on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder) or (B) the Proposed Cure Cost, if the previously stated Proposed Cure Cost on the Potential Assumption and Assignment Notice has been modified (any such objection, a "**Post-Auction Assumption Objection**") by no later than fourteen (14) days after the filing of the Proposed Assumption and Assignment Notice or the Notice of Auction Results, as applicable.[5]

---

[5] Notwithstanding anything herein to the contrary, any Counterparty to a Contract or Lease that (a) is included in the Proposed Assumption and Assignment Notice but (b) was not included on the Potential Assumption

iii.          Designation Rights Period Notice Objections. Any Counterparty to a Designated Contract may object to the filing of a Designation Rights Period Assumption and Assignment Notice or a Designation Rights Period Rejection Notice, as applicable, solely as to (A) the Proposed Cure Cost, if the previously stated Proposed Cure Cost on the Proposed Assumed Contracts Schedule or Potential Assumption and Assignment Notice, as applicable, has been modified, (B) the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder unless such adequate assurance has materially changed), or (C) the rejection of the Contracts or Leases that have been added to a Designation Rights Rejection Notice. Each such Counterparty shall have until the date that is fourteen (14) days after the filing of the applicable notice (the "**Designation Rights Period Notice Objection Deadline**") to file the applicable objection (any such objection, a "**Designation Rights Period Notice Objection**" and, together with the Cure Objections and the Post-Auction Assumption Objections, the "**Assumption/Rejection Objections**").[6] All Assumption/Rejection Objections must (A) be in writing, (B) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Proposed Cure Cost the Counterparty believes is required to

---

included in the Proposed Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) days after the filing of the Proposed Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts or (ii) the Proposed Cure Cost, in each case, as contemplated by and set forth in the Proposed Assumption and Assignment Notice.

[6] Notwithstanding anything herein to the contrary, any Counterparty to a Designated Contract that (a) is included in the Designation Rights Period Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) days after the filing of the Designation Rights Period Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts, (ii) the Proposed Cure Cost, or (iii) the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder), in each case, as contemplated by and set forth in the Designation Rights Period Assumption and Assignment Notice.

cure any alleged defaults under the relevant Assumed Contracts or Assumed Leases, (D) be filed no later than the applicable objection deadline, and (E) be served on the Objection Notice Parties so that it is received on or before the applicable objection deadline.

28.     Resolution of Assumption/Rejection Objections.  If a Counterparty timely files an Assumption/Rejection Objection and such objection has not been consensually resolved, the Court shall make all necessary determinations relating to such Assumption/Rejection Objection at the applicable Contract Hearing (as defined below). A hearing with respect to Assumption/Rejection Objections timely and duly filed before the Sale Objection Deadline shall be held at the Sale Hearing or such later date that the Debtors shall determine, after consultation with the objecting party, to be set on no less than five (5) Business Days' notice unless otherwise agreed between the parties (subject to the Court's availability) (the "**Initial Contract Hearing**"). Hearings with respect to Assumption/Rejection Objections to Assumed Contracts or Assumed Leases for which the applicable objection deadlines are later than the Sale Objection Deadline may be scheduled by Debtors after consultation with the objecting party (at the request of the Successful Bidder (or Stalking Horse Bidder, if applicable)) on five (5) Business Days' notice (subject to the Court's availability) (each, an "**Additional Contract Hearing**," and, together with the Initial Contract Hearing, each, a "**Contract Hearing**"); provided that, any Additional Contract Hearing shall occur no later than the Confirmation Hearing. Upon resolution of an Assumption/Rejection Objection, the Debtors shall submit the assumption and assignment order for entry by the Court under certification of counsel providing an effective date of assumption and assignment as of the date of entry of the order or as otherwise agreed by the parties in the consensual order, subject to payment of the applicable cure amount, if any, by the Successful Bidder (or the Stalking Horse Bidder, as applicable). If an Assumption/Rejection Objection has

not been resolved prior to the Closing Date (whether by an order of the Court or by agreement with the Counterparty), the affected contracts shall be deemed Designated Contracts, and the Successful Bidder (or the Stalking Horse Bidder, as applicable) shall proceed to the closing of the Sale Transaction with respect to all other Assets, and, during the Designation Rights Period, determine whether to assume and assign or reject such Designated Contracts after resolution of such Counterparty's objection (whether by the Court's order or by agreement of the Counterparty, the Debtors, and the Successful Bidder (or the Stalking Horse Bidder, as applicable)). If any such Assumption/Rejection Objection is unresolved prior to the expiration of the Designation Rights Period, the Debtors may elect not to assume and assign the Designated Contract and designate such Designated Contract for rejection. If the Stalking Horse Bidder is the Successful Bidder, in no event shall the Debtors settle an objection to the assignment of an Assumed Contract or Assumed Lease listed on the Proposed Assumption and Assignment Notice or a Designated Contract, including as to Proposed Cure Costs, without the express prior written consent of the Successful Bidder (or the Stalking Horse Bidder, as applicable) (with an e-mail consent being sufficient).

29.     <u>Failure To File Timely Assumption/Rejection Objection</u>. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely and proper Assumption/Rejection Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease, as applicable. Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, as applicable, or any other document, absent a timely and proper Assumption/Rejection Objection, the Proposed Cure Costs set forth in the Proposed Assumed Contracts Schedule shall be controlling and shall be the only amounts necessary to cure any

19

alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code as more specifically provided for in the Sale Order.

30. <u>Modification of Proposed Assumed Contracts Schedule</u>. If the Debtors or the Successful Bidder (or the Stalking Horse Bidder, as applicable) identify, prior to the expiration of the Designation Rights Period, any Contract or Lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, such Successful Bidder (or the Stalking Horse Bidder, as applicable) may elect by written notice to the Debtors to treat such Contract or Lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, with all additional Proposed Cure Costs related to such Assumed Contracts or Assumed Leases to be paid by the Successful Bidder (or the Stalking Horse Bidder, as applicable), in accordance with the terms of the applicable definitive agreement (which, in the case of the Stalking Horse Bidder, is the Stalking Horse Agreement).

31. <u>Reservation of Rights</u>. The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Proposed Cure Costs with respect thereto on any Assumption/Rejection Notice shall not constitute, nor be deemed to be, a determination or admission by the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable), or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on any Assumption/Rejection Notice. The Debtors' inclusion of any Assumed Contract or Assumed Lease on any Assumption/Rejection

20

Notice shall not be a guarantee that such Assumed Contract or Assumed Lease will ultimately be assumed or assumed and assigned.

32. For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in this Bidding Procedures Order, the Bidding Procedures, or the Motion shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's rights thereunder. The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the sale of the Assets and related matters, including the right to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of the Bidding Procedures).

33. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Bidding Procedures Order.

34. This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

35. Any Bankruptcy Rule (including Bankruptcy Rules 6004(a), 6004(h), 6006(d), and 9014) or Local Rule that might otherwise delay the effectiveness of this Bidding Procedures Order is hereby waived, and the terms and conditions of this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

36. On June 25, 2026, NEVADA HOLDING CO., L.P. ("**Nevada Holding**") filed the *Conditional Objection of Nevada Holding Co., L.P. to "Bidding Procedures Motion" Filed by Debtors* [ECF No. 131] (the "**Conditional Objection**"). By the Conditional Objection, Nevada Holding (i) objects to (a) the adequate assurance of future performance by the Stalking Horse Bidder and (b) the Debtors' requested waivers of Rules 6004(h) and 6006(d) and (ii) reserves its

rights to challenge the Proposed Cure Costs in connection with its lease with the Debtors (clauses (i) and (ii), collectively, the "**Nevada Holding Objections**").  For the avoidance of doubt, notwithstanding entry of the Bidding Procedures Order, but subject to the terms and procedures (including the deadlines) set forth therein, Nevada Holding's rights with respect to the Nevada Holding Objections are hereby expressly preserved. Furthermore, the Conditional Objection shall be deemed to also be an objection to the Sale Order and to the proposed assumption (if any) by the Stalking Horse Bidder of the lease between Nevada Holdings and one of the Debtors for the reasons stated in the Conditional Objection, although Nevada Holding remains free to file a supplemental or additional objection on or before the Sale Objection Deadline with respect to all matters at issue with regard to the Sale Transaction (in accordance with the Assumption and Assignment Procedures).

37.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to take any and all actions permitted under the Stalking Horse Agreement in accordance with the terms and conditions thereof.

39.     To the extent any provisions of this Bidding Procedures Order shall be inconsistent with the Motion, the terms of this Bidding Procedures Order shall control.

40.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

**Exhibit 1**

**Proposed Bidding Procedures**

## BIDDING PROCEDURES

The bidding procedures set forth below (these "**Bidding Procedures**") detail the process by which Sleep Number Corporation ("**Sleep Number**") and certain of its affiliates (collectively, the "**Debtors**") are authorized by the United States Bankruptcy Court for the Southern District of New York (the "**Court**") to conduct a sale (such sale, the "**Sale Transaction**") of all or substantially all of the Debtors' assets (collectively, the "**Assets**").[1]  A party may participate in the bidding process by submitting a bid for the Assets in accordance with these Bidding Procedures.

**Any interested bidder should contact Guggenheim Securities, LLC (in its capacity as the Debtors' proposed investment banker), in the manner and for the purposes described herein, as soon as practicable:**

Guggenheim Securities, LLC[2]
330 Madison Avenue
New York, NY 10017
Attn: Michael Gottlieb (Michael.Gottlieb@guggenheimpartners.com) and Stuart Erickson
(stuart.erickson@guggenheimpartners.com)

These Bidding Procedures describe, among other things, (a) the Assets offered for sale, (b) the manner in which bidders and bids may become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of the Successful Bidder (as defined below), and (e) the approval by the Court of the sale of the Assets to the Successful Bidder.

The Debtors shall not consult with or provide copies of bids regarding any Assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Assets pending or has otherwise expressed any interest (written or verbal) in bidding for any of the Assets; *provided* that, if such insider or affiliate of the Debtors chooses not to submit a bid, and so informs the Debtors in writing on or before the Bid Deadline (as defined

---

[1] These bidding procedures were approved by the Court on [●], 2026 [ECF No. [●]] (the "**Bidding Procedures Order**").  Unless indicated otherwise, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in (a) the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17] (together with any supplemental and/or final order(s) entered in connection therewith, the "**Bidding Procedures Motion**") or the DIP Motion, as applicable.

[2] Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

1

below), then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as may be extended hereunder).

The Debtors selected the bid (the "**Stalking Horse Bid**") submitted by SNBR Inc., an affiliate of Sleep Country Canada, Inc. (the "**Stalking Horse Bidder**") as the highest or otherwise best offer for the sale of the Assets to date following a comprehensive bidding process completed before the filing of these Bidding Procedures. The Stalking Horse Bidder has executed that certain Asset Purchase Agreement, dated June 12, 2026, entered into by and between Sleep Number, as seller, and SNBR Inc., an affiliate of Sleep Country Canada, Inc., as purchaser (as may be amended, supplemented or otherwise modified by the parties thereto in accordance with the terms thereof, and including the disclosure schedules and exhibits attached thereto, the "**Stalking Horse Agreement**"), pursuant to which the Stalking Horse Bidder has agreed to purchase the Assets, subject to the terms and conditions set forth therein. Having announced the Stalking Horse Bid, the Debtors will now conduct a subsequent round of open bidding during these Chapter 11 Cases intended to obtain the highest or otherwise best offer for the Assets. The Stalking Horse Bid is subject to higher or otherwise better offers in accordance with the terms and conditions of these Bidding Procedures and the Bidding Procedures Order.

1.      **PARTICIPATION REQUIREMENTS**

(a)     **Interested Parties**

Unless otherwise ordered by the Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (other than the Stalking Horse Bidder, which shall be deemed a Potential Bidder and a Qualified Bidder and is deemed to have satisfied each of the below requirements) (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to Guggenheim Securities (at the email addresses set forth on the first page of these Bidding Procedures):

  i.   an executed confidentiality agreement in form and substance satisfactory to the Debtors; *provided* that Interested Parties that executed a confidentiality agreement with the Debtors concerning a Sale Transaction within 12 months of the Petition Date and which confidentiality agreement remains in full force and effect will not be required to execute an additional confidentiality agreement to participate in the Bidding Process;

  ii.  a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Assets;

  iii. a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and

iv.  sufficient information, to the Debtors' satisfaction, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close the Sale Transaction pursuant to these Bidding Procedures, which may include current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors) or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors), (B) a written commitment acceptable to the Debtors that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process, and (C) copies of any documents evidencing any financing commitments necessary to consummate the Sale Transaction.

If the Debtors determine, after receipt of the items identified in Section 1(a)(i)-(iv) above and after consultation with the DIP Agent and the Official Committee of Unsecured Creditors (the "**Committee**" and collectively with the DIP Agent, the "**Consultation Parties**"), that an Interested Party has a *bona fide* interest in purchasing the Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with (a) an electronic copy of the Stalking Horse Agreement and (b) access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), which shall include a form of Sale Order (as defined below).

**(b)**     **Due Diligence**

Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine that such requests are reasonable and appropriate under the circumstances.  All due diligence requests for the Debtors shall be directed to Guggenheim Securities.  The Debtors, with the assistance of Guggenheim Securities and/or their other advisors, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

The Debtors reserve the right to withhold any diligence materials from any Potential Bidder that the Debtors determine are commercially sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.

Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder or (b) the Bidding Process is terminated in accordance with its terms.

**2.      QUALIFIED BIDS**

Each offer, solicitation, or proposal by a Potential Bidder (other than the Stalking Horse Bidder) must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be deemed a "**Qualified Bid**" and for such Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors:

**(a)      Bid Deadline**

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver to Guggenheim Securities, with copies to Davis Polk & Wardwell LLP ("**Davis Polk**") (Attn: Brian M. Resnick (brian.resnick@davispolk.com), Angela M. Libby (angela.libby@davispolk.com), Brian Wolfe (brian.wolfe@davispolk.com); Lee Parnes (lee.parnes@davispolk.com); and Richard J. Steinberg (richard.steinberg@davispolk.com)), the Required Bid Documents (as defined below), so as to be received no later than **4:00 p.m.**[3] **on July 8, 2026** (the "**Bid Deadline**"). The Debtors will subsequently deliver copies of the Required Bid Documents to the Consultation Parties.[4] The Debtors, with the consent of the Consultation Parties (not to be unreasonably withheld) and without the need for further Court approval, may extend the Bid Deadline by a reasonable period of time if the Debtors believe that such extension would further the goal of attaining the highest or otherwise best offer for the Assets. If the Debtors extend the Bid Deadline, the Debtors will notify all Potential Bidders of such extension.

**(b)      Bid Requirements**

All bids (other than the Stalking Horse Bid, which has satisfied or is deemed to have satisfied each of the below requirements, and with respect to which the deposit requirements will be governed by the Stalking Horse Agreement), must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of the Sale Transaction;
- a duly authorized and executed (a) purchase agreement satisfactory to the Debtors, based on the form of the Stalking Horse Agreement, and a redline marked to show any revisions to the form Stalking Horse Agreement, or (b) an equity investment agreement (as applicable), in each

---

[3] All times herein are expressed in prevailing Eastern Time.

[4] Subject to Section 13 hereof in all respects, by submitting its Required Bid Documents, each Potential Bidder affirms its consent to the disclosure of the information contained therein (and in any Subsequent Bid submitted by such Potential Bidder) to the Consultation Parties as set forth herein (notwithstanding any provisions to the contrary in any confidentiality agreements between the Debtors and such Potential Bidder).

case, which shall include the purchase price for the Assets. For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form asset purchase agreement would not satisfy this requirement;

- written evidence acceptable to the Debtors, demonstrating a firm commitment for financing to consummate the Sale Transaction (or evidence of an ability to consummate the Sale Transaction without financing), operational ability, and corporate authorization to consummate the Sale Transaction, including the payment of any contingent or deferred consideration; and

- a written acknowledgment that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets and the Sale Transaction, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and any other information in making the bid, (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including Guggenheim Securities, AlixPartners, and Davis Polk) or other representatives regarding the bid, the Assets or the Sale Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except solely with respect to the Debtors, as expressly stated by them in these Bidding Procedures, and (d) did not engage in any collusive conduct and acted in good faith in submitting its bid.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the Sale Transaction);
- identifies the Assets to be acquired and the Contracts, Leases, and liabilities (if any) to be assumed;
- includes a statement of the Potential Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees;
- sets forth the consideration, including the form thereof, for the Assets to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided* that the consideration must be at least equal to the following: (a) the Stalking Horse Purchase Price; *plus* (b) a cash component equal to $4,000,000 *plus* 3% of the Purchase

Price (which consists of an amount equal to the Bid Protections (as defined below); *plus* (c) cash or non-cash consideration in the amount of $10,000,000 (the "**Minimum Overbid Amount**");

- clearly indicates which portion of the Bid Consideration will be paid at Closing and which portion (if any) will be deferred or contingent (and, in the event that a portion is deferred or contingent, clearly indicates when such amount would be due and payable) and any conditions or prerequisites to payment of such deferred or contingent consideration;

- is not conditioned on (a) obtaining financing or (b) the outcome of unperformed due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the Sale Transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended or any other Antitrust Law (as defined in the Stalking Horse Agreement), together with evidence satisfactory to the Debtors of the ability to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

- expressly states that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such Potential Bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as defined below) with respect to the Assets;

- is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to ten (10) percent of the consideration set forth in connection with such bid (any such deposit, a "**Good Faith Deposit**"); *provided* that a Credit Bid (as defined below) need not be accompanied by a Good Faith Deposit;

- sets forth the representatives that are authorized to appear and act on behalf of the Potential Bidder in connection with the Sale Transaction;

- indicates that the Potential Bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment, and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code;

6

- includes evidence of the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the Contracts and Leases proposed in its bid to be assumed by the Debtors and assigned to the Potential Bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such Contracts and Leases, which such adequate assurance information may include: (a) the specific name of the proposed assignee, the proposed name under which the proposed assignee intends to operate the leased premises if not the current trade-name of the Debtors, (b) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (c) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (d) the proposed assignee's intended use of the leased premises a description of the proposed business to be conducted at the premises, and proof of the proposed assignee's and any guarantor's experience in operating retail stores in shopping centers; (e) a contact person for the proposed assignee; and/or (f) any other documentation that the Debtors may further request;
- confirms that the Potential Bidder will assume all Cure Costs associated with any Contracts and Leases it intends to assume;
- includes a description of the Potential Bidder's proposed treatment of the Debtors' outstanding gift cards and gift certificates following the closing of the Sale Transaction;
- states or otherwise estimates the types of transition services, if any, the Potential Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Potential Bidder's bid were selected as the Successful Bid for the applicable Assets;
- (i) indicates whether the Potential Bidder intends to hire all or some of the employees who are primarily employed in connection with the Assets to be included in the proposed Sale Transaction and (ii) confirms whether the Potential Bidder will assume any severance, state or federal WARN Act, or similar obligations of the Debtors arising prior to the Closing; and
- is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding

Procedures).

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all Required Bid Documents and meets each of the above requirements as determined by the Debtors, in consultation with the Consultation Parties. The Debtors shall have the right, in consultation with the Consultation Parties, to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents, *provided* that such bid (i) must include a cash component sufficient to satisfy the Bid Protections and (ii) must satisfy the Minimum Overbid Amount. The Debtors will be authorized to approve joint bids in their reasonable discretion on a case-by-case basis, in consultation with the Consultation Parties.

If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies up to one (1) business day prior to the Auction. If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable Potential Bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Deposit Agent to return such Potential Bidder's Good Faith Deposit. For the avoidance of doubt, the Stalking Horse Bidder shall be deemed a Qualified Bidder and the Stalking Horse Agreement shall be deemed a Qualified Bid for all purposes in connection with these Bidding Procedures, and the Stalking Horse Bidder shall, without any further action, be entitled to participate in any Auction.

Notwithstanding any other provision of these Bidding Procedures, the Debtors may, in their discretion and in consultation with the Consultation Parties, evaluate bids on any grounds, including, (a) the consideration and form of consideration, set forth in the bid, (b) the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, (c) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (d) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, finality of documentation, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (e) the anticipated timing to closing and whether such timing is consistent with the Debtors' case milestones and/or adherence to any relevant budget, (f) the impact on employees and employee claims against the Debtors, (g) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, (h) the impact on trade and other creditors, (i) the tax consequences of any such bid; (j) whether the bid contemplates a Sale Transaction that would be consummated through a plan or a sale pursuant to section 363 of the Bankruptcy Code; (k) the certainty of a Qualified Bid leading to a confirmed plan; and (l) any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties and applicable bankruptcy law. For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, among other considerations, may be grounds for the Debtors, in their discretion and in consultation with the Consultation Parties, to determine that such bid (y) is not a Qualified Bid or (z) is not higher or otherwise better than any other Qualified Bid.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, (d) has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bid, (e) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (f) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Stalking Horse Bidder, the Stalking Horse Agreement, or, as to any other Successful Bidder, the Asset Purchase Agreement with such Successful Bidder. Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid in the Debtors' favor, during the period that such Qualified Bid is required to remain irrevocable (which, as it pertains to the Stalking Horse Bidder, shall be governed by the Stalking Horse Agreement in the event of any inconsistencies with these Bidding Procedures).

## 3.    BID PROTECTIONS

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed transaction set forth in the Stalking Horse Agreement, and the benefit that those efforts provided to all Interested Parties, the Debtors' estates, their creditors, and other parties in interest, the Debtors have agreed that, among other circumstances set forth in the Stalking Horse Agreement, if the Stalking Horse Bidder is not the Successful Bidder or the Back-Up Bidder until the Back-Up Termination Date (as defined in the Stalking Horse Agreement), the Debtors will pay to the Stalking Horse Bidder the Break-Up Fee and the Expense Reimbursement (collectively, the "**Bid Protections**"). The payment of the Break-Up Fee, which is $3% of the Purchase Price, and Expense Reimbursement, which shall not exceed $4,000,000, will be governed by the provisions of the Stalking Horse Agreement and the Bidding Procedures Order.

Other than any Bid Protections provided to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement, no bidder or other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other bidding protection in connection with the submission of a bid for the Assets.

## 4.    AUCTION

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "**Auction**") for the applicable Assets. The Auction shall be conducted in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids. The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, NY 10017 on **July 13, 2026 at 10:00 a.m.**, or such later time on such day, such other day, or such other place (including remotely via videoconference) as the Debtors shall notify all Participating Parties (as defined below). If no Qualified Bids other than

9

the Stalking Horse Bid are submitted by the Bid Deadline, the Debtors shall, within two (2) business days after the Bid Deadline, cancel the Auction and seek approval of the Sale Transaction contemplated in the Stalking Horse Bid at the Sale Hearing.

Only representatives or agents of the Debtors, the DIP Agent, the Qualified Bidders, the Committee (including its members), and counterparties to the Debtors nonresidential real property leases (the "**Landlords**"), and the legal, financial and investment banking advisors to each of the foregoing (collectively, the "**Participating Parties**"), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction. The Debtors may, in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and professional advisors that may appear on behalf of or accompany each Qualified Bidder and each Landlord at the Auction; *provided* that the Stalking Horse Bidder shall not be subject to such limitation. The Landlords and their representatives shall attend at their own expense and solely in an observational capacity, shall not participate in the bidding process, and shall be subject to the confidentiality obligations applicable to the Auction.

At least one (1) day prior to the Auction, the Debtors (either directly or through or their advisors) will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders (including the Stalking Horse Bidder) with (i) a list identifying all Qualified Bidders and their respective Qualified Bids, (ii) copies of all Qualified Bids (including any redline marked to show any revisions to the form Stalking Horse Agreement); (iii) a statement that identifies which Qualified Bid it deems the highest or otherwise best bid at the outset of the Auction (the **"Starting Bid"**) and (iv) an explanation of how the Debtors value the Starting Bid (including, to the extent that the Debtors ascribe value to non-cash components, an explanation of the valuation of each such component).

The Debtors may, in consultation with the Consultation Parties, employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, governing the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court entered in connection herewith, (b) be disclosed to all Qualified Bidders, and (c) apply equally to each Qualified Bidder in a round and shall not be changed within any given round of bidding.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) provides for a higher or otherwise better offer than such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in their discretion, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below); *provided* that, the Debtors, in their discretion, may determine appropriate minimum bid increments or requirements for each round of bidding. For the avoidance of doubt, in any round of bidding, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Bid Protections to be counted toward its bid in such round.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in their discretion, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer (the "**Leading Bid**"). Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in their discretion and in consultation with the Consultation Parties. In connection with each such determination, the Debtors shall provide all Qualified Bidders with an explanation of how the Debtors are valuing the bids submitted in such round.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid and after receiving an explanation from the Debtors regarding how they valued the Leading Bid (email being sufficient). For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder (other than the Stalking Horse Bidder) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement), acceptable to the Debtors in their discretion, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale Transaction and pay the full consideration (including, any deferred or contingent consideration).

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid, all Subsequent Bid(s), the Leading Bid(s), the Back-Up Bid (as defined below) and the Successful Bid. At the outset of the Auction, each Qualified Bidder will be asked to confirm that it has not engaged in any collusive conduct with respect to its participation in the Bidding Process and that it will not engage in any collusion with respect to any Subsequent Bid.

If a Qualified Bidder (other than the Stalking Horse Bidder) increases its bid at the Auction and is the Successful Bidder or Back-Up Bidder, such Qualified Bidder must increase its Good Faith Deposit to an amount equal to ten (10) percent of the proposed purchase price submitted at the Auction within two business days after the Auction.

## 5.    SELECTION OF THE SUCCESSFUL BID AND THE BACK-UP BID

Prior to the conclusion of the Auction, the Debtors shall in their discretion and in consultation with the Consultation Parties (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction, (ii) determine and identify the highest or otherwise best offer (the **"Successful Bid"**), (iii) determine and identify the next highest or otherwise best offer (the **"Back-Up Bid"**), and (iv) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (a) the identity of the party that submitted the Successful Bid, which may be the Stalking Horse Bidder (the "**Successful Bidder**"), (b) the amount and other material terms of the Successful Bid, (c) the identity of the party that submitted the Back-Up Bid (the **"Back-Up Bidder"**), and (d) the amount and other material terms of the Back-Up Bid. Each Qualified Bidder shall be deemed to

11

agree to be the Back-Up Bidder if so designated (in accordance with terms of the Stalking Horse Agreement in the event the Stalking Horse Bidder is the Back-Up Bidder).

Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

As soon as reasonably practicable after the completion of the Auction, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction contemplated by the Successful Bid. Promptly following the selection of the Successful Bid and Back-Up Bid, the Debtors shall file a notice of the Successful Bid and Back-Up Bid on the Court's docket, together with a revised proposed order approving the Sale Transaction (the **"Sale Order"**).

## 6.      THE SALE HEARING

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") will be held on **July 15, 2026 at [●].m.**, subject to Court availability, before the Honorable Judge Kyu Y. Paek, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, Courtroom 610, or by such other virtual or electronic means as may be determined by the Court. The Sale Hearing may be adjourned by the Debtors by an announcement at a hearing before the Court or by filing a notice on the Court's docket. At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid and the Back-Up Bid in the event that the Successful Bidder fails to consummate the transaction contemplated by its Successful Bid.

The Debtors' presentation to the Court of the Successful Bid and Back-Up Bid will not constitute the Debtors' acceptance of such bids, which acceptance will only occur upon approval of such bids by the Court. Following the Court's entry of the Sale Order, the Debtors and the Successful Bidder shall proceed to consummate the Sale Transaction contemplated by the Successful Bid in accordance with the terms of the applicable definitive agreement. If the Debtors and the Successful Bidder fail to consummate the proposed transaction in accordance with the terms of the applicable definitive agreement, then the Debtors shall file a notice with the Court advising of such failure. Upon the filing of such notice with the Court, the Back-Up Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate the Sale Transaction with the Back-Up Bidder, subject to the terms of the Back-Up Bid and in accordance with the terms of the applicable definitive agreement, without further order of the Court, *provided*, *however*, that in the event of a Sale Transaction with the Back-Up Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period. If the failure to consummate the transactions contemplated by either the Successful Bid or the Back-Up Bid is the result of a breach by the Successful Bidder or Back-Up Bidder, as applicable (the "**Breaching Bidder**"), of its definitive agreement, the Debtors reserve the right to seek all available remedies from such Breaching Bidder, subject to the terms of the applicable definitive

12

agreement (which shall include, as applicable to the Stalking Horse Bidder, the terms of the Stalking Horse Agreement).

## 7.    RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder until the consummation of the transaction contemplated by the Successful Bid or the Back-Up Bid, as applicable, in accordance with Section 6 above, except as otherwise ordered by the Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within two (2) business days after the entry of an order approving the Sale Transaction (which may be the Sale Order), or as soon as reasonably practicable thereafter.  At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon) and the remaining Good Faith Deposit of the Back-Up Bidder (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent three (3) business days after the consummation of the Sale Transaction contemplated by the Successful Bid, or as soon as reasonably practicable thereafter; *provided* that the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

Notwithstanding anything herein to the contrary, the terms under which the Stalking Horse Bidder provided the Deposit Amount (as defined in the Stalking Horse Agreement) and the terms of its use, release, and return to the Stalking Horse Bidder will be governed by the Stalking Horse Agreement.

## 8.    AS IS, WHERE IS

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except as specifically accepted or agreed to by the Debtors in the applicable definitive agreement, as approved by the Court.

## 9.    FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES

Except as otherwise provided for in the Stalking Horse Agreement or another Successful Bidder's definitive agreement, as applicable, all of the Debtors' right, title, and interest in and to the Assets shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, judgments, decrees, rights of setoff or recoupment, successor liability claims (whether legal or equitable), and interests thereon (collectively, the **"Encumbrances"**) to the maximum extent permitted by the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Encumbrances applied against the Assets.

13

## 10.     RESERVATION OF RIGHTS

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, in their discretion and in consultation with the Consultation Parties, consistent with applicable bankruptcy law and all other orders entered in these Chapter 11 Cases, to:

- determine which Interested Parties are Potential Bidders;
- determine which Potential Bidders are Qualified Bidders;
- determine which bids are Qualified Bids;
- determine which Qualified Bid is the Starting Bid;
- determine which Qualified Bid is the highest or otherwise best offer for the Assets and which is the next highest or otherwise best offer;
- reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, or (c) contrary to the best interests of the Debtors and their estates;
- impose additional terms and conditions with respect to all Potential Bidders;
- cancel the Auction;
- waive the terms and conditions set forth herein with respect to Potential Bidders;
- extend the deadlines set forth herein; and
- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their discretion and in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties; *provided*, *however*, that nothing herein shall permit the Debtors to modify the Bidding Procedures to reduce the time provided for a party in interest to file an objection.

Notwithstanding anything to the contrary herein, the Debtors may, in consultation with the Consultation Parties, elect to consummate the Sale Transaction pursuant to a chapter 11 plan of reorganization or a sale pursuant to section 363 of the Bankruptcy Code.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law.  Accordingly, at any time prior to the Court's entry of a Sale Order, the Debtors may, in consultation with the Consultation Parties, terminate the Bidding Process and pursue an alternative transaction, including a plan of

14

reorganization.  Notwithstanding anything in this Section 10 to the contrary, nothing herein shall limit, impair, or otherwise affect the Stalking Horse Bidder's right to enforce the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's entitlement to the Bid Protections pursuant to the Stalking Horse Agreement and the Bidding Procedures Order; *provided* that any DIP Secured Party or Prepetition Secured Party intending to submit a Credit Bid shall notify the Debtors and other Qualified Bidders of such intention no later than two (2) business days prior to the Auction.

## 11.   DIP ORDERS

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, (a) any and all rights of the DIP Agent to consent to the sale of any portion of the DIP Collateral as set forth in the DIP Loan Agreement are hereby expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures, (b) all cash proceeds generated from the sale of any DIP Collateral shall be applied in accordance with the terms and conditions of the DIP Order, the DIP Loan Documents, and any other order of the Court, as applicable, and (c) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP Order or the rights of the Debtors, the DIP Agent, or the DIP Lenders thereunder or under any of the DIP Loan Documents, including with respect to allocation of the sale proceeds of any DIP Collateral.  Further, nothing in these Bidding Procedures shall limit the right of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to submit a credit bid (a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code for the Assets (or any portion thereof) at any time.

## 12.   RELEVANT DATES

| | |
|---|---|
| **June 25, 2026** | The deadline for the Debtors to file the Potential Assumption and Assignment Notice (the "**Potential Assumption Notice Deadline**") |
| **July 2, 2026** | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order, subject to Court availability |
| **July 8, 2026 at 4:00 p.m.** | The deadline by which all binding Bids must be submitted to the Debtors by Potential Bidders (the "**Bid Deadline**") |
| **July 10, 2026 at 4:00 p.m.** | The deadline to object to the Motion and the sale of the Assets (the "**Sale Objection Deadline**"), with the exception of objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder) |
| **July 10, 2026 at 4:00 p.m.** | The deadline for a Counterparty to object to its Proposed Cure Cost or the Potential Assumption and Assignment Notice (including with respect to the identity of the Stalking Horse Bidder and adequate assurance of the Stalking Horse Bidder) (the "**Cure Objection Deadline**"), with the exception of objections solely related to the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful |

| | Bidder (other than the Stalking Horse Bidder)[5] |
|---|---|
| **July 13, 2026 at 10:00 a.m.** | Auction (if any) to be held at the New York offices of Davis Polk (or such other location as the Debtors may designate in accordance with the Bidding Procedures) |
| **July 13, 2026** | Target date for the Debtors to file the Notice of Auction Results and, if the Successful Bidder is not the Stalking Horse Bidder, the Proposed Assumption and Assignment Notice (the "**Post-Auction Notice Deadline**") |
| **July 14, 2026 at 4:00 p.m.** | The deadline for a Counterparty to object to the conduct of the Auction (the "**Post-Auction Objection Deadline**") |
| **July 15, 2026** | Hearing to consider approval of the Sale Transaction and for entry of the Sale Order, subject to Court availability |
| **July 31, 2026** | Closing of the Sale Transaction (subject to obtaining required regulatory approvals) |

## 13.    <u>**CONSULTATION BY THE DEBTORS**</u>

The Debtors will consult with the Consultation Parties as set forth herein and in the Bidding Procedures Order, and to the extent not explicitly required herein or in the Bidding Procedures Order, before making any material decision with respect to the Auction or the Sale Transaction.  If the DIP Agent or the Prepetition Loan Agent, as applicable, elects to participate in the Auction as a bidder, such party shall forfeit its right to consult with the Debtors as set forth in these Bidding Procedures.

---

[5] The Cure Objection Deadline shall be 14 days after the Potential Assumption Notice Deadline.

16

**Exhibit 2**

**Form of Sale Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SLEEP NUMBER CORPORATION,** *et al.*, | **Case No. 26-11399 (KYP)** |
| Debtors.[1] | **Jointly Administered** |

**NOTICE OF SALE OF SUBSTANTIALLY ALL OF THE**
**DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL**
**LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on June 12, 2026.

**PLEASE TAKE FURTHER NOTICE** that, on June 12, 2026, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors (the "**Assets**") to SNBR Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Assets, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for (i) the solicitation of bids in connection with the Sale Transaction and the Auction, free and clear of any and all liens, claims, interests, and encumbrances, and (ii) holding the Auction if applicable in connection therewith (the "**Bidding**

---

[1]   The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**Procedures**"),[2] (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, the Debtors' entry into the Stalking Horse Agreement, and the Assumption and Assignment Procedures. All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

## Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

**Guggenheim Securities, LLC**[4]
330 Madison Avenue
New York, NY 10017
Attn: Michael Gottlieb (Michael.Gottlieb@guggenheimpartners.com) and Stuart Erickson
(stuart.erickson@guggenheimpartners.com)

## Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

**Important Dates and Deadlines**[5]

1. **Bid Deadline**. The deadline to submit a Qualified Bid and Required Bid Documents is **July 8, 2026 at 4:00 p.m.**[6]

2. **Sale Objection Deadline**. The deadline to file an objection with the Court to the Sale Order or the Sale Transaction (including objections relating to the Stalking Horse Bidder) (the "**Sale Objection**") is **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**").

3. **Auction**. In the event that the Debtors timely receive more than one Qualified Bid for the Assets in addition to the Stalking Horse Bid, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction therefor. The Auction, if one is held, will commence on **July 13, 2026 at 10:00 a.m.** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017. If the Debtors hold the Auction, the Debtors will, as soon as reasonably practicable after selecting the Successful Bid and Back-Up Bid (if any), file (but not serve) and publish on the Case Website a notice of the results of the Auction (such notice, the "**Notice of Auction Results**"). Objections related solely to (i) the conduct of the Auction must be filed with the Court no later than **July 14, 2026 at 4:00 p.m.** (the "**Post-Auction Objection Deadline**") and (ii) the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder) must be filed with the Court no later than fourteen (14) days after the filing of the Notice of Auction Results (collectively, the "**Post-Auction Objections**"); provided that, in the event the Stalking Horse Bidder is not the Successful Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period (including, for the avoidance of doubt, any objection to the identity of the Successful bidder). The Notice of Auction Results will set forth the specific deadline and procedures for filing any objections in response to the Notice of Auction Results.

4. **Sale Hearing**. A hearing to consider the proposed Sale Transaction will be held before the Court on **July 15, 2026 at [●].m.**, or such other date as determined by the Court.

**Filing Objections**

A Sale Objection or Post-Auction Objection, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (d) be filed with the Court no later than the applicable deadline, and (e) be served on the following parties so that it is received no later than the applicable deadline: (i) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J.

---

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

[6] All times herein are expressed in prevailing Eastern Time.

Steinberg, and Mordechai Rivkin; (ii) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger; (iii) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; and (v) the U.S. Trustee (the "**Objection Notice Parties**").

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely and properly raise a Sale Objection or Post-Auction Objection on or before the applicable deadline in accordance with the Bidding Procedures Order and this notice shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests.*

## NO SUCCESSOR LIABILITY

*The assets sold in the Sale Transaction will be sold free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale Transaction, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale Transaction. Accordingly, as a result of the Sale Transaction, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in a definitive agreement reached between the Debtors and the Successful Bidder, for any liens, claims, encumbrances, and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

[*Remainder of page intentionally left blank*]

4

Dated:    [●], 2026
          New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        */s/ DRAFT*
                                        450 Lexington Avenue
                                        New York, NY 10017
                                        Tel.: (212) 450-4000
                                        Brian M. Resnick
                                        Angela M. Libby
                                        Stephen D. Piraino
                                        Richard J. Steinberg
                                        Sihui (Sophy) Ma
                                        Mordechai Rivkin

                                        *Proposed Counsel to the Debtors
                                        and Debtors in Possession*

## Exhibit 3

**Form of Potential Assumption and Assignment Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION,** *et al.*, | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

### NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on June 12, 2026.

**PLEASE TAKE FURTHER NOTICE** that, on June 12, 2026, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors (the "**Assets**") to SNBR Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Assets, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for (i) the solicitation of bids in connection with the Sale Transaction and the Auction, free and clear of any and all liens, claims, interests, and encumbrances, and (ii) holding the Auction if applicable in connection therewith (the "**Bidding**

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**Procedures**"),[2] (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

PLEASE TAKE FURTHER NOTICE that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, the Debtors' entry into the Stalking Horse Agreement, and the Assumption and Assignment Procedures. All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

PLEASE TAKE FURTHER NOTICE that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign the Potential Assumed Contracts to the Successful Bidder. A schedule listing the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com. In addition, the "**Proposed Cure Costs**," if any, necessary for the assumption and assignment of the Potential Assumed Contracts are set forth on the Potential Assumed Contracts Schedule. *Each Proposed Cure Cost listed on the Potential Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, the Successful Bidder may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become a Designated Contract), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, as applicable, by providing to the Debtors written notice of its election to exclude or include such contract or lease, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3]  To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

2

Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction (if any), the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time before the closing of the Sale Transaction, modify the previously stated Proposed Cure Costs associated with any Proposed Assumed Contract in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Proposed Cure Cost is modified will receive notice of such modification and an opportunity to file an objection in accordance with the Assumption and Assignment Procedures.

**The assumption and assignment of the Contracts and Leases on the Potential Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Potential Assumed Contracts Schedule and Proposed Assumed Contracts Schedule. The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Proposed Cure Costs with respect thereto on the Potential Assumed Contracts Schedule shall not constitute, nor be deemed to be, a determination or admission by the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable), or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.**

### Obtaining Additional Information

Copies of the Bidding Procedures Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com.

### Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease, the Debtors' Proposed Cure Costs, if any, or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance (any such objection, an "**Assumption and Assignment Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes is required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) **be filed no later than July 10, 2026 at 4:00 p.m.[4] (the "Cure Objection Deadline")**, and (e) be served on the following parties so that it is received no later than the Cure Objection Deadline: (i) proposed counsel to the Debtors, Davis

---

[4] All times herein are expressed in prevailing Eastern Time.

Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (ii) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger; (iii) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; and (v) the U.S. Trustee (the "**Objection Notice Parties**").

### CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to a contract or lease who fails to timely make an Assumption and Assignment Objection before the Cure Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order and this notice shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Proposed Cure Costs (if any), set forth on a Potential Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Proposed Cure Costs set forth on a Potential Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code as more specifically provided for in the Sale Order.*

### Other Important Dates and Deadlines[5]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Sale Objection Deadline**. The deadline to file an objection with the Court to the Sale Order or the Sale Transaction (including objections relating to the Stalking Horse Bidder) (the "**Sale Objection**") is **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**").

2. **Auction**. In the event that the Debtors timely receive more than one Qualified Bid for the Assets in addition to the Stalking Horse Bid, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction therefor. The Auction, if one is held, will commence on **July 13, 2026 at 10:00 a.m.** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017. If the Debtors hold the Auction, the Debtors will, as soon as reasonably practicable after selecting the Successful Bid(s), file (but not serve) and publish on the Case Website a notice of the results of the Auction (such notice, the "**Notice of Auction**

---

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

**Results**"). The Notice of Auction Results will set forth the specific deadline and procedures for filing any objections in response to the Notice of Auction Results.

3. **Sale Hearing**.  A hearing to consider the proposed Sale Transaction will be held before the Court on **July 15, 2026 at [●].m.**, or such other date as determined by the Court.

[*Remainder of page intentionally left blank*]

Dated:    [●], 2026
       New York, New York

DAVIS POLK & WARDWELL LLP

*/s/ DRAFT*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors
and Debtors in Possession*

6

## Exhibit 4

**Form of Proposed Assumption and Assignment Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on June 12, 2026.

**PLEASE TAKE FURTHER NOTICE** that, on June 12, 2026, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors (the "**Assets**") to SNBR Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Assets, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for (i) the solicitation of bids in connection with the Sale Transaction and the Auction, free and clear of any and all liens, claims, interests, and encumbrances, and (ii) holding the Auction if applicable in connection therewith (the "**Bidding**

---

[1]   The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**Procedures**"),[2] (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

PLEASE TAKE FURTHER NOTICE that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, the Debtors' entry into the Stalking Horse Agreement, and the Assumption and Assignment Procedures. All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

PLEASE TAKE FURTHER NOTICE that, on July 13, 2026 at 10:00 a.m., the Debtors held an Auction at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017.

PLEASE TAKE FURTHER NOTICE that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign the Proposed Assumed Contracts to the Successful Bidder. A schedule listing the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com. In addition, the "**Proposed Cure Costs**," if any, necessary for the assumption and assignment of the Proposed Assumed Contracts are set forth on the Proposed Assumed Contracts Schedule. *Each Proposed Cure Cost listed on the Proposed Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A PROPOSED ASSUMED CONTRACT. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, the Successful Bidder may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Proposed Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become a Designated Contract), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

Potential Assumption and Assignment Notice, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time before the closing of the Sale Transaction, modify the previously stated Proposed Cure Costs associated with any Proposed Assumed Contract in accordance with the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Proposed Cure Cost is modified will receive notice of such modification and an opportunity to file an objection in accordance with the Assumption and Assignment Procedures.   **The assumption and assignment of the Contracts and Leases on the Proposed Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Proposed Assumed Contracts Schedule.**

## Obtaining Additional Information

Copies of the Bidding Procedures Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, if the Successful Bidder is not the Stalking Horse Bidder, objections related solely to (i) the Debtors' Proposed Cure Costs, if the previously stated Proposed Cure Cost on the Potential Assumption and Assignment Notice has been modified, or (ii) the identity of the Successful Bidder, including on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder)  (any such objection, an "**Assumption and Assignment Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs that the Counterparty believes is required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) be filed no later than fourteen (14) calendar days from the date of service of the Proposed Assumption and Assignment Notice or the Notice of Auction Results, as applicable, and (e) be served on the following parties so that it is received no later than the applicable deadline: (i) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (ii) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn:

Michael R. Stewart and Adam C. Ballinger; (iii) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; and (v) the U.S. Trustee (the "**Objection Notice Parties**").

Pursuant to the Assumption and Assignment Procedures, any Counterparty to a Contract or Lease that (a) is included in the Proposed Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) calendar days after the filing of the Proposed Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts or (ii) the Proposed Cure Cost, in each case, as contemplated by and set forth in the Assumption and Assignment Procedures.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to a contract or lease who fails to timely make an Assumption and Assignment Objection before the applicable deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order and this notice shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Proposed Cure Costs (if any), set forth on a Proposed Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Proposed Cure Costs set forth on a Proposed Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code as more specifically provided for in the Sale Order.*

## Other Important Dates and Deadlines[4]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Sale Hearing**. A hearing to consider the proposed Sale Transaction will be held before the Court on **July 15, 2026 at [●].m.**, or such other date as determined by the Court.

*[Remainder of page intentionally left blank]*

---

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

4

Dated:   [●], 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

*/s/ DRAFT*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors
and Debtors in Possession*

**Exhibit B**

**Redline – Revised Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION,** *et al.*, | **Case No. 26-11399 ([●]KYP)** |
| **Debtors.**[1] | **[ Jointly Administered ]** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS'
ASSETS, (B) APPROVING THE DESIGNATION OF SNBR INC., AN AFFILIATE OF
SLEEP COUNTRY CANADA, INC., AS THE STALKING HORSE BIDDER FOR THE
ASSETS, (C) AUTHORIZING AND APPROVING ENTRY INTO THE STALKING
HORSE ASSET PURCHASE AGREEMENT, (D) APPROVING BID PROTECTIONS,
(E) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF
THE DEBTORS' ASSETS, (F) APPROVING THE FORM AND MANNER OF NOTICES
OF SALE, AUCTION, AND SALE HEARING, AND (G) APPROVING THE
ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED
RELIEF**

Upon the motion (the "**Motion**")[2] of Sleep Number Corporation and its direct and
indirect subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in
possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an
order, pursuant to sections 105(a), 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy
Rules 2002, 6004, 6006, and 9007, Local Rules 6004-1 and 6006-1, and the Court's Sale
Guidelines, (a) approving Bidding Procedures for the sale of the Assets, (b) approving
designation of SNBR Inc. as the Stalking Horse Bidder for the Assets, (c) authorizing and
approving entry into the Stalking Horse Agreement, (d) approving the Bid Protections, (e)

---

[1]    The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

scheduling an Auction for, and a hearing to approve, the sale of the Assets, (f) approving the form and manner of notices of sale, auction, and Sale Hearing, (g) approving the Assumption and Assignment Procedures, and (h) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the First Day Declaration, and the Gottlieb Declaration; and the Court having considered the relief requested in the Motion, including at any hearing thereon; and the Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration, and the Gottlieb Declaration establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice (except as otherwise provided herein); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings

2

of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors' proposed notice of the Motion (including any hearing thereon), the Bidding Procedures, and the proposed entry of the Bidding Procedures Order are (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities, including the Notice Parties.

C.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate, and are designed to maximize recoveries from a sale of the Assets.

D.      The Bidding Procedures were negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder, and the Stalking Horse Agreement was negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder. The Stalking Horse Agreement represents the highest or otherwise best offer that the Debtors have received to date to purchase the Assets. The process for selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates and their stakeholders.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bidding Procedures Order and, thereby, (i) approve the Bidding Procedures, (ii) approve the designation of the Stalking Horse Bidder, (iii) authorize and approve entry into the Stalking Horse Agreement, (iv) approve the Bid Protections under the terms and

3

conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, (v) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines as set forth in the Bidding Procedures, (vi) approve the Noticing Procedures and the forms of notice, and (vii) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion and the Gottlieb Declaration and on the record at any hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bid Protections, as approved by this Bidding Procedures Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders and represent a prudent exercise of the Debtors' sound business judgment.

G.      If triggered in accordance with the terms of the Stalking Horse Agreement, the payment of the Bid Protections, under this Bidding Procedures Order and upon the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code and shall constitute an allowed administrative expense claim against the Debtors, on a joint and several basis, and (ii) reasonably tailored to facilitate, rather than hinder, bidding for the Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and encouraging the participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors would receive the highest and best possible price for the Assets. The Bid Protections are, accordingly, (a) of substantial benefit to the Debtors' estates, their stakeholders, and all parties in interest, (b) reasonable and appropriate, (c) a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Assets, and (d) reasonable in relation

4

to the Stalking Horse Bidder's efforts, the magnitude and complexity of the Sale Transaction, and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing a Sale Transaction.  Without the Bid Protections, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures and the Stalking Horse Agreement).

H.      The Stalking Horse Bidder is a third-party purchaser and is unrelated to any of the Debtors. Neither the Stalking Horse Bidder, nor any of its affiliates, subsidiaries, officers, directors, members, partners, or principals, nor any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

I.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

J.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2**, the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3** and the Proposed Assumption and Assignment Notice attached hereto as **Exhibit 4**) are reasonably calculated to provide (i) all interested parties with timely and proper notice of the sale of the Assets and  the Successful Bid(s) and (ii) each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with proper notice of (A) the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts to the Successful Bidder (or the Stalking Horse Bidder, as applicable) or any of their

5

known proposed assignees (if different from the Successful Bidder) and (B) the requirement that each such Counterparty assert any objection to the notices by the applicable deadlines or otherwise, in each case, be barred from asserting claims arising from events occurring prior to the effective date of the assumption and assignment of such Proposed Assumed Contracts or any later applicable effective date following assumption and assignment of such Proposed Assumed Contracts.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      Any objections to or reservations of rights regarding the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits with prejudice (except as otherwise provided herein).

2.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Bidding Procedures Order and the Debtors are authorized to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

3.      The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is deemed a Qualified Bid. In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder, in accordance with the terms and conditions of this Order (including the Bidding Procedures) and the Stalking Horse Agreement.

4.      The Debtors are hereby authorized to enter into the Stalking Horse Agreement, and the Stalking Horse Agreement, and all other ancillary documents and all terms and

6

conditions thereof, are hereby approved, subject to the terms and conditions of this Bidding Procedures Order (including the Bidding Procedures) and the entry of the Sale Order.

5.      Nothing herein shall prejudice the rights of the Debtors to seek, by separate motion, in the exercise of their sound business judgment and fiduciary duties, the authority to sell assets of the Debtors' estates pursuant to section 363 of the Bankruptcy Code subject to the terms of the Stalking Horse Agreement.

6.      Bid Deadline.  As further described in the Bidding Procedures and in accordance therewith, the Bid Deadline shall be at **July 8, 2026 at 4:00 p.m.**[3]

7.      Auction.  In the event that the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 on **July 13, 2026 at 10:00 a.m.** or such later time on such day, such other day, or such other place (including remotely via teleconference) as the Debtors shall notify all Participating Parties.  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

8.      If no Qualified Bids other than the Stalking Horse Bid are submitted by the Bid Deadline, the Debtors shall, within two (2) business days after the Bid Deadline, cancel the Auction and seek approval of the Sale Transaction contemplated in the Stalking Horse Bid at the Sale Hearing.

9.      Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

---

[3] All times herein are expressed in prevailing Eastern Time.

7

10. The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

11. As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email if available or otherwise by first class mail) upon the following parties (or counsel thereto): (i) the U.S. Trustee; (ii) counsel to the DIP Agent; (iii) counsel to the Stalking Horse Bidder; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; (v) Counterparties to Contracts and Leases; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; (ix) the state attorneys general for states in which the Debtors conduct business; (x) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (xi) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Assets; (xii) all other known parties with any interest in the Assets; and (xiii) any other party that is identified on Sleep Number's master service list,[4] is entitled to notice under rule 9013-1(c) of the Local Rule, or has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**"); provided that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, either an email or physical address as of the entry of the Bidding Procedures Order; provided, further, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors'

---

[4] Accessible by visiting https://restructuring.ra.kroll.com/Sleepnumber.

books and records and no other email or physical address could be obtained after reasonable diligence.  The Debtors will also cause the Sale Notice to be published once in the national edition of the *Wall Street Journal* or another publication with similar national circulation as soon as practicable following entry of the Bidding Procedures Order and will post the Sale Notice and the Bidding Procedures Order on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber (the "**Case Information Website**").

12.     Service of the Sale Notice on the Sale Notice Parties in the manner described in this Bidding Procedures Order constitutes good and sufficient notice of the Auction, the Sale Hearing, and the Sale Objection Deadline.  No other or further notice is required.

13.     Promptly after the conclusion of the Auction (if any) and the selection of the Successful Bid and Alternate Bid (if any), the Debtors shall file with the Court and post on the Case Information Website a notice identifying such Successful Bid and Alternate Bid.

14.     <u>Sale Objections</u>.  Objections to the Sale Transaction other than objections related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder)) must (~~a~~i) be in writing, (~~b~~ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (~~e~~iii) state, with specificity, the legal and factual bases thereof, (~~d~~iv) be filed with the Court no later than **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**"), and (~~e~~v) be served on the following parties so that they are received by such parties by the Sale Objection Deadline: (~~i~~A) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (~~ii~~B) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and

Adam C. Ballinger; (iiiC) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (ivD) counsel to any statutory committee appointed in the Chapter 11 Cases; and (vE) the U.S. Trustee (collectively, the "**Objection Notice Parties**").

15.     Post-Auction Objections. Objections related to solely to (i) the conduct of the Auction must be filed with the Court no later than **July 14, 2026 at 4:00 p.m.** (the "**Post-Auction Objection Deadline**") and (ii) the identity of the Successful Bidder or on the basis of adequate assurance of future performance by thesuch Successful Bidder (in each case, other than the Stalking Horse Bidder) must be filed with the Court no later than fourteen (14) days after the filing of the Notice of Auction Results; provided that, in the event the Stalking Horse Bidder is not the Successful Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period (including, for the avoidance of doubt, any objection to the identity of the Successful bidder). Each objection must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court no later than **July 14, 2026 at 4:00 p.m.** (the "**Post-Auction Objection Deadline**"), and (e) be served on the Objection Notice Parties and the Successful Bidder so that they are received by such parties by the Post-Auction Objection Deadlineapplicable objection deadline.

16.     Sale Hearing.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Southern District of New York, [●], New York, NY 10014, on **July 15, 2026 at**

10

**[●].m.** (the "**Sale Hearing**"), subject to Court availability, or such other date and time that the Court may later direct; <u>provided</u> that the Sale Hearing may be adjourned by the announcement at a hearing before the Court or by filing a notice on the Court's docket.

17.     As soon as reasonably practicable after the completion of the Auction or following the cancellation of the Auction if there are no Qualified Bids other than the Stalking Horse Bid submitted by the Bid Deadline, the Debtors shall file a final form of proposed Sale Order as agreed upon between the Debtors and the Successful Bidder.

18.     <u>Bid Protections</u>.  Pursuant to sections 105, 363 and 503 of the Bankruptcy Code, the Debtors are hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Bidding Procedures and the Stalking Horse Agreement without further order of this Court. The dollar amounts of the Break-Up Fee and Expense Reimbursement are hereby approved. The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse Agreement and the Bidding Procedures without further action or order of the Court. Upon entry of this Bidding Procedures Order, the Break-Up Fee and Expense Reimbursement shall each constitute an allowed administrative expense claim against the Debtors, on a joint and several basis, pursuant to section 503(b) of the Bankruptcy Code. Any Qualified Bid shall, at a minimum, include a cash component sufficient to satisfy the Bid Protections.

19.     The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Stalking Horse Agreement, dismissal or conversion of these Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation.

20.     The Stalking Horse Bidder shall be entitled, but not obligated, to credit bid the full amount of the Bid Protections as part of any subsequent bid at the Auction, which credit bid amount shall be deemed the equivalent of cash consideration for all purposes of bid evaluation.

21.     Assumption and Assignment Procedures.   The assumption and assignment procedures set forth ~~in the Motion~~herein (the "**Assumption and Assignment Procedures**") are hereby approved.

22.     Potential Assumption and Assignment Notice.   On the Potential Assumption Notice Deadline, the Debtors shall have filed the Potential Assumption and Assignment Notice with the Court (other than any Contracts or Leases that have been previously rejected or are subject to a pending motion to reject in the Chapter 11 Cases) and shall serve the Potential Assumption and Assignment Notice on counsel to Counterparties to Potential Assumed Contracts, if known, which shall (i) include a list of the Potential Assumed Contracts, (ii) include a list of the Debtors' good faith calculation of the Cure Costs with respect to the Contracts identified on the Potential Assumption and Assignment Notice, which shall include (x) all prepetition arrears, *plus* (y) a good faith estimate of all unpaid post-petition amounts accrued under an Assumed Contract or Assumed Lease from the Petition Date through the anticipated date of assumption and assignment of such Assumed Contract or Assumed Lease (the "**Proposed Cure Costs**"), (iii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (iv) prominently display the deadline to file a Cure Objection (as defined below), and (v) prominently display the date, time, and location of the Sale Hearing.   Upon request by the affected Counterparties, adequate assurance information for the Stalking Horse Bidder shall be provided to affected Counterparties to Potential Assumed Contracts at the notice address identified in the Potential

12

Assumed Contracts (and upon counsel of record via email, if known) at the same time as the Potential Assumption and Assignment Notice.   The Debtors shall update the Potential Assumption and Assignment Notice from time to time, but no less frequently than once per month, in the event that they (i) identify additional Contracts that were not previously included in the initial Potential Assumption and Assignment Notice, or (ii) determine that a Proposed Cure Cost for any Potential Contract should be modified.

23.     Proposed Assumption and Assignment Notice. If the Successful Bidder is not the Stalking Horse Bidder, on the Post-Auction Notice Deadline, in conjunction with the filing of the Notice of Auction Results, the Debtors shall also file the Proposed Assumption and Assignment Notice, which shall (i) include a schedule of the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**"), (ii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (iii) prominently display the deadline to file a Post-Auction Assumption Objection (as defined below), and (iv) prominently display the date, time, and location of the Sale Hearing; provided that, any non-residential real property lease on the Proposed Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period. If the Stalking Horse Bidder is the Successful Bidder, within three (3) Business Days prior to the Closing Date, the Debtors shall file a Proposed Assumption and Assignment Notice will be filed in accordance with the Stalking Horse Agreement and which shall be effective as of the Closing Date pursuant to the Sale Order.

24.     Designation Rights Period Assumption and Assignment/Rejection Notices. During the period following the Closing Date until the earlier of (i) no less than fourteen (14)

13

days prior to the date on which a hearing is held before the Court on confirmation of a plan of reorganization or liquidation in the Chapter 11 Cases (the "**Confirmation Hearing**"), or (ii) the date that is sixty (60) days after the Closing Date (the "**Designation Rights Period**"), the Purchaser may, in its sole discretion, designate any Contract or Lease not otherwise assumed and assigned to the Purchaser at Closing pursuant to the Sale Order or previously rejected in the Chapter 11 Cases (each, a "**Designated Contract**") for either (x) assumption and assignment to the Purchaser, or (y) rejection, in each case, by providing written notice to the Debtors (a "**Purchaser Designation Notice**"); provided that, the Purchaser shall provide the Debtors with a Purchaser Designation Notice in respect of any Designated Contract at least seven (7) Business Days prior to the expiration of the Designation Rights Period. Each Purchaser Designation Notice for a Designated Contract that is to be assumed and assigned to the Purchaser shall include the Proposed Cure Cost associated with such Designated Contract. Within three (3) Business Days of the Debtors' receipt of a Purchaser Designation Notice, the Debtors ~~are authorized to~~shall file with the Court and serve on counsel to affected Counterparties to such Designated Contracts (i) a supplemental assumption notice (each, a "**Designation Rights Period Assumption and Assignment Notice**"), which shall include the updated Proposed Assumed Contracts Schedule and associated Proposed Cure Costs and/or (ii) a rejection notice (the "**Designation Rights Rejection Notice**" and, together with the Potential Assumption and Assignment Notice, the Proposed Assumption and Assignment Notice and the Designation Rights Period Assumption and Assignment Notice(s), the **"Assumption/Rejection Notices"**), as applicable, which shall include a schedule of the Designated Contracts to be rejected. Each notice shall prominently display the deadline to file a Designation Rights Period Notice Objection (as defined below). With respect to any non-residential real property lease that is a

14

Designated Contract, the applicable Assumption/Rejection Notices shall include the applicable store number, store address, landlord entity name, tenant debtor entity, and proposed assignee, and be accompanied by a proposed form of assumption and assignment or rejection order.  Upon request by the affected Counterparties, current adequate assurance information for the Successful Bidder shall be provided to the affected Counterparties by the Debtors at the same time as the Designation Rights Period Assumption and Assignment Notice.   The expiration of the Designation Rights Period may be extended as to any Contract or Lease with the consent of the Debtors and the Successful Bidder (or the Stalking Horse Bidder, as applicable) and, to the extent that the deadline to assume or reject real property Leases under 11 U.S.C. § 365(d)(4) would expire during such extension period, with the consent of the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable) and the applicable Counterparty to such real property Lease. Purchaser shall be responsible for any and all liabilities of the Debtors under the Designated Contracts in each case that are incurred and come due and payable during the Designation Rights Period through the effective date of (i) any such Designated Contract's assumption and assignment to Purchaser, (ii) rejection by the Debtors, or (iii) deemed rejection, in each case, in accordance with the applicable definitive agreement; provided, however, that nothing herein modifies or relieves the Debtors of their obligation to timely perform lease obligations as they come due pursuant to Section 365(d)(3) (including, for the avoidance of doubt, during the Designation Rights Period).   The Debtors shall cause each Assumption/Rejection Notice (as applicable) to be published on the Case Information Website and served on each applicable Counterparty by email or ECF where available, or otherwise by first class mail.

15

25.    <u>Final Assumption and Assignment Notice</u>.  Upon expiration of the Designation Rights Period, the Debtors shall file a notice which shall include a final register of the Assumed Contracts and Assumed Leases and associated Cure Costs.

26.    <u>For the avoidance of doubt, any objections by any landlord of a non-residential real property lease to (i) the proposed use and occupancy of the Debtors' leased real property by the Stalking Horse Bidder (or its designee) or any other Successful Bidder during the Designation Rights Period, or (ii) the effective date of the applicable assumption and assignment, or rejection, of an applicable non-residential real property lease, together with any rights, responses, and claims by Debtors or a Successful Bidder thereto, shall be fully reserved for determination at the Sale Hearing to the extent such objections are asserted in a timely Sale Objection.</u>

27.    ~~26.~~ **Assumption/Rejection Objections**.

i.    Cure ~~Objection Deadline~~<u>Objections</u>.  Any Counterparty may object to its Proposed Cure Cost or the Potential Assumption and Assignment Notice<u>, including objections to the identity of the Stalking Horse Bidder and adequate assurance of the Stalking Horse Bidder</u> (any such objection, a "**Cure Objection**") by ~~the Cure Objection Deadline~~**<u>July 10, 2026 at 4:00 p.m.</u>**, with the exception of objections solely related to the identity of the Successful Bidder ~~and~~<u>on the basis of</u> adequate assurance of future performance by ~~the~~<u>such</u> Successful Bidder (~~in each case,~~ other than the Stalking Horse Bidder) ~~which objections will be due by the Post-Auction Objection Deadline~~.

ii.    Post-Auction ~~Objection Deadline.  Any~~<u>Assumption Objections. If the Successful Bidder is not the Stalking Horse Bidder, any</u> Counterparty may object to the Proposed Assumption and Assignment Notice solely as to <u>(A)</u> the identity of the Successful Bidder ~~or~~<u>,</u>

16

including on the basis of adequate assurance of future performance by ~~the~~such Successful Bidder (~~in each case,~~ other than the Stalking Horse Bidder) ~~(any such objection, a "**Post-Auction Objection**") by the Post-Auction Objection Deadline; provided that, any Counterparty to a Proposed Assumed Contract for which~~or (B) the Proposed Cure Cost, if the previously stated Proposed Cure Cost on the Potential Assumption and Assignment Notice has been modified ~~shall have until the date that is~~ (any such objection, a "**Post-Auction Assumption Objection**") by no later than fourteen (14) days after the filing of the Proposed Assumption and Assignment Notice ~~to object solely as to the Proposed Cure Cost~~or the Notice of Auction Results, as applicable.[5]

iii.        Designation Rights Period Notice ~~Objection~~Objections. Any Counterparty to a Designated Contract may object to the filing of a Designation Rights Period Assumption and Assignment Notice or a Designation Rights Period Rejection Notice, as applicable, solely as to (~~i~~A) the Proposed Cure Cost, if the previously stated Proposed Cure Cost on the Proposed Assumed Contracts Schedule or Potential Assumption and Assignment Notice, as applicable, has been modified, (B) the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder unless such adequate assurance has materially changed), or (~~ii~~C) the rejection of the Contracts or Leases that have been added to a Designation Rights Rejection Notice. Each such Counterparty shall have until the date that is fourteen (14) days after the filing of the applicable notice (the "**Designation**

---

[5] Notwithstanding anything herein to the contrary, any Counterparty to a Contract or Lease that (a) is included in the Proposed Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) days after the filing of the Proposed Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts or (ii) the Proposed Cure Cost, in each case, as contemplated by and set forth in the Proposed Assumption and Assignment Notice.

17

**Rights Period Notice Objection Deadline**") to file the applicable objection (any such objection, a "**Designation Rights Period Notice Objection**" and, together with the Cure Objections and the Post-Auction ~~Objection~~Assumption Objections, the "**Assumption/Rejection Objections**").[6] All Assumption/Rejection Objections must (A) be in writing, (B) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Proposed Cure Cost the Counterparty believes is required to cure any alleged defaults under the relevant Assumed Contracts or Assumed Leases, (D) be filed no later than the applicable objection deadline, and (E) be served on the Objection Notice Parties so that it is received on or before the applicable objection deadline.

28.    ~~27.~~ Resolution of Assumption/Rejection Objections. If a Counterparty timely files an Assumption/Rejection Objection and such objection has not been consensually resolved, the Court shall make all necessary determinations relating to such Assumption/Rejection Objection at the applicable Contract Hearing (as defined below). A hearing with respect to Assumption/Rejection Objections timely and duly filed before the Sale Objection Deadline shall be held at the Sale Hearing or such later date that the Debtors~~, in their discretion,~~ shall determine, after consultation with the objecting party, to be set on no less than five (5) Business Days' notice unless otherwise agreed between the parties (subject to the Court's availability) (the "**Initial Contract Hearing**"). Hearings with respect to Assumption/Rejection Objections to

---

[6] Notwithstanding anything herein to the contrary, any Counterparty to a Designated Contract that (a) is included in the Designation Rights Period Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) days after the filing of the Designation Rights Period Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts, (ii) the Proposed Cure Cost, or (iii) the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder), in each case, as contemplated by and set forth in the Designation Rights Period Assumption and Assignment Notice.

Assumed Contracts or Assumed Leases for which the applicable objection deadlines are later than the Sale Objection Deadline may be scheduled by Debtors after consultation with the objecting party (at the request of the Successful Bidder (or Stalking Horse Bidder, if applicable)) on five (5) Business Days' notice (subject to the Court's availability) (each, an "**Additional Contract Hearing**," and, together with the Initial Contract Hearing, each, a "**Contract Hearing**"); provided that, any Additional Contract Hearing shall occur no later than the Confirmation Hearing. Upon resolution of an Assumption/Rejection Objection and upon, the Debtors shall submit the assumption and assignment order for entry by the Court under certification of counsel providing an effective date of assumption and assignment as of the date of entry of the order or as otherwise agreed by the parties in the consensual order, subject to payment of the applicable cure amount, if any, by the Successful Bidder (or the Stalking Horse Bidder, as applicable), the Contract or Lease will be deemed assumed and assigned to the Successful Bidder (or the Stalking Horse Bidder, as applicable), as of the Closing Date. If an Assumption/Rejection Objection has not been resolved prior to the Closing Date (whether by an order of the Court or by agreement with the Counterparty), the affected contracts shall be deemed Designated Contracts, and the Successful Bidder (or the Stalking Horse Bidder, as applicable) shall temporarily treat such Proposed Assumed Contract as a Designated Contract, proceed to the closing of the Sale Transaction with respect to all other Assets, and, during the Designation Rights Period, determine whether to assume and assign or reject thesuch Designated ContractContracts after resolution of such Counterparty's objection (whether by the Court's order or by agreement of the Counterparty, the Debtors, and the Successful Bidder (or the Stalking Horse Bidder, as applicable)). If any such Assumption/Rejection Objection is unresolved prior to the expiration of the Designation Rights Period, the Debtors may elect not to

19

assume and assign the Designated Contract and designate such Designated Contract for rejection. If the Stalking Horse Bidder is the Successful Bidder, in no event shall the Debtors settle an objection to the assignment of an Assumed Contract or Assumed Lease listed on the Proposed Assumption and Assignment Notice or a Designated Contract, including as to Proposed Cure Costs, without the express prior written consent of the Successful Bidder (or the Stalking Horse Bidder, as applicable) (with an e-mail consent being sufficient).

29.   28. Failure To File Timely Assumption/Rejection Objection.  If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely and proper Assumption/Rejection Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease, as applicable.  Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, as applicable, or any other document, absent a timely and proper Assumption/Rejection Objection, the Proposed Cure Costs set forth in the Proposed Assumed Contracts Schedule shall be controlling and shall be the only amounts necessary to cure any alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the Closing Date or other applicable date upon which such assumption and assignment would become effective, whether such defaults are known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract or Assumed Lease against the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable), or the property of any of them.as more specifically provided for in the Sale Order.

30.   ~~29.~~ <u>Modification of Proposed Assumed Contracts Schedule</u>.  If the Debtors or the Successful Bidder (or the Stalking Horse Bidder, as applicable) identify, prior to the expiration of the Designation Rights Period,  any Contract or Lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, such Successful Bidder (or the Stalking Horse Bidder, as applicable) may elect by written notice to the Debtors to treat such Contract or Lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, with all additional Proposed Cure Costs related to such Assumed Contracts or Assumed Leases to be paid by the Successful Bidder (or the Stalking Horse Bidder, as applicable), in accordance with the terms of the applicable definitive agreement (which, in the case of the Stalking Horse Bidder, is the Stalking Horse Agreement).

31.   ~~30.~~ <u>Reservation of Rights</u>.  The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Proposed Cure Costs with respect thereto on any Assumption/Rejection Notice shall not constitute, nor be deemed to be, a determination or admission by the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable), or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on any Assumption/Rejection Notice.  The Debtors' inclusion of any Assumed Contract or Assumed Lease on any Assumption/Rejection Notice shall not be a guarantee that such Assumed Contract or Assumed Lease will ultimately be assumed or assumed and assigned.

32.   ~~31.~~ For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in this Bidding Procedures Order, the Bidding Procedures, or the Motion shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's rights thereunder. The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the sale of the Assets and related matters, including the right to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of the Bidding Procedures).

33.   ~~32.~~ The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Bidding Procedures Order.

34.   ~~33.~~ This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

35.   ~~34.~~ Any Bankruptcy Rule (including Bankruptcy Rules 6004(a), 6004(h), 6006(d), and 9014) or Local Rule that might otherwise delay the effectiveness of this Bidding Procedures Order is hereby waived, and the terms and conditions of this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

36.   On June 25, 2026, NEVADA HOLDING CO., L.P. ("**Nevada Holding**") filed the *Conditional Objection of Nevada Holding Co., L.P. to "Bidding Procedures Motion" Filed by Debtors* [ECF No. 131] (the "**Conditional Objection**").  By the Conditional Objection, Nevada Holding (i) objects to (a) the adequate assurance of future performance by the Stalking Horse Bidder and (b) the Debtors' requested waivers of Rules 6004(h) and 6006(d) and (ii) reserves its rights to challenge the Proposed Cure Costs in connection with its lease with the Debtors (clauses (i) and (ii), collectively, the "**Nevada Holding Objections**").  For the avoidance of

doubt, notwithstanding entry of the Bidding Procedures Order, but subject to the terms and procedures (including the deadlines) set forth therein, Nevada Holding's rights with respect to the Nevada Holding Objections are hereby expressly preserved. Furthermore, the Conditional Objection shall be deemed to also be an objection to the Sale Order and to the proposed assumption (if any) by the Stalking Horse Bidder of the lease between Nevada Holdings and one of the Debtors for the reasons stated in the Conditional Objection, although Nevada Holding remains free to file a supplemental or additional objection on or before the Sale Objection Deadline with respect to all matters at issue with regard to the Sale Transaction (in accordance with the Assumption and Assignment Procedures).

37.   35. All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.   36. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to take any and all actions permitted under the Stalking Horse Agreement in accordance with the terms and conditions thereof.

39.   37. To the extent any provisions of this Bidding Procedures Order shall be inconsistent with the Motion, the terms of this Bidding Procedures Order shall control.

40.   38. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Bidding Procedures Order.

Dated:   _____, 2026
          New York, New York

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

23

**Exhibit 1**

**Proposed Bidding Procedures**

## BIDDING PROCEDURES

The bidding procedures set forth below (these "**Bidding Procedures**") detail the process by which Sleep Number Corporation ("**Sleep Number**") and certain of its affiliates (collectively, the "**Debtors**") are authorized by the United States Bankruptcy Court for the Southern District of New York (the "**Court**") to conduct a sale (such sale, the "**Sale Transaction**") of all or substantially all of the Debtors' assets (collectively, the "**Assets**").[1]   A party may participate in the bidding process by submitting a bid for the Assets in accordance with these Bidding Procedures.

**Any interested bidder should contact Guggenheim Securities, LLC (in its capacity as the Debtors' proposed investment banker), in the manner and for the purposes described herein, as soon as practicable:**

Guggenheim Securities, LLC[2]
330 Madison Avenue
New York, NY 10017
Attn: Michael Gottlieb (Michael.Gottlieb@guggenheimpartners.com) and Stuart Erickson (stuart.erickson@guggenheimpartners.com)

These Bidding Procedures describe, among other things, (a) the Assets offered for sale, (b) the manner in which bidders and bids may become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of the Successful Bidder (as defined below), and (e) the approval by the Court of the sale of the Assets to the Successful Bidder.

The Debtors shall not consult with or provide copies of bids regarding any Assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Assets pending or has otherwise expressed any interest (written or verbal) in bidding for any of the Assets; *provided* that, if such insider or affiliate of the Debtors chooses not to submit a bid, and so informs the Debtors in writing on or before the Bid Deadline (as defined

---

[1] These bidding procedures were approved by the Court on [●], 2026 [ECF No. [●]] (the "**Bidding Procedures Order**").  Unless indicated otherwise, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in (a) the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. [●]17] (together with any supplemental and/or final order(s) entered in connection therewith, the "~~DIP~~**Bidding Procedures** Motion") or the DIP Motion, as applicable.

[2]  Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

1

below), then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as may be extended hereunder).

The Debtors selected the bid (the "**Stalking Horse Bid**") submitted by SNBR Inc., an affiliate of Sleep Country Canada, Inc. (the "**Stalking Horse Bidder**") as the highest or otherwise best offer for the sale of the Assets to date following a comprehensive bidding process completed before the filing of these Bidding Procedures. The Stalking Horse Bidder has executed that certain Asset Purchase Agreement, dated June 12, 2026, entered into by and between Sleep Number, as seller, and SNBR Inc., an affiliate of Sleep Country Canada, Inc., as purchaser (as may be amended, supplemented or otherwise modified by the parties thereto in accordance with the terms thereof, and including the disclosure schedules and exhibits attached thereto, the "**Stalking Horse Agreement**"), pursuant to which the Stalking Horse Bidder has agreed to purchase the Assets, subject to the terms and conditions set forth therein.  Having announced the Stalking Horse Bid, the Debtors will now conduct a subsequent round of open bidding during these Chapter 11 Cases intended to obtain the highest or otherwise best offer for the Assets. The Stalking Horse Bid is subject to higher or otherwise better offers in accordance with the terms and conditions of these Bidding Procedures and the Bidding Procedures Order.

1.      **PARTICIPATION REQUIREMENTS**

(a)      **Interested Parties**

Unless otherwise ordered by the Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (other than the Stalking Horse Bidder, which shall be deemed a Potential Bidder and a Qualified Bidder and is deemed to have satisfied each of the below requirements) (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to Guggenheim Securities (at the email addresses set forth on the first page of these Bidding Procedures):

    i.   an executed confidentiality agreement in form and substance satisfactory to the Debtors; *provided* that Interested Parties that executed a confidentiality agreement with the Debtors concerning a Sale Transaction within 12 months of the Petition Date and which confidentiality agreement remains in full force and effect will not be required to execute an additional confidentiality agreement to participate in the Bidding Process;

    ii.   a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Assets;

    iii.   a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and

iv.   sufficient information, to the Debtors' satisfaction, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close the Sale Transaction pursuant to these Bidding Procedures, which may include current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors) or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors), (B) a written commitment acceptable to the Debtors that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process, and (C) copies of any documents evidencing any financing commitments necessary to consummate the Sale Transaction.

If the Debtors determine, after receipt of the items identified in Section 1(a)(i)-(iv) above and after consultation with the DIP Agent and the Official Committee of Unsecured Creditors (the "**Committee**" and collectively with the DIP Agent, the "**Consultation Parties**"), that an Interested Party has a *bona fide* interest in purchasing the Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with (a) an electronic copy of the Stalking Horse Agreement and (b) access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), which shall include a form of Sale Order (as defined below).

**(b)**   **Due Diligence**

Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine that such requests are reasonable and appropriate under the circumstances.  All due diligence requests for the Debtors shall be directed to Guggenheim Securities.  The Debtors, with the assistance of Guggenheim Securities and/or their other advisors, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

The Debtors reserve the right to withhold any diligence materials from any Potential Bidder that the Debtors determine are commercially sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.

Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder or (b) the Bidding Process is terminated in accordance with its terms.

### 2.   QUALIFIED BIDS

Each offer, solicitation, or proposal by a Potential Bidder (other than the Stalking Horse Bidder) must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be deemed a "**Qualified Bid**" and for such Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors:

### (a)   Bid Deadline

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver to Guggenheim Securities, with copies to Davis Polk & Wardwell LLP ("**Davis Polk**") (Attn: Brian M. Resnick (brian.resnick@davispolk.com), Angela M. Libby (angela.libby@davispolk.com), Brian Wolfe (brian.wolfe@davispolk.com); Lee Parnes (lee.parnes@davispolk.com); and Richard J. Steinberg (richard.steinberg@davispolk.com)), the Required Bid Documents (as defined below), so as to be received no later than **4:00 p.m.**[3] **on July 8, 2026** (the "**Bid Deadline**").   The Debtors will subsequently deliver copies of the Required Bid Documents to the ~~DIP Agent~~Consultation Parties.[4]  The Debtors, with the consent of the ~~DIP Agent~~Consultation Parties (not to be unreasonably withheld) and without the need for further Court approval, may extend the Bid Deadline by a reasonable period of time if the Debtors believe that such extension would further the goal of attaining the highest or otherwise best offer for the Assets.  If the Debtors extend the Bid Deadline, the Debtors will notify all Potential Bidders of such extension.

### (b)   Bid Requirements

All bids (other than the Stalking Horse Bid, which has satisfied or is deemed to have satisfied each of the below requirements, and with respect to which the deposit requirements will be governed by the Stalking Horse Agreement), must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of the Sale Transaction;
- a duly authorized and executed (a) purchase agreement satisfactory to the Debtors, based on the form of the Stalking Horse Agreement, and a redline marked to show any revisions to the form Stalking Horse Agreement, or (b) an equity investment agreement (as applicable), in each

---

[3] All times herein are expressed in prevailing Eastern Time.

[4] Subject to Section 13 hereof in all respects, by submitting its Required Bid Documents, each Potential Bidder affirms its consent to the disclosure of the information contained therein (and in any Subsequent Bid submitted by such Potential Bidder) to the ~~DIP Agent~~Consultation Parties as set forth herein (notwithstanding any provisions to the contrary in any confidentiality agreements between the Debtors and such Potential Bidder).

case, which shall include the purchase price for the Assets. For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form asset purchase agreement would not satisfy this requirement;

- written evidence acceptable to the Debtors, demonstrating a firm commitment for financing to consummate the Sale Transaction (or evidence of an ability to consummate the Sale Transaction without financing), operational ability, and corporate authorization to consummate the Sale Transaction, including the payment of any contingent or deferred consideration; and

- a written acknowledgment that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets and the Sale Transaction, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and any other information in making the bid, (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including Guggenheim Securities, AlixPartners, and Davis Polk) or other representatives regarding the bid, the Assets or the Sale Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except solely with respect to the Debtors, as expressly stated by them in these Bidding Procedures, and (d) did not engage in any collusive conduct and acted in good faith in submitting its bid.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the Sale Transaction);
- identifies the Assets to be acquired and the Contracts, Leases, and liabilities (if any) to be assumed;
- includes a statement of the Potential Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees;
- sets forth the consideration, including the form thereof, for the Assets to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided* that the consideration must be at least equal to the following: (a) the Stalking Horse Purchase Price; *plus* (b) a cash component equal to $4,000,000 *plus* 3% of the Purchase

5

Price (which consists of an amount equal to the Bid Protections (as defined below); *plus* (c) cash or non-cash consideration in the amount of $10,000,000 (the "**Minimum Overbid Amount**");

- clearly indicates which portion of the Bid Consideration will be paid at Closing and which portion (if any) will be deferred or contingent (and, in the event that a portion is deferred or contingent, clearly indicates when such amount would be due and payable) and any conditions or prerequisites to payment of such deferred or contingent consideration;

- is not conditioned on (a) obtaining financing or (b) the outcome of unperformed due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the Sale Transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended or any other Antitrust Law (as defined in the Stalking Horse Agreement), together with evidence satisfactory to the Debtors of the ability to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

- expressly states that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such Potential Bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as defined below) with respect to the Assets;

- is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to ten (10) percent of the consideration set forth in connection with such bid (any such deposit, a "**Good Faith Deposit**"); *provided* that a Credit Bid (as defined below) need not be accompanied by a Good Faith Deposit;

- sets forth the representatives that are authorized to appear and act on behalf of the Potential Bidder in connection with the Sale Transaction;

- indicates that the Potential Bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment, and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code;

6

- includes evidence of the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the Contracts and Leases proposed in its bid to be assumed by the Debtors and assigned to the Potential Bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such Contracts and Leases, which such adequate assurance information may include: (a) the specific name of the proposed assignee, the proposed name under which the proposed assignee intends to operate the leased premises if not the current trade-name of the Debtors, (b) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (c) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (d) the proposed assignee's intended use of the leased premises ~~and~~ a description of the proposed business to be conducted at the premises, and proof of the proposed assignee's and any guarantor's experience in operating retail stores in shopping centers; (e) a contact person for the proposed assignee; and/or (f) any other documentation that the Debtors may further request;

- confirms that the Potential Bidder will assume all Cure Costs associated with any Contracts and Leases it intends to assume;

- includes a description of the Potential Bidder's proposed treatment of the Debtors' outstanding gift cards and gift certificates following the closing of the Sale Transaction;

- states or otherwise estimates the types of transition services, if any, the Potential Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Potential Bidder's bid were selected as the Successful Bid for the applicable Assets;

- (i) indicates whether the Potential Bidder intends to hire all or some of the employees who are primarily employed in connection with the Assets to be included in the proposed Sale Transaction and (ii) confirms whether the Potential Bidder will assume any severance, state or federal WARN Act, or similar obligations of the Debtors arising prior to the Closing; and

- is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding

7

Procedures).

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all Required Bid Documents and meets each of the above requirements as determined by the Debtors, in consultation with the ~~DIP Agent~~Consultation Parties.  The Debtors shall have the right, in consultation with the ~~DIP Agent~~Consultation Parties, to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents, *provided* that such bid (i) must include a cash component sufficient to satisfy the Bid Protections and (ii) must satisfy the Minimum Overbid Amount.  The Debtors will be authorized to approve joint bids in their reasonable discretion on a case-by-case basis, in consultation with the ~~DIP Agent~~Consultation Parties.

If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies up to one (1) business day prior to the Auction.  If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable Potential Bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Deposit Agent to return such Potential Bidder's Good Faith Deposit.  For the avoidance of doubt, the Stalking Horse Bidder shall be deemed a Qualified Bidder and the Stalking Horse Agreement shall be deemed a Qualified Bid for all purposes in connection with these Bidding Procedures, and the Stalking Horse Bidder shall, without any further action, be entitled to participate in any Auction.

Notwithstanding any other provision of these Bidding Procedures, the Debtors may, in their discretion and in consultation with the ~~DIP Agent~~Consultation Parties, evaluate bids on any grounds, including, (a) the consideration and form of consideration, set forth in the bid, (b) the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, (c) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (d) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, finality of documentation, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (e) the anticipated timing to closing and whether such timing is consistent with the Debtors' case milestones and/or adherence to any relevant budget, (f) the impact on employees and employee claims against the Debtors, (g) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, (h) the impact on trade and other creditors, (i) the tax consequences of any such bid; (j) whether the bid contemplates a Sale Transaction that would be consummated through a plan or a sale pursuant to section 363 of the Bankruptcy Code; (k) the certainty of a Qualified Bid leading to a confirmed plan; and (l) any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties and applicable bankruptcy law.  For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, among other considerations, may be grounds for the Debtors, in their discretion and in consultation with the ~~DIP Agent~~Consultation Parties, to determine that such bid (y) is not a Qualified Bid or (z) is not higher or otherwise better than any other Qualified Bid.

8

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, (d) has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bid, (e) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (f) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Stalking Horse Bidder, the Stalking Horse Agreement, or, as to any other Successful Bidder, the Asset Purchase Agreement with such Successful Bidder.  Without the written consent of the Debtors, in consultation with the ~~DIP Agent~~Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid in the Debtors' favor, during the period that such Qualified Bid is required to remain irrevocable (which, as it pertains to the Stalking Horse Bidder, shall be governed by the Stalking Horse Agreement in the event of any inconsistencies with these Bidding Procedures).

## 3.     BID PROTECTIONS

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed transaction set forth in the Stalking Horse Agreement, and the benefit that those efforts provided to all Interested Parties, the Debtors' estates, their creditors, and other parties in interest, the Debtors have agreed that, among other circumstances set forth in the Stalking Horse Agreement, if the Stalking Horse Bidder is not the Successful Bidder or the Back-Up Bidder until the Back-Up Termination Date (as defined in the Stalking Horse Agreement), the Debtors will pay to the Stalking Horse Bidder the Break-Up Fee and the Expense Reimbursement (collectively, the "**Bid Protections**"). The payment of the Break-Up Fee, which is $3% of the Purchase Price, and Expense Reimbursement, which shall not exceed $4,000,000, will be governed by the provisions of the Stalking Horse Agreement and the Bidding Procedures Order.

Other than any Bid Protections provided to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement, no bidder or other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other bidding protection in connection with the submission of a bid for the Assets.

## 4.     AUCTION

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "**Auction**") for the applicable Assets.  The Auction shall be conducted in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids.  The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, NY 10017 on **July 13, 2026 at 10:00 a.m.**, or such later time on such day, such other day, or such other place (including remotely via videoconference) as the Debtors shall notify all Participating Parties (as defined below).  If no Qualified Bids other than

9

the Stalking Horse Bid are submitted by the Bid Deadline, the Debtors shall, within two (2) business days after the Bid Deadline, cancel the Auction and seek approval of the Sale Transaction contemplated in the Stalking Horse Bid at the Sale Hearing.

Only representatives or agents of the Debtors, the DIP Agent, ~~and~~ the Qualified Bidders, ~~and~~ the Committee (including its members), and counterparties to the Debtors nonresidential real property leases (the "**Landlords**"), and the legal, financial and investment banking advisors to each of the foregoing (collectively, the "**Participating Parties**"), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction. The Debtors may, in consultation with the ~~DIP Agent~~Consultation Parties, establish a reasonable limit on the number of representatives and professional advisors that may appear on behalf of or accompany each Qualified Bidder and each Landlord at the Auction; *provided* that the Stalking Horse Bidder shall not be subject to such limitation. The Landlords and their representatives shall attend at their own expense and solely in an observational capacity, shall not participate in the bidding process, and shall be subject to the confidentiality obligations applicable to the Auction.

At least one (1) day prior to the Auction, the Debtors (either directly or through or their advisors) will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders (including the Stalking Horse Bidder) with (i) a list identifying all Qualified Bidders and their respective Qualified Bids, (ii) copies of all Qualified Bids (including any redline marked to show any revisions to the form Stalking Horse Agreement); (iii) a statement that identifies which Qualified Bid it deems the highest or otherwise best bid at the outset of the Auction (the "**Starting Bid**") and (iv) an explanation of how the Debtors value the Starting Bid (including, to the extent that the Debtors ascribe value to non-cash components, an explanation of the valuation of each such component).

The Debtors may, in consultation with the ~~DIP Agent~~Consultation Parties, employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, governing the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court entered in connection herewith, (b) be disclosed to all Qualified Bidders, and (c) apply equally to each Qualified Bidder in a round and shall not be changed within any given round of bidding.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) provides for a higher or otherwise better offer than such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in their discretion, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below); *provided* that, the Debtors, in their discretion, may determine appropriate minimum bid increments or requirements for each round of bidding. For the avoidance of doubt, in any round of bidding, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Bid Protections to be counted toward its bid in such round.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in their discretion, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer (the "**Leading Bid**").  Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in their discretion and in consultation with the ~~DIP Agent~~Consultation Parties.  In connection with each such determination, the Debtors shall provide all Qualified Bidders with an explanation of how the Debtors are valuing the bids submitted in such round.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid and after receiving an explanation from the Debtors regarding how they valued the Leading Bid (email being sufficient).  For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder (other than the Stalking Horse Bidder) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement), acceptable to the Debtors in their discretion, after consultation with the ~~DIP Agent~~Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale Transaction and pay the full consideration (including, any deferred or contingent consideration).

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid, all Subsequent Bid(s), the Leading Bid(s), the Back-Up Bid (as defined below) and the Successful Bid.  At the outset of the Auction, each Qualified Bidder will be asked to confirm that it has not engaged in any collusive conduct with respect to its participation in the Bidding Process and that it will not engage in any collusion with respect to any Subsequent Bid.

If a Qualified Bidder (other than the Stalking Horse Bidder) increases its bid at the Auction and is the Successful Bidder or Back-Up Bidder, such Qualified Bidder must increase its Good Faith Deposit to an amount equal to ten (10) percent of the proposed purchase price submitted at the Auction within two business days after the Auction.

**5.**     **SELECTION OF THE SUCCESSFUL BID AND THE BACK-UP BID**

Prior to the conclusion of the Auction, the Debtors shall in their discretion and in consultation with the ~~DIP Agent~~Consultation Parties (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction, (ii) determine and identify the highest or otherwise best offer (the "**Successful Bid**"), (iii) determine and identify the next highest or otherwise best offer (the "**Back-Up Bid**"), and (iv) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (a) the identity of the party that submitted the Successful Bid, which may be the Stalking Horse Bidder (the "**Successful Bidder**"), (b) the amount and other material terms of the Successful Bid, (c) the identity of the party that submitted the Back-Up Bid (the "**Back-Up Bidder**"), and (d) the amount and other material terms of the Back-Up Bid.  Each Qualified Bidder shall ~~agree and~~ be deemed to agree to be the Back-Up Bidder if so designated (in

11

accordance with terms of the ~~applicable definitive agreement~~<u>Stalking Horse Agreement in the event the Stalking Horse Bidder is the Back-Up Bidder)</u>.

Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

As soon as reasonably practicable after the completion of the Auction, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction contemplated by the Successful Bid.  Promptly following the selection of the Successful Bid and Back-Up Bid, the Debtors shall file a notice of the Successful Bid and Back-Up Bid on the Court's docket, together with a revised proposed order approving the Sale Transaction (the **"Sale Order"**).

## 6.    THE SALE HEARING

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") will be held on **July 15, 2026 at [●].m.**, subject to Court availability, before the Honorable Judge ~~[●]~~<u>Kyu Y. Paek</u>, in the United States Bankruptcy Court for the Southern District of New York, ~~[●]~~<u>One Bowling Green, New York, NY 10004-1408, Courtroom 610</u>, or by such other virtual or electronic means as may be determined by the Court.  The Sale Hearing may be adjourned by the Debtors by an announcement at a hearing before the Court or by filing a notice on the Court's docket.  At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid and the Back-Up Bid in the event that the Successful Bidder fails to consummate the transaction contemplated by its Successful Bid.

The Debtors' presentation to the Court of the Successful Bid and Back-Up Bid will not constitute the Debtors' acceptance of such bids, which acceptance will only occur upon approval of such bids by the Court. Following the Court's entry of the Sale Order, the Debtors and the Successful Bidder shall proceed to consummate the Sale Transaction contemplated by the Successful Bid in accordance with the terms of the applicable definitive agreement. If the Debtors and the Successful Bidder fail to consummate the proposed transaction in accordance with the terms of the applicable definitive agreement, then the Debtors shall file a notice with the Court advising of such failure. Upon the filing of such notice with the Court, the Back-Up Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate the Sale Transaction with the Back-Up Bidder, subject to the terms of the Back-Up Bid and in accordance with the terms of the applicable definitive agreement, without further order of the Court<u>, *provided*, *however*, that in the event of a Sale Transaction with the Back-Up Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period</u>. If the failure to consummate the transactions contemplated by either the Successful Bid or the Back-Up Bid is the result of a breach by the Successful Bidder or Back-Up Bidder, as applicable (the "**Breaching Bidder**"), of its definitive agreement, the Debtors reserve the right to seek all available remedies from such Breaching Bidder, subject to the terms of the applicable definitive

agreement (which shall include, as applicable to the Stalking Horse Bidder, the terms of the Stalking Horse Agreement).

## 7.   RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder until the consummation of the transaction contemplated by the Successful Bid or the Back-Up Bid, as applicable, in accordance with Section 6 above, except as otherwise ordered by the Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within two (2) business days after the entry of an order approving the Sale Transaction (which may be the Sale Order), or as soon as reasonably practicable thereafter.  At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon) and the remaining Good Faith Deposit of the Back-Up Bidder (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent three (3) business days after the consummation of the Sale Transaction contemplated by the Successful Bid, or as soon as reasonably practicable thereafter; *provided* that the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

Notwithstanding anything herein to the contrary, the terms under which the Stalking Horse Bidder provided the Deposit Amount (as defined in the Stalking Horse Agreement) and the terms of its use, release, and return to the Stalking Horse Bidder will be governed by the Stalking Horse Agreement.

## 8.   AS IS, WHERE IS

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except as specifically accepted or agreed to by the Debtors in the applicable definitive agreement, as approved by the Court.

## 9.   FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES

Except as otherwise provided for in the Stalking Horse Agreement or another Successful Bidder's definitive agreement, as applicable, all of the Debtors' right, title, and interest in and to the Assets shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, judgments, decrees, rights of setoff or recoupment, successor liability claims (whether legal or equitable), and interests thereon (collectively, the **"Encumbrances"**) to the maximum extent permitted by the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Encumbrances applied against the Assets.

13

## 10.   **RESERVATION OF RIGHTS**

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, in their discretion and in consultation with the ~~DIP Agent~~Consultation Parties, consistent with applicable bankruptcy law and all other orders entered in these Chapter 11 Cases, to:

- determine which Interested Parties are Potential Bidders;
- determine which Potential Bidders are Qualified Bidders;
- determine which bids are Qualified Bids;
- determine which Qualified Bid is the Starting Bid;
- determine which Qualified Bid is the highest or otherwise best offer for the Assets and which is the next highest or otherwise best offer;
- reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, or (c) contrary to the best interests of the Debtors and their estates;
- impose additional terms and conditions with respect to all Potential Bidders;
- cancel the Auction;
- waive the terms and conditions set forth herein with respect to Potential Bidders;
- extend the deadlines set forth herein; and
- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their discretion and in consultation with the ~~DIP Agent~~Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties; *provided*, *however*, that nothing herein shall permit the Debtors to modify the Bidding Procedures to reduce the time provided for a party in interest to file an objection.

Notwithstanding anything to the contrary herein, the Debtors may, in consultation with the ~~DIP Agent~~Consultation Parties, elect to consummate the Sale Transaction pursuant to a chapter 11 plan of reorganization or a sale pursuant to section 363 of the Bankruptcy Code.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law.  Accordingly, at any time prior to the Court's entry of a Sale Order, the Debtors may, in consultation with the ~~DIP Agent~~Consultation Parties, terminate the Bidding Process and pursue an alternative transaction, including a plan of

14

reorganization.  Notwithstanding anything in this Section 10 to the contrary, nothing herein shall limit, impair, or otherwise affect the Stalking Horse Bidder's right to enforce the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's entitlement to the Bid Protections pursuant to the Stalking Horse Agreement and the Bidding Procedures Order; *provided* that any DIP Secured Party or Prepetition Secured Party intending to submit a Credit Bid shall notify the Debtors and other Qualified Bidders of such intention no later than two (2) business days prior to the Auction.

## 11.    DIP ORDERS

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, (a) any and all rights of the DIP Agent to consent to the sale of any portion of the DIP Collateral as set forth in the DIP Loan Agreement are hereby expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures, (b) all cash proceeds generated from the sale of any DIP Collateral shall be applied in accordance with the terms and conditions of the DIP Order, the DIP Loan Documents, and any other order of the Court, as applicable, and (c) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP Order or the rights of the Debtors, the DIP Agent, or the DIP Lenders thereunder or under any of the DIP Loan Documents, including with respect to allocation of the sale proceeds of any DIP Collateral.  Further, nothing in these Bidding Procedures shall limit the right of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to submit a credit bid (a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code for the Assets (or any portion thereof) at any time.

## 12.    RELEVANT DATES

| | |
|---|---|
| **June 25, 2026** | The deadline for the Debtors to file the Potential Assumption and Assignment Notice (the "**Potential Assumption Notice Deadline**") |
| **July 2, 2026** | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order, subject to Court availability |
| **July 8, 2026 at 4:00 p.m.** | The deadline by which all binding Bids must be submitted to the Debtors by Potential Bidders (the "**Bid Deadline**") |
| **July 10, 2026 at 4:00 p.m.** | The deadline to object to the Motion and the sale of the Assets (~~including with respect to the identity of the Stalking Horse Bidder and adequate assurance of future performance by the Stalking Horse Bidder) (~~the "**Sale Objection Deadline**"), with the exception of objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder) |
| **July 10, 2026 at 4:00 p.m.** | The deadline for a Counterparty to object to its Proposed Cure Cost or the Potential Assumption and Assignment Notice (including with respect to the identity of the Stalking Horse Bidder and adequate assurance of the Stalking Horse Bidder) (the |

| | |
|---|---|
| | "**Cure Objection Deadline**"), with the exception of objections solely related to the identity of the Successful Bidder ~~and~~on the basis of adequate assurance of future performance by ~~the~~such Successful Bidder (~~in each case,~~ other than the Stalking Horse Bidder)[5] |
| **July 13, 2026 at 10:00 a.m.** | Auction (if any) to be held at the New York offices of Davis Polk (or such other location as the Debtors may designate in accordance with the Bidding Procedures) |
| **July 13, 2026** | Target date for the Debtors to file the Notice of Auction Results and, if the Successful Bidder is not the Stalking Horse Bidder, the Proposed Assumption and Assignment Notice (the "**Post-Auction Notice Deadline**") |
| **July 14, 2026 at 4:00 p.m.** | The deadline for a Counterparty to object to the ~~Proposed Assumption and Assignment Notice, if applicable~~conduct of the Auction (the "**Post-Auction Objection Deadline**") |
| **July 15, 2026** | Hearing to consider approval of the Sale Transaction and for entry of the Sale Order, subject to Court availability |
| **July 31, 2026** | Closing of the Sale Transaction (subject to obtaining required regulatory approvals) |

## 13.   CONSULTATION BY THE DEBTORS

The Debtors will consult with the ~~DIP Agent~~Consultation Parties as set forth herein and in the Bidding Procedures Order, and to the extent not explicitly required herein or in the Bidding Procedures Order, before making any material decision with respect to the Auction or the Sale Transaction.  If the DIP Agent or the Prepetition Loan Agent, as applicable, elects to participate in the Auction as a bidder, such party shall forfeit its right to consult with the Debtors as set forth in these Bidding Procedures.

---

[5] The Cure Objection Deadline shall be 14 days after the Potential Assumption Notice Deadline.

16

**<u>Exhibit 2</u>**

**Form of Sale Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma ~~(*pro hac vice* pending)~~
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION,** *et al.*, | **Case No. 26-11399 (~~[●]~~KYP)** |
| **Debtors.**[1] | ~~[Joint Administration Requested]~~**Jointly Administered** |

**NOTICE OF SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on June 12, 2026.

PLEASE TAKE FURTHER NOTICE that, on June 12, 2026, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors (the "**Assets**") to SNBR Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Assets, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for (i) the solicitation of bids in connection with the Sale Transaction and the Auction, free and clear of any and all liens, claims, interests, and encumbrances, and (ii) holding the Auction if applicable in connection therewith (the "**Bidding**

---

[1]   The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**Procedures**"),[2] (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, the Debtors' entry into the Stalking Horse Agreement, and the Assumption and Assignment Procedures. All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

**Guggenheim Securities, LLC[4]**
330 Madison Avenue
New York, NY 10017
Attn: Michael Gottlieb (Michael.Gottlieb@guggenheimpartners.com) and Stuart Erickson
(stuart.erickson@guggenheimpartners.com)

### Obtaining Additional Information

Copies of the Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[4] Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

## Important Dates and Deadlines[5]

1. **Bid Deadline**.  The deadline to submit a Qualified Bid and Required Bid Documents is **July 8, 2026 at 4:00 p.m.**[6]

2. **Sale Objection Deadline**.  The deadline to file an objection with the Court to the Sale Order or the Sale Transaction (including objections relating to the Stalking Horse Bidder) (the "**Sale Objection**") is **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**").

3. **Auction**.  In the event that the Debtors timely receive more than one Qualified Bid for the Assets in addition to the Stalking Horse Bid, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction ~~for the Assets~~therefor.  The Auction, if one is held, will commence on **July 13, 2026 at 10:00 a.m.** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017. If the Debtors hold the Auction, the Debtors will, as soon as reasonably practicable after selecting the Successful Bid and Back-Up Bid (if any), file (but not serve) and publish on the Case Website a notice of the results of the Auction (such notice, the "**Notice of Auction Results**"). ~~If a Successful Bidder at the Auction is not the Stalking Horse Bidder, objections solely related to~~ Objections related solely to (i) the conduct of the Auction must be filed with the Court no later than **July 14, 2026 at 4:00 p.m.** (the "**Post-Auction Objection Deadline**") and (ii) the identity of ~~such~~the Successful Bidder ~~and~~on the basis of adequate assurance of future performance by ~~the~~such Successful Bidder (~~the "**Post-Auction Objection**"~~other than the Stalking Horse Bidder) must be filed with the Court ~~and served on the Objection Notice Parties so as to be received by 4:00 p.m. on the date that is one calendar day after the date that the Debtors file~~no later than fourteen (14) days after the filing of the Notice of Auction Results (collectively, the "**Post-Auction ~~Objection Deadline**"Objections**"); provided that, in the event the Stalking Horse Bidder is not the Successful Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period (including, for the avoidance of doubt, any objection to the identity of the Successful bidder). The Notice of Auction Results will set forth the specific deadline and procedures for filing any ~~such~~ objections in response to the Notice of Auction Results.

4. **Sale Hearing**.  A hearing to consider the proposed Sale Transaction will be held before the Court on **July 15, 2026 at [●].m.**, or such other date as determined by the Court.

## Filing Objections

A Sale Objection or Post-Auction Objection, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) comply with the Bankruptcy Code, the

_____

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

[6] All times herein are expressed in prevailing Eastern Time.

Bankruptcy Rules, and the Local Rules, (d) be filed with the Court no later than the applicable deadline, and (e) be served on the following parties so that it is received no later than the applicable deadline: (i) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (ii) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger; (iii) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; and (v) the U.S. Trustee (the "**Objection Notice Parties**").

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely and properly raise a Sale Objection or Post-Auction Objection on or before the applicable deadline in accordance with the Bidding Procedures Order and this notice shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances, and other interests.*

## NO SUCCESSOR LIABILITY

*The assets sold in the Sale Transaction will be sold free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale Transaction, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale Transaction. Accordingly, as a result of the Sale Transaction, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in a definitive agreement reached between the Debtors and the Successful Bidder, for any liens, claims, encumbrances, and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

[*Remainder of page intentionally left blank*]

4

Dated:    [●], 2026
      New York, New York

                           DAVIS POLK & WARDWELL LLP

                           */s/ DRAFT*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma *(pro hac vice pending)*
Mordechai Rivkin

*Proposed Counsel to the Debtors
and Debtors in Possession*

**<u>Exhibit 3</u>**

**Form of Potential Assumption and Assignment Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma ~~(*pro hac vice* pending)~~
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION**, *et al.*, | **Case No. 26-11399 (~~[●]~~KYP)** |
| **Debtors.**[1] | ~~[Joint Administration Requested]~~**Jointly Administered** |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on June 12, 2026.

PLEASE TAKE FURTHER NOTICE that, on June 12, 2026, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors (the "**Assets**") to SNBR Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Assets, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for (i) the solicitation of bids in connection with the Sale Transaction and the Auction, free and clear of any and all liens, claims, interests, and encumbrances, and (ii) holding the Auction if applicable in connection therewith (the "**Bidding**

---

[1]  The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**Procedures**"),[2] (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

PLEASE TAKE FURTHER NOTICE that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, ~~and~~ the Debtors' entry into the Stalking Horse Agreement, and the Assumption and Assignment Procedures. All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

PLEASE TAKE FURTHER NOTICE that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign the Potential Assumed Contracts to the Successful Bidder. A schedule listing the Potential Assumed Contracts (the "**Potential Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com. In addition, the "**Proposed Cure Costs**," if any, necessary for the assumption and assignment of the Potential Assumed Contracts are set forth on the Potential Assumed Contracts Schedule. *Each Proposed Cure Cost listed on the Potential Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, the Successful Bidder may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become a Designated Contract), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the Potential Assumed Contracts Schedule, as applicable, by providing to the Debtors written notice of its election to exclude or include such contract or lease, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction (if any), the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time before the closing of the Sale Transaction, modify the previously stated Proposed Cure Costs associated with any Proposed Assumed Contract in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Proposed Cure Cost is modified will receive notice of such modification and an opportunity to file an objection in accordance with the Assumption and Assignment Procedures.

**The assumption and assignment of the Contracts and Leases on the Potential Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Potential Assumed Contracts Schedule and Proposed Assumed Contracts Schedule. The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Proposed Cure Costs with respect thereto on the Potential Assumed Contracts Schedule shall not constitute, nor be deemed to be, a determination or admission by the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable), or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.**

## Obtaining Additional Information

Copies of the Bidding Procedures Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, objections to the potential assumption and assignment of an Assumed Contract or Assumed Lease, the Debtors' Proposed Cure Costs, if any, or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance (any such objection, an "**Assumption and Assignment Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Cost that the Counterparty believes is required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) **be filed no later than July 10, 2026 at 4:00 p.m.[4] (the "Cure Objection Deadline")**, and (e) be served on the following parties so that it is received no later than the Cure Objection Deadline: (i) proposed counsel to the Debtors, Davis

---

[4] All times herein are expressed in prevailing Eastern Time.

3

Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (ii) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger; (iii) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; and (v) the U.S. Trustee (the "**Objection Notice Parties**").

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to a contract or lease who fails to timely make an Assumption and Assignment Objection* ~~or Post-Auction Objection~~ *before the* ~~applicable~~Cure Objection *Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order~~,~~ and this notice shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Proposed Cure Costs (if any), set forth on a Potential Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Proposed Cure Costs set forth on a Potential Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code* ~~arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.~~*as more specifically provided for in the Sale Order.*

## Other Important Dates and Deadlines[5]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections ~~or the Post-Auction Objections~~, note the following important dates and deadlines:

1. **Sale Objection Deadline**. The deadline to file an objection with the Court to the Sale Order or the Sale Transaction (including objections relating to the Stalking Horse Bidder) (the "**Sale Objection**") is **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**").

2. **Auction**. In the event that the Debtors timely receive more than one Qualified Bid for the Assets in addition to the Stalking Horse Bid, and subject to the satisfaction of any further

---

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

4

conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction therefor.  The Auction, if one is held, will commence on **July 13, 2026 at 10:00 a.m.** at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017. If the Debtors hold the Auction, the Debtors will, as soon as reasonably practicable after selecting the Successful Bid(s), file (but not serve) and publish on the Case Website a notice of the results of the Auction (such notice, the "**Notice of Auction Results**"). ~~If a Successful Bidder at the Auction is not the Stalking Horse Bidder, objections solely related to the identity of such Successful Bidder(s) and adequate assurance of future performance by the Successful Bidder (the "**Post-Auction Objection**") must be filed with the Court and served on the Objection Notice Parties so as to be received by 4:00 p.m. on the date that is one calendar day after the date that the Debtors file the Notice of Auction Results (the "**Post-Auction Objection Deadline**").~~ The Notice of Auction Results will set forth the specific deadline and procedures for filing any ~~such~~ objections in response to the Notice of Auction Results.

3. **Sale Hearing**.  A hearing to consider the proposed Sale Transaction will be held before the Court on **July 15, 2026 at [●].m.**, or such other date as determined by the Court.

*[Remainder of page intentionally left blank]*

5

Dated:    [●], 2026
          New York, New York

                                    DAVIS POLK & WARDWELL LLP

                                    */s/ DRAFT*
                                    450 Lexington Avenue
                                    New York, NY 10017
                                    Tel.: (212) 450-4000
                                    Brian M. Resnick
                                    Angela M. Libby
                                    Stephen D. Piraino
                                    Richard J. Steinberg
                                    Sihui (Sophy) Ma ~~(pro hac vice pending)~~
                                    Mordechai Rivkin

                                    *Proposed Counsel to the Debtors
                                    and Debtors in Possession*

6

**Exhibit 4**

**Form of Proposed Assumption and Assignment Notice**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma (*pro hac vice* pending)
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION**, *et al.*, | **Case No. 26-11399 ([•]KYP)** |
| **Debtors.**[1] | [Joint Administration Requested]Jointly Administered |

**NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY**
**CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") on June 12, 2026.

PLEASE TAKE FURTHER NOTICE that, on June 12, 2026, in connection with the proposed sale (the "**Sale Transaction**") of substantially all of the assets of the Debtors (the "**Assets**") to SNBR Inc. (the "**Stalking Horse Bidder**") or any other successful bidder (a "**Successful Bidder**") subject to an auction process (the "**Auction**"), if any, for the Assets, the Debtors filed a motion (the "**Motion**") with the Court seeking entry of an order, among other things, approving (a) procedures for (i) the solicitation of bids in connection with the Sale Transaction and the Auction, free and clear of any and all liens, claims, interests, and encumbrances, and (ii) holding the Auction if applicable in connection therewith (the "**Bidding**

---

[1]   The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**Procedures**"),[2] (b) payment of the Bid Protections to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Stalking Horse Agreement, (c) the form and manner of notice related to the Sale Transaction, and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale Transaction (the "**Assumption and Assignment Procedures**").

PLEASE TAKE FURTHER NOTICE that, on [●], 2026, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, ~~and~~ the Debtors' entry into the Stalking Horse Agreement, and the Assumption and Assignment Procedures. All parties interested in bidding should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

PLEASE TAKE FURTHER NOTICE that, on July 13, 2026 at 10:00 a.m., the Debtors held an Auction at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017.

PLEASE TAKE FURTHER NOTICE that, upon the closing of the Sale Transaction, the Debtors intend to assume and assign the Proposed Assumed Contracts to the Successful Bidder. A schedule listing the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**") is attached hereto and may also be accessed free of charge on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com. In addition, the "**Proposed Cure Costs**," if any, necessary for the assumption and assignment of the Proposed Assumed Contracts are set forth on the Proposed Assumed Contracts Schedule. *Each Proposed Cure Cost listed on the Proposed Assumed Contracts Schedule represents all liabilities of any nature of the Debtors arising under an Assumed Contract or Assumed Lease prior to the closing of the Sale Transaction, or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A PROPOSED ASSUMED CONTRACT. Under the terms of the Assumption and Assignment Procedures, (a) at or prior to the closing of the Sale Transaction, the Successful Bidder may elect, in its sole and absolute discretion, (i) to exclude any contract or lease on the Proposed Assumed Contracts Schedule as an Assumed Contract or Assumed Lease, as applicable (in which case it shall become a Designated Contract), or (ii) to include on the Proposed Assumed Contracts Schedule any contract or lease listed on the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

Potential Assumption and Assignment Notice, by providing to the Debtors written notice of its election to exclude or include such contract or lease, as applicable, (b) if the Debtors or any Successful Bidder identify during the pendency of the Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, and (c) following the Auction, the Debtors may, in accordance with the applicable purchase agreement, or as otherwise agreed by the Debtors and the Successful Bidder, at any time before the closing of the Sale Transaction, modify the previously stated Proposed Cure Costs associated with any Proposed Assumed Contract in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures further provide that any Counterparty whose previously-stated Proposed Cure Cost is modified will receive notice of such modification and an opportunity to file an objection in accordance with the Assumption and Assignment Procedures. **The assumption and assignment of the Contracts and Leases on the Proposed Assumed Contracts Schedule is not guaranteed and is subject to approval by the Court and the Debtors' or Successful Bidder's right to remove an Assumed Contract or Assumed Lease from the Proposed Assumed Contracts Schedule.**

## Obtaining Additional Information

Copies of the Bidding Procedures Motion and the Bidding Procedures Order, as well as all related exhibits (including the Stalking Horse Agreement and the Bidding Procedures) and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://restructuring.ra.kroll.com/Sleepnumber or can be requested by email at SleepNumberInfo@ra.kroll.com.

## Filing Assumption and Assignment Objections

Pursuant to the Assumption and Assignment Procedures, if the Successful Bidder is not the Stalking Horse Bidder, objections related solely to (i) the Debtors' Proposed Cure Costs, if ~~any, or as to~~the previously stated Proposed Cure Cost on the Potential Assumption and Assignment Notice has been modified, or (ii) the identity of the Successful Bidder ~~or~~, including on the basis of adequate assurance of future performance by ~~the~~such Successful Bidder (~~in each case,~~ other than the Stalking Horse Bidder) (any such objection, an "**Assumption and Assignment Objection**") must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs that the Counterparty believes is required to cure any alleged defaults under the relevant Assumed Contract or Assumed Lease, (d) ~~(1) for objections relating to the identity of the Successful Bidder or on the basis of adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder),~~ be filed no later than ~~4:00 p.m. on the date that is one calendar day after the date that the Debtors file the Notice of Auction Results (the "Post-Auction Objection Deadline") and (2) for objections relating to Proposed Cure Costs, by no later than~~ fourteen (14) calendar days from the date of service of the Proposed Assumption and

3

Assignment Notice, or the Notice of Auction Results, as applicable, and (e) be served on the following parties so that it is received no later than the applicable deadline: (i) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (ii) counsel to the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger; (iii) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; and (v) the U.S. Trustee (the "**Objection Notice Parties**").

Pursuant to the Assumption and Assignment Procedures, any Counterparty to a Contract or Lease that (a) is included in the Proposed Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) calendar days after the filing of the Proposed Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts or (ii) the Proposed Cure Cost, in each case, as contemplated by and set forth in the Assumption and Assignment Procedures.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any Counterparty to a contract or lease who fails to timely make an Assumption and Assignment Objection before the applicable deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order, and this notice shall be deemed to have consented to the assumption and assignment of such contract or lease, including the Proposed Cure Costs (if any), set forth on a Proposed Assumed Contracts Schedule, and shall be forever barred from asserting any objection or claims against the Debtors, the Successful Bidder, or the property of any such parties relating to the assumption and assignment of such contract or lease, including asserting additional Cure Costs with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Proposed Cure Costs set forth on a Proposed Assumed Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code* ~~*arising out of or related to any events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent, or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale Transaction or other applicable date upon which such assumption and assignment will become effective.*~~*as more specifically provided for in the Sale Order.*

**<u>Other Important Dates and Deadlines</u>**[4]

In addition to the dates and deadlines described above with respect to filing Assumption and Assignment Objections, note the following important dates and deadlines:

1. **Sale Hearing**.  A hearing to consider the proposed Sale Transaction will be held before the Court on **July 15, 2026 at [●].m.**, or such other date as determined by the Court.

*[Remainder of page intentionally left blank]*

---

[4]  The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

5

Dated:    [●], 2026
          New York, New York

                                        DAVIS POLK & WARDWELL LLP

                                        */s/ DRAFT*
                                        450 Lexington Avenue
                                        New York, NY 10017
                                        Tel.: (212) 450-4000
                                        Brian M. Resnick
                                        Angela M. Libby
                                        Stephen D. Piraino
                                        Richard J. Steinberg
                                        Sihui (Sophy) Ma ~~*(pro hac vice* pending)~~
                                        Mordechai Rivkin

                                        *Proposed Counsel to the Debtors*
                                        *and Debtors in Possession*