DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |
| | **Re: ECF No. 17** |

### NOTICE OF PROPOSED ORDER (I) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

   **PLEASE TAKE NOTICE** that, on June 12, 2026 (the "**Petition Date**"), the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") commenced cases (collectively, the "**Chapter 11 Cases**") by filing petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

   **PLEASE TAKE FURTHER NOTICE** that, on the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling*

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

*an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17] (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a proposed *Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* (the "**Proposed Stalking Horse Sale Order**").

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Proposed Stalking Horse Sale Order, and any other document filed publicly in the Chapter 11 Cases are accessible, free of charge, at the Debtors' case website located at https://restructuring.ra.kroll.com/SleepNumber.

[*Remainder of page intentionally left blank*]

Dated:   July 1, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP


/s/ Brian M. Resnick
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in
Possession*

3

**Exhibit A**

**Proposed Stalking Horse Sale Order**

**DRAFT**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SLEEP NUMBER CORPORATION, *et al.*, | Case No. 26-11399 (KYP) |
| Debtors.[1] | Jointly Administered |

### ORDER (I) APPROVING SALE OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Sale Order**") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"):

---

[1]  The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Agreement, as applicable. For the avoidance of doubt, the "Motion" as referred to herein refers to the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17], which, in addition to requesting the relief granted in the Bidding Procedures Order, is deemed to have served as the motion requesting the relief granted in this Sale Order pursuant to Section I of the Sale Guidelines. Accordingly, the Debtors shall not be required to file a separate motion seeking approval or authorization, as applicable, of the relief granted in this Sale Order, and the notice of the Motion is hereby deemed good and sufficient notice and was appropriate under the circumstances.

(i)      authorizing and approving the sale of the "**Transferred Assets**" (as defined in the Agreement and referred to herein as the "**Assets**") to SNBR Inc. ("**Purchaser**") pursuant to that certain Asset Purchase Agreement, dated as of June 12, 2026 (attached to the Motion as Exhibit B, as amended from time to time, including all schedules and exhibits thereto, the "**Agreement**"), free and clear of all liens, claims, encumbrances, and interests to the fullest extent permitted by law and except for "Permitted Liens" and "Assumed Liabilities" (each solely as defined in the Agreement and set forth in the schedules thereto);

(ii)     authorizing the assumption and assignment of the Proposed Assumed Contracts; and

(iii)    granting certain related relief;

and this Court having entered an order on [●], 2026 [ECF No. [●]] (the "**Bidding Procedures Order**") approving the Bidding Procedures in connection with the Sale of the Assets and attached as Exhibit 1 to the Bidding Procedures Order (the "**Bidding Procedures**"), including, among other things, the proposed form of notice of the Sale Hearing; and the Debtors having determined after an extensive marketing and sale process [and the Auction held on [●], 2026]/[and the Debtors having received no Qualified Bids (other than the Purchaser's) by the Bid Deadline], that the Purchaser has submitted the highest or otherwise best bid to purchase the Assets; and the Debtors having selected the Purchaser as the Successful Bidder in accordance with the Bidding Procedures; and upon due, adequate, and sufficient notice of the Motion, the Agreement, and all other related transactions contemplated thereunder and in this Sale Order, including the assumption and assignment of the Proposed Assumed Contracts to the Purchaser (such transactions collectively, the "**Sale**"); and upon the Declaration of Michael Gottlieb in Support of the Motion (the "**Gottlieb Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided to the Sale Notice Parties, and it appearing that no other

3

or further notice need be provided; and the Court having reviewed and considered the Motion, the Gottlieb Declaration, the Agreement, and all relief related thereto [and any objections or other responses thereto]; and the Court having held a hearing to consider the relief requested in the Motion (the "**Sale Hearing**"); [and there being no objections to the requested relief;] and, after due deliberation, the Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested is in the best interests of the Debtors, their estates, creditors and all parties in interest,

THE COURT HEREBY FINDS THAT:[3]

I. **Jurisdiction, Final Order, and Statutory Predicates.**

A. This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). This Court may enter a final order with respect to the Motion, the Sale, and all related relief. Venue of the Chapter 11 Cases and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014, and Local Rule 6004-1 and 6006-1.

---

[3] These findings and determinations constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

**II.    Notice.**

C.    As further evidenced by the affidavit of service previously filed with the Court [ECF No. [●]], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Proposed Assumed Contracts to be assumed and assigned to the Purchaser pursuant to this Sale Order, the cure payments proposed in respect of each Proposed Assumed Contract (each, a "**Cure Cost**"), and all deadlines related thereto, has been provided to all interested parties and entities, including the Sale Notice Parties, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The aforementioned notices were and are timely, proper, sufficient, appropriate, fair and equitable under the particular circumstances, and reasonably calculated to provide the Sale Notice Parties and all other interested parties with timely and proper notice under the circumstances of the Chapter 11 Cases.  With respect to Persons whose identities are not reasonably ascertainable by the Debtors, publication of notice of the Sale in the *Wall Street Journal* as evidenced by [      ],[4] was sufficient and reasonably calculated under the circumstances to reach such Persons.  No other or further notice with respect to such matters is, or shall be, required.

D.    A reasonable opportunity to object and be heard with respect to the Sale, the Motion, and the relief requested therein, including the assumption and assignment of the Proposed Assumed Contracts to the Purchaser, has been afforded to all interested parties.

E.    The disclosures made by the Debtors concerning the Motion, the Agreement, the Bidding Procedures, [the Auction] and the Sale Hearing were good, complete and adequate.

---

[4] [NTD:  Add docket cite of publication notice.]

III.    **Business Justification.**

F.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for entering into the Agreement, which provides for, among other things, the sale of the Assets to the Purchaser. The Debtors have, among other things, determined in their business judgment that, under current circumstances, the benefits of consummating the Sale on the terms and conditions embodied in the Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

IV.    **Sale in Best Interests.**

G.      Approval of the Agreement, the Sale, and all related transactions at this time, and the actions to be taken by the Debtors and the Purchaser, are appropriate under the circumstances of the Chapter 11 Cases and are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. The Debtors have demonstrated good, sufficient and sound business reasons and justifications for the Debtors' performance of their obligations under the Agreement, including consummation of the Sale.

V.     **Good Faith of Purchaser and Debtors.**

H.      The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n). The Purchaser has not acted in a collusive manner with any Person, and the purchase price was not controlled by any agreement among bidders, all of whom acted in good faith, at arm's length, and in a noncollusive manner. The Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Among other things (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) the Purchaser complied with the provisions of the Bidding Procedures Order; (iii)

6

the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order in accordance with the terms of the Bidding Procedures; (iv) all payments to be made by the Purchaser, and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; and (v) no common identity of directors or controlling stockholders exists between the Purchaser, on the one hand, and the Debtors, on the other hand.  The Purchaser is purchasing the Assets in good faith and for fair and reasonable consideration, and the Purchaser is a good-faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code).  The Purchaser is therefore entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law.  The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale, and the Purchaser would not consummate the Sale without such protections.

**VI.    Compliance with Bidding Procedures Order; Highest and Best Offer**

I.    As demonstrated by the Gottlieb Declaration, the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have adequately marketed the Assets (including the Debtors' stalking horse marketing process) and conducted the sale process in compliance with the Bidding Procedures and the Bidding Procedures Order, and the sale process was conducted in a noncollusive, fair, and good-faith manner.  The Debtors have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Assets and to make higher or better offers, in each case, in accordance with the Bidding Procedures.  The Auction was duly noticed [and as of the Bid Deadline, no higher or otherwise better offers for the Assets have been made,] and a reasonable opportunity has been given to any interested party to make a higher or otherwise

7

better offer for the Assets. In accordance with the Bidding Procedures Order, the bid submitted by the Purchaser and memorialized by the Agreement was deemed a Qualified Bid and the Purchaser was a Qualified Bidder eligible to participate at the Auction. In accordance with the Bidding Procedures and the Bidding Procedures Order, the Debtors determined that the bid submitted by the Purchaser and memorialized by the Agreement maximizes value for the benefit of the Debtors' estates and constitutes the highest and best offer for the Assets and a valid and sound exercise of the Debtors' business judgment and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order. The Agreement provides fair and reasonable terms for the purchase of the Assets.

## VII. Corporate Authority.

J.     Each applicable Debtor (i) has full requisite corporate or other organizational power and authority to execute, deliver, and perform the Agreement or the Related Documents, and to consummate the Sale contemplated thereby, and such execution, delivery, and performance have been duly and validly authorized by all necessary corporate or other organizational action of each applicable Debtor, and (ii) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of the Agreement and the Related Documents and the consummation by the Debtors of the Sale contemplated thereby, including as required by their respective organizational documents, and, upon execution thereof, each such agreement executed by such Debtor will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid and binding obligation of such Debtor. No government, regulatory, or other consents or approvals, other than those expressly provided for in the Agreement, are required for the execution, delivery, and performance by the Debtors of the Agreement or for the consummation

8

of the Sale contemplated thereby, or to take, or cause to be taken, all such other actions, as may be reasonably necessary to effectuate or evidence the Sale contemplated by the Agreement.

**VIII.   No Merger; Purchaser Not an Insider; No Successor Liability.**

K.      The Purchaser is not a "successor" to, a mere continuation of, or alter ego of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a successor to or a continuation of the Debtors or their estates.  The Purchaser is not a successor to any of the Debtors or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, succession, merger, or de facto merger of the Purchaser and the Debtors. Immediately prior to the Closing Date (as defined in the Agreement), the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Debtors and the Purchaser.  The transfer of the Assets to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser, except as otherwise explicitly set forth in the Agreement, does not, and will not, subject the Purchaser to any liability whatsoever, with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing (including liabilities based on the Debtors' pre-closing ratings by governmental or quasi-governmental agencies or authorities) or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental, revenue, pension, the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), tax, labor (including the Worker Adjustment and Retraining Notification Act of 1988 (the "**WARN Act**") and state law equivalents), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of

9

enterprise, mere continuation, product line, or products liability or law, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "**Successor or Other Liabilities**"). Pursuant to the Agreement, the Purchaser shall have no liability for the Excluded Liabilities.

**IX.    Binding and Valid Transfer.**

L.    The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear, to the fullest extent permitted by law, of all Interests (as defined below) (other than the Permitted Liens and Assumed Liabilities), as set forth in the Agreement. Immediately prior to consummating the Sale, the Assets constitute property of the Debtors' estates, good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and the Debtors are the sole and rightful owners of the Assets. Upon and following the consummation of the Sale, the Purchaser shall be vested with good and marketable title to the Assets and shall be the sole and rightful owner of the Assets.

M.    The Agreement and the Related Documents (as defined in the Agreement) are valid and binding contracts between the Debtors and the Purchaser. The Agreement and the Related Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction. As demonstrated by the Gottlieb Declaration, the consideration provided by the Purchaser in respect of the Sale (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for the Debtors' creditors more expeditiously than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code

10

and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). Neither the Debtors nor the Purchaser is entering into the Sale contemplated by the Agreement fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

**X.      Section 363(f) Is Satisfied.**

N.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Interest in the Assets; therefore, the Debtors may sell the Assets free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities).

O.      The Purchaser will not consummate the transactions contemplated by the Agreement unless this Court expressly orders that none of the Purchaser, any of the Purchaser's affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests (other than the Permitted Liens and Assumed Liabilities), including rights or claims based on any Successor or Other Liabilities.  The total consideration to be provided under the Agreement reflects the Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Assets free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities) of any kind or nature whatsoever (including any potential Successor or Other Liabilities).

11

P.      Not transferring the Assets free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities), including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

Q.      The Debtors may sell the Assets free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests that did not timely object to the Sale or the Motion, or withdrew objections to the Sale or the Motion, are deemed to have consented to the Sale and the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.  All Interests (except to the extent that such encumbrances are Permitted Liens and Assumed Liabilities) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  All holders of Interests are adequately protected by having their Interests, if any, in each instance against the Debtors, their estates, or any of the Assets attach to the net cash proceeds of the Sale ultimately attributable to the Assets in which such holder alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interest had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## XI.      Cure Costs and Adequate Assurance of Future Performance.

R.      The assumption and assignment of the Proposed Assumed Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable

exercise of sound and prudent business judgment by the Debtors. The assumption and assignment of the Proposed Assumed Contracts (i) is necessary to sell the Assets to the Purchaser, (ii) allows the Debtors to maximize the value of the Assets, including the Proposed Assumed Contracts, (iii) limits the losses suffered by the counterparties to the Proposed Assumed Contracts (the "**Counterparties**"), and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Proposed Assumed Contracts. For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Proposed Assumed Contracts and such assumption and/or assignment is in the best interests of the Debtors' estates.

S.      Pursuant to section 365(f) of the Bankruptcy Code, each Proposed Assumed Contract to be assumed and assigned or assigned, as applicable, under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in such contract prohibiting its assignment or transfer. No section of any of the Proposed Assumed Contracts that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Proposed Assumed Contracts in connection with the Sale shall have any force or effect.

T.      Subject to the terms of the Agreement, the Debtors or the Purchaser, as the case may be, have cured any default under any Proposed Assumed Contract with respect to any act or omission that occurred prior to the Closing Date. The Purchaser's promises to pay the Cure Costs upon the Closing Date and perform the obligations under the Proposed Assumed Contracts thereafter shall constitute adequate assurance of their future performance of and under the Proposed Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. Pursuant to the Bidding Procedures Order, all Counterparties that failed to file

13

with the Court and serve on the Objection Notice Parties a timely Assumption and Assignment Objection were forever barred from asserting any such objection with regard to the assumption or assignment of its Proposed Assumed Contract and Assumed Leases.  The Court finds that with respect to all such Proposed Assumed Contracts, the payment of Cure Costs is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the applicable Debtor to the Purchaser of each of the Proposed Assumed Contracts.  To the extent any Proposed Assumed Contract is not an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Sale Order that are applicable to the Assets.

**XII.   Not a Sub Rosa Plan.**

U.      The Sale does not constitute a sub rosa chapter 11 plan for which approval has been sought without the protection that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of any Debtor's creditors nor impermissibly dictates the terms of a chapter 11 plan for any Debtor.

**XIII.   Consumer Privacy Provisions.**

V.      The sale of personally identifiable information contemplated in the Agreement, if any, is consistent with the Debtors' privacy policies and satisfies the requirements of section 363(b)(1)(A) of the Bankruptcy Code.

**XIV.   Necessity of Order.**

W.      The Purchaser would not have entered into the Agreement and would not consummate the Sale without all of the relief provided for in this Sale Order.  The consummation of the Sale pursuant to this Sale Order and the Agreement is necessary for the Debtors to maximize

the value of their estates and make cash distributions to creditors as swiftly as possible for the benefit of the Debtors, their estates and creditors, and all other parties in interest.

## XV.   Compelling Circumstances for an Immediate Sale.

X.      The Debtors' decision to enter into the Agreement and to consummate the Sale represents an exercise of sound business judgment.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Agreement, (ii) compelling circumstances for the immediate approval and consummation of the Sale contemplated by the Agreement and the Related Documents outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that the prompt consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and to expedite cash distributions to creditors and (iii) any other transaction, including pursuant to a chapter 11 plan, would not have yielded as favorable an economic result.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transaction contemplated by this Sale Order.

## XVI.  Final Order.

Y.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

15

**THE COURT HEREBY ORDERS THAT:**

**I.      General Provisions.**

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.      The Motion and the relief requested therein is granted and approved, and the transactions contemplated in the Motion, the Agreement and the Related Documents are approved, in each case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

3.      All objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Agreement, each Related Document, the Sale, the entry of this Sale Order, or the relief granted herein, including any objections to Cure Costs or the assumption and/or assignment of any of the Proposed Assumed Contracts, that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof, as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, are hereby denied and overruled on the merits with prejudice.  Those parties who did not timely object to the Motion or the entry of this Sale Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code. [Nothing in this Sale Order, including any deemed consent under section 363(f)(2), shall waive, impair, or modify the rights of the DIP Secured Parties or Prepetition

16

Secured Parties to receive sale proceeds in accordance with the DIP Orders or the DIP Loan Documents.][5]

4.    The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

**II.    Approval of the Agreement.**

5.    The Agreement and the Related Documents, including, in each case, any amendments, supplements, and modifications thereto, and all of the terms and conditions thereof, are hereby approved.

6.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of this Sale Order, the Agreement and the Related Documents, and (ii) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Agreement or the Related Documents, including the assumption and assignment to the Purchaser of the Proposed Assumed Contracts and including any actions that otherwise would require further approval by the Counterparties, shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, the Related Documents and the Sale.

---

[5] [Subject to ongoing review.]

7.      The Agreement, the Related Documents, and this Sale Order shall be binding in all respects (without posting any bond) upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, any holders of Liens (as defined below) or other Interests against, in, or on all or any portion of the Assets, all Counterparties to any executory contract or unexpired lease of the Debtors (including all Counterparties), all agencies (including those that assess liability on entities based on ratings), the Purchaser, and all successors and assigns of each of the foregoing, including any trustee, examiner, or receiver subsequently appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code or any successor cases, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

**III.     Transfer of the Assets.**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Assets, including the Proposed Assumed Contracts, to the Purchaser in accordance with the terms of the Agreement. The transfer of the Assets to the Purchaser in accordance with the terms of the Agreement will (i) be a legal, valid, binding, enforceable, and effective sale and transfer of the Assets and the Assumed Liabilities and (ii) render the Purchaser fully liable for any and all Assumed Liabilities, and assumption of any Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and shall divest the Debtors of all liability with respect to any Assumed Liabilities. Any and all valid and perfected Interests in the Assets shall attach solely to the gross proceeds of the Sale with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Assets, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

9.      The transfer of each of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest to the Assets free and clear of all (i) liens (meaning, with respect to any asset, any mortgage, lien (statutory or otherwise), deed of trust, hypothecation, pledge, security interests or similar interests, conditional sale or other title retention agreement or encumbrance of any kind in respect of such asset, whether or not filed, recorded or otherwise perfected under applicable Law (including any conditional sale or other title retention agreement and any lien arising under the Bankruptcy Code, including within the meaning of Section 101(37) of the Bankruptcy Code), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, known or unknown) relating to, accruing, or arising any time prior to the Closing Date (collectively, the "**Liens**"), and (ii) debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, conditional sale or other title retention agreements and other similar impositions, restrictions on transfer or use, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, reclamation right, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or

19

equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including rights with respect to Claims (as defined below) and liens (A) that purport to give to any party a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) (collectively, as defined in this clause (ii), the "**Claims**," and together with the Liens and any other interests of any kind or nature whatsoever (including rights or claims based on any Successor or Other Liabilities), the "**Interests**"), relating to, accruing, or arising any time prior to entry of this Sale Order, with the exception of the Permitted Liens and Assumed Liabilities.

10.     Except as expressly assumed by the Purchaser under the Agreement as an Assumed Liability, the transfer of the Assets to the Purchaser and the assignment to the Purchaser of the Proposed Assumed Contracts will not subject the Purchaser to any liability whatsoever relating to any period prior to the Closing Date, whether arising before or after such Closing Date, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities.

11.     Each and every federal, state, local, and other governmental agency, governmental department, filing agent, filing officer, title agent, recording agency, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law,

the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the Agreement.  Neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents in order to effectuate, consummate, and implement the provisions of this Sale Order.  The Purchaser may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Debtors is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.

12.    On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any, in the Assets, as such Liens may otherwise exist; *provided, however*, that nothing herein shall affect the attachment of the DIP Liens, Adequate Protection Liens, and Prepetition Liens to the gross proceeds of the Sale as set forth herein, subject in all respects to the DIP Orders. If any Person that has filed a financing statement, mortgage, mechanic's lien, *lis penden*s, or other statement, document, or agreement evidencing an Interest in any portion of the Assets (other than statements or documents with respect to Permitted Liens and Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such

21

Person has in the Assets, then (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Assets, (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature in the Assets, and (iii) the Purchaser may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has in the Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

13. The Debtors and the Purchaser shall have no obligation to proceed with the Closing until all conditions precedent to its obligations to proceed have been met, satisfied or waived in accordance with the terms of the Agreement.

14. Unless the Purchaser otherwise consents, all Persons that are in or come into possession of any portion of the Assets, at any time prior to the Closing Date, are hereby directed to surrender possession of such Assets to the Purchaser on the Closing Date, or at such time thereafter as the Purchaser may request. Subject to the terms of this Sale Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

15. This Sale Order is and shall be binding upon and govern the acts of all Persons (including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments,

secretaries of state, federal, state, and local officials, and all other persons or entities) who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the transactions contemplated by the Agreement and this Sale Order.

16.     To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations or approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Agreement, including the Sale and the assumption and assignment of the Proposed Assumed Contracts. To the extent any license or permit necessary for the operation of the business of the Debtors is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code or otherwise transferable to the Purchaser, the Purchaser may apply for and obtain any necessary license or permit promptly and the Debtors are hereby authorized to cooperate with the Purchaser in connection with any such application as the Purchaser deems reasonably necessary or desirable, pursuant to the provisions of the Agreement.

17.     Notwithstanding anything to the contrary herein, as of or following the Closing Date, as applicable, the Purchaser shall assume and pay, discharge, perform or otherwise satisfy the Assumed Liabilities, subject to the terms of the Agreement.

**IV.     Assumption and Assignment of Proposed Assumed Contracts.**

18.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the applicable Debtors' assumption and assignment, to the Purchaser, and the Purchaser's acceptance of, the Proposed Assumed Contracts, on the terms set forth in the Agreement, is hereby approved, and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code with respect thereto are hereby found and deemed to be satisfied.

19.     With respect to the Proposed Assumed Contracts, and with respect to the Sale of the Assets to the Purchaser, the Debtors are hereby authorized and, unless the Debtors and the Purchaser otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective upon the Closing Date, the Proposed Assumed Contracts free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities) and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Proposed Assumed Contracts to the Purchaser.

20.     To the extent any provision in any Proposed Assumed Contract assumed and assigned pursuant to this Sale Order or any subsequent order during the Designation Rights Period (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment or assignment (including any "change of control" provision), or allows the Counterparty to such Proposed Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such

24

Proposed Assumed Contract, or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (A) the commencement of the Chapter 11 Cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of the Chapter 11 Cases, (C) the Debtors' assumption and/or assignment of such Proposed Assumed Contract, (D) a change of control or similar occurrence, or (E) the consummation of the Sale, then such provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment or assignment, to modify, terminate, or declare a breach or default under such Proposed Assumed Contract, or to exercise any other default-related rights or remedies with respect thereto.  With respect to the Sale of the Assets to the Purchaser, all such provisions constitute unenforceable anti-assignment or ipso facto provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code, and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Proposed Assumed Contracts after such assumption and assignment to the Purchaser, except as provided in the Agreement.

21.      All defaults or other obligations of the Debtors under the Proposed Assumed Contracts arising or accruing prior to the Closing Date, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Proposed Assumed Contracts, shall be cured by the Purchaser solely to the extent set forth in the Agreement and this Sale Order, and the payment of such Cure Costs shall be in full and final satisfaction of any and all defaults and obligations under the Proposed Assumed Contracts arising prior to the Closing Date, including any non-monetary defaults, which non-monetary defaults shall be deemed cured upon the Closing without any further obligation of the Purchaser.

25

22.      Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Proposed Assumed Contract, and each Proposed Assumed Contract shall be fully enforceable by the Purchaser in accordance with its respective terms and conditions, except as limited or modified by this Sale Order and subject to any amendments or modifications agreed to between a Counterparty and the Purchaser.  To the extent provided in the Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

23.      Upon payment of the Cure Costs pursuant to the terms hereof and the Agreement, and the Debtors' assignment of the Proposed Assumed Contracts to the Purchaser under the provisions of this Sale Order, no default or other obligations arising prior to the Closing Date shall exist under any Proposed Assumed Contract, and each Counterparty is forever barred, estopped, and permanently enjoined from (i) declaring a default by the Debtors or the Purchaser under such Proposed Assumed Contract based on acts or occurrences arising prior to or existing as of the Closing Date, (ii) raising or asserting against the Debtors or the Purchaser, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Proposed Assumed Contracts, or (iii) taking any other action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Proposed Assumed Contract.  Except with respect to the Assumed Liabilities, each Counterparty hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, and (ii) imposing or charging against

26

the Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to the Purchaser of the Proposed Assumed Contracts.

24.    Subject to the terms and conditions of the Agreement, and upon the Closing Date, the Purchaser shall have: (i) to the extent necessary, cured or provided adequate assurance of cure of, any default existing prior to the date hereof under the Proposed Assumed Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Proposed Assumed Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The Purchaser's obligations to pay the Cure Costs under the Agreement and the Purchaser's agreement to perform the obligations under the Proposed Assumed Contracts in accordance with the terms of the Agreement shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties. [Notwithstanding anything to the contrary herein or in the Agreement, upon assumption of an Assumed Lease, the Purchaser shall be liable for all accrued, but unbilled and not yet due to be paid or performed, obligations under any such Assumed Lease (if any) for rent, common area maintenance charges, taxes, year-end or periodic adjustments, reconciliation charges, percentage rent, indemnity obligations, repair and maintenance obligations, and other monetary and non-monetary obligations under the Assumed Lease, as and when such obligations become due or are required to be performed in the ordinary course after the Closing Date (the "**Surviving Obligations**").]

25.     To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of a Proposed Assumed Contract is deemed to have consented to such assumption and assignment or assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Proposed Assumed Contract in accordance with the Bidding Procedures Order, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Proposed Assumed Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

26.     Prior to the Closing Date, the Debtors shall file a Proposed Assumption and Assignment Notice with the Court (and properly serve it on all relevant Counterparties), which shall include a schedule of Contracts or Leases that were designated as of such date by the Purchaser, in its sole discretion, as Proposed Assumed Contracts. Subject to paragraph [36], the assumption and assignment to the Purchaser of any Contract or Lease designated as a Proposed Assumed Contract in the Proposed Assumption and Assignment Notice shall be deemed effective upon Closing pursuant to this Sale Order.

27.     During the Designation Rights Period, the Purchaser may, in its sole discretion, designate any Designated Contract for either (i) assumption and assignment to the Purchaser, or (ii) rejection, in each case by providing the Debtors with a Purchaser Designation Notice; provided that the Purchaser shall provide the Debtors with a Purchaser Designation Notice in respect of any such Contract or Lease at least seven (7) Business Days prior to the expiration of the Designation Rights Period. Each Purchaser Designation Notice for a Designated Contract that is to be assumed and assigned to the Purchaser shall include the Proposed Cure Cost associated with such Designated Contract. Within three (3) Business Days of the Debtors' receipt of a Purchaser

28

Designation Notice, the Debtors shall file a Designation Rights Period Assumption and Assignment Notice with the Court, and properly serve it on all relevant Counterparties, which notice shall, if applicable, include the Proposed Cure Cost and relevant objection deadline(s), if any, for each Designated Contract included therein. In the event that the Proposed Cure Cost for a Designated Contract in any Designation Rights Period Assumption and Assignment Notice is consistent with the Proposed Cure Cost in the Potential Assumption and Assignment Notice, or the relevant Counterparty has consented to any deviation therefrom, the Debtors shall submit an assumption and assignment order for entry by the Court under certification of counsel providing an effective date of assumption and assignment as of the date of entry of the order or as otherwise agreed by the parties in the consensual order. If the Proposed Cure Cost has changed from the Potential Assumption and Assignment Notice and has not been agreed to by the relevant Counterparty, or the Counterparty to the Designated Contract has not previously received notice of the potential assumption and assignment of their Contract or Lease, the Counterparty to such Designated Contract shall have fourteen (14) days from the date of the filing of the Designation Rights Period Assumption and Assignment Notice to object to the Proposed Cure Cost and, if no timely objection is filed, the Debtors shall submit an assumption and assignment order for entry by the Court under certification of counsel providing an effective date of assumption and assignment as of the date of entry of the order or as otherwise agreed by the parties in the consensual order.

28.     Within three (3) Business Days of the Debtors' receipt of a Purchaser Designation Notice, the Debtors shall, with respect to any Contract or Lease designated in a Purchaser Designation Notice to be rejected, file a Designation Rights Period Rejection Notice with the Court (and properly serve it on all relevant Counterparties), which rejection shall be immediately

29

effective without further order of the Court. Any Contract or Lease that is not designated for assumption and assignment or rejection before the expiration of the Designation Rights Period shall be deemed rejected, effective upon the expiration of the Designation Rights Period, without the need for any further order of the Court.

29.     During the Designation Rights Period, the Purchaser may deliver a written notice to the Debtors of the Purchaser's entry into an agreement with the Counterparty to any Contract or Lease listed on a Potential Assumption and Assignment Notice pursuant to which such Counterparty consents to the assumption and assignment to the Purchaser or its designee of such Contract or Lease on the terms set forth in such agreement. The assumption and assignment of any such Contract or Lease shall be effective on the date set forth in the written notice provided to the Debtors without further order of the Court. For the avoidance of doubt, the Purchaser may negotiate such assumption and assignment directly with the Contract or Lease Counterparty.

30.     The Purchaser shall be responsible for any and all liabilities of the Debtors under Designated Contracts in each case that are incurred and come due and payable during the Designation Rights Period through the effective date of (i) any such Designated Contract's assumption and assignment to the Purchaser, (ii) rejection by the Debtors, or (iii) deemed rejection, in each case, in accordance with the Agreement. For the avoidance of doubt, the Purchaser shall pay all such liabilities on a current basis as and when they come due and payable.

31.     During the Designation Rights Period, the Debtors shall use commercially reasonable efforts to provide unrestricted access to all properties governed by any Designated Contract that is a Real Property Lease to allow the Purchaser to operate the Business during the period from and after the Closing Date through the effective date of the applicable assumption and

30

assignment of the Real Property Lease to the Purchaser or rejection in accordance with the Agreement.

32.     From the date of the entry of the Sale Order, the Debtors shall not settle an objection to the assignment of a Proposed Assumed Contract listed on the Proposed Assumption and Assignment Notice or a Designated Contract, including as to Cure Costs, without the express prior written consent of the Purchaser (e-mail consent being sufficient). In the event any such objection is unresolved prior to the expiration of the Designation Rights Period, the Debtors may elect not to assume and assign the Proposed Assumed Contract and designate such Contract or Lease for rejection.

33.     With regard to any Designated Contract that is the subject of a timely-filed objection, the parties will cooperate in good faith to resolve such objections. If the Debtors, the Purchaser and the applicable Counterparty to such Designated Contract are unable to resolve such objection prior to the expiration of the Designation Rights Period, the Debtors shall schedule the matter for a hearing on no less than five (5) Business Days' notice; provided, that, any such hearing shall occur no later than the Confirmation Hearing. Upon entry of an order of the Court determining any Cure Costs and authorizing the assumption and assignment to the Purchaser of any Designated Contract, which order shall be in a form and substance reasonably acceptable to the Purchaser, the Purchaser shall have the option to either (i) designate such Designated Contract for assumption and assignment to the Purchaser, or (ii) designate such Designated Contract for rejection.

34.     Any Counterparty to a Proposed Assumed Contract that may be assumed and assigned to the Purchaser who has not timely filed and served an objection shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Proposed

31

Assumed Contract.  To the extent a Counterparty failed to timely object to the Cure Costs for any Proposed Assumed Contract in accordance with the Bidding Procedures, such Cure Costs shall be deemed to be finally determined and any such Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

35.     The assumption and assignment of (i) a Contract included on the Proposed Assumption and Assignment Notice for which (A) no objection was timely made or (B) an objection was timely made but resolved prior to entry of this Sale Order shall, in each case, be effective upon entry of this Sale Order and (ii) a Designated Contract shall be effective without further order of the Court (x) immediately, upon the filing of the Designation Rights Period Assumption and Assignment Notice, or (y) upon expiration of the applicable objection deadline set forth in the Designation Rights Period Assumption and Assignment Notice unless the Counterparty to such Designated Contract timely serves an objection upon the Purchaser and the Seller that relates to adequate assurance of future performance or a cure cost issue that could not have been raised in an objection to any Assumption/Rejection Notice prior to the Sale Hearing.

36.     Notwithstanding anything to the contrary herein, no Contract or Lease as to which a Counterparty timely files and serves an objection shall be considered a Proposed Assumed Contract under this Sale Order unless and until any timely objection to the assumption and assignment of such Contract or Lease has been resolved or overruled in accordance with the procedures set forth in the Bidding Procedures Order.

37.     If, at any time during the Designation Rights Period, the Purchaser identifies any executory contract or unexpired lease of the Debtors that was inadvertently omitted from the Potential Assumption and Assignment Notice (each, a "**Previously Omitted Contract**"), the Purchaser may, by written notice to the Debtors, designate such Previously Omitted Contract for

32

assumption and assignment to the Purchaser. Within three (3) Business Days of the Debtors' receipt of such notice, the Debtors shall file and serve upon the applicable Counterparty a notice (a "**Previously Omitted Contract Notice**") identifying the Previously Omitted Contract, the proposed Cure Cost, and the deadline by which the Counterparty must file any objection to the assumption and assignment of such Previously Omitted Contract or the proposed Cure Cost. The Counterparty to any Previously Omitted Contract shall have fourteen (14) days from the date of service of the Previously Omitted Contract Notice to file and serve any objection to the proposed assumption and assignment or the proposed Cure Cost. If no timely objection is filed, the Previously Omitted Contract shall be deemed a Proposed Assumed Contract for all purposes under this Sale Order and the Agreement, and the Debtors shall submit an assumption and assignment order for entry by the Court under certification of counsel. If a timely objection is filed, the procedures set forth in this Sale Order shall apply, mutatis mutandis, to the resolution of such objection. For the avoidance of doubt, the Purchaser's failure to designate any contract or lease as a Previously Omitted Contract shall not prejudice the Purchaser's rights under the Designation Rights Period provisions of this Sale Order.

38.     The requirements of Bankruptcy Rule 6006(f)(6) are hereby waived, for cause shown, with respect to the Motion and the relief requested therein.

39.     Upon and as of the Closing Date, the Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Proposed Assumed Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Proposed Assumed Contracts.

40.     The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, any instruments, applications, consents, or other documents

33

that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Assets. The Debtors shall take all actions reasonably required to assume and assign the Proposed Assumed Contracts to the Purchaser, including taking all actions reasonably necessary following the Closing Date, to facilitate any negotiations with the Counterparties to such Contracts.

41.     Nothing in this Sale Order, the Motion, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Purchaser that any contract is an executory contract or must be assumed and assigned pursuant to the Agreement or in order to consummate the Sale.

**V.      No Successor Liability; Prohibition of Actions Against the Purchaser.**

42.     The Purchaser is not a "successor" to, continuation of, or alter ego of, any of the Debtors or their estates by reason of any theory of law or equity.  Except with respect to the Permitted Liens, Assumed Liabilities, and Surviving Obligations, the Purchaser shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates, or any of the Debtors' predecessors or affiliates with respect to the Assets or otherwise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement, the Purchaser shall not be liable for any Interests against, or with respect to, the Debtors, their estates, or any of the Debtors' predecessors, or affiliates, including any Successor or Other Liabilities.  Neither the purchase of the Assets by the Purchaser nor the fact that the Purchaser is using any of the Assets previously operated by the Debtors will cause the Purchaser to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtors or the Debtors' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto

34

merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, or transferee liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes, arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the Assets or ratings experience of the Debtors prior to the Closing Date, in each case other than the Permitted Liens, Assumed Liabilities, and Surviving Obligations.

43.     Except with respect to Permitted Liens, Assumed Liabilities, Surviving Obligations, and to the extent otherwise specifically agreed in the Agreement, the Purchaser shall not have any liability, responsibility, or obligation for any Interests of the Debtors or their estates, including any claims, liabilities, or other obligations related to the Assets, including, for the avoidance of doubt, and without limiting the generality of the foregoing, any Successor or Other Liabilities, which may become due or owing (i) prior to the Closing Date or (ii) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date.

35

44.     Except with respect to Permitted Liens, Assumed Liabilities, or as otherwise specifically set forth in the Agreement, all Persons (including all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors, employees), and other holders of Interests against or in any of the Debtors or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, known or unknown, contingent or noncontingent, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Assets to the Purchaser (including any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against the Purchaser, any of the Purchaser's affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Assets, the Interests of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Assets, including the following actions: (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against the Purchaser, the Purchaser's affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or

36

properties, including the Assets; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, any of the Purchaser's affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Assets; (iii) creating, perfecting, or enforcing any Interest against the Purchaser, any of the Purchaser's affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Assets; (iv) asserting any setoff, or right of subrogation, of any kind against any obligation due the Purchaser, any of its affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect shareholders (including, for the avoidance of doubt, any Sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Assets; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) to the extent prohibited by Section 525 of the Bankruptcy Code, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

45.    Except as provided in the Agreement and without limiting other applicable provisions of this Sale Order, the Purchaser is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or

37

otherwise) in any way whatsoever relating to or arising from the Debtors, the Assets, or the Debtors' operation of their businesses or use of the Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including Successor or Other Liabilities, or any liabilities calculable by reference to the Debtors or their assets or operations (including by reference to the Debtors' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Debtors' predecessors or affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to Successor or Other Liability).

## VI.    Use of Sale Proceeds

46.    [As set forth in the DIP Loan Agreement, upon consummation of the Sale, and prior to the distribution of any sale proceeds to the DIP Lenders, a Reserve (as defined in the DIP Loan Agreement) shall be established in connection with the prosecution and continuation of the Chapter 11 Cases.] The Reserve shall be established in an aggregate amount not to exceed $[•], agreed to in writing by the Administrative Agent (with the consent of the Required DIP Lenders) under the terms of the DIP Orders and DIP Loan Agreement. The DIP Secured Parties and Prepetition Secured Parties shall have no direct obligation to fund the Reserve beyond the agreed capped amount, and no shortfall shall be charged against the DIP Collateral. Any amounts remaining in the Reserve after payment in full of the [budgeted] obligations shall be (i) if prior to payment in full of all DIP Obligations, turned over promptly to the DIP Agent for application in accordance with the DIP Orders and the DIP Loan Documents or (ii) following payment in full of all DIP Obligations, distributed in accordance with an Acceptable Plan (as defined in the DIP Loan Agreement).

47.    Any Sale Transaction Fee[6] due to Guggenheim Securities as a result of the consummation of the Sale Transaction shall be segregated and escrowed in the Reserve (for the exclusive benefit of Guggenheim Securities) from the proceeds of the Sale Transaction, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders, prior to any other use or distribution of such proceeds.  To the extent the Sale Transaction does not result in cash proceeds sufficient to pay the corresponding Sale Transaction Fee due to Guggenheim Securities in full, then any resulting unpaid portion of the Sale Transaction Fee due to Guggenheim Securities shall be segregated and escrowed in the Reserve (for the exclusive benefit of Guggenheim Securities) as of the Closing from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders; provided, that, in no event shall the Purchaser or any of its affiliates have any obligation to make any payment to Guggenheim Securities in respect of the Sale Transaction. For the avoidance of doubt, the Sale Transaction Fee shall only be funded once pursuant to this Sale Order.  For the further avoidance of doubt, nothing in this Sale Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Guggenheim Securities or the assertion or allowance of an administrative priority claim under section 503(b)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Guggenheim Securities.

---

[6] Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain engagement letter between Guggenheim Securities and the Debtors, dated as of February 23, 2026, copy of which is attached as Exhibit B to the *Debtors' Application for Entry of an Order (I) Authorizing the Debtors to Retain and Employ Guggenheim Securities, LLC as Investment Banker Effective as of the Petition Date, (II) Modifying Certain Timekeeping Requirements, and (III) Granting Related Relief* [ECF No. 132].

48. Once the Reserve has been established and funded, the Debtors shall use the sale proceeds to satisfy the outstanding DIP Obligations in accordance with Section 2.11 of the DIP Loan Agreement.

49. The Adjustment Escrow Amount pursuant to Section 2.10 of the Agreement is funded solely by Purchaser and is not property of the Debtors' estates under section 541 of the Bankruptcy Code, is not a proceed of the sale of any DIP Collateral, and is not subject to any lien, claim, or interest of the DIP Agent, the DIP Lenders, or any other creditor of the Debtors. Any release of funds from the Adjustment Escrow Account to Purchaser pursuant to the Agreement and the Adjustment Escrow Agreement shall be made without further order of this Court, and no party shall take any action to interfere with or delay such release. Notwithstanding the foregoing, immediately upon the release of any portion or all of the Adjustment Escrow Amount to the Debtors (or any successor entity established under an Acceptable Plan (as defined in the DIP Loan Agreement)) pursuant to Section 2.10 of the Agreement and the Adjustment Escrow Agreement, such released funds shall (i) constitute property of the Debtors' estates and proceeds of the sale of DIP Collateral (if applicable) and Prepetition Collateral, and (ii) be subject to the valid, binding, enforceable, non-avoidable, and automatically perfected DIP Liens (if applicable), Adequate Protection Liens, and Prepetition Liens with the same priority, validity, force, and effect such liens had against the Assets, in each case, without the necessity of any further action, filing, or order of this Court, consistent with the DIP Orders and the DIP Loan Documents. Nothing in this paragraph, including the provision that no party shall interfere with or delay a release of funds, shall limit, impair, waive, or modify any right or remedy of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under the DIP Orders or the DIP Loan Documents, including their

liens on, and right to receive, proceeds and Debtor-side releases of any portion or all of the Adjustment Escrow Amount.

**VII.    Other Provisions.**

50.    The consideration provided by the Purchaser to the Debtors pursuant to the Agreement for the Assets is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration, including under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, the District of Columbia, or any foreign jurisdiction.  Such consideration constitutes the highest and best offer received by the Debtors for the Assets, and no other entity or group of entities has offered to purchase the Assets for an amount that would provide greater economic value to the Debtors' estates than the Purchaser.

51.    The transactions contemplated by the Agreement and this Sale Order are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the validity of the Sale (including the assumption, assignment, and/or transfer of the Proposed Assumed Contracts), unless such authorization and consummation of the Sale are duly stayed pending such appeal.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  As a good-faith purchaser of the Assets, the Purchaser has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors

41

nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

52. Notwithstanding anything to the contrary herein, the Agreement or the Motion, the Sale shall not be exempt from taxes under section 1146(a) under the Bankruptcy Code. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated under the Agreement.

53. For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtors and Purchaser are authorized and empowered to close the Sale immediately upon entry of this Sale Order.

54. The failure to include or specifically reference any particular provision of the Agreement or any Related Document in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement and the Related Documents be authorized and approved in their entirety. All of the provisions of this Sale Order, the Agreement, and the Related Documents are non-severable and mutually dependent.

55. Unless otherwise provided herein, to the extent that there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Motion, the Agreement or any Related Document, the Bidding Procedures Order, or any other prior order or pleading in the Chapter 11 Cases, on the other hand, the terms of this Sale Order shall control and govern[; *provided, however*, to the extent of any inconsistency between this Sale Order and the DIP Orders, the DIP Orders shall control, and nothing herein shall modify, impair, or supersede the DIP Orders

or DIP Loan Documents.][7] To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in the Chapter 11 Cases or any subsequent chapter 7 case into which the Chapter 11 Cases may be converted, conflicts with or derogates from the terms of the Agreement or Related Document or this Sale Order, the terms of the Agreement or any Related Document and this Sale Order shall control and govern to the extent of any such conflict or derogation.

56.    The Agreement may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of the Court, so long as any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates and does not otherwise conflict with this Sale Order; *provided*, *however*, that any modification, amendment, or supplement of the Agreement (including any waiver by the Debtors of any provision thereunder) that is adverse to the DIP Lenders and Prepetition Lenders, as reasonably determined by the Administrative Agent, shall require the prior consent of the Administrative Agent and, with respect to materially adverse changes, the Required DIP Lenders.

57.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Agreement and allow the Purchaser to take any and all actions permitted under the Agreement and the Related Documents.

58.    From time to time, as and when requested by the other, the Debtors and the Purchaser, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other

---

[7] [Subject to ongoing review.]

actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Purchaser its right, title and interest in and to the Assets and the Proposed Assumed Contracts, subject to the provisions of the Agreement.

59.     Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases, any order confirming any such plan, or any other order entered in the Chapter 11 Cases shall alter, conflict with, supersede, abrogate, nullify, restrict, or otherwise derogate from the provisions of the Agreement or this Sale Order, or in any way prevent or interfere with the consummation or performance of the transactions contemplated hereby. To the extent of any conflict, the terms of this Sale Order and the Agreement shall control.

60.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Agreement, the Related Documents, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including retaining jurisdiction to (i) compel delivery of the Assets to the Purchaser, (ii) interpret, implement, and enforce the provisions of this Sale Order, including the injunctions and limitations of liability set forth in this Sale Order, (iii) decide any disputes concerning this Sale Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Sale Order including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Assets and any Proposed Assumed Contracts or Assigned Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Interests (other than the Permitted Liens and Assumed Liabilities), and (iv) enter any orders

under sections 105, 363, and 365 of the Bankruptcy Code with respect to the Assets and the Proposed Assumed Contracts. Such jurisdiction shall, for the avoidance of doubt, continue notwithstanding that the sale of the Assets may be consummated after the confirmation date of any plan of reorganization of any of the Debtors.

**DRAFT**

## EXHIBIT B

**Stalking Horse Agreement**