**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES FOR SALE OF THE DEBTORS'
ASSETS, (B) APPROVING THE DESIGNATION OF SNBR INC., AN AFFILIATE OF
SLEEP COUNTRY CANADA, INC., AS THE STALKING HORSE BIDDER FOR THE
ASSETS, (C) AUTHORIZING AND APPROVING ENTRY INTO THE STALKING
HORSE ASSET PURCHASE AGREEMENT, (D) APPROVING BID PROTECTIONS,
(E) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF
THE DEBTORS' ASSETS, (F) APPROVING THE FORM AND MANNER OF NOTICES
OF SALE, AUCTION, AND SALE HEARING, AND (G) APPROVING THE
ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED
RELIEF**

Upon the motion (the "**Motion**")[2] of Sleep Number Corporation and its direct and indirect

subsidiaries (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in

the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an order, pursuant to

sections 105(a), 363, and 365 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006, and 9007, Local Rules 6004-1 and 6006-1, and the Court's Sale Guidelines, (a) approving

Bidding Procedures for the sale of the Assets, (b) approving designation of SNBR Inc. as the

Stalking Horse Bidder for the Assets, (c) authorizing and approving entry into the Asset Purchase

Agreement, dated as of June 12, 2026, by and among the Debtors and SNBR Inc. (as amended by

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows:
Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc.
(4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address
is 1001 Third Avenue South, Minneapolis, MN 55404.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

that certain Amendment No. 1 to the Asset Purchase Agreement, dated as of July 2, 2026, by and among the Debtors and SNBR Inc., filed at ECF No. 166 (the "**Stalking Horse Agreement**"), (d) approving the Bid Protections, (e) scheduling an Auction for, and a hearing to approve, the sale of the Assets, (f) approving the form and manner of notices of sale, auction, and Sale Hearing, (g) approving the Assumption and Assignment Procedures, and (h) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157; and due and proper notice of the Motion having been provided to the Notice Parties, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the First Day Declaration, and the Gottlieb Declaration; and the Court having considered the relief requested in the Motion, including at any hearing thereon; and the Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration, and the Gottlieb Declaration establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion represents a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and all objections and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled with prejudice (except as otherwise provided herein); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Debtors' proposed notice of the Motion (including any hearing thereon), the Bidding Procedures, and the proposed entry of the Bidding Procedures Order are (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities, including the Notice Parties.

C.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable, and appropriate, and are designed to maximize recoveries from a sale of the Assets.

D.      The Bidding Procedures were negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder, and the Stalking Horse Agreement was negotiated in good faith and at arm's length among the Debtors and the Stalking Horse Bidder. The Stalking Horse Agreement represents the highest or otherwise best offer that the Debtors have received to date to purchase the Assets. The process for selection of the Stalking Horse Bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates and their stakeholders.

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bidding Procedures Order and, thereby, (i) approve the Bidding Procedures, (ii) approve the designation of the Stalking Horse Bidder, (iii) authorize and approve entry into the Stalking Horse Agreement, (iv) approve the Bid Protections under the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, (v) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines as set forth in the Bidding Procedures, (vi) approve the Noticing Procedures and the forms of notice, and (vii) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion and the Gottlieb Declaration and on the record at any hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bid Protections, as approved by this Bidding Procedures Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders and represent a prudent exercise of the Debtors' sound business judgment.

G.      If triggered in accordance with the terms of the Stalking Horse Agreement, the payment of the Bid Protections, under this Bidding Procedures Order and upon the terms and conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code and shall constitute an allowed administrative expense claim against the Debtors, on a joint and several basis, and (ii) reasonably tailored to facilitate, rather than hinder, bidding for the Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and encouraging the participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors would receive the highest and best possible price for the Assets.

The Bid Protections are, accordingly, (a) of substantial benefit to the Debtors' estates, their stakeholders, and all parties in interest, (b) reasonable and appropriate, (c) a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Assets, and (d) reasonable in relation to the Stalking Horse Bidder's efforts, the magnitude and complexity of the Sale Transaction, and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing a Sale Transaction. Without the Bid Protections, the Stalking Horse Bidder is unwilling to be bound under the Stalking Horse Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures and the Stalking Horse Agreement).

H.      The Stalking Horse Bidder is a third-party purchaser and is unrelated to any of the Debtors. Neither the Stalking Horse Bidder, nor any of its affiliates, subsidiaries, officers, directors, members, partners, or principals, nor any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

I.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Bidding Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

J.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2**, the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3** and the Proposed Assumption and Assignment Notice attached hereto as **Exhibit 4**) are reasonably calculated to provide (i) all interested parties with timely and proper notice of the sale of the Assets

and the Successful Bid(s) and (ii) each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with proper notice of (A) the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts to the Successful Bidder (or the Stalking Horse Bidder, as applicable) or any of their known proposed assignees (if different from the Successful Bidder) and (B) the requirement that each such Counterparty assert any objection to the notices by the applicable deadlines or otherwise, in each case, be barred from asserting claims arising from events occurring prior to the effective date of the assumption and assignment of such Proposed Assumed Contracts or any later applicable effective date following assumption and assignment of such Proposed Assumed Contracts.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     Any objections to or reservations of rights regarding the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits with prejudice (except as otherwise provided herein).

2.     The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Bidding Procedures Order and the Debtors are authorized to act in accordance therewith. The failure to specifically include a reference to any particular provision of the Bidding Procedures in the Motion or this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision.

3.     The Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is deemed a Qualified Bid. In the event that no other Qualified Bids are submitted, the Debtors shall deem the Stalking Horse Bidder to be the Successful Bidder, in accordance with the terms and conditions of this Order (including the Bidding Procedures) and the Stalking Horse Agreement.

4.      The Debtors are hereby authorized to enter into the Stalking Horse Agreement, and the Stalking Horse Agreement, and all other ancillary documents and all terms and conditions thereof, are hereby approved, subject to the terms and conditions of this Bidding Procedures Order (including the Bidding Procedures) and the entry of the Sale Order.

5.      Nothing herein shall prejudice the rights of the Debtors to seek, by separate motion, in the exercise of their sound business judgment and fiduciary duties, the authority to sell assets of the Debtors' estates pursuant to section 363 of the Bankruptcy Code subject to the terms of the Stalking Horse Agreement.

6.      <u>Bid Deadline</u>.  As further described in the Bidding Procedures and in accordance therewith, the Bid Deadline shall be at **July 8, 2026 at 4:00 p.m.**[3]

7.      <u>Auction</u>.  In the event that the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 on **July 13, 2026 at 10:00 a.m.** or such later time on such day, such other day, or such other place (including remotely via teleconference) as the Debtors shall notify all Participating Parties.  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

8.      If no Qualified Bids other than the Stalking Horse Bid are submitted by the Bid Deadline, the Debtors shall, within two (2) business days after the Bid Deadline, cancel the Auction and seek approval of the Sale Transaction contemplated in the Stalking Horse Bid at the Sale Hearing.

---

[3] All times herein are expressed in prevailing Eastern Time.

9.      Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

10.      The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

11.      As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall cause the Sale Notice to be served (by email if available or otherwise by first class mail) upon the following parties (or counsel thereto):  (i) the U.S. Trustee; (ii) counsel to the DIP Agent; (iii) counsel to the Stalking Horse Bidder; (iv) counsel to any statutory committee appointed in the Chapter 11 Cases; (v) Counterparties to Contracts and Leases; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; (ix) the state attorneys general for states in which the Debtors conduct business; (x) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (xi) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Assets; (xii) all other known parties with any interest in the Assets; and (xiii) any other party that is identified on Sleep Number's master service list,[4] is entitled to notice under rule 9013-1(c) of the Local Rule, or has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Sale Notice Parties**"); provided that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, either an email or physical address as of the entry of the Bidding Procedures Order; provided, further, that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that

---

[4] Accessible by visiting https://restructuring.ra.kroll.com/Sleepnumber.

is returned as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence.  The Debtors will also cause the Sale Notice to be published once in the national edition of the *Wall Street Journal* or another publication with similar national circulation as soon as practicable following entry of the Bidding Procedures Order and will post the Sale Notice and the Bidding Procedures Order on the Debtors' case information website located at https://restructuring.ra.kroll.com/Sleepnumber (the "**Case Information Website**").

12.   Service of the Sale Notice on the Sale Notice Parties in the manner described in this Bidding Procedures Order constitutes good and sufficient notice of the Auction, the Sale Hearing, and the Sale Objection Deadline.  No other or further notice is required.

13.   Promptly after the conclusion of the Auction (if any) and the selection of the Successful Bid and Alternate Bid (if any), the Debtors shall file with the Court and post on the Case Information Website a notice identifying such Successful Bid and Alternate Bid.

14.   Sale Objections.  Objections to the Sale Transaction other than objections related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder)) must (i) be in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state, with specificity, the legal and factual bases thereof, (iv) be filed with the Court no later than **July 10, 2026 at 4:00 p.m.** (the "**Sale Objection Deadline**"), and (v) be served on the following parties so that they are received by such parties by the Sale Objection Deadline: (A) proposed counsel to the Debtors, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Brian M. Resnick, Angela M. Libby, Richard J. Steinberg, and Mordechai Rivkin; (B) counsel to

the DIP Agent, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 S. 7th Street, Minneapolis, MN 55402, Attn: Michael R. Stewart and Adam C. Ballinger; (C) counsel to the Stalking Horse Bidder, Goodwin Procter LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018, Attn: Kizzy Jarashow, Joshua Zachariah, Harrison Freeman, and Benjamin Loveland; (D) counsel to any statutory committee appointed in the Chapter 11 Cases; and (E) the U.S. Trustee (collectively, the "**Objection Notice Parties**").

15.    <u>Post-Auction Objections</u>. Objections related solely to (i) the conduct of the Auction must be filed with the Court no later than **July 14, 2026 at 4:00 p.m.** (the "**Post-Auction Objection Deadline**") and (ii) the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder) must be filed with the Court no later than fourteen (14) days after the filing of the Notice of Auction Results; <u>provided that</u>, in the event the Stalking Horse Bidder is not the Successful Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period (including, for the avoidance of doubt, any objection to the identity of the Successful bidder). Each objection must (a) be in writing, (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be served on the Objection Notice Parties and the Successful Bidder so that they are received by such parties by the applicable objection deadline.

16.    <u>Sale Hearing</u>.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, Courtroom 610, on **July 15, 2026 at 10:00 a.m.** (the "**Sale Hearing**"), subject to Court availability,

or such other date and time that the Court may later direct; <u>provided</u> that the Sale Hearing may be adjourned by the announcement at a hearing before the Court or by filing a notice on the Court's docket.

17.     As soon as reasonably practicable after the completion of the Auction or following the cancellation of the Auction if there are no Qualified Bids other than the Stalking Horse Bid submitted by the Bid Deadline, the Debtors shall file a final form of proposed Sale Order as agreed upon between the Debtors and the Successful Bidder.

18.     <u>Bid Protections</u>.  Pursuant to sections 105, 363 and 503 of the Bankruptcy Code, the Debtors are hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Bidding Procedures and the Stalking Horse Agreement without further order of this Court. The dollar amounts of the Break-Up Fee and Expense Reimbursement are hereby approved. The Stalking Horse Bidder shall be entitled to receive the Bid Protections in accordance with the terms and conditions of the Stalking Horse Agreement and the Bidding Procedures without further action or order of the Court. Upon entry of this Bidding Procedures Order, the Break-Up Fee and Expense Reimbursement shall each constitute an allowed administrative expense claim against the Debtors, on a joint and several basis, pursuant to section 503(b) of the Bankruptcy Code. Any Qualified Bid shall, at a minimum, include a cash component sufficient to satisfy the Bid Protections.

19.     The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Stalking Horse Agreement, dismissal or conversion of these Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation.

20.     The Stalking Horse Bidder shall be entitled, but not obligated, to credit bid the full amount of the Bid Protections as part of any subsequent bid at the Auction, which credit bid amount shall be deemed the equivalent of cash consideration for all purposes of bid evaluation.

21.     <u>Assumption and Assignment Procedures</u>.   The assumption and assignment procedures set forth herein (the "**Assumption and Assignment Procedures**") are hereby approved.

22.     <u>Potential Assumption and Assignment Notice</u>.  On the Potential Assumption Notice Deadline, the Debtors shall have filed the Potential Assumption and Assignment Notice with the Court (other than any Contracts or Leases that have been previously rejected or are subject to a pending motion to reject in the Chapter 11 Cases) and shall serve the Potential Assumption and Assignment Notice on counsel to Counterparties to Potential Assumed Contracts, if known, which shall (i) include a list of the Potential Assumed Contracts, (ii) include a list of the Debtors' good faith calculation of the Cure Costs with respect to the Contracts identified on the Potential Assumption and Assignment Notice, which shall include (x) all prepetition arrears, *plus* (y) a good faith estimate of all unpaid post-petition amounts accrued under an Assumed Contract or Assumed Lease from the Petition Date through the anticipated date of assumption and assignment of such Assumed Contract or Assumed Lease (the "**Proposed Cure Costs**"), (iii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (iv) prominently display the deadline to file a Cure Objection (as defined below), and (v) prominently display the date, time, and location of the Sale Hearing.  Upon request by the affected Counterparties, adequate assurance information for the Stalking Horse Bidder shall be provided to affected Counterparties to Potential Assumed Contracts at the notice address identified in the Potential Assumed Contracts (and upon counsel of record via email, if known) at

the same time as the Potential Assumption and Assignment Notice.  The Debtors shall update the Potential Assumption and Assignment Notice from time to time, but no less frequently than once per month, in the event that they (i) identify additional Contracts that were not previously included in the initial Potential Assumption and Assignment Notice, or (ii) determine that a Proposed Cure Cost for any Potential Contract should be modified.

23. _Proposed Assumption and Assignment Notice_. If the Successful Bidder is not the Stalking Horse Bidder, on the Post-Auction Notice Deadline, in conjunction with the filing of the Notice of Auction Results, the Debtors shall also file the Proposed Assumption and Assignment Notice, which shall (i) include a schedule of the Proposed Assumed Contracts (the "**Proposed Assumed Contracts Schedule**"), (ii) expressly state that assumption or assignment of an Assumed Contract or Assumed Lease is not guaranteed and is subject to Court approval, (iii) prominently display the deadline to file a Post-Auction Assumption Objection (as defined below), and (iv) prominently display the date, time, and location of the Sale Hearing; provided that, any non-residential real property lease on the Proposed Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period. If the Stalking Horse Bidder is the Successful Bidder, within three (3) Business Days prior to the Closing Date, the Debtors shall file a Proposed Assumption and Assignment Notice which shall be effective as of the Closing Date pursuant to the Sale Order.

24. _Designation Rights Period Assumption and Assignment/Rejection Notices_. During the period following the Closing Date until the earlier of (i) no less than fourteen (14) days prior to the date on which a hearing is held before the Court on confirmation of a plan of reorganization or liquidation in the Chapter 11 Cases (the "**Confirmation Hearing**"), or (ii) the date that is sixty

(60) days after the Closing Date (the "**Designation Rights Period**"), the Purchaser may, in its sole discretion, designate any Contract or Lease not otherwise assumed and assigned to the Purchaser at Closing pursuant to the Sale Order or previously rejected in the Chapter 11 Cases (each, a "**Designated Contract**") for either (x) assumption and assignment to the Purchaser, or (y) rejection, in each case, by providing written notice to the Debtors (a "**Purchaser Designation Notice**"); provided that, the Purchaser shall provide the Debtors with a Purchaser Designation Notice in respect of any Designated Contract at least seven (7) Business Days prior to the expiration of the Designation Rights Period. Each Purchaser Designation Notice for a Designated Contract that is to be assumed and assigned to the Purchaser shall include the Proposed Cure Cost associated with such Designated Contract. Within three (3) Business Days of the Debtors' receipt of a Purchaser Designation Notice, the Debtors shall  file with the Court and serve on counsel to affected Counterparties to such Designated Contracts (i) a supplemental assumption notice (each, a "**Designation Rights Period Assumption and Assignment Notice**"), which shall include the updated Proposed Assumed Contracts Schedule and associated Proposed Cure Costs and/or (ii) a rejection notice (the "**Designation Rights Rejection Notice**" and, together with the Potential Assumption and Assignment Notice, the Proposed Assumption and Assignment Notice and the Designation Rights Period Assumption and Assignment Notice(s), the **"Assumption/Rejection Notices"**), as applicable, which shall include a schedule of the Designated Contracts to be rejected. Each notice shall prominently display the deadline to file a Designation Rights Period Notice Objection (as defined below).  With respect to any non-residential real property lease that is a Designated Contract, the applicable Assumption/Rejection Notices shall include the applicable store number, store address, landlord entity name, tenant debtor entity, and proposed assignee, and be accompanied by a proposed form of assumption and assignment or rejection order.  Upon

request by the affected Counterparties, current adequate assurance information for the Successful Bidder shall be provided to the affected Counterparties by the Debtors at the same time as the Designation Rights Period Assumption and Assignment Notice.  The expiration of the Designation Rights Period may be extended as to any Contract or Lease with the consent of the Debtors and the Successful Bidder (or the Stalking Horse Bidder, as applicable) and, to the extent that the deadline to assume or reject real property Leases under 11 U.S.C. § 365(d)(4) would expire during such extension period, with the consent of the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable) and the applicable Counterparty to such real property Lease. Purchaser shall be responsible for any and all liabilities of the Debtors under the Designated Contracts in each case that are incurred and come due and payable during the Designation Rights Period through the effective date of (i) any such Designated Contract's assumption and assignment to Purchaser, (ii) rejection by the Debtors, or (iii) deemed rejection, in each case, in accordance with the applicable definitive agreement; provided, however, that nothing herein modifies or relieves the Debtors of their obligation to timely perform lease obligations as they come due pursuant to Section 365(d)(3) (including, for the avoidance of doubt, during the Designation Rights Period). The Debtors shall cause each Assumption/Rejection Notice (as applicable) to be published on the Case Information Website and served on each applicable Counterparty by email or ECF where available, or otherwise by first class mail.

25.    Final Assumption and Assignment Notice.  Upon expiration of the Designation Rights Period, the Debtors shall file a notice which shall include a final register of the Assumed Contracts and Assumed Leases and associated Cure Costs.

26.    For the avoidance of doubt, any objections by any landlord of a non-residential real property lease to (i) the proposed use and occupancy of the Debtors' leased real property by the

Stalking Horse Bidder (or its designee) or any other Successful Bidder during the Designation Rights Period, or (ii) the effective date of the applicable assumption and assignment, or rejection, of an applicable non-residential real property lease, together with any rights, responses, and claims by Debtors or a Successful Bidder thereto, shall be fully reserved for determination at the Sale Hearing to the extent such objections are asserted in a timely Sale Objection.

27.   **Assumption/Rejection Objections**.

i.      Cure Objections.  Any Counterparty may object to its Proposed Cure Cost or the Potential Assumption and Assignment Notice, including objections to the identity of the Stalking Horse Bidder and adequate assurance of the Stalking Horse Bidder (any such objection, a "**Cure Objection**") by **July 10, 2026 at 4:00 p.m.**, with the exception of objections solely related to the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder).

ii.      Post-Auction Assumption Objections. If the Successful Bidder is not the Stalking Horse Bidder, any Counterparty may object to the Proposed Assumption and Assignment Notice solely as to (A) the identity of the Successful Bidder, including on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder) or (B) the Proposed Cure Cost, if the previously stated Proposed Cure Cost on the Potential Assumption and Assignment Notice has been modified (any such objection, a "**Post-Auction Assumption Objection**") by no later than fourteen (14) days after the filing of the Proposed Assumption and Assignment Notice or the Notice of Auction Results, as applicable.[5]

---

[5] Notwithstanding anything herein to the contrary, any Counterparty to a Contract or Lease that (a) is included in the Proposed Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) days after the filing of the Proposed Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts or (ii) the Proposed Cure Cost, in each case, as contemplated by and set forth in the Proposed Assumption and Assignment Notice.

iii.      <u>Designation Rights Period Notice Objections</u>. Any Counterparty to a Designated Contract may object to the filing of a Designation Rights Period Assumption and Assignment Notice or a Designation Rights Period Rejection Notice, as applicable, solely as to (A) the Proposed Cure Cost, if the previously stated Proposed Cure Cost on the Proposed Assumed Contracts Schedule or Potential Assumption and Assignment Notice, as applicable, has been modified, (B) the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder unless such adequate assurance has materially changed), or (C) the rejection of the Contracts or Leases that have been added to a Designation Rights Rejection Notice. Each such Counterparty shall have until the date that is fourteen (14) days after the filing of the applicable notice (the "**Designation Rights Period Notice Objection Deadline**") to file the applicable objection (any such objection, a "**Designation Rights Period Notice Objection**" and, together with the Cure Objections and the Post-Auction Assumption Objections, the "**Assumption/Rejection Objections**").[6] All Assumption/Rejection Objections must (A) be in writing, (B) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Proposed Cure Cost the Counterparty believes is required to cure any alleged defaults under the relevant Assumed Contracts or Assumed Leases, (D) be filed no later than the applicable objection deadline, and (E) be served on the Objection Notice Parties so that it is received on or before the applicable objection deadline.

---

[6] Notwithstanding anything herein to the contrary, any Counterparty to a Designated Contract that (a) is included in the Designation Rights Period Assumption and Assignment Notice but (b) was not included on the Potential Assumption and Assignment Notice shall have until the date that is fourteen (14) days after the filing of the Designation Rights Period Assumption and Assignment Notice to object solely as to (i) the assumption and assignment of the Proposed Assumed Contracts, (ii) the Proposed Cure Cost, or (iii) the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder), in each case, as contemplated by and set forth in the Designation Rights Period Assumption and Assignment Notice.

28.      Resolution of Assumption/Rejection Objections.  If a Counterparty timely files an Assumption/Rejection Objection and such objection has not been consensually resolved, the Court shall make all necessary determinations relating to such Assumption/Rejection Objection at the applicable Contract Hearing (as defined below). A hearing with respect to Assumption/Rejection Objections timely and duly filed before the Sale Objection Deadline shall be held at the Sale Hearing or such later date that the Debtors shall determine, after consultation with the objecting party, to be set on no less than five (5) Business Days' notice unless otherwise agreed between the parties (subject to the Court's availability) (the "**Initial Contract Hearing**"). Hearings with respect to Assumption/Rejection Objections to Assumed Contracts or Assumed Leases for which the applicable objection deadlines are later than the Sale Objection Deadline may be scheduled by Debtors after consultation with the objecting party (at the request of the Successful Bidder (or Stalking Horse Bidder, if applicable)) on five (5) Business Days' notice (subject to the Court's availability) (each, an "**Additional Contract Hearing**," and, together with the Initial Contract Hearing, each, a "**Contract Hearing**"); provided that, any Additional Contract Hearing shall occur no later than the Confirmation Hearing. Upon resolution of an Assumption/Rejection Objection, the Debtors shall submit the assumption and assignment order for entry by the Court under certification of counsel providing an effective date of assumption and assignment as of the date of entry of the order or as otherwise agreed by the parties in the consensual order, subject to payment of the applicable cure amount, if any, by the Successful Bidder (or the Stalking Horse Bidder, as applicable). If an Assumption/Rejection Objection has not been resolved prior to the Closing Date (whether by an order of the Court or by agreement with the Counterparty), the affected contracts shall be deemed Designated Contracts, and the Successful Bidder (or the Stalking Horse Bidder, as applicable) shall proceed to the closing of the Sale Transaction with respect to all other Assets,

and, during the Designation Rights Period, determine whether to assume and assign or reject such Designated Contracts after resolution of such Counterparty's objection (whether by the Court's order or by agreement of the Counterparty, the Debtors, and the Successful Bidder (or the Stalking Horse Bidder, as applicable)). If any such Assumption/Rejection Objection is unresolved prior to the expiration of the Designation Rights Period, the Debtors may elect not to assume and assign the Designated Contract and designate such Designated Contract for rejection. If the Stalking Horse Bidder is the Successful Bidder, in no event shall the Debtors settle an objection to the assignment of an Assumed Contract or Assumed Lease listed on the Proposed Assumption and Assignment Notice or a Designated Contract, including as to Proposed Cure Costs, without the express prior written consent of the Successful Bidder (or the Stalking Horse Bidder, as applicable) (with an e-mail consent being sufficient).

29.     Failure To File Timely Assumption/Rejection Objection.  If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely and proper Assumption/Rejection Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease, as applicable.  Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, as applicable, or any other document, absent a timely and proper Assumption/Rejection Objection, the Proposed Cure Costs set forth in the Proposed Assumed Contracts Schedule shall be controlling and shall be the only amounts necessary to cure any alleged outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code as more specifically provided for in the Sale Order.

30.     Modification of Proposed Assumed Contracts Schedule.  If the Debtors or the Successful Bidder (or the Stalking Horse Bidder, as applicable) identify, prior to the expiration of

the Designation Rights Period,  any Contract or Lease that is not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been rejected by the Debtors, such Successful Bidder (or the Stalking Horse Bidder, as applicable) may elect by written notice to the Debtors to treat such Contract or Lease as an Assumed Contract or Assumed Lease, as applicable, and the Debtors shall seek to assume and assign such Assumed Contract or Assumed Lease in accordance with the Assumption and Assignment Procedures, with all additional Proposed Cure Costs related to such Assumed Contracts or Assumed Leases to be paid by the Successful Bidder (or the Stalking Horse Bidder, as applicable), in accordance with the terms of the applicable definitive agreement (which, in the case of the Stalking Horse Bidder, is the Stalking Horse Agreement).

31.     Reservation of Rights.  The inclusion of an Assumed Contract, an Assumed Lease, or, in each case, Proposed Cure Costs with respect thereto on any Assumption/Rejection Notice shall not constitute, nor be deemed to be, a determination or admission by the Debtors, the Successful Bidder (or the Stalking Horse Bidder, as applicable), or any other party in interest that such Contract or Lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on any Assumption/Rejection Notice.  The Debtors' inclusion of any Assumed Contract or Assumed Lease on any Assumption/Rejection Notice shall not be a guarantee that such Assumed Contract or Assumed Lease will ultimately be assumed or assumed and assigned.

32.     For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in this Bidding Procedures Order, the Bidding Procedures, or the Motion shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of the

Stalking Horse Agreement or the Stalking Horse Bidder's rights thereunder. The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the sale of the Assets and related matters, including the right to object to the sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of the Bidding Procedures).

33.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Bidding Procedures Order.

34.     This Bidding Procedures Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

35.     Any Bankruptcy Rule (including Bankruptcy Rules 6004(a), 6004(h), 6006(d), and 9014) or Local Rule that might otherwise delay the effectiveness of this Bidding Procedures Order is hereby waived, and the terms and conditions of this Bidding Procedures Order shall be effective and enforceable immediately upon its entry.

36.     On June 25, 2026, NEVADA HOLDING CO., L.P. ("**Nevada Holding**") filed the *Conditional Objection of Nevada Holding Co., L.P. to "Bidding Procedures Motion" Filed by Debtors* [ECF No. 131] (the "**Conditional Objection**").  By the Conditional Objection, Nevada Holding (i) objects to (a) the adequate assurance of future performance by the Stalking Horse Bidder and (b) the Debtors' requested waivers of Rules 6004(h) and 6006(d) and (ii) reserves its rights to challenge the Proposed Cure Costs in connection with its lease with the Debtors (clauses (i) and (ii), collectively, the "**Nevada Holding Objections**").  For the avoidance of doubt, notwithstanding entry of the Bidding Procedures Order, but subject to the terms and procedures (including the deadlines) set forth therein, Nevada Holding's rights with respect to the Nevada Holding Objections are hereby expressly preserved. Furthermore, the Conditional Objection shall be deemed to also be an objection to the Sale Order and to the proposed assumption (if any) by the

Stalking Horse Bidder of the lease between Nevada Holdings and one of the Debtors for the reasons stated in the Conditional Objection, although Nevada Holding remains free to file a supplemental or additional objection on or before the Sale Objection Deadline with respect to all matters at issue with regard to the Sale Transaction (in accordance with the Assumption and Assignment Procedures).

37. All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to take any and all actions permitted under the Stalking Horse Agreement in accordance with the terms and conditions thereof.

39. To the extent any provisions of this Bidding Procedures Order shall be inconsistent with the Motion, the terms of this Bidding Procedures Order shall control.

40. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Bidding Procedures Order.



**/s/ Kyu Y. Paek**

**Dated: July 2, 2026**
**Poughkeepsie, New York**

_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**