## Exhibit 1

**Bidding Procedures**

1

## BIDDING PROCEDURES

The bidding procedures set forth below (these "**Bidding Procedures**") detail the process by which Sleep Number Corporation ("**Sleep Number**") and certain of its affiliates (collectively, the "**Debtors**") are authorized by the United States Bankruptcy Court for the Southern District of New York (the "**Court**") to conduct a sale (such sale, the "**Sale Transaction**") of all or substantially all of the Debtors' assets (collectively, the "**Assets**").[1] A party may participate in the bidding process by submitting a bid for the Assets in accordance with these Bidding Procedures.

**Any interested bidder should contact Guggenheim Securities, LLC (in its capacity as the Debtors' proposed investment banker), in the manner and for the purposes described herein, as soon as practicable:**

Guggenheim Securities, LLC[2]
330 Madison Avenue
New York, NY 10017
Attn: Michael Gottlieb (Michael.Gottlieb@guggenheimpartners.com) and Stuart Erickson
(stuart.erickson@guggenheimpartners.com)

These Bidding Procedures describe, among other things, (a) the Assets offered for sale, (b) the manner in which bidders and bids may become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of the Successful Bidder (as defined below), and (e) the approval by the Court of the sale of the Assets to the Successful Bidder.

The Debtors shall not consult with or provide copies of bids regarding any Assets to any insider or affiliate of the Debtors pursuant to the terms of these Bidding Procedures if such party has a bid for the Assets pending or has otherwise expressed any interest (written or verbal) in bidding for any of the Assets; *provided* that, if such insider or affiliate of the Debtors chooses not to submit a bid, and so informs the Debtors in writing on or before the Bid Deadline (as defined below), then such party may receive copies of all bids following expiration of the latest possible Bid Deadline (as may be extended hereunder).

---

[1] These bidding procedures were approved by the Court on July 2, 2026 (the "**Bidding Procedures Order**"). Unless indicated otherwise, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in (a) the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17] (together with any supplemental and/or final order(s) entered in connection therewith, the "**Bidding Procedures Motion**") or the DIP Motion, as applicable.

[2] Guggenheim Securities, LLC, in its capacity as the Debtors' proposed investment banker, is referred to herein as "**Guggenheim Securities**."

1

The Debtors selected the bid (the "**Stalking Horse Bid**") submitted by SNBR Inc., an affiliate of Sleep Country Canada, Inc. (the "**Stalking Horse Bidder**") as the highest or otherwise best offer for the sale of the Assets to date following a comprehensive bidding process completed before the filing of these Bidding Procedures. The Stalking Horse Bidder has executed that certain Asset Purchase Agreement, dated June 12, 2026, entered into by and between Sleep Number, as seller, and SNBR Inc., an affiliate of Sleep Country Canada, Inc., as purchaser (as may be amended, supplemented or otherwise modified by the parties thereto in accordance with the terms thereof, and including the disclosure schedules and exhibits attached thereto, the "**Stalking Horse Agreement**"), pursuant to which the Stalking Horse Bidder has agreed to purchase the Assets, subject to the terms and conditions set forth therein.  Having announced the Stalking Horse Bid, the Debtors will now conduct a subsequent round of open bidding during these Chapter 11 Cases intended to obtain the highest or otherwise best offer for the Assets. The Stalking Horse Bid is subject to higher or otherwise better offers in accordance with the terms and conditions of these Bidding Procedures and the Bidding Procedures Order.

## 1.   PARTICIPATION REQUIREMENTS

### (a)   Interested Parties

Unless otherwise ordered by the Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (other than the Stalking Horse Bidder, which shall be deemed a Potential Bidder and a Qualified Bidder and is deemed to have satisfied each of the below requirements) (each, an "**Interested Party**") must deliver the following items (unless previously delivered) to Guggenheim Securities (at the email addresses set forth on the first page of these Bidding Procedures):

i. an executed confidentiality agreement in form and substance satisfactory to the Debtors; *provided* that Interested Parties that executed a confidentiality agreement with the Debtors concerning a Sale Transaction within 12 months of the Petition Date and which confidentiality agreement remains in full force and effect will not be required to execute an additional confidentiality agreement to participate in the Bidding Process;

ii. a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Assets;

iii. a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and

iv. sufficient information, to the Debtors' satisfaction, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal, or other authorizations to close the Sale Transaction pursuant to these

Bidding Procedures, which may include current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors) or, if the Interested Party is an entity formed for the purpose of acquiring the Assets, (A) current audited financial statements of the equity holder(s) (the "**Sponsor(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors), (B) a written commitment acceptable to the Debtors that the Sponsor(s) are responsible for the Interested Party's obligations in connection with the Bidding Process, and (C) copies of any documents evidencing any financing commitments necessary to consummate the Sale Transaction.

If the Debtors determine, after receipt of the items identified in Section 1(a)(i)-(iv) above and after consultation with the DIP Agent and the Official Committee of Unsecured Creditors (the "**Committee**" and collectively with the DIP Agent, the "**Consultation Parties**"), that an Interested Party has a *bona fide* interest in purchasing the Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will provide such Potential Bidder with (a) an electronic copy of the Stalking Horse Agreement and (b) access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), which shall include a form of Sale Order (as defined below).

**(b)    Due Diligence**

Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with due diligence access and additional information as may be requested by a Potential Bidder, to the extent that the Debtors determine that such requests are reasonable and appropriate under the circumstances.  All due diligence requests for the Debtors shall be directed to Guggenheim Securities.  The Debtors, with the assistance of Guggenheim Securities and/or their other advisors, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.

The Debtors reserve the right to withhold any diligence materials from any Potential Bidder that the Debtors determine are commercially sensitive or otherwise not appropriate for disclosure to such Potential Bidder, or to require that the Potential Bidder enter into a "clean team" or similar arrangement acceptable to the Debtors in order to receive such diligence materials.

Unless otherwise determined by the Debtors, the availability of due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder or (b) the Bidding Process is terminated in accordance with its terms.

**2.    QUALIFIED BIDS**

Each offer, solicitation, or proposal by a Potential Bidder (other than the Stalking Horse Bidder) must satisfy each of the following conditions in order for such offer, solicitation, or proposal to be deemed a "**Qualified Bid**" and for such Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors:

3

#### (a)   Bid Deadline

A Potential Bidder who desires to be deemed a Qualified Bidder must deliver to Guggenheim Securities, with copies to Davis Polk & Wardwell LLP ("**Davis Polk**") (Attn: Brian M. Resnick (brian.resnick@davispolk.com), Angela M. Libby (angela.libby@davispolk.com), Brian Wolfe (brian.wolfe@davispolk.com); Lee Parnes (lee.parnes@davispolk.com); and Richard J. Steinberg (richard.steinberg@davispolk.com)), the Required Bid Documents (as defined below), so as to be received no later than **4:00 p.m.**[3] **on July 8, 2026** (the "**Bid Deadline**").  The Debtors will subsequently deliver copies of the Required Bid Documents to the Consultation Parties.[4]  The Debtors, with the consent of the Consultation Parties (not to be unreasonably withheld) and without the need for further Court approval, may extend the Bid Deadline by a reasonable period of time if the Debtors believe that such extension would further the goal of attaining the highest or otherwise best offer for the Assets.  If the Debtors extend the Bid Deadline, the Debtors will notify all Potential Bidders of such extension.

#### (b)   Bid Requirements

All bids (other than the Stalking Horse Bid, which has satisfied or is deemed to have satisfied each of the below requirements, and with respect to which the deposit requirements will be governed by the Stalking Horse Agreement), must include the following items (collectively, the "**Required Bid Documents**"):

- a letter stating that the bidder's offer is irrevocable until consummation of the Sale Transaction;

- a duly authorized and executed (a) purchase agreement satisfactory to the Debtors, based on the form of the Stalking Horse Agreement, and a redline marked to show any revisions to the form Stalking Horse Agreement, or (b) an equity investment agreement (as applicable), in each case, which shall include the purchase price for the Assets.  For the avoidance of doubt, a "conceptual" or "issues list"-style markup of the form asset purchase agreement would not satisfy this requirement;

- written evidence acceptable to the Debtors, demonstrating a firm commitment for financing to consummate the Sale Transaction (or evidence of an ability to consummate the

---

[3] All times herein are expressed in prevailing Eastern Time.

[4] Subject to Section 13 hereof in all respects, by submitting its Required Bid Documents, each Potential Bidder affirms its consent to the disclosure of the information contained therein (and in any Subsequent Bid submitted by such Potential Bidder) to the Consultation Parties as set forth herein (notwithstanding any provisions to the contrary in any confidentiality agreements between the Debtors and such Potential Bidder).

Sale Transaction without financing), operational ability, and corporate authorization to consummate the Sale Transaction, including the payment of any contingent or deferred consideration; and

- a written acknowledgment that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets and the Sale Transaction, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and any other information in making the bid, (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, by the Debtors or any of their advisors (including Guggenheim Securities, AlixPartners, and Davis Polk) or other representatives regarding the bid, the Assets or the Sale Transaction, or the completeness or accuracy of any information provided in connection therewith or with the Auction, except solely with respect to the Debtors, as expressly stated by them in these Bidding Procedures, and (d) did not engage in any collusive conduct and acted in good faith in submitting its bid.

A bid will be considered only if the bid:

- identifies the legal name of the purchaser (including any Sponsor(s), if the purchaser is an entity formed for the purpose of consummating the Sale Transaction);

- identifies the Assets to be acquired and the Contracts, Leases, and liabilities (if any) to be assumed;

- includes a statement of the Potential Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees;

- sets forth the consideration, including the form thereof, for the Assets to be purchased and the Contracts and Leases to be assumed (the "**Bid Consideration**"); *provided* that the consideration must be at least equal to the following: (a) the Stalking Horse Purchase Price; *plus* (b) a cash component equal to $4,000,000 *plus* 3% of the Purchase Price (which consists of an amount equal to the Bid Protections (as defined below); *plus* (c) cash or non-cash consideration in the amount of $10,000,000 (the "**Minimum Overbid Amount**");

- clearly indicates which portion of the Bid Consideration will be paid at Closing and which portion (if any) will be deferred or contingent (and, in the event that a portion is deferred or contingent, clearly indicates when such amount would be due and payable) and any conditions or prerequisites to payment of such deferred or contingent consideration;

- is not conditioned on (a) obtaining financing or (b) the outcome of unperformed due diligence;

- includes a description of all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the Sale Transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended or any other Antitrust Law (as defined in the Stalking Horse Agreement), together with evidence satisfactory to the Debtors of the ability to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

- expressly states that the Potential Bidder agrees to serve as a Back-Up Bidder (as defined below) if such Potential Bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid (as defined below) with respect to the Assets;

- is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to ten (10) percent of the consideration set forth in connection with such bid (any such deposit, a "**Good Faith Deposit**"); *provided* that a Credit Bid (as defined below) need not be accompanied by a Good Faith Deposit;

- sets forth the representatives that are authorized to appear and act on behalf of the Potential Bidder in connection with the Sale Transaction;

- indicates that the Potential Bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment, and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code;

6

- includes evidence of the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the Contracts and Leases proposed in its bid to be assumed by the Debtors and assigned to the Potential Bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such Contracts and Leases, which such adequate assurance information may include: (a) the specific name of the proposed assignee, the proposed name under which the proposed assignee intends to operate the leased premises if not the current trade-name of the Debtors, (b) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (c) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (d) the proposed assignee's intended use of the leased premises a description of the proposed business to be conducted at the premises, and proof of the proposed assignee's and any guarantor's experience in operating retail stores in shopping centers; (e) a contact person for the proposed assignee; and/or (f) any other documentation that the Debtors may further request;

- confirms that the Potential Bidder will assume all Cure Costs associated with any Contracts and Leases it intends to assume;

- includes a description of the Potential Bidder's proposed treatment of the Debtors' outstanding gift cards and gift certificates following the closing of the Sale Transaction;

- states or otherwise estimates the types of transition services, if any, the Potential Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Potential Bidder's bid were selected as the Successful Bid for the applicable Assets;

- (i) indicates whether the Potential Bidder intends to hire all or some of the employees who are primarily employed in connection with the Assets to be included in the proposed Sale Transaction and (ii) confirms whether the Potential Bidder will assume any severance, state or federal WARN Act, or similar obligations of the Debtors arising prior to the Closing; and

- is received on or before the Bid Deadline (as such deadline

7

may be extended in accordance with these Bidding Procedures).

A bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all Required Bid Documents and meets each of the above requirements as determined by the Debtors, in consultation with the Consultation Parties. The Debtors shall have the right, in consultation with the Consultation Parties, to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents, *provided* that such bid (i) must include a cash component sufficient to satisfy the Bid Protections and (ii) must satisfy the Minimum Overbid Amount. The Debtors will be authorized to approve joint bids in their reasonable discretion on a case-by-case basis, in consultation with the Consultation Parties.

If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies up to one (1) business day prior to the Auction. If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable Potential Bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors, to the extent applicable, shall promptly instruct the Deposit Agent to return such Potential Bidder's Good Faith Deposit. For the avoidance of doubt, the Stalking Horse Bidder shall be deemed a Qualified Bidder and the Stalking Horse Agreement shall be deemed a Qualified Bid for all purposes in connection with these Bidding Procedures, and the Stalking Horse Bidder shall, without any further action, be entitled to participate in any Auction.

Notwithstanding any other provision of these Bidding Procedures, the Debtors may, in their discretion and in consultation with the Consultation Parties, evaluate bids on any grounds, including, (a) the consideration and form of consideration, set forth in the bid, (b) the value to be provided to the Debtors under the bid, including the net economic effect upon the Debtors' estates, (c) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit, (d) the transaction structure and execution risk, including conditions to and certainty of closing, termination provisions, finality of documentation, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approvals, (e) the anticipated timing to closing and whether such timing is consistent with the Debtors' case milestones and/or adherence to any relevant budget, (f) the impact on employees and employee claims against the Debtors, (g) the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, (h) the impact on trade and other creditors, (i) the tax consequences of any such bid; (j) whether the bid contemplates a Sale Transaction that would be consummated through a plan or a sale pursuant to section 363 of the Bankruptcy Code; (k) the certainty of a Qualified Bid leading to a confirmed plan; and (l) any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties and applicable bankruptcy law. For the avoidance of doubt, the presence of any governmental, licensing, regulatory, or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, among other considerations, may be grounds for the Debtors, in their discretion and in consultation with the Consultation Parties, to determine that such bid (y) is not a Qualified Bid or (z) is not higher or otherwise better than any other Qualified Bid.

8

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, (d) has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bid, (e) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its bid, and (f) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Stalking Horse Bidder, the Stalking Horse Agreement, or, as to any other Successful Bidder, the Asset Purchase Agreement with such Successful Bidder.  Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid in the Debtors' favor, during the period that such Qualified Bid is required to remain irrevocable (which, as it pertains to the Stalking Horse Bidder, shall be governed by the Stalking Horse Agreement in the event of any inconsistencies with these Bidding Procedures).

## 3.    <u>BID PROTECTIONS</u>

Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources in connection with the proposed transaction set forth in the Stalking Horse Agreement, and the benefit that those efforts provided to all Interested Parties, the Debtors' estates, their creditors, and other parties in interest, the Debtors have agreed that, among other circumstances set forth in the Stalking Horse Agreement, if the Stalking Horse Bidder is not the Successful Bidder or the Back-Up Bidder until the Back-Up Termination Date (as defined in the Stalking Horse Agreement), the Debtors will pay to the Stalking Horse Bidder the Break-Up Fee and the Expense Reimbursement (collectively, the "**Bid Protections**"). The payment of the Break-Up Fee, which is $3% of the Purchase Price, and Expense Reimbursement, which shall not exceed $4,000,000, will be governed by the provisions of the Stalking Horse Agreement and the Bidding Procedures Order.

Other than any Bid Protections provided to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement, no bidder or other party shall be entitled to any termination or "break-up" fee, expense reimbursement, or any other bidding protection in connection with the submission of a bid for the Assets.

## 4.    <u>AUCTION</u>

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "**Auction**") for the applicable Assets.  The Auction shall be conducted in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids.  The Auction shall be conducted at the offices of Davis Polk, 450 Lexington Avenue, New York, NY 10017 on **July 13, 2026 at 10:00 a.m.**, or such later time on such day, such other day, or such other place (including remotely via videoconference) as the Debtors shall notify all Participating Parties (as defined below).  If no Qualified Bids other than the Stalking Horse Bid are submitted by the Bid Deadline, the Debtors shall, within two (2)

business days after the Bid Deadline, cancel the Auction and seek approval of the Sale Transaction contemplated in the Stalking Horse Bid at the Sale Hearing.

Only representatives or agents of the Debtors, the DIP Agent, the Qualified Bidders, the Committee (including its members), and counterparties to the Debtors nonresidential real property leases (the "**Landlords**"), and the legal, financial and investment banking advisors to each of the foregoing (collectively, the "**Participating Parties**"), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction.  The Debtors may, in consultation with the Consultation Parties, establish a reasonable limit on the number of representatives and professional advisors that may appear on behalf of or accompany each Qualified Bidder and each Landlord at the Auction; *provided* that the Stalking Horse Bidder shall not be subject to such limitation.  The Landlords and their representatives shall attend at their own expense and solely in an observational capacity, shall not participate in the bidding process, and shall be subject to the confidentiality obligations applicable to the Auction.

At least one (1) day prior to the Auction, the Debtors (either directly or through or their advisors) will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders (including the Stalking Horse Bidder) with (i) a list identifying all Qualified Bidders and their respective Qualified Bids, (ii) copies of all Qualified Bids (including any redline marked to show any revisions to the form Stalking Horse Agreement); (iii) a statement that identifies which Qualified Bid it deems the highest or otherwise best bid at the outset of the Auction (the "**Starting Bid**") and (iv) an explanation of how the Debtors value the Starting Bid (including, to the extent that the Debtors ascribe value to non-cash components, an explanation of the valuation of each such component).

The Debtors may, in consultation with the Consultation Parties, employ and announce at the Auction additional procedural rules for conducting the Auction (*e.g.*, governing the amount of time allotted to submit Subsequent Bids); *provided* that such rules shall (a) not be inconsistent with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court entered in connection herewith, (b) be disclosed to all Qualified Bidders, and (c) apply equally to each Qualified Bidder in a round and shall not be changed within any given round of bidding.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) provides for a higher or otherwise better offer than such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in their discretion, determine that such Subsequent Bid is (i) with respect to the first round, a higher or otherwise better offer than the Starting Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below); *provided* that, the Debtors, in their discretion, may determine appropriate minimum bid increments or requirements for each round of bidding. For the avoidance of doubt, in any round of bidding, the Stalking Horse Bidder will be entitled to a "credit" in the amount of the Bid Protections to be counted toward its bid in such round.

After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in their discretion, will determine and announce the bid or bids that they believe to be the highest or otherwise best offer (the "**Leading Bid**").  Additional consideration in

excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration; *provided* that the value for such non-cash consideration shall be determined by the Debtors, in their discretion and in consultation with the Consultation Parties.  In connection with each such determination, the Debtors shall provide all Qualified Bidders with an explanation of how the Debtors are valuing the bids submitted in such round.

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid and after receiving an explanation from the Debtors regarding how they valued the Leading Bid (email being sufficient).  For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder (other than the Stalking Horse Bidder) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement), acceptable to the Debtors in their discretion, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale Transaction and pay the full consideration (including, any deferred or contingent consideration).

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid, all Subsequent Bid(s), the Leading Bid(s), the Back-Up Bid (as defined below) and the Successful Bid.  At the outset of the Auction, each Qualified Bidder will be asked to confirm that it has not engaged in any collusive conduct with respect to its participation in the Bidding Process and that it will not engage in any collusion with respect to any Subsequent Bid.

If a Qualified Bidder (other than the Stalking Horse Bidder) increases its bid at the Auction and is the Successful Bidder or Back-Up Bidder, such Qualified Bidder must increase its Good Faith Deposit to an amount equal to ten (10) percent of the proposed purchase price submitted at the Auction within two business days after the Auction.

## 5.      SELECTION OF THE SUCCESSFUL BID AND THE BACK-UP BID

Prior to the conclusion of the Auction, the Debtors shall in their discretion and in consultation with the Consultation Parties (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction, (ii) determine and identify the highest or otherwise best offer (the **"Successful Bid"**), (iii) determine and identify the next highest or otherwise best offer (the **"Back-Up Bid"**), and (iv) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (a) the identity of the party that submitted the Successful Bid, which may be the Stalking Horse Bidder (the **"Successful Bidder"**), (b) the amount and other material terms of the Successful Bid, (c) the identity of the party that submitted the Back-Up Bid (the **"Back-Up Bidder"**), and (d) the amount and other material terms of the Back-Up Bid.  Each Qualified Bidder shall be deemed to agree to be the Back-Up Bidder if so designated (in accordance with terms of the Stalking Horse Agreement in the event the Stalking Horse Bidder is the Back-Up Bidder).

Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Court, the Debtors will not consider bids after the Auction has closed.

As soon as reasonably practicable after the completion of the Auction, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments, and other documents necessary to consummate the applicable sale or other transaction contemplated by the Successful Bid.  Promptly following the selection of the Successful Bid and Back-Up Bid, the Debtors shall file a notice of the Successful Bid and Back-Up Bid on the Court's docket, together with a revised proposed order approving the Sale Transaction (the **"Sale Order"**).

## 6.      THE SALE HEARING

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") will be held on **July 15, 2026 at 10:00 a.m.**, subject to Court availability, before the Honorable Judge Kyu Y. Paek, in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408, Courtroom 610, or by such other virtual or electronic means as may be determined by the Court.  The Sale Hearing may be adjourned by the Debtors by an announcement at a hearing before the Court or by filing a notice on the Court's docket.  At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid and the Back-Up Bid in the event that the Successful Bidder fails to consummate the transaction contemplated by its Successful Bid.

The Debtors' presentation to the Court of the Successful Bid and Back-Up Bid will not constitute the Debtors' acceptance of such bids, which acceptance will only occur upon approval of such bids by the Court. Following the Court's entry of the Sale Order, the Debtors and the Successful Bidder shall proceed to consummate the Sale Transaction contemplated by the Successful Bid in accordance with the terms of the applicable definitive agreement. If the Debtors and the Successful Bidder fail to consummate the proposed transaction in accordance with the terms of the applicable definitive agreement, then the Debtors shall file a notice with the Court advising of such failure. Upon the filing of such notice with the Court, the Back-Up Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate the Sale Transaction with the Back-Up Bidder, subject to the terms of the Back-Up Bid and in accordance with the terms of the applicable definitive agreement, without further order of the Court, *provided*, *however*, that in the event of a Sale Transaction with the Back-Up Bidder, any non-residential real property lease on the Potential Assumption and Assignment Notice shall be deemed a Designated Contract and shall be subject to the Assumption and Assignment Procedures provided for during the Designation Rights Period. If the failure to consummate the transactions contemplated by either the Successful Bid or the Back-Up Bid is the result of a breach by the Successful Bidder or Back-Up Bidder, as applicable (the "**Breaching Bidder**"), of its definitive agreement, the Debtors reserve the right to seek all available remedies from such Breaching Bidder, subject to the terms of the applicable definitive agreement (which shall include, as applicable to the Stalking Horse Bidder, the terms of the Stalking Horse Agreement).

## 7.      RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released to the Debtors from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder until the consummation of the transaction contemplated by the

Successful Bid or the Back-Up Bid, as applicable, in accordance with Section 6 above, except as otherwise ordered by the Court.  The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within two (2) business days after the entry of an order approving the Sale Transaction (which may be the Sale Order), or as soon as reasonably practicable thereafter.  At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon) and the remaining Good Faith Deposit of the Back-Up Bidder (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent three (3) business days after the consummation of the Sale Transaction contemplated by the Successful Bid, or as soon as reasonably practicable thereafter; *provided* that the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

Notwithstanding anything herein to the contrary, the terms under which the Stalking Horse Bidder provided the Deposit Amount (as defined in the Stalking Horse Agreement) and the terms of its use, release, and return to the Stalking Horse Bidder will be governed by the Stalking Horse Agreement.

## 8.    AS IS, WHERE IS

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates, except as specifically accepted or agreed to by the Debtors in the applicable definitive agreement, as approved by the Court.

## 9.    FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES

Except as otherwise provided for in the Stalking Horse Agreement or another Successful Bidder's definitive agreement, as applicable, all of the Debtors' right, title, and interest in and to the Assets shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, judgments, decrees, rights of setoff or recoupment, successor liability claims (whether legal or equitable), and interests thereon (collectively, the **"Encumbrances"**) to the maximum extent permitted by the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Encumbrances applied against the Assets.

## 10.    RESERVATION OF RIGHTS

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, in their discretion and in consultation with the Consultation Parties, consistent with applicable bankruptcy law and all other orders entered in these Chapter 11 Cases, to:

- determine which Interested Parties are Potential Bidders;

- determine which Potential Bidders are Qualified Bidders;

- determine which bids are Qualified Bids;

13

- determine which Qualified Bid is the Starting Bid;

- determine which Qualified Bid is the highest or otherwise best offer for the Assets and which is the next highest or otherwise best offer;

- reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, or (c) contrary to the best interests of the Debtors and their estates;

- impose additional terms and conditions with respect to all Potential Bidders;

- cancel the Auction;

- waive the terms and conditions set forth herein with respect to Potential Bidders;

- extend the deadlines set forth herein; and

- modify these Bidding Procedures and implement additional procedural rules that the Debtors determine, in their discretion and in consultation with the Consultation Parties, will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties; *provided*, *however*, that nothing herein shall permit the Debtors to modify the Bidding Procedures to reduce the time provided for a party in interest to file an objection.

Notwithstanding anything to the contrary herein, the Debtors may, in consultation with the Consultation Parties, elect to consummate the Sale Transaction pursuant to a chapter 11 plan of reorganization or a sale pursuant to section 363 of the Bankruptcy Code.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law. Accordingly, at any time prior to the Court's entry of a Sale Order, the Debtors may, in consultation with the Consultation Parties, terminate the Bidding Process and pursue an alternative transaction, including a plan of reorganization. Notwithstanding anything in this Section 10 to the contrary, nothing herein shall limit, impair, or otherwise affect the Stalking Horse Bidder's right to enforce the terms of the Stalking Horse Agreement or the Stalking Horse Bidder's entitlement to the Bid Protections pursuant to the Stalking Horse Agreement and the Bidding Procedures Order; *provided* that any

14

DIP Secured Party or Prepetition Secured Party intending to submit a Credit Bid shall notify the Debtors and other Qualified Bidders of such intention no later than two (2) business days prior to the Auction.

## 11.   DIP ORDERS

Notwithstanding anything to the contrary contained in these Bidding Procedures or otherwise, (a) any and all rights of the DIP Agent to consent to the sale of any portion of the DIP Collateral as set forth in the DIP Loan Agreement are hereby expressly reserved and not modified, waived, or impaired in any way by these Bidding Procedures, (b) all cash proceeds generated from the sale of any DIP Collateral shall be applied in accordance with the terms and conditions of the DIP Order, the DIP Loan Documents, and any other order of the Court, as applicable, and (c) nothing in these Bidding Procedures shall amend, modify, or impair any provision of the DIP Order or the rights of the Debtors, the DIP Agent, or the DIP Lenders thereunder or under any of the DIP Loan Documents, including with respect to allocation of the sale proceeds of any DIP Collateral.  Further, nothing in these Bidding Procedures shall limit the right of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, to submit a credit bid (a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code for the Assets (or any portion thereof) at any time.

## 12.   RELEVANT DATES

| | |
|---|---|
| **June 25, 2026** | The deadline for the Debtors to file the Potential Assumption and Assignment Notice (the "**Potential Assumption Notice Deadline**") |
| **July 2, 2026** | Hearing to consider approval of the Bidding Procedures and for entry of the Bidding Procedures Order, subject to Court availability |
| **July 8, 2026 at 4:00 p.m.** | The deadline by which all binding Bids must be submitted to the Debtors by Potential Bidders (the "**Bid Deadline**") |
| **July 10, 2026 at 4:00 p.m.** | The deadline to object to the Motion and the sale of the Assets (the "**Sale Objection Deadline**"), with the exception of objections solely related to the identity of the Successful Bidder and adequate assurance of future performance by the Successful Bidder (in each case, other than the Stalking Horse Bidder) |

| | |
|---|---|
| **July 10, 2026 at 4:00 p.m.** | The deadline for a Counterparty to object to its Proposed Cure Cost or the Potential Assumption and Assignment Notice (including with respect to the identity of the Stalking Horse Bidder and adequate assurance of the Stalking Horse Bidder) (the "**Cure Objection Deadline**"), with the exception of objections solely related to the identity of the Successful Bidder on the basis of adequate assurance of future performance by such Successful Bidder (other than the Stalking Horse Bidder)[5] |
| **July 13, 2026 at 10:00 a.m.** | Auction (if any) to be held at the New York offices of Davis Polk (or such other location as the Debtors may designate in accordance with the Bidding Procedures) |
| **July 13, 2026** | Target date for the Debtors to file the Notice of Auction Results and, if the Successful Bidder is not the Stalking Horse Bidder, the Proposed Assumption and Assignment Notice (the "**Post-Auction Notice Deadline**") |
| **July 14, 2026 at 4:00 p.m.** | The deadline for a Counterparty to object to the conduct of the Auction (the "**Post-Auction Objection Deadline**") |
| **July 15, 2026** | Hearing to consider approval of the Sale Transaction and for entry of the Sale Order, subject to Court availability |
| **July 31, 2026** | Closing of the Sale Transaction (subject to obtaining required regulatory approvals) |

## 13.   <u>CONSULTATION BY THE DEBTORS</u>

The Debtors will consult with the Consultation Parties as set forth herein and in the Bidding Procedures Order, and to the extent not explicitly required herein or in the Bidding Procedures Order, before making any material decision with respect to the Auction or the Sale Transaction. If the DIP Agent or the Prepetition Loan Agent, as applicable, elects to participate in the Auction as a bidder, such party shall forfeit its right to consult with the Debtors as set forth in these Bidding Procedures.

---

[5] The Cure Objection Deadline shall be 14 days after the Potential Assumption Notice Deadline.