DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| | **Jointly Administered** |
| **Debtors.**[1] | **Re: ECF Nos. 4, 74, 152, 226** |

**NOTICE OF REVISED PROPOSED FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that, on June 12, 2026, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured*

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

*Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 4] (the "**DIP Motion**").[2]

**PLEASE TAKE FURTHER NOTICE** that, on June 15, 2026, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 74] (the "**First Interim DIP Order**") approving the DIP Motion on an interim basis and scheduling a final hearing.

**PLEASE TAKE FURTHER NOTICE** that, on June 29, 2026, the Debtors filed the *Notice of Proposed Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [ECF No. 152] (the "**Initial Proposed Final DIP Order**").

**PLEASE TAKE FURTHER NOTICE** that, on July 9, 2026, the Debtors filed the *Certification of Counsel Concerning the Second Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 214].

**PLEASE TAKE FURTHER NOTICE** that, on July 9, 2026, the Court entered the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 226] (the "**Second Interim DIP Order**") approving the DIP Motion on an interim basis and scheduling a final hearing.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a revised proposed *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "**Revised Proposed Final DIP Order**"). A redline of the Revised Proposed Final DIP Order marked against the Initial Proposed Final DIP Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that a hearing has been scheduled for **July 20, 2026, at 10:00 a.m.** (prevailing Eastern Time), before the Honorable Kyu Y. Paek, United States

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the DIP Motion.

Bankruptcy Judge for the Southern District of New York, to consider, among other things, the relief requested by the Debtors in the DIP Motion on a final basis (the "**Final Hearing**").

        **PLEASE TAKE FURTHER NOTICE** that copies of the DIP Motion, the First Interim DIP Order, the Second Interim DIP Order, the Initial Proposed Final DIP Order, the Revised Proposed Final DIP Order, and all other documents publicly filed in the Chapter 11 Cases can be accessed free of charge at the Debtors' case website located at https://restructuring.ra.kroll.com/SleepNumber/.

[*Remainder of page left intentionally blank*]

Dated:   July 18, 2026
         New York, New York

DAVIS POLK & WARDWELL LLP

By:  */s/ Brian M. Resnick*
     450 Lexington Avenue
     New York, New York 10017
     Tel.: (212) 450-4000
     Brian M. Resnick
     Angela M. Libby
     Stephen D. Piraino
     Richard J. Steinberg
     Sihui (Sophy) Ma
     Mordechai Rivkin

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Revised Proposed Final DIP Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) |  |
| SLEEP NUMBER CORPORATION, *et al.*,[1] | ) | Case No. 26-11399 (KYP) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "*Motion*")[2] of Sleep Number Corporation and each of its affiliated debtors and debtors in possession (collectively, the "*Debtors*") in the above-captioned chapter 11 cases (the "*Chapter 11 Cases*"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "*Local Bankruptcy Rules*") promulgated by the United States Bankruptcy Court for the Southern District

---

[1]     The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499).  The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

[2]     Each capitalized term that is not defined in the recitals to this Final Order and that is not otherwise defined in this Final Order shall have the meaning ascribed to such term in **Annex A** to this Final Order, which is incorporated by reference herein.

of New York (the "***Court***"), seeking entry of interim orders and a final order (this "***Final Order***"

and, together with the Interim Orders (as defined below), the "***DIP Orders***"), *inter alia*:

(i)    authorizing Sleep Number Corporation (in such capacity, the "***DIP Borrower***") and the DIP Guarantors (as defined below) to obtain postpetition, superpriority, senior secured, priming debtor-in-possession financing (the "***DIP Facility***") subject to the terms and conditions set forth in that certain Fourteenth Amendment to Amended and Restated Credit and Security Agreement attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "***DIP Loan Agreement***"), by and among the DIP Borrower, the DIP Guarantors, the lenders from time to time party thereto (collectively, the "***DIP Lenders***") and U.S. Bank National Association, as administrative agent (in this capacity, together with its successors and permitted assigns, the "***DIP Agent***" and, collectively, with the DIP Lenders, the "***DIP Secured Parties***"), in an aggregate principal amount of up to $260,000,000, consisting of:

    (a)    new money superpriority senior secured term loan commitments in an aggregate principal amount of up to $65,000,000 to be made available in (1) multiple draws up to $50,000,000 upon entry of the First Interim Order (as defined below) and up to $61,365,931 in the aggregate upon entry of the Second Interim Order (as defined below), in each case subject to satisfaction of the conditions set forth in the DIP Loan Documents (the term loans made thereunder, the "***Delayed Draw Interim New Money DIP Loans***"), and (2) multiple draws upon satisfaction of the conditions set forth in the DIP Loan Documents and upon entry of this Final Order in the amount of up to the difference between $65,000,000 and the amount of Delayed Draw Interim New Money DIP Loans actually funded prior to entry of this Final Order (the term loans made thereunder, the "***Delayed Draw New Money DIP Loans***," and together with the Delayed Draw Interim New Money DIP Loans, the "***New Money DIP Loans***," and the commitments in respect thereof, the "***DIP Commitments***"); and

    (b)    Roll-Up Loans (as defined in the DIP Loan Agreement) comprising Prepetition Secured Obligations (as defined below) that shall be converted into DIP Roll-Up Loans on a 3:1 basis (*i.e.*, for each $1.00 of New Money DIP Loans actually drawn and funded under the DIP Facility, $3.00 of Prepetition Secured Obligations shall be deemed to have been converted into DIP Roll-Up Loans on a cashless basis, without constituting a novation, repayment, or release of such Prepetition Secured Obligations), which conversion shall occur as follows: (1) following entry of the First Interim Order and Second Interim Order, as applicable, and upon the funding of each draw of Delayed Draw Interim New Money DIP Loans, Prepetition Secured Obligations in an aggregate principal amount equal to three (3) times the aggregate principal amount of Delayed Draw Interim New Money DIP Loans actually funded pursuant to such draw (the "***Interim DIP Roll-Up Loans***") were immediately and automatically deemed converted into DIP Roll-Up Loans, and (2) following entry of this Final Order and thereafter, upon the funding of each draw of Delayed Draw New Money DIP

Loans, additional Prepetition Secured Obligations in an aggregate principal amount equal to three (3) times the aggregate principal amount of Delayed Draw New Money DIP Loans actually funded pursuant to such draw (the "***Final DIP Roll-Up Loans***" and, together with the Interim DIP Roll-Up Loans, the "***DIP Roll-Up Loans***" and, together with the New Money DIP Loans, the "***DIP Loans***") shall immediately and automatically be deemed converted into DIP Roll-Up Loans;[3]

in each case, in accordance with the Approved DIP Budget (as defined below) then in effect (subject to any Permitted Variances (as defined below)) and the terms and conditions set forth in the DIP Loan Documents and the DIP Orders;

(ii)     subject and subordinate to the Carve Out in all respects, granting to the DIP Agent, for the benefit of the DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected DIP Liens (as defined below) pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all DIP Collateral (as defined herein);

(iii)     authorizing the DIP Loan Parties to (a) execute and deliver the DIP Loan Documents, (b) borrow funds under the DIP Facility pursuant to the terms set forth in the DIP Loan Agreement and this Final Order, (c) incur the DIP Obligations, and (d) perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(iv)     authorizing the DIP Loan Parties to use the proceeds of the DIP Loans and Prepetition Collateral (as defined below), including Cash Collateral (as defined below), (a) in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget (as defined below), as applicable, subject to any Permitted Variances set forth herein and in the DIP Loan Agreement, (b) to effectuate the conversion of certain Prepetition Secured Obligations into DIP Roll-Up Loans on a 3:1 basis as each draw of New Money DIP Loans is funded in accordance with the DIP Loan Agreement, the Interim Orders, and this Final Order, and (c) to provide working capital for, and for other general corporate purposes of, the Debtors, including for funding the Carve Out (as defined below), for payment of any Adequate Protection Obligations (as defined below), and for other permitted uses of proceeds not prohibited by the DIP Loan Documents, in each case, solely in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, subject to any Permitted Variances, and the terms and conditions of the DIP Loan Agreement;

(v)     subject and subordinate to the Carve Out in all respects, granting to the DIP Agent, for the benefit of the DIP Secured Parties, allowed superpriority administrative expense claim status against each of the Debtors, on a joint and several basis, in each of the Chapter 11 Cases and any Successor Cases (as defined below) pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations;

---

[3]     The DIP Roll-Up Loans shall not exceed (and shall be capped at) $195,000,000.

-3-

(vi)    granting adequate protection to the Prepetition Secured Parties to the extent of any Diminution in Value (as defined below) of their liens and security interests in the Prepetition Collateral;

(vii)    upon entry of this Final Order and subject to the Carve Out, authorizing the waiver of the Debtors' right to surcharge the DIP Collateral or the Prepetition Collateral pursuant to sections 105(a) and 506(c) of the Bankruptcy Code;

(viii)    upon entry of this Final Order, finding that neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to (a) the "equities of the case" exception under section 552(b) of the Bankruptcy Code or (b) the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral or the Prepetition Collateral (including Cash Collateral), as applicable;

(ix)    approving certain stipulations and releases by the Debtors with respect to the Prepetition Loan Documents, the Prepetition Collateral, and the Prepetition Secured Obligations, as set forth herein;

(x)    modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions set forth in this Final Order and in the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order; and

(xi)    granting the Debtors such other and further relief as set forth in the Motion.

The Court, having considered the Motion, the *Declaration of Amy O'Keefe in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 3] (including the exhibits annexed thereto, the "**First Day Declaration**") and the *Declaration of Stephen Preefer in Support of Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief*, which was attached to the Motion as <u>Exhibit A</u> (the "**Preefer Declaration**" and, together with the First Day Declaration, the "**DIP Declarations**");

and the Court having held an interim hearing on June 12, 2026 on the relief requested in the DIP Motion (the "***Interim Hearing***"); and on June 15, 2026, the Court having entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [ECF No. 74] (the "***First Interim Order***"); and on July 9, 2026, the Court having entered the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [ECF No. 226] (the "***Second Interim Order***," together with the First Interim Order, the "***Interim Orders***"); and the Court having considered the evidence submitted and arguments proffered or adduced at the Interim Hearing and a final hearing held before this Court on July 15, 2026 (the "***Final Hearing***," collectively with the Interim Hearing, the "***Hearings***"), and upon the record of the Chapter 11 Cases; and due and proper notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

---

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To

A. *Petition Date.* On June 12, 2026 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B. *Debtors in Possession.* The Debtors remain in possession of their property and continue to manage and operate their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C. *Committee Formation.* On June 23, 2026, the United States Trustee for Region 2 (the "***U.S. Trustee***") appointed an official statutory committee of unsecured creditors (the "***Official Committee***") in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [ECF. No. 110].

D. *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E. *Statutory Predicates for Relief.* The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Bankruptcy Rule 4001-2.

F. *Debtors' Stipulations and Releases.* Subject only to the rights of parties-in-interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations contained

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

therein), the Debtors stipulate and agree as to the following (collectively, the "***Debtors' Stipulations***"):

(i)     *Prepetition Loan Agreement.*   Pursuant to that certain Amended and Restated Credit and Security Agreement, dated as of February 14, 2018 (as amended prior to the Petition Date, the "***Prepetition Loan Agreement***" and, collectively with the other Loan Documents (as defined in the Prepetition Loan Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date, the "***Prepetition Loan Documents***"), by and among Sleep Number Corporation, as borrower (in such capacity, the "***Prepetition Loan Borrower***"), the other Credit Parties (as defined in the Prepetition Loan Agreement) (collectively with the Prepetition Loan Borrower, the "***Prepetition Loan Parties***"), U.S. Bank National Association, as administrative agent (in such capacity, the "***Prepetition Loan Agent***"), Swing Line Lender (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition Swing Line Lender***") and Issuing Lender (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition Issuing Lender***"),  the 2026 Term Loan Lenders (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition 2026 Term Lenders***" and, collectively with the Prepetition Loan Agent, the "***Prepetition 2026 Term Secured Parties***"), the 2021 Term Loan Lenders (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition 2021 Term Lenders***" and, collectively with the Prepetition Loan Agent, the "***Prepetition 2021 Term Secured Parties***"), Lenders of the Revolving Credit Commitment and the Revolving Loans (each as defined in the Prepetition Loan Agreement), as applicable (in such capacity, the "***Prepetition RCF Lenders***" and, collectively with the Prepetition Loan Agent, the Prepetition Swing Line Lender, and the Prepetition Issuing Lender, the "***Prepetition RCF Secured***

*Parties*" and, collectively with the Prepetition 2026 Term Secured Parties and the Prepetition 2021 Term Secured Parties, and each other holder of a Secured Obligation (as defined in the Prepetition Loan Documents) the "*Prepetition Secured Parties*" and the Prepetition 2026 Term Lenders, the Prepetition 2021 Term Lenders and the Prepetition RCF Lenders, collectively, the "*Prepetition Lenders*"), the Prepetition Lenders have extended prepetition loans and other credit accommodations (the "*Prepetition Loans*") to and for the benefit of the Prepetition Loan Parties, and the other Prepetition Loan Parties that are Guarantors (as defined in the Prepetition Loan Agreement) guaranteed the Prepetition Loans on a joint and several basis.

(ii)    *Prepetition 2026 Term Loan Obligations.*  As of the Petition Date, the Prepetition Loan Parties, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition 2026 Term Secured Parties under the Prepetition Loan Documents in the aggregate principal amount of not less than $20,000,000, *plus* accrued and unpaid interest thereon and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Prepetition Loan Agreement) in connection with the 2026 Term Loans (as defined in the Prepetition Loan Agreement), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in connection with the 2026 Term Loans under the Prepetition Loan Documents, in each case, as and to the extent provided in the Prepetition Loan Documents (collectively, the "*Prepetition 2026 Term Loan Obligations*").

(iii)    *Prepetition 2021 Term Loan Obligations.*  As of the Petition Date, the Prepetition Loan Parties, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition 2021 Term Secured Parties under the Prepetition

Loan Documents in the aggregate principal amount of not less than $177,500,000, *plus*, as of the Petition Date, accrued and unpaid interest thereon and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Prepetition Loan Agreement) in connection with the 2021 Term Loans (as defined in the Prepetition Loan Agreement), and all other obligations of whatever nature owing, whether or not contingent, in connection with the 2021 Term Loans under the Prepetition Loan Documents (collectively, the "***Prepetition 2021 Term Loan Obligations***").

(iv)    *Prepetition RCF Obligations.*  As of the Petition Date, the Prepetition Loan Parties, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition RCF Secured Parties under the Prepetition Loan Documents in the aggregate principal amount of not less than $475,000,000, *plus*, as of the Petition Date, accrued and unpaid interest thereon and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Prepetition Loan Agreement) in connection with the Revolving Loans and the Revolving Credit Commitments, and all other obligations of whatever nature owing, whether or not contingent, in connection with the Revolving Loans and the Revolving Credit Commitments under the Prepetition Loan Documents (collectively, the "***Prepetition RCF Obligations***" and, collectively with the Prepetition 2026 Term Loan Obligations and the Prepetition 2021 Term Loan Obligations, and all other Prepetition Obligations (as defined in the DIP Loan Agreement), the "***Prepetition Secured Obligations***").

(v)    *Prepetition Liens*.  As set forth more fully in the Prepetition Loan Documents, as of the Petition Date, pursuant to and in connection with the Prepetition Loan

Documents, to secure the Prepetition Secured Obligations, the Prepetition Loan Parties granted to the Prepetition Loan Agent, for the benefit of itself and the other Prepetition Secured Parties, valid, binding, non-avoidable, properly perfected and enforceable continuing liens on and security interests (collectively, the "**Prepetition Liens**") in the "Collateral" as defined in the Prepetition Loan Agreement (the "**Prepetition Collateral**").

(vi)    *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Secured Obligations*. The Debtors acknowledge and agree that, as of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral were and continue to be valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to the Permitted Prior Senior Liens; (c) the Prepetition Secured Obligations constitute legal, valid, binding and non-avoidable obligations of the applicable Debtors enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out

-10-

of, based upon or related to the Prepetition Loan Documents or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date; and (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens securing the Prepetition Secured Obligations.

G.      *Findings Regarding DIP Facility and Use of Cash Collateral.*

(i)      *Need for Immediate Access.* The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral, solely to the extent and for the purposes permitted in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, subject to any Permitted Variances, to, among other things, (a) permit the orderly continuation of their business; (b) maintain business relationships with their vendors, suppliers, customers, and other parties; (c) implement a sale transaction; (d) pay certain adequate protection payments, if any, required hereunder; and (e) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is vital to the preservation and maintenance of the Debtors' ongoing-concern value of their business, the sale transaction, and the restructuring process. The Debtors will not have sufficient sources of working capital and financing to operate their business in the ordinary course of business throughout the Chapter 11 Cases and to consummate the sale transaction without access to the DIP Facility and the authorized use of Cash Collateral.  Immediate and irreparable harm will be caused to the Debtors and their

-11-

estates if the remainder of the DIP financing is not obtained and permission for the Debtors to continue to use Cash Collateral is not granted.

(ii) *Inability to Obtain More Favorable Financing.* The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as administrative expense claims. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Loan Documents without the Debtors granting the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) to the DIP Secured Parties under the terms and conditions set forth in the Interim Orders, this Final Order and the other DIP Loan Documents, in each case, subject and subordinate to the Carve Out in all respects.

(iii) *Business Judgment.* The terms of the DIP Facility and the DIP Loan Documents are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(iv) *Good Faith.* The DIP Facility, the Interim Orders, this Final Order, and the DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or

-12-

otherwise, and any liens or claims granted, or payments made, in each case, to the DIP Secured Parties and arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all of the rights, remedies, privileges, and benefits granted herein.

(v)     *Arm's-Length, Good Faith Negotiations*. The terms of the Interim Orders and this Final Order were negotiated in good faith and at arm's length between the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties. The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties have acted in good faith in respect of all actions taken by them in negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and use of Prepetition Collateral (including Cash Collateral), including in respect of all of the terms of the Interim Orders and this Final Order, all documents related thereto, and all transactions contemplated by the foregoing.

(vi)    *Cash Collateral*. The Debtors continue to collect cash, rents, income, offspring, products, proceeds and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, certain of which constitute Prepetition Collateral under the Prepetition Loan Documents that are subject to the Prepetition Liens as set forth in the Prepetition Loan Documents. The Debtors desire to use in their business operations a portion of such cash, rents, income, offspring, products, proceeds and profits that constitutes Cash Collateral of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds and profits in existence as of the Petition Date also constitute Cash Collateral.

(vii)   *Roll-Up*. The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral securing their respective secured obligations or the subordination

-13-

of their liens to the DIP Liens, and the DIP Lenders would not be willing to provide the DIP Loans or extend credit to the Debtors thereunder without the DIP Roll-Up Loans. The DIP Roll-Up Loans shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lenders who are also Prepetition Secured Parties to fund amounts under the DIP Facility, and shall be converted from Prepetition Secured Obligations on a 3:1 basis (*i.e.*, $3.00 of Prepetition Secured Obligations converted for each $1.00 of New Money DIP Loans actually drawn and funded), and not as Adequate Protection for, or otherwise on account of, any Prepetition Secured Obligations. The Prepetition Secured Obligations shall be converted into and exchanged for DIP Roll-Up Loans in accordance with the DIP Loan Agreement.

(viii) *Approved DIP Budget*. The Debtors have prepared and delivered to the DIP Secured Parties an initial cash flow forecast which has been approved by the DIP Agent and the Required DIP Lenders (as defined in the DIP Loan Agreement) (the "***Initial DIP Budget***," and as the same may be amended, supplemented, or updated from time to time in accordance with the terms of the Interim Orders, this Final Order, and the DIP Loan Agreement, the "***Approved DIP Budget***"), reflecting (a) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures expected to be incurred or made, by the Debtors for each calendar week during the period from the calendar week ending on June 13, 2026 through and including the end of the eighth (8th) calendar week thereafter, (b) the sum of weekly unused availability under the DIP Facility, plus restricted and unrestricted balances of cash on hand, (c) the weekly outstanding principal balance of amounts outstanding under the DIP Facility, and (d) a weekly report of the Debtors' accounts payable aging reports (including vendors, dates and applicable payment terms) certified by an Authorized Officer of the DIP Borrower. The Debtors shall promptly provide the Official Committee (or their advisors) with the foregoing reporting.

-14-

Commencing on the Wednesday of the fourth (4th) full calendar week occurring after the Petition Date and on every fourth Wednesday that occurs thereafter (each, an "*Updated Budget Delivery Date*"), the Debtors will, by no later than 5:00 p.m. prevailing Eastern Time, provide the DIP Agent with an updated budget for the rolling eight (8) week period commencing on the Sunday immediately preceding the applicable Updated Budget Delivery Date (each such updated budget, a "*Proposed DIP Budget*").  Each Proposed DIP Budget shall be subject to the approval of the DIP Agent and the Required DIP Lenders and, following confirmation of approval from the DIP Agent, shall constitute the Approved DIP Budget (which Approved DIP Budget then shall be promptly provided to the Official Committee (email to its counsel being sufficient)); *provided*, that until such time as the DIP Agent approves any Proposed DIP Budget, the Debtors shall be subject to and be governed by the terms of the Initial DIP Budget or such previous Approved DIP Budget as may then be in effect, as applicable, in accordance with the DIP Orders. The Proposed DIP Budget shall provide for, among other things, the funding of the Stub Rent Reserve. By no later than 5:00 p.m. prevailing Eastern Time on the Wednesday of each week, the Debtors shall provide to the DIP Agent (and concurrently to the Official Committee (email to its counsel being sufficient)) a budget variance report (the "*Budget Variance Report*"), which Budget Variance Report shall set forth in reasonable detail actual receipts and disbursements of the Debtors and a weekly budget-to-actual comparison to the Approved DIP Budget, as certified by an Authorized Officer of the DIP Borrower (and reviewed by any consultant or other advisor of the DIP Agent in its sole discretion).  The Debtors shall not (A) request a New Money DIP Loan in an amount that exceeds, on an aggregate basis, 110.0% of the amount of DIP Loan proceeds approved for such draw period as set forth in the then-applicable Approved DIP Budget measured on a cumulative basis beginning on the Petition Date through the date of the applicable Notice of Loan (as defined

in the DIP Loan Agreement), (B) as of the last day of each week, permit or suffer to exist the aggregate amount of operating receipts during the consecutive four (4) week period then ending to be less than 90.0% of the aggregate budgeted "*Operating Receipts*" of the Debtors for such consecutive four (4) week period as set forth in the applicable Approved DIP Budget, or (C) as of the last day of each week, permit or suffer to exist the aggregate amount of disbursements and other dispositions of cash, cash equivalents and other assets of the Debtors during the consecutive four-week period then ending to exceed 110.0% of the budgeted "*Total Disbursements*" of the DIP Loan Parties for such consecutive four-week period in the applicable Approved DIP Budget (such deviations from the applicable projected amounts set forth in the applicable Approved DIP Budget satisfying (A), (B), and (C), tested on a cumulative rolling weekly basis, the "*Permitted Variances*").  For the avoidance of doubt, the Initial DIP Budget shall constitute an Approved DIP Budget. The Debtors and the DIP Secured Parties agree that the Approved DIP Budget shall include fees and expenses for Committee Professionals (defined below) in the amount of $2.25 million through July 31, 2026, with all rights of the Committee Professionals reserved with respect to any fees and expenses that may be incurred by them during the period after such date, and there shall be no reductions to the fees and expenses budgeted for Committee Professionals absent express written consent of the Committee Professionals.

(ix)    *Approved Cash Collateral Budget*.  Following the indefeasible payment in full in cash of the DIP Obligations (the date of such payment in full of the DIP Obligations, the "*DIP Payoff Date*") and until the effective date of a chapter 11 plan in these Chapter 11 Cases, the Debtors shall continue to prepare and deliver budgets and Budget Variance Reports to the Prepetition Loan Agent (and concurrently to the Official Committee (email to its counsel being sufficient)), in each case, in substantially the same form and manner as the Proposed DIP Budgets

and Budget Variance Reports, respectively, required under paragraph G(viii) of this Final Order (any budget delivered pursuant to this paragraph G(ix), a "***Proposed Cash Collateral Budget***" and, upon approval by the Prepetition Loan Agent and the Required Lenders (as defined in the Prepetition Loan Agreement) (the "***Required Prepetition Lenders***"), an "***Approved Cash Collateral Budget***"). Any Approved Cash Collateral Budget shall be promptly provided to the Official Committee (email to its counsel being sufficient). Until such time as the Prepetition Loan Agent and the Required Prepetition Lenders approve any Proposed Cash Collateral Budget, the Debtors shall be subject to and governed by the most recently Approved Cash Collateral Budget, as applicable. Following the DIP Payoff Date, the Debtors shall comply with the Permitted Variances with respect to each Approved Cash Collateral Budget in the same manner and to the same extent as required with respect to an Approved DIP Budget prior to the DIP Payoff Date. Following the DIP Payoff Date, with respect to the Approved Cash Collateral Budget and the Permitted Variances, the Prepetition Loan Agent and the Required Prepetition Lenders shall have the same variance, consent, waiver, approval, and modification rights as the DIP Agent and the Required DIP Lenders had with respect to the Approved DIP Budget and Permitted Variances prior to the DIP Payoff Date. The Debtors' obligations set forth in this paragraph G(ix) shall terminate automatically upon consummation of an Acceptable Plan.

     (x)    *Adequate Protection*. Each of the Prepetition Secured Parties is entitled, pursuant to sections 105, 361, 362, 363(e), 364(d)(1), and 507 of the Bankruptcy Code, to adequate protection (the "***Adequate Protection***") against the net post-petition diminution in value of its respective liens and security interests in the Prepetition Collateral, including Cash Collateral (any such net post-petition diminution, to the maximum extent permitted under the Bankruptcy Code, "***Diminution in Value***"), subject to the reservation of rights set in paragraph 24 hereof (solely as

it pertains to the Prepetition Collateral). Based on the Motion and on the record presented to the Court, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the DIP Loan Parties (as defined below) prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including the use of Cash Collateral).

H.    *Good Cause Shown; Best Interest*. Good cause has been shown for entry of this Final Order.  The entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful restructuring. Absent the relief granted in the Interim Orders and this Final Order, the Debtors' estates would have been immediately and irreparably harmed.

I.    *Permitted Prior Senior Liens; Continuation of Prepetition Liens*. Notwithstanding anything to the contrary set forth herein, the DIP Liens and the Adequate Protection Liens shall be subject and subordinate to the Permitted Prior Senior Liens; *provided*, *however*, nothing herein shall constitute a finding or ruling by this Court that any lien over the assets of the Debtors alleged to be a Permitted Prior Senior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including the Debtors, the DIP Secured Parties, or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Senior Lien.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Senior Lien and is expressly subject to the DIP Liens. The Prepetition Liens and the DIP Liens are liens on the Prepetition Collateral or the DIP Collateral, respectively,

and the Prepetition Collateral and the DIP Collateral (as applicable) are and will continue to be encumbered by the applicable Prepetition Liens or DIP Liens.

J.    *Notice.* The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the Motion and the Final Hearing, the best available under the circumstances per the Debtors' belief, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

**NOW, THEREFORE**, based upon the Motion, the DIP Declarations, the evidence adduced at the Hearings and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted.* The Motion is hereby granted on a final basis, entry into the DIP Loan Agreement and other DIP Loan Documents is authorized and approved and the use of Cash Collateral is hereby authorized, in each case, upon the terms and conditions set forth in the Interim Orders, this Final Order and the DIP Loan Documents. Any objections to the relief set forth in this Final Order that have not been withdrawn, waived, settled, or resolved are hereby denied and overruled with prejudice.

2.    *Authorization of DIP Facility and DIP Loan Documents.*

(a)    *Authorization of DIP Loan Documents.* The DIP Loan Parties are hereby authorized and empowered, on a final basis, to execute, enter into and deliver, and perform all their obligations under the DIP Loan Documents and such additional documents, instruments, certificates, and agreements as may be reasonably necessary, required, appropriate, or desirable to

-19-

perform their obligations under the DIP Facility and this Final Order and to implement the transactions contemplated thereunder and hereunder.

(b)    *Authorization to Borrow.* The DIP Borrower is hereby authorized, on a final basis, to borrow and incur the DIP Loans under the DIP Facility, and each of the subsidiaries and affiliates of the DIP Borrower that are Debtors (the "***DIP Guarantors***" and, together with the DIP Borrower, the "***DIP Loan Parties***") is hereby authorized, on a final basis, to guarantee such borrowing and incurrence and other DIP Obligations on a joint and several basis, in each case subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order without the need to seek further Court approval.

(c)    *Use of DIP Collateral and Prepetition Collateral.* The Debtors are hereby authorized, on a final basis, to use the proceeds of the DIP Loans and any Prepetition Collateral (including Cash Collateral) of the Prepetition Secured Parties solely to the extent and for the purposes permitted in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable (in each case, subject to Permitted Variances), subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order (including, but not limited to, paragraph 11 of this Final Order).  In accordance with any other order entered by the Court providing for the repayment of DIP Obligations upon the sale or other disposition of any DIP Collateral (in accordance with the DIP Loan Documents), the Net Cash Proceeds (as defined in the DIP Loan Agreement) thereof shall first be applied to repay the DIP Obligations with respect to the New Money DIP Loans, and thereafter, subject only to the rights of parties-in-interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations therein), any remaining proceeds shall be used to repay the DIP Obligations with respect to the DIP Roll-Up Loans, in

each case, in accordance with the terms and priorities set forth in this Final Order and the DIP

Loan Documents.

(d)     *DIP Fees and Expenses; Indemnification.* Subject to paragraph 2(b) of this

Final Order, the DIP Loan Parties are hereby authorized and empowered, on a final basis, to pay

all DIP Obligations as such amounts become due and payable in accordance with this Final Order

and the DIP Loan Documents and any related fee letters, without the need for further order of the

Court, and any and all fees payable in respect of the initial draw, including, without limitation, the

upfront fee of $5,200,000, which upfront fee has been fully earned and due and paid in cash upon

the initial funding of the DIP Loans, and the exit fee in an aggregate amount $5,200,000, which

exit fee has been fully earned upon the initial funding of the DIP Loans, and due and payable in

cash in an amount equal to 2.00% of the principal amount of the DIP Loans (including DIP Roll-

Up Loans) prepaid or repaid on the date of such prepayment or repayment, with the balance of

such exit fee to be paid in full upon the full prepayment or repayment of the DIP Loans (including

the DIP Roll-Up Loans), are hereby approved on a final basis. Without limiting the foregoing, the

DIP Loan Parties are hereby authorized and empowered, on a final basis, to:

(i)      pay any and all fees, including any upfront fee or arrangement fee, with respect to the DIP Facility set forth in any Administrative Agent Fee Letter (as defined in the DIP Loan Agreement), payable under the DIP Loan Documents;

(ii)     indemnify each of the DIP Secured Parties (and their respective affiliates, officers, directors, attorneys, agents, and employees) as and to the extent provided under the DIP Loan Agreement; and

(iii)    jointly and severally pay or reimburse all out-of-pocket costs and expenses incurred, whether prepetition or postpetition, by the DIP Agent and the DIP Lenders, including, without limitation, the reasonable and documented fees and expenses of Faegre Drinker Biddle & Reath LLP, legal counsel to the DIP Agent, as provided for in the DIP Loan Documents (collectively, the "***DIP Professional Fees and Expenses***").

(e)      *Amendment of DIP Loan Documents.* The DIP Loan Parties are hereby authorized and empowered, on a final basis, to enter into agreements with the DIP Secured Parties providing for any consensual modifications to the Approved DIP Budget or to execute, enter into and deliver, and perform under one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents (in each case, in accordance with the terms of the applicable DIP Loan Documents); *provided*, *however*, that a copy of all amendments, waivers, consents or other modifications to and under the DIP Loan Documents (other than the Initial DIP Budget or the Approved DIP Budget) shall be provided (which may be by electronic mail) to the U.S. Trustee and counsel to the Official Committee no later than two (2) Business Days prior to the anticipated date of effectiveness thereof; *provided further*, *however*, that any amendment, waiver, consent or other modification to and under the DIP Loan Documents that shortens the maturity of the extensions of credit thereunder or increases the aggregate commitments or the rate of interest payable thereunder (a "**Material DIP Amendment**") shall be filed with the Court, and if no objection to the Material DIP Amendment is made within two (2) Business Days of the filing of the Material DIP Amendment, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided*, *however*, if an objection is made within such time period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court; *provided*, *further* that, for the avoidance of doubt, updates and supplements to the Approved DIP Budget required to be delivered by the DIP Loan Parties under the DIP Loan Documents shall not be considered amendments or modifications to the Approved DIP Budget or the DIP Loan Documents.

(f)      *Performance of Other Acts*. The DIP Loan Parties are hereby authorized and empowered, on a final basis, to execute such other documents, and perform all such other acts, as

may be reasonably necessary or required for the DIP Loan Parties to perform under the DIP Facility and implement the transactions contemplated in the Interim Orders, this Final Order, and the DIP Loan Documents.

(g)      *DIP Roll-Up Loans*. Subject to paragraph 12 of this Final Order, (1) upon entry of the First Interim Order and the Second Interim Order, as applicable (and as reaffirmed by this Final Order), and the funding of each draw of Delayed Draw Interim New Money DIP Loans, Prepetition Secured Obligations shall immediately and automatically be deemed to have been converted into DIP Roll-Up Loans on a cashless basis, without constituting a novation, repayment, or release of such Prepetition Secured Obligations on a 3:1 basis (*i.e.*, for each $1.00 of New Money DIP Loans actually drawn and funded under the DIP Facility, $3.00 of Prepetition Secured Obligations shall be deemed to have been converted into Interim DIP Roll-Up Loans) and (2) upon entry of this Final Order and the funding of each Delayed Draw New Money DIP Loans and thereafter, Prepetition Secured Obligations shall immediately and automatically be deemed to have been converted into DIP Roll-Up Loans on a cashless basis, without constituting a novation, repayment, or release of such Prepetition Secured Obligations on a 3:1 basis (*i.e.*, for each $1.00 of New Money DIP Loans actually drawn and funded under the DIP Facility, $3.00 of Prepetition Secured Obligations shall be deemed to have been converted into Final DIP Roll-Up Loans) and, except as otherwise provided herein and in the DIP Loan Documents, such DIP Roll-Up Loans shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Interim Orders, this Final Order, and the DIP Loan Documents. The conversion (or "roll-up") was and shall be authorized as compensation for, in consideration for, and solely on account of the agreement of the Prepetition Secured Parties as DIP Lenders to fund amounts and provide other consideration to the Debtors under the DIP Facility and not as payments

under, adequate protection for, or otherwise on account of, any Prepetition Secured Obligations; *provided*, that, notwithstanding anything to the contrary in this Final Order, the DIP Roll-Up Loans shall remain subject to the preservation of rights in paragraph 24(g) hereof. The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder, without the inclusion of the DIP Roll-Up Loans in the DIP Obligations upon entry of the Interim Orders and this Final Order. The roll-up of the Prepetition Secured Obligations in the amount of the DIP Roll-Up Loans will, moreover, enable the Debtors to obtain urgently needed financing to administer these Chapter 11 Cases and fund their operations.

3.    *DIP Obligations.*

(a)    The DIP Loan Documents constitute valid, binding, enforceable, and non-avoidable obligations of each of the DIP Loan Parties, and are fully enforceable against each of the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "***Successor Cases***"), in each case, in accordance with the terms of the DIP Loan Documents and this Final Order.

(b)    The DIP Loan Parties are jointly and severally liable for any and all DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, on the DIP Termination Declaration Date (as defined below) (subject to paragraph 10 hereof); upon the occurrence of the DIP Termination Declaration Date, the Debtors' rights to use Cash Collateral shall be permitted solely pursuant to paragraph 10(c).

(c)      All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in the Interim Orders, this Final Order and the DIP Loan Documents by the DIP Loan Parties are granted to or for the benefit of the DIP Secured Parties and the Prepetition Secured Parties (as applicable) for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of liens or security interests under the Interim Orders, this Final Order or the DIP Loan Documents to the DIP Secured Parties or the Prepetition Secured Parties (as applicable) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any Challenge (subject, solely in the case of the DIP Professional Fees and Expenses and the Adequate Protection Professional Fees and Expenses (as defined below), to the professional fee review procedures set forth in paragraph 7 of this Final Order).

4.      *DIP Liens.*

(a)      As security for the DIP Obligations, effective as of the entry of the First Interim Order and as reaffirmed by the Second Interim Order and this Final Order (and without the necessity of the execution, recordation or filing by the DIP Loan Parties or the DIP Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), the DIP Agent, for the benefit of the DIP Secured Parties, are granted, on a final basis, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "***DIP Liens***") in all DIP Collateral, in each case, subject and subordinate to the Carve Out in all respects, and subject to the relative priorities set forth in this Final Order. For the avoidance of

-25-

doubt, the DIP Collateral does not include Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims. Any provision of any lease (except for nonresidential real property leases) or other license, contract or other agreement that requires (i) the consent or approval of one or more parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any interest in any such lease, license, contract, or other agreement, or the proceeds thereof, or other collateral related thereto, is deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law. Any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens (as defined below) on such interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Loan Agreement or this Final Order, subject to applicable law. Notwithstanding anything to the contrary in the foregoing, the provisions of this paragraph 4(a) shall not (i) render any contract or lease unable to be assumed and/or assigned by any Debtor or (ii) impair or limit the ability or right of (A) any Debtor to assume and/or assign any contract or lease or (B) any counterparty to object to such relief on any other grounds, including, but not limited to, sections 365(b)(3) or 1123 of the Bankruptcy Code.

(b)     The DIP Liens shall be subject to the following priorities (in each case, subject and subordinate to the Carve Out in all respects):

(i)     First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected first priority senior security interests in and liens upon all DIP Collateral, to the extent such DIP Collateral is not subject to valid, perfected, and non-avoidable liens as of the Petition Date (including the Prepetition Liens and Permitted Prior Senior Liens) or valid and non-avoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that are perfected as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens shall be subject and subordinate in all respects to the Carve Out;

(ii)   <u>Liens Priming the Prepetition Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected priming senior security interests in and liens upon the Prepetition Collateral, which security interests and liens shall (A) be subject and subordinate in all respects to the Carve Out and (B) prime and be senior in all respect to the Prepetition Liens on the Prepetition Collateral and to the Adequate Protection Liens (as defined below) granted to the Prepetition Secured Parties on the DIP Collateral; and

(iii)   <u>Liens Junior to the Permitted Prior Senior Liens</u>.   Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests in and liens on the DIP Collateral to the extent such DIP Collateral is subject to Permitted Prior Senior Liens, which security interests and liens shall be subject and subordinate in all respects to the Carve Out;

Other than as set forth above, the DIP Liens: (i) shall be senior to all security interests in, liens on, or claims against any of the DIP Collateral (subject and subordinate to the Carve Out in all respects), including any lien or security interest that is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; (ii) shall be valid and enforceable (a) against any trustee appointed in the Chapter 11 Cases or any Successor Case, (b) upon the conversion of any of the Chapter 11 Cases to any Successor Case, and/or (c) upon the dismissal or conversion of any of the Chapter 11 Cases or Successor Cases; (iii) shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases; and (iv) shall not be subject to any of sections 510, 549, or 550 of the Bankruptcy Code; *provided*, that the DIP Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any DIP Liens prior to collecting from any other DIP Collateral.

5.      *DIP Superpriority Claims.* Subject only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (without the need to file any proof of claim) to the extent set forth in the Bankruptcy Code (the "***DIP Superpriority Claims***"),

having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c) (upon entry of this Final Order), 507, 546(c), 552(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (except for Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims) to the extent provided in the DIP Loan Documents, the Interim Orders, or this Final Order, including all applicable DIP Collateral, subject and subordinate to the payment of the Carve Out as provided for herein and pursuant to the DIP Loan Documents; *provided*, that the DIP Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any DIP Superpriority Claims prior to collecting from any other DIP Collateral.

6.      *Adequate Protection*. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to Adequate Protection of their Prepetition Liens in Prepetition Collateral (including Cash Collateral), as follows (collectively, the "***Adequate Protection Obligations***"):

-28-

(a)      *Adequate Protection Claims*. The Prepetition Loan Agent, for the benefit of the Prepetition Secured Parties, is hereby granted, on a final basis, in the amount of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "*Adequate Protection Claims*") against each of the Debtors. The Adequate Protection Claims shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, and (b) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever; *provided*, that the Prepetition Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any Adequate Protection Claims prior to collecting from any other DIP Collateral.

(b)      *Adequate Protection Liens*. The Prepetition Loan Agent, for the benefit of itself and the Prepetition Secured Parties, is hereby granted, on a final basis, effective and perfected as of the entry of the First Interim Order and as reaffirmed by the Second Interim Order and this Final Order (and without the necessity of the execution, recordation or filing by the DIP Loan Parties or the DIP Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), in the amount of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, valid, binding, enforceable and automatically perfected liens and security interests in the DIP Collateral (the "*Adequate Protection Liens*"). For the avoidance of doubt, the Adequate Protection Liens do not include

-29-

Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims. The Adequate Protection Liens are senior to all other liens on, or claims against any of the DIP Collateral, but subject and subordinate only to (i) the Carve Out in all respects and (ii) the DIP Liens, it being understood that notwithstanding anything to the contrary in the Interim Orders or this Final Order, in no circumstances and at no time in these Chapter 11 Cases or in any Successor Case shall the Adequate Protection Liens be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time; *provided*, that the Prepetition Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any Adequate Protection Liens prior to collecting from any other DIP Collateral.

(c)     *Adequate Protection Professional Fees and Expenses*. The DIP Loan Parties are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs and expenses of the Prepetition Loan Agent, including, without limitation, the reasonable and documented fees and expenses of Faegre Drinker Biddle & Reath LLP, legal counsel to the Prepetition Loan Agent (the "***Adequate Protection Professional Fees and Expenses***"), incurred since the Petition Date and relating in any way to the provision of legal services related to the Prepetition Secured Obligations, the Debtors, or the Chapter 11 Cases. The Adequate Protection Professional Fees and Expenses shall be subject to the review procedures set forth in paragraph 7 of this Final Order.

(d)     *Reporting*. The Debtors shall provide the Prepetition Loan Agent (for the benefit of the Prepetition Secured Parties) and counsel to the Official Committee (and their respective advisors) with all written reports delivered to the DIP Secured Parties under the DIP Loan Documents and this Final Order. Upon any or all DIP Obligations being paid in full, the

Prepetition Loan Agent (for the benefit of the Prepetition Secured Parties) shall continue to be entitled hereby to satisfaction of such reporting rights unless and until the applicable Prepetition Secured Obligations of the Prepetition Secured Parties are also paid in full.

7.      *Review of Professional Fees and Expenses.* The payment of all DIP Professional Fees and Expenses and Adequate Protection Professional Fees and Expenses hereunder shall be made without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's guidelines and shall not be subject to further application to or approval of the Court; *provided*, *however*, that each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee (collectively, the "***Review Parties***"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "***Review Period***").  For the avoidance of doubt, the fees provided for in this Final Order must be reasonable. Although the U.S. Trustee fee guidelines do not specifically apply, professionals shall submit time and expense detail entries to the U.S. Trustee, as well as any further information or back up documentation requested by the U.S. Trustee to determine the reasonableness of the invoiced amount of the DIP Professional Fees and Expenses and Adequate Protection Professional Fees and Expenses.  Invoices for such fees and expenses provided to any party other than the U.S. Trustee shall not be required to include any information

-31-

subject to the attorney-client privilege, joint defense privilege, bank examiner privilege, or any information constituting attorney work product, and time and expense detail entries and other information provided solely to the U.S. Trustee shall be returned or destroyed after the U.S. Trustee has reviewed such material and any objections to the applicable fees and expenses have been resolved upon request of the applicable professional.  Furthermore, the provision of invoices, time entries or other information pursuant to the terms hereof shall in no event constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtors shall promptly pay such invoices following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtors shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court.

8.      *Modification of Automatic Stay*. The automatic stay imposed by section 362(a) of the Bankruptcy Code (the "***Automatic Stay***") is hereby vacated and modified, on a final basis, without application to or further order of this Court, to permit: (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens, (b) the DIP Loan Parties to incur all DIP Obligations as contemplated under this Final Order and the DIP Loan Documents, (c) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Secured Parties request to ensure the perfection and priority of the Adequate Protection Liens, (d) the DIP Loan Parties to incur all liabilities and obligations to the Prepetition Secured Parties, including all Adequate Protection Obligations, as contemplated

under the Interim Orders, this Final Order, and the DIP Loan Documents, (e) subject to paragraph 11 of this Final Order, the DIP Secured Parties and the Prepetition Secured Parties to exercise, upon the occurrence of any DIP Termination Event (as defined below), all rights and remedies provided for in this Final Order, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, and (f) the DIP Loan Parties to perform under this Final Order and the DIP Loan Documents, and to take any and all other actions that may be reasonably necessary or required for the performance by the DIP Loan Parties under the Interim Orders, this Final Order, and the DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder.

9.      *Perfection of DIP Liens and Adequate Protection Liens*.

(a)      The Interim Orders (as reaffirmed by this Final Order) and this Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Loan Documents, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action to take possession or control of any DIP Collateral, to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect, or prioritize such liens), it being understood that notwithstanding anything to the contrary in the Interim Orders or this Final Order, in no circumstances and at no time in these Chapter 11 Cases or in any Successor Case shall the

-33-

Adequate Protection Liens be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time.

(b) The DIP Secured Parties and the Prepetition Secured Parties are each authorized, but not required, to (and if requested by the DIP Agent and/or the Prepetition Loan Agent, the DIP Loan Parties shall) execute, file, and record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction in order to validate, perfect, preserve, and enforce the liens and security interests granted to them hereunder or under the DIP Loan Documents (each, a "**Perfection Action**"). Whether or not the DIP Agent or the Prepetition Loan Agent determine, in their sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable, and shall not be subject to challenge, dispute, or subordination (except, with respect to subordination, to the extent expressly contemplated herein) as of the entry of the First Interim Order (as reaffirmed by the Second Interim Order and this Final Order).

10. *Cash Collateral and DIP Termination Events; Exercise of Remedies.*

(a) *DIP Termination Events.* Subject to any obligations under the Carve Out and any applicable grace period under the DIP Loan Documents and this Final Order, the occurrence of an "Event of Default" (with respect to the DIP Facility) (occurring after the "Fourteenth Amendment Effective Date"(as defined in the DIP Loan Agreement)) under and as defined in the DIP Loan Agreement shall constitute a "**DIP Termination Event**," in each case, unless waived in writing by the DIP Agent (at the direction of the Required DIP Lenders), which waiver may be evidenced by electronic mail from counsel to the DIP Agent.

(b)      *Exercise of Remedies.* Upon the occurrence and during the continuation of a DIP Termination Event, without further application, notice, hearing or order of the Court, the Automatic Stay shall automatically be deemed vacated and modified to the extent necessary to permit the DIP Agent (acting at the instruction of the requisite DIP Lenders under the DIP Loan Agreement) and the Prepetition Loan Agent (acting at the instruction of the requisite Prepetition Secured Parties under the applicable Prepetition Loan Documents), to deliver a written notice (which may be via electronic mail) to counsel for the Debtors, the U.S. Trustee, and counsel for the Official Committee (the "***Remedies Notice***") to declare the occurrence of a DIP Termination Event (such date, the "***DIP Termination Declaration Date***") and, subject to the Carve Out in all respects and effective no sooner than seven (7) calendar days following the DIP Termination Declaration Date (the "***Remedies Notice Period***"), (i) terminate, reduce or restrict the commitments under the DIP Facility (to the extent any such commitment remains), (ii) accelerate and declare all DIP Obligations to be immediately due and payable, (iii) terminate the DIP Facility and the DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims or the DIP Obligations, (iv) terminate, restrict or revoke the ability of the Debtors to use Cash Collateral, (v) charge interest at the default rate set forth in the DIP Loan Agreement, and/or (vi) exercise or enforce any rights against DIP Collateral or Prepetition Collateral (as the case may be); *provided*, *however*, that the DIP Loan Parties and the Official Committee shall, during the Remedies Notice Period, be entitled to seek emergency relief before the Court, subject to the Court's availability ("***Emergency Motion***") (in which case, the Remedies Notice Period shall automatically extend until the Court's adjudication of such Emergency Motion). Unless the Court orders otherwise, upon the expiration of the Remedies Notice Period the Automatic Stay shall automatically be deemed terminated, without

-35-

further notice, hearing or order of the Court, and the DIP Agent and/or the Prepetition Secured Parties (each acting at the direction of the requisite parties under the applicable documents) shall be permitted to exercise all remedies set forth herein, in the DIP Loan Documents and/or the Prepetition Loan Documents (as applicable) or applicable law.

(c)      *Use of Cash Collateral During Remedies Notice Period.* During the Remedies Notice Period, the Debtors shall be permitted to use Cash Collateral solely to (i) fund payroll and critical expenses that are necessary to keep the Debtors' business operating or that have been consented to by the DIP Agent with the consent of the "Required DIP Lenders" under the DIP Loan Agreement (the "***Required DIP Lenders***"), (ii) fund the Carve Out, and (iii) file an Emergency Motion.

(d)      *No Waiver for Failure to Seek Relief.*  The failure or delay of the DIP Agent, any of the other DIP Secured Parties, or any of the Prepetition Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

11.   *Carve Out.*

(a)      *Priority of Carve Out.* For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Orders and this Final Order, the DIP Loan Documents and the Prepetition Loan Documents, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations shall be subject and subordinate to payment of the Carve Out in all respects.

The Carve Out shall have such priority claims and liens over all assets of the Debtors, including any DIP Collateral and any Prepetition Collateral.

(b)      *Carve Out.* The term "**Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $100,000 incurred by a trustee appointed under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed by the Court at any time, whether by interim order, final order, procedural order, or otherwise, all accrued but unpaid fees and expenses (the "***Allowed Professional Fees***") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***") and the Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***") at any time on and before the first Business Day following delivery by the DIP Agent (at the instruction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors or the Official Committee that are fully earned, due and payable pursuant to the terms of the applicable engagement letters or retention applications prior to the delivery of a Carve Out Trigger Notice) (the amounts set forth in the foregoing clauses (i), (ii) and (iii), the "***Pre-Carve Out Notice Amount***"), and (iv) Allowed Professional Fees of Professional Persons incurred after the first Business Day of delivery the Carve Out Trigger Notice by the DIP Agent (at the instruction of the Required DIP Lenders), in an aggregate amount not to exceed $2,500,000 (the aggregate amount set forth in this clause (iv), the "***Post-Carve Out Notice Amount***").

-37-

(c)    *Carve Out Trigger Notice*. For purposes of this Final Order, the "***Carve Out Trigger Notice***" shall mean a written notice (which may be via electronic mail) delivered by the DIP Agent (acting at the direction of the Required DIP Lenders) to the Notice Parties, which notice may be delivered following the occurrence of a DIP Termination Event, stating that the Carve Out has been triggered and the Post-Carve Out Notice Amount has been invoked. The Carve Out Trigger Notice may be included in a Remedies Notice.

(d)    *Fee Estimates*.  Not later than 6:00 p.m. New York time on Friday (or the last Business Day) of each week starting with the first full calendar week following the Closing Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (other than any restructuring, sale, success, capital raising, or other transaction fee of any investment bankers or financial advisors) (collectively, "***Estimated Fees and Expenses***") incurred during the preceding week by such Professional Person (through Saturday of such week, the "***Calculation Date***"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "***Weekly Statement***"); *provided*, that, within one Business Day of the occurrence of the Carve Out Trigger Date (as defined below), each Professional Person shall deliver one additional statement (the "***Final Statement***") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Carve Out Trigger Date.

(e)    *Carve Out Reserves*.

(i)    Commencing with the week ending on June 20, 2026, and (solely with respect to clauses (A) and (C) below) on or before the Wednesday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered to the Debtors for each preceding week from the Petition Date through and ending on the most recent Calculation Date, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, through and including the week ending with the most recent Calculation Date, *plus* (B) the Post-Carve Out Notice Amount, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, for the two weeks occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust (the "***Funded Reserve Account***") to pay such Allowed Professional Fees (the "***Funded Reserves***") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Carve Out Trigger Date shall be paid first from such Funded Reserve Account.

(ii)    On the date on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors (the "***Carve Out Trigger Date***"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund into segregated accounts as follows:  (i) the Debtors shall first deposit and hold such amounts in a segregated account designated by the DIP Agent in trust to pay such then unpaid Allowed Professional Fees

(the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Carve Out Trigger Date and after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor, to fund a reserve in an amount equal to the Post-Carve Out Notice Amount (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.

(iii)    To the extent the amount of any portion of the obligations benefitting from the Carve Out is not known to the Debtors as of the Carve Out Trigger Date, then the Debtors shall deposit such amount into the Pre-Carve Out Trigger Notice Reserve or Post-Carve Out Trigger Notice Reserve, as applicable, on the date such amount becomes known to the Debtors (or otherwise as soon as practicable thereafter).

(f)    *Application of Carve Out Reserves*.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the Pre-Carve Out Notice Amount, but not, for the avoidance of doubt, the Post-Carve Out Notice Amount, until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed first to the DIP Agent on account of the applicable DIP Obligations until indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as set forth in this Final Order.

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the Post-Carve Out Notice Amount.  If the Post-Carve Out Trigger Notice Reserve has not

-40-

been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed to the DIP Agent on account of the applicable DIP Obligations until indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as set forth in this Final Order.

(iii)     Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 11, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Notice Amount and Post-Carve Out Notice Amount, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 11, to the extent of any shortfall in funding prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable.

(iv)     Notwithstanding anything to the contrary in this Final Order, the DIP Loan Documents or the Prepetition Loan Documents, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded pursuant to this paragraph 11. The Carve Out Reserves shall not be subject to the control of any of the DIP Secured Parties or the Prepetition Secured Parties, and shall not be subject to the DIP Liens or the Adequate Protection Liens, nor shall the Carve Out constitute DIP Collateral or Prepetition Collateral; *provided*, *however*, that the DIP Secured Parties and the Prepetition Secured Parties shall have a security interest in and lien on any residual cash in the Carve Out Reserves (in accordance with the priorities set forth in this Final Order and the DIP Loan Documents), with any excess cash paid as provided in paragraphs 11(f)(i), (ii) and (iii)

-41-

above and in accordance with the DIP Loan Documents.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

(v)     Notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Loan Documents or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall, and (iii) in no way shall the Initial DIP Budget, Approved DIP Budget, Approved Cash Collateral Budget, Carve Out, Pre-Carve Out Notice Amount, Post-Carve Out Notice Amount, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(g)     *Payment of Allowed Professional Fees*.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.  Any payment or reimbursement made after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve Out Trigger Date shall permanently reduce the Post-Carve Out Notice Amount on a dollar-for-dollar basis.

(h)     *No Direct Obligation to Pay Allowed Professional Fees.* None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement

of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(i)      *Distribution of Funded Reserves Following Repayment of DIP Obligations*.  If a Carve Out Trigger Notice has not been delivered prior to repayment and discharge of all DIP Obligations, upon approval of final fee applications for the Professional Persons and payment of all unpaid Allowed Professional Fees, any amount remaining in the Funded Reserve Account shall automatically revert to the Debtors to be paid pursuant to an Acceptable Plan; *provided*, that a professional fee reserve (or similar arrangement) contemplated by any chapter 11 plan confirmed in the Chapter 11 Cases with respect to the unpaid fees and expenses of any Professional Person shall be funded first from amounts held in the Funded Reserve Account.

12.      *Effect of the Debtors' Stipulations on Third Parties.*

(a)      The Debtors' Stipulations shall be binding upon the Debtors and any successor thereto immediately upon entry of the First Interim Order (and as reaffirmed by the Second Interim Order and this Final Order). The Debtors' Stipulations shall be binding upon all parties-in-interest, including, without limitation, the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors' estates (including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) (collectively, "*Successor Entities*"), unless the Official Committee or such other party-in-

-43-

interest (i) files a motion seeking the requisite standing and authority to bring the Challenge (if and to the extent standing is required under applicable law) prior to the Challenge Deadline,[5] which motion shall describe the specific nature and basis of the Challenge and attach a draft complaint (the "***Standing Motion***"), and such standing is obtained pursuant to an order of the Court, (ii) timely and properly commences and serves an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than the Challenge Deadline, asserting a Challenge with respect to the amount, validity, perfection, enforceability, priority, scope or extent of the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Collateral or the Prepetition Loan Documents, or otherwise Challenging any of the Debtors' Stipulations, and (iii) obtains a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such Challenge.

(b)     If no such Standing Motion (to the extent required) or Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of plaintiff in any such timely and properly filed Challenge Proceeding (or if such Standing Motion or Challenge Proceeding is withdrawn), then, without application to or further order of the Court, (i) each of the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, any Official Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any Successor Entities), (ii) the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the

---

[5] "***Challenge Deadline***" means (i) for the Official Committee, July 31, 2026, (ii) for all other parties in interest (except for the Official Committee), the date that is the earlier of (A) August 22, 2026 and (B) the commencement of the Sale Hearing, or (iii) any such later date as (x) has been agreed to by the Debtors and the applicable DIP Agent or Prepetition Loan Agent or (y) has been ordered by the Court for cause upon a motion filed and served within any applicable period; *provided*, *further*, that if a party in interest (including the Official Committee) files a Standing Motion before the end of the Challenge Deadline specified herein, then the Challenge Deadline shall be tolled during the pendency of such Standing Motion (but solely for the party seeking standing).

Prepetition Loan Documents prior to the Petition Date shall constitute allowed claims against each of the applicable Debtors in the Chapter 11 Cases and any Successor Cases, and the Prepetition Liens shall forever be deemed to be legal, valid, binding, continuing, non-avoidable, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases with the priorities set forth in this Final Order, (iii) the Prepetition Secured Obligations and the Prepetition Liens shall not be subject to any other or further Challenge by any person or entity, and all parties in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action (including any Successor Entity, whether such Successor Entity is appointed or elected prior to or following the expiration of the Challenge Period), and (iv) any and all Challenges of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Prepetition Secured Parties shall be deemed forever waived, released and barred.

(c)    If any such Standing Motion (to the extent required) or Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, and any other party-in-interest (including, without limitation, any Successor Entities), except to the extent that any of the admissions, stipulations, findings, or releases contained in the Debtors' Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-in-interest).

(d)    Nothing in this Final Order vests or confers on any person or entity, including any Official Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party-in-interest standing or authority to pursue any

-45-

Challenge belonging to the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any Acceptable Plan.

(e) The Prepetition Secured Parties stipulate and agree that each of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of limited liability companies, and if the Official Committee or other party in interest pursues or brings forth such a Challenge, the defendant Prepetition Secured Party of such Challenge shall not object on the grounds that the Official Committee or other party in interest lacks standing to file derivative suits on behalf of limited liability companies; *provided*, that all other standing arguments and defenses shall be preserved.

13. *Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve Out*. None of the DIP Facility, the DIP Collateral, the Prepetition Collateral (including Cash Collateral of the Prepetition Secured Parties) or the proceeds thereof, or any portion of the Carve Out, may be used directly or indirectly for any of the following (each such prohibited use, a "***Prohibited Action***"): (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition Secured Parties (in each case, in their capacities as such) or seeking relief that would impair the rights or remedies of the DIP Secured Parties or the Prepetition Secured Parties (in each case, in their capacities as such) under the DIP Loan Documents, this Final Order, the Prepetition Loan Documents, including for the payment of any services rendered by the Professional Persons in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested

matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations or any of the Prepetition Secured Obligations or otherwise, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations, the DIP Superpriority Claims, or the DIP Secured Parties' liens or security interests in the DIP Collateral or the Prepetition Collateral, or the Prepetition Secured Obligations, the Adequate Protection Obligations, or the Prepetition Secured Parties' liens or security interests in the Prepetition Collateral or the DIP Collateral, or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties (in each case, in their capacities as such), or their respective liens on or security interests in the DIP Collateral or the Prepetition Collateral or the DIP Superpriority Claims, that would impair the ability of the DIP Secured Parties or the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations, the Prepetition Secured Obligations, or the Adequate Protection Obligations; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of any of the Prepetition Secured Parties related to any of the Prepetition Secured Obligations, or by or on behalf of the DIP Secured Parties related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any Avoidance Actions related to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, Adequate Protection Obligations, or any payment made to the Prepetition Secured

-47-

Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (i) any of the DIP Liens, the DIP Superpriority Claims, or any other rights or interests of the DIP Secured Parties related to the DIP Obligations or the DIP Liens, or (ii) any of the Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Claims, Adequate Protection Liens, Adequate Protection Obligations, or any other rights or interests of any of the Prepetition Secured Parties; *provided*, that no more than $250,000 (the "***Challenge Budget***") of the DIP Collateral, the Prepetition Collateral (including Cash Collateral of the Prepetition Secured Parties), or the DIP Facility, in the aggregate, may be used by (x) any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases or (y) the Official Committee, solely to investigate (but not to prosecute) the foregoing matters with respect to the Prepetition Liens or the Prepetition Secured Obligations (but not claims and/or liens of the DIP Secured Parties) within the Challenge Deadline.

14.     *Payments Held in Trust.* Except as expressly permitted in this Final Order or the DIP Loan Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to payment in full in cash of all DIP Obligations under the DIP Loan Documents and termination of the DIP Commitments in accordance with the DIP Loan Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the other DIP Secured Parties and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance

with the DIP Loan Documents and this Final Order. For the avoidance of doubt, this paragraph 14 will not apply to payments made or assets transferred by the Debtors as authorized under the DIP Loan Documents, the Bankruptcy Code, or any order of the Court.

15.     *Proceeds of Subsequent Financing*. Nothing in this Final Order shall be deemed to prohibit the Debtors from seeking authority to obtain, or from obtaining, additional or replacement debtor-in-possession financing pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code or otherwise; *provided*, *however*, that no such financing shall be effective, and no liens, claims, or priorities granted in connection therewith shall attach to any property of the Debtors' estates, unless and until (a) all DIP Obligations have been indefeasibly paid in full in cash, (b) all DIP Liens and DIP Superpriority Claims granted pursuant to the Interim Orders, this Final Order, and the DIP Loan Documents have been fully satisfied, (c) all Adequate Protection Obligations (including the Adequate Protection Claims and the Adequate Protection Liens) have been paid, satisfied, and released in full, and (d) the DIP Lenders' commitments to extend credit under the DIP Facility have been terminated in accordance with the DIP Loan Documents. In furtherance of the foregoing, if the Debtors, their estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time before the repayment in full in cash of all of the DIP Obligations, the satisfaction of the DIP Liens and DIP Superpriority Claims, the payment in full of the Adequate Protection Obligations, and the termination of the DIP Lenders' commitments to extend credit under the DIP Facility, then, unless otherwise agreed by the DIP Agent (acting at the direction of the Required DIP Lenders), all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, subject to the Carve

Out, to be applied in accordance with the DIP Loan Documents until the repayment in full in cash of all DIP Obligations and all Adequate Protection Obligations.

16.     *Limitation on Charging Expenses Against Collateral; Waivers.*

(a)     *Limitations on Charging Expenses Against Collateral*.  Upon entry of this Final Order, in accordance with Bankruptcy Local Rule 4001-2(g)(9), except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral, the DIP Secured Parties, or the Prepetition Secured Parties pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any similar principle of law or equity, without the prior written consent of the DIP Secured Parties, and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties, or the Prepetition Secured Parties.

(b)     *No Marshaling*.  Upon entry of this Final Order, in accordance with Bankruptcy Local Rule 4001-2(g)(9), the DIP Agent shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition Collateral, as applicable, in accordance with the provisions of this Final Order, the DIP Loan Documents or the Prepetition Loan Documents, as applicable, and in no event shall the DIP Secured Parties, or any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral.  Nothing herein affects the Court's ability to direct marshaling.

(c)     *Equities of the Case*.  Upon entry of this Final Order, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code

-50-

and no party shall invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code, in each case with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral.

17. *Section 507(b) Reservation*. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties, that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral; *provided*, *however*, that any such additional section 507(b) claims shall be subject to the same relative priority as such party's Adequate Protection Claims, as provided in this Final Order.

18. *Credit Bid*.

(a) Subject to the lien priorities set forth herein and the Bidding Procedures Order, (i) the DIP Agent (acting at the direction of the Required DIP Lenders), on behalf of itself and the other DIP Secured Parties, shall have the right to credit bid, in accordance with the DIP Loan Documents, all or any portion of the DIP Obligations in any sale of the DIP Collateral (or any portion thereof), in accordance with the terms and conditions set forth therein and (ii) subject only to the rights of parties-in-interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations contained therein), the Prepetition Loan Agent (acting at the direction of the applicable requisite Prepetition Lenders), on behalf of itself and the other Prepetition Secured Parties, shall have the right, consistent with the provisions of the Prepetition

Loan Documents, as applicable, to credit bid up to the full amount of the Prepetition Secured Obligations (including any Adequate Protection Obligations) in the sale of the Prepetition Collateral (or any portion thereof), in each case without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

19.     *Binding Effect; Successors and Assigns*. Immediately upon entry of the First Interim Order (and as reaffirmed by the Second Interim Order and this Final Order), subject to paragraph 12 of this Final Order, the DIP Loan Documents and this Final Order, including all findings of fact and conclusions of law herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Official Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and their respective successors and assigns; *provided*, *however*, that, for the avoidance of doubt, the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

20. *Protection of the Debtors, the DIP Agent, the DIP Secured Parties, and the Prepetition Secured Parties*.

(a) *Reservation of Rights of the DIP Agent, Other DIP Secured Parties, and the Prepetition Secured Parties*. Except as otherwise expressly set forth in this Final Order (including the relative priorities set forth in the DIP Loan Agreement), the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of any of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; (ii) any of the rights of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties to (A) request modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, or (C) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (iii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the other DIP Secured Parties, or any Prepetition Secured Parties.

(b) *No Waiver for Failure to Seek Relief*. The failure or delay of the DIP Agent, any of the other DIP Secured Parties, and/or any of the Prepetition Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

21. *Release.* Subject to paragraph 12 solely regarding Challenges by parties other than the Debtors in respect of the Prepetition Secured Parties, the Prepetition Liens, and the Prepetition Secured Obligations, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, successors, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Secured Parties, the Prepetition Secured Parties (in each case, in their capacities as such), and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds, or investment vehicles, managed, advised, or sub-advised accounts, funds, or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, each in their capacity as such (collectively, the "**Released Parties**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation, or by contract, of every nature and description that exist on the date hereof including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties, and (iv) any and all claims and causes of action regarding the validity, priority, extent,

-54-

enforceability, perfection, or avoidability of the liens or claims of the Prepetition Secured Parties; *provided*, that (x) the release set forth in the foregoing clause (iii) in respect of the Delayed Draw Interim New Money DIP Loans, the DIP Liens in respect of the Delayed Draw Interim New Money DIP Loans and any other DIP Obligations approved by the Interim Orders were effective upon entry of the applicable Interim Orders (and as reaffirmed by this Final Order) and (y) the release set forth in this paragraph shall not release any claims or liabilities against a Released Party that a court of competent jurisdiction pursuant to a final, non-appealable order determines primarily result from the bad faith, fraud, gross negligence, or willful misconduct of such Released Party. For the avoidance of doubt, nothing in this paragraph shall relieve the DIP Secured Parties, the Prepetition Secured Parties, or the Debtors of their obligations hereunder or under the DIP Loan Documents.

22.     *Limitation of Liability*.   In determining to make any loan under the DIP Loan Documents, permitting the use of any Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to the Interim Orders, this Final Order, the DIP Loan Documents, or the Prepetition Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties (in each case, solely in their capacities as such) shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors or their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order, the DIP Loan Documents, or the Prepetition Loan Documents shall in

any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or any Prepetition Secured Parties (solely in their capacities as such) of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors or their direct or indirect subsidiaries.

23.     *Insurance*.  Upon entry of the First Interim Order (and as reaffirmed by the Second Interim Order and this Final Order), the DIP Agent shall be deemed to be, without any further action or notice, named as an additional insured and lender's loss payee on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

24.     *Preservation of Rights Granted Under This Final Order.*

(a)     Subject to the Carve Out and to the extent provided in this Final Order and the Permitted Prior Senior Liens, other than as set forth in this Final Order, DIP Liens shall not be made subject to, junior to, or *pari passu* with (A) any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date or (B) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and (ii) no claim shall be granted for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior to or equal to the DIP Superpriority Claims.

(b)     Subject to the Carve Out, the DIP Liens, and the Permitted Prior Senior Liens, each to the extent provided in this Final Order, (i)  none of the Adequate Protection Liens or the Prepetition Liens shall be made subject to and/or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date, (ii) the Adequate Protection Liens shall not be subject to, junior to, or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and (iii) absent further order of the Court (with respect to which the Prepetition Secured Parties

-56-

reserve all rights), no claim shall be granted for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior or equal to the Adequate Protection Claims or the Prepetition Secured Obligations.

(c)      If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any reversal, modification, vacatur, or stay of any use of Cash Collateral, DIP Obligations, DIP Liens, Adequate Protection Obligations, or Adequate Protection Liens incurred by the DIP Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay, such use of Cash Collateral, DIP Obligations, DIP Liens, Adequate Protection Obligations, or Adequate Protection Liens shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in sections 364(e) and 363(m) of the Bankruptcy Code, the Interim Orders, this Final Order, and the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)      Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code: (i) the DIP Superpriority Claims, the Adequate Protection Claims, the DIP Liens, and the Adequate Protection Liens, and any claims

-57-

related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been paid in full or otherwise satisfied in accordance with this Final Order or the DIP Loan Documents (and that such DIP Superpriority Claims, Adequate Protection Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(e)      Except as expressly provided in this Final Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the Adequate Protection Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Loan Documents shall survive, shall maintain their priority as provided in this Final Order, and shall not be modified, impaired, or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases. The terms and provisions of this Final Order and the DIP Loan Documents shall continue in the Chapter 11 Cases, in any Successor Cases if the Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and (x) the DIP Liens and the DIP Superpriority Claims, and all other rights and remedies of the DIP

Agent and the DIP Lenders, granted by the provisions of the Interim Orders, this Final Order, and the DIP Loan Documents shall continue in full force and effect until consummation of an Acceptable Plan with respect to the Debtors or, the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Loan Documents, and the DIP Commitments have been terminated and (y) the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the Prepetition Loan Agent and the Prepetition Secured Parties granted by the provisions of the Interim Orders, this Final Order, and the DIP Loan Documents shall continue in full force and effect until the earlier of (A) consummation of an Acceptable Plan and (B) the Prepetition Secured Obligations and all Adequate Protection Obligations have been indefeasibly repaid in full in cash.

(f)     Nothing in this Final Order shall modify, prime, limit, alter, or expand any terms of any surety bonds, any related indemnity agreements, and/or any rights of the Debtors' sureties in any of their collateral.

(g)     Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge by any party in interest in accordance with paragraph 12 hereof and to the extent required by Local Rule 4001-2(g)(5), the Court reserves the right to unwind or partially unwind the DIP Roll-Up Loans, after notice and a hearing, in the event that there is a timely and successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition Secured Obligations or Prepetition Liens, and/or a determination that the Prepetition Secured Obligations were under-secured as of the Petition Date and, as a result of which, in each case, the Roll-Up Loans unduly advantaged the Prepetition Secured Parties; *provided*, that to the extent any DIP Roll-Up Loans are unwound or partially unwound by a final

and non-appealable order, the corresponding Prepetition Secured Obligations shall be reinstated to the status, priority, and security position held immediately prior to their conversion.

25.    *Leased Premises.*

(a)    Notwithstanding anything to the contrary in this Final Order, DIP Liens and Adequate Protection Liens shall not encumber and DIP Collateral shall not include (i) leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases), (ii) any security deposits (in possession of the Debtors or the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; *provided*, that the DIP Liens and Adequate Protection Liens shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors, if at all, as well as any proceeds or value of such leasehold interests whether by sale, financing, or other disposition or form of transfer, termination or transaction, or (iii) leasehold interests (other than any or all proceeds thereof) of certain real property lease agreements identified on Schedule 1 to the Debtors' *Omnibus Motion for an Order (I) Approving the Rejection of Certain Real Property Lease Agreements, (II) Approving the Abandonment of Certain Excess Property, and (III) Granting Related Relief* [ECF No. 18]; *provided*, *further*, any liens or rights granted herein relating to the Debtors' insurance policies shall not interfere with any rights held by a landlord under such policies to any such insurance proceeds for damage to landlord's property.

(b)    The DIP Agent's or the Prepetition Loan Agent's exercise of their remedies pursuant to paragraph 10 hereof and under the DIP Loan Documents and the Prepetition Loan Documents shall be subject to, as may be applicable: (a) any agreement in writing between the

-60-

DIP Agent or Prepetition Loan Agent and any applicable landlord; (b) pre-existing rights of the DIP Agent or Prepetition Loan Agent, and any applicable landlord under applicable non-bankruptcy law; (c) written consent of the applicable landlord; or (d) further order of this Court following notice and a hearing.

(c) *Stub Rent Reserve*. Subject to the terms and conditions of the DIP Loan Documents (except with respect to the funding, use, and disbursement of the Stub Rent Reserve as specifically provided in this paragraph 25(c)) and this Final Order, by no later than two (2) business days following the entry of this Final Order, the Debtors shall fund into a segregated account (the "**Stub Rent Reserve**") an amount of $5,193,168 in accordance with the Approved DIP Budget on account of unpaid lease obligations due under property leases to which a Debtor is party (solely to the extent that such obligations constitute valid claims) for the period from June 12, 2026 through June 30, 2026 (the "**Stub Rent Claims**").

a. The DIP Liens, the Prepetition Liens, and the Adequate Protection Liens shall attach to the amounts contained in the Stub Rent Reserve with the same validity, extent, enforceability, and priority as set forth in this Final Order with respect to the DIP Collateral and the Prepetition Collateral without the necessity of a control agreement or any other Perfection Action. For the avoidance of doubt, the Stub Rent Reserve and all amounts on deposit therein shall constitute DIP Collateral and Prepetition Collateral for all purposes of this Final Order and the DIP Loan Documents, *provided*, that upon the occurrence and continuation of a DIP Termination Event, the DIP Agent shall not exercise the rights and remedies in paragraph 10 with respect to the Stub Rent Reserve without further order of the Court with notice to lease counterparties and an opportunity to be heard.

b.      The funds contained in the Stub Rent Reserve shall only be used to pay Stub Rent Claims until all such Stub Rent Claims have been paid in full in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable. For each applicable lease agreement, the Stub Rent Claims thereunder shall be paid from the Stub Rent Reserve to such lease's counterparty upon the earlier of (i) the effective date of assumption of such lease (unless otherwise agreed by the affected counter party), or (ii) upon the effective date of rejection of the affected lease. Upon payment in full of all valid Stub Rent Claims, any amounts remaining on deposit in the Stub Rent Reserve shall automatically, without further action or order of this Court, be returned to the Debtors' general operating accounts and shall be available for use by the Debtors solely in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, and the terms and conditions of the DIP Loan Documents and this Final Order.

c.      Nothing in this paragraph 25(c), the funding of the Stub Rent Reserve, or the payment of any amounts from the Stub Rent Reserve shall constitute a finding or determination by this Court regarding the validity, amount, or priority of any Stub Rent Claim and nothing herein shall be deemed to grant to any landlord or other party any lien on, security interest in, or other interest in or right to the Stub Rent Reserve or the amounts on deposit therein that is senior to or pari passu with the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the DIP Superpriority Claims, or the Adequate Protection Claims.

26.    *Consent to Liens*. To the extent provided in the Interim Orders or this Final Order, each of the Prepetition Secured Parties is deemed to consent to and agrees not to contest: (a) the grant of all DIP Liens and the Adequate Protection Liens and (b) any changes to priority resulting

from the DIP Liens and the Adequate Protection Liens of the Prepetition Liens granted by the Debtors.

27.     *Proofs of Claim.*  None of the DIP Secured Parties or the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and the stipulations in paragraph F shall be deemed to constitute a timely filed proof of claim with respect to the Prepetition Secured Obligations against each of the Debtors in the Chapter 11 Cases.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the DIP Secured Parties, the Prepetition Loan Agent, on behalf of itself and the other Prepetition Secured Parties, are each authorized and entitled, but not required, to file (and amend and/or supplement, as the respective agents see fit) a master proof of claim on account of any and all of the respective claims arising under the DIP Facility or Prepetition Loan Documents, as applicable (the "***Master Proof of Claim***").  For administrative convenience, any Master Proof of Claim authorized herein may be filed in the case of Debtor Sleep Number Corporation with respect to all amounts asserted in such Master Proof of Claim, and such Master Proof of Claim shall be deemed to be filed and asserted by the applicable entity or entities against every Debtor asserted to be liable for the applicable claim.  For the avoidance of doubt, the provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including not affecting the numerosity requirements set forth in section 1126 of the Bankruptcy Code.  Neither the DIP Agent nor the Prepetition Loan Agent shall be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the

DIP Agent and other DIP Secured Parties, or the Prepetition Secured Parties, as applicable, which instruments, agreements, or other documents will be provided (subject to any applicable confidentiality restrictions) upon written request to counsel to the DIP Agent or the Prepetition Loan Agent, as applicable. Any order entered by the Court in relation to the establishment of a bar date for any claim (including any administrative claim) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Secured Parties or Prepetition Secured Parties. For the avoidance of doubt, none of the DIP Secured Parties or the Prepetition Secured Parties will be required to file any request for allowance and/or payment of any administrative expenses, and the Interim Orders and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations or Adequate Protection Claims constituting administrative expenses or any DIP Obligations or DIP Superpriority Claims constituting administrative expenses, as applicable.

28.     *Effectiveness*. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 4001(c)(1), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

29.     *DIP Loan Documents; DIP Obligations, etc.* Notwithstanding that the DIP Loan Documents (and the "Loan Documents" referred to therein) govern both the terms of the DIP Facility and the Prepetition Secured Obligations, nothing therein or in this Final Order shall be interpreted to cause any Prepetition Secured Obligations to be (or be deemed to be) "DIP Loans" or to be afforded the treatment of DIP Loans (including by being secured by the DIP Liens and/or

to be treated as DIP Superpriority Claims), except solely in the case of DIP Roll-Up Loans, and in such case, subject to the limitations set forth in this Final Order.  Except as otherwise expressly set forth herein with respect to the Prepetition Secured Obligations (being directly referred to as such in such instances), for the further avoidance of doubt, the automatic stay imposed by section 362 of the Bankruptcy Code remains in effect with respect to the Prepetition Secured Obligations and the Prepetition Liens (including imposing a stay with respect to the exercise of remedies with respect thereto).  References to DIP Secured Parties shall refer to such persons or entities in their capacities solely with respect to the DIP Facility and not in their capacities as Prepetition Secured Parties.  In the event of any conflict or inconsistency between this paragraph 29 and any other provision of this Final Order, this paragraph 29 shall govern and control.  For the avoidance of doubt, nothing in this paragraph 29 shall limit, impair, or modify any rights or remedies of (a) the DIP Secured Parties (as such) under the DIP Loan Agreements or (b) the Prepetition Secured Parties (as such) under the Prepetition Loan Documents as set forth in this Final Order, which shall remain in full force and effect.

30.     *Final Order Controls.*

(a)     In the event of any conflict or inconsistency between or among the provisions of this Final Order and any of the Motion, the DIP Loan Documents, the Prepetition Loan Documents, or any other order entered by this Court, including the Interim Orders (but only to the extent of any conflict with the terms of this Final Order), unless such provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the DIP Loan Agreement or the DIP Loan Documents, the provisions of this Final Order shall govern and control.

(b)     Notwithstanding anything to the contrary in the DIP Loan Agreement, other DIP Loan Documents, or the Interim Orders, the Debtors shall not be required to establish the

-65-

Reserve (as defined in the DIP Loan Agreement), and the payment of DIP Obligations shall not be subject to such Reserve.

31.     *No Third-Party Rights*. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct or indirect incidental beneficiary.

32.     *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine, and enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Loan Documents, and this Final Order.

Dated: _____, 2026
　　　　New York, New York

_____
THE HONORABLE KYU Y. (MIKE) PAEK
UNITED STATES BANKRUPTCY JUDGE

**Annex A**

**Defined Terms**

(i)    "*Acceptable Plan*" has the meaning set forth in the DIP Loan Agreement.

(ii)    "*Avoidance Action*" means any Claim or Cause of Action arising under Chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law.

(iii)    "*Avoidance Action Proceeds*" means any and all proceeds of or property recovered from Avoidance Actions, whether by adjudication, judgment, settlement, or otherwise.

(iv)    "*Bidding Procedures Motion*" means the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17].

(v)    "*Bidding Procedures Order*" means the *Order (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures and (II) Granting Related Relief* [ECF No. 167].

(vi)    "*Business Day*" has the meaning set forth in the DIP Loan Agreement.

(vii)    "*Cash Collateral*" shall mean all of the Debtors' cash wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of the Prepetition Secured Parties (including the proceeds of Prepetition Collateral) or the DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

(viii)    "*Cause of Action*" means any cause of action under law or equity, of any kind or nature whatsoever, whether arising under United States federal or state law, common law, or otherwise.

(ix)    "*Challenge*" means, with respect to a party other than the Debtors, any challenge, objection, defense, or Claim or Cause of Action, including, without limitation, any Avoidance Action or any Claim or Cause of Action asserting reduction, setoff, offset, recoupment,

recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(x) "***Claim***" has the meaning set forth in the Bankruptcy Code.

(xi) "***Closing Date***" means the Fourteenth Amendment Effective Date (as defined in the DIP Loan Agreement).

(xii) "***DIP Collateral***" means (A) the Debtors' interest in all assets and properties, whether tangible, intangible, real, personal, or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, in each case to the extent such assets and properties constitute Prepetition Collateral; and (B) property of the Debtors, whether existing on the Petition Date or thereafter acquired, including all unencumbered assets of the Debtors, all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including unencumbered cash (and any investment of such cash) of the Debtors, all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements, and other intellectual property, all commercial tort claims, and any and all proceeds, products, rents, and profits of the foregoing; *provided*, that, notwithstanding the foregoing, DIP Collateral shall not include (x) the Excluded DIP Collateral and (y) Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims. Notwithstanding anything to the contrary herein, to the extent a DIP Lien or an Adequate Protection Lien cannot attach to the DIP Collateral pursuant to applicable law, the DIP Liens and Adequate Protection Liens granted pursuant to this Final Order shall attach to the Debtors' economic rights therein, including any and all such proceeds of such DIP Collateral.

(xiii) "***DIP Loan Documents***" means the DIP Loan Agreement and all guarantee, collateral, pledge, and security agreements, intellectual property security agreements, control agreements, financing statements, and all other agreements, documents, certificates, and instruments executed, recorded and/or delivered in connection therewith or related thereto including, without limitation, the Loan Documents (as defined in the DIP Loan Agreement), in each case, as amended, supplemented or modified in accordance with the terms thereof and this Final Order; *provided*, that, when used in this Final Order, the "DIP Loan Documents" shall be interpreted to refer only to the DIP Loan Agreement, and the other "Loan Documents" referred to therein, in each case solely to the extent such DIP Loan Agreement and/or other "Loan Documents" are governing the terms of the DIP Facility (and then only to such extent).

(xiv)   "***DIP Obligations***" means any and all obligations arising under the DIP Facility and the DIP Loan Documents, but in each case relating solely to the DIP Loans (including, without limitation, all DIP Loans, advances, indebtedness, obligations, extensions of credit, financial accommodations, principal, interest, payments, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other amounts, whenever the same shall become due and payable, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise), to the DIP Agent or any of the DIP Lenders under the DIP Loan Documents or this Final Order; *provided*, that, notwithstanding the foregoing or any provision of this Final Order to the contrary, in no circumstances shall the DIP Obligations include the Prepetition Secured Obligations.

(xv)   "***Excluded DIP Collateral***" has the meaning set forth in the DIP Loan Agreement.

(xvi)   "***Notice Parties***" has the meaning set forth in the Motion.

(xvii)   "***Permitted Prior Senior Liens***" means liens over the assets of the Debtors senior by operation of law or otherwise permitted to be senior by the Prepetition Loan Documents and solely to the extent any such liens were valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code).

(xviii)   "***Prepetition Obligations***" has the meaning set forth in the DIP Loan Agreement.

(xix)   "***Sale Hearing***" has the meaning set forth in the Bidding Procedures Motion.

**Exhibit 1**

**DIP Loan Agreement**

**Exhibit B**

**Revised Proposed Final DIP Order (Redline vs. Initial Proposed Final DIP Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  | ) |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) |  |
| SLEEP NUMBER CORPORATION, *et al.*,[1] | ) | Case No. 26-11399 (KYP) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "*Motion*")[2] of Sleep Number Corporation and each of its affiliated debtors and debtors in possession (collectively, the "*Debtors*") in the above-captioned chapter 11 cases (the "*Chapter 11 Cases*"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "*Local Bankruptcy Rules*") promulgated by the United States Bankruptcy Court for the Southern

---

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

[2] Each capitalized term that is not defined in the recitals to this Final Order and that is not otherwise defined in this Final Order shall have the meaning ascribed to such term in **Annex A** to this Final Order, which is incorporated by reference herein.

District of New York (the "*Court*"), seeking entry of ~~an~~ interim ~~order~~orders and a final order (this "*Final Order*" and, together with the Interim ~~Order~~Orders (as defined below), the "*DIP Orders*"), *inter alia*:

(i) authorizing Sleep Number Corporation (in such capacity, the "*DIP Borrower*") and the DIP Guarantors (as defined below) to obtain postpetition, superpriority, senior secured, priming debtor-in-possession financing (the "*DIP Facility*") subject to the terms and conditions set forth in that certain Fourteenth Amendment to Amended and Restated Credit and Security Agreement attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "*DIP Loan Agreement*"), by and among the DIP Borrower, the DIP Guarantors, the lenders from time to time party thereto (collectively, the "*DIP Lenders*") and U.S. Bank National Association, as administrative agent (in this capacity, together with its successors and permitted assigns, the "*DIP Agent*" and, collectively, with the DIP Lenders, the "*DIP Secured Parties*"), in an aggregate principal amount of up to $260,000,000, consisting of:

 (a) new money superpriority senior secured term loan commitments in an aggregate principal amount of up to $65,000,000 to be made available in (1) multiple draws ~~upon~~ up to $50,000,000 upon entry of the First Interim Order (as defined below) and up to $61,365,931 in the aggregate upon entry of the Second Interim Order (as defined below), in each case subject to satisfaction of the conditions set forth in the DIP Loan Documents ~~and upon entry of the Interim Order in the amount of up to $50,000,000~~ (the term loans made thereunder, the "*Delayed Draw Interim New Money DIP Loans*"), and (2) multiple draws upon satisfaction of the conditions set forth in the DIP Loan Documents and upon entry of this Final Order in the amount of up to the difference between $65,000,000 and the amount of Delayed Draw Interim New Money DIP Loans actually funded prior to entry of this Final Order (the term loans made thereunder, the "*Delayed Draw New Money DIP Loans*," and together with the Delayed Draw Interim New Money DIP Loans, the "*New Money DIP Loans*," and the commitments in respect thereof, the "*DIP Commitments*"); and

 (b) Roll-Up Loans (as defined in the DIP Loan Agreement) comprising Prepetition Secured Obligations (as defined below) that shall be converted into DIP Roll-Up Loans on a 3:1 basis (*i.e.*, for each $1.00 of New Money DIP Loans actually drawn and funded under the DIP Facility, $3.00 of Prepetition Secured Obligations shall be deemed to have been converted into DIP Roll-Up Loans on a cashless basis, without constituting a novation, repayment, or release of such Prepetition Secured Obligations), which conversion shall occur as follows: (1) following entry of the First Interim Order and Second Interim Order, as applicable, and upon the funding of each draw of Delayed Draw Interim New Money DIP Loans, Prepetition Secured Obligations in an aggregate principal amount equal to three (3) times the aggregate principal amount of Delayed Draw Interim New Money DIP Loans actually funded pursuant to such draw

(the "***Interim DIP Roll-Up Loans***") were immediately and automatically deemed converted into DIP Roll-Up Loans, and (2) following entry of this Final Order and thereafter, upon the funding of each draw of Delayed Draw New Money DIP Loans, additional Prepetition Secured Obligations in an aggregate principal amount equal to three (3) times the aggregate principal amount of Delayed Draw New Money DIP Loans actually funded pursuant to such draw (the "***Final DIP Roll-Up Loans***" and, together with the Interim DIP Roll-Up Loans, the "***DIP Roll-Up Loans***" and, together with the New Money DIP Loans, the "***DIP Loans***") shall immediately and automatically be deemed converted into DIP Roll-Up Loans;[3]

in each case, in accordance with the Approved DIP Budget (as defined below) then in effect (subject to any Permitted Variances (as defined below)) and the terms and conditions set forth in the DIP Loan Documents and the DIP Orders;

(ii)     subject and subordinate to the Carve Out in all respects, granting to the DIP Agent, for the benefit of the DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected DIP Liens (as defined below) pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all DIP Collateral (as defined herein);

(iii)    authorizing the DIP Loan Parties to (a) execute and deliver the DIP Loan Documents, (b) borrow funds under the DIP Facility pursuant to the terms set forth in the DIP Loan Agreement and this Final Order, (c) incur the DIP Obligations, and (d) perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(iv)    authorizing the DIP Loan Parties to use the proceeds of the DIP Loans and Prepetition Collateral (as defined below), including Cash Collateral (as defined below), (a) in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget (as defined below), as applicable, subject to any Permitted Variances set forth herein and in the DIP Loan Agreement, (b) to effectuate the conversion of certain Prepetition Secured Obligations into DIP Roll-Up Loans on a 3:1 basis as each draw of New Money DIP Loans is funded in accordance with the DIP Loan Agreement, the Interim OrderOrders, and this Final Order, and (c) to provide working capital for, and for other general corporate purposes of, the Debtors, including for funding the Carve Out (as defined below), for payment of any Adequate Protection Obligations (as defined below), and for other permitted uses of proceeds not prohibited by the DIP Loan Documents, in each case, solely in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, subject to any Permitted Variances, and the terms and conditions of the DIP Loan Agreement;

(v)     subject and subordinate to the Carve Out in all respects, granting to the DIP Agent, for the benefit of the DIP Secured Parties, allowed superpriority administrative expense claim status against each of the Debtors, on a joint and several basis, in each

---

[3]    The DIP Roll-Up Loans shall not exceed (and shall be capped at) $195,000,000.

of the Chapter 11 Cases and any Successor Cases (as defined below) pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations;

(vi)  granting adequate protection to the Prepetition Secured Parties to the extent of any Diminution in Value (as defined below) of their liens and security interests in the Prepetition Collateral;

(vii)  upon entry of this Final Order and subject to the Carve Out, authorizing the waiver of the Debtors' right to surcharge the DIP Collateral or the Prepetition Collateral pursuant to sections 105(a) and 506(c) of the Bankruptcy Code;

(viii)  upon entry of this Final Order, finding that neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to (a) the "equities of the case" exception under section 552(b) of the Bankruptcy Code or (b) the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral or the Prepetition Collateral (including Cash Collateral), as applicable;

(ix)  approving certain stipulations and releases by the Debtors with respect to the Prepetition Loan Documents, the Prepetition Collateral, and the Prepetition Secured Obligations, as set forth herein;

(x)  modifying or vacating the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions set forth in this Final Order and in the DIP Loan Documents, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order; and

(xi)  granting the Debtors such other and further relief as set forth in the Motion.

The Court, having considered the Motion, the *Declaration of Amy O'Keefe in Support of the Chapter 11 Proceedings and First Day Pleadings* [ECF No. 3] (including the exhibits annexed thereto, the "***First Day Declaration***") and the *Declaration of Stephen Preefer in Support of Motion of Debtors for Entry of Interim and Final Orders, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507, and 552 (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V)*

*Scheduling a Final Hearing, and (VI) Granting Related Relief*, which was attached to the Motion as <u>Exhibit A</u> (the "***Preefer Declaration***" and, together with the First Day Declaration, the "***DIP Declarations***"); and the Court having held an interim hearing on June 12, 2026 on the relief requested in the DIP Motion (the "***Interim Hearing***"); and <u>on June 15, 2026,</u> the Court having entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [ECF No. 74] (the "***First Interim Order***"); and on July 9, 2026, the Court having entered the *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [ECF No. 226] (the "***Second Interim Order***," together with the First Interim Order, the "***Interim Orders***"); and the Court having considered the evidence submitted and arguments proffered or adduced at the Interim Hearing and a final hearing held before this Court on July 915, 2026 (the "***Final Hearing***," collectively with the Interim Hearing, the "***Hearings***"), and upon the record of the Chapter 11 Cases; and due and proper notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.      *Petition Date.* On June 12, 2026 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.      *Debtors in Possession.* The Debtors remain in possession of their property and continue to manage and operate their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation.* On June 23, 2026, the United States Trustee for Region 2 (the "***U.S. Trustee***") appointed an official statutory committee of unsecured creditors (the "***Official Committee***") in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [ECF. No. 110].

D.      *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for these Chapter 11 Cases and the proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      *Statutory Predicates for Relief.* The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Bankruptcy Rule 4001-2.

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.      *Debtors' Stipulations and Releases.* Subject only to the rights of parties-in-interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations contained therein), the Debtors stipulate and agree as to the following (collectively, the "***Debtors' Stipulations***"):

(i)      *Prepetition Loan Agreement.* Pursuant to that certain Amended and Restated Credit and Security Agreement, dated as of February 14, 2018 (as amended prior to the Petition Date, the "***Prepetition Loan Agreement***" and, collectively with the other Loan Documents (as defined in the Prepetition Loan Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date, the "***Prepetition Loan Documents***"), by and among Sleep Number Corporation, as borrower (in such capacity, the "***Prepetition Loan Borrower***"), the other Credit Parties (as defined in the Prepetition Loan Agreement) (collectively with the Prepetition Loan Borrower, the "***Prepetition Loan Parties***"), U.S. Bank National Association, as administrative agent (in such capacity, the "***Prepetition Loan Agent***"), Swing Line Lender (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition Swing Line Lender***") and Issuing Lender (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition Issuing Lender***"), the 2026 Term Loan Lenders (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition 2026 Term Lenders***" and, collectively with the Prepetition Loan Agent, the "***Prepetition 2026 Term Secured Parties***"), the 2021 Term Loan Lenders (as defined in the Prepetition Loan Agreement) (in such capacity, the "***Prepetition 2021 Term Lenders***" and, collectively with the Prepetition Loan Agent, the "***Prepetition 2021 Term Secured Parties***"), Lenders of the Revolving Credit Commitment and the Revolving Loans (each as defined in the

-7-

Prepetition Loan Agreement), as applicable (in such capacity, the "**_Prepetition RCF Lenders_**" and, collectively with the Prepetition Loan Agent, the Prepetition Swing Line Lender, and the Prepetition Issuing Lender, the "**_Prepetition RCF Secured Parties_**" and, collectively with the Prepetition 2026 Term Secured Parties and the Prepetition 2021 Term Secured Parties, and each other holder of a Secured Obligation (as defined in the Prepetition Loan Documents) the "**_Prepetition Secured Parties_**" and the Prepetition 2026 Term Lenders, the Prepetition 2021 Term Lenders and the Prepetition RCF Lenders, collectively, the "**_Prepetition Lenders_**"), the Prepetition Lenders have extended prepetition loans and other credit accommodations (the "**_Prepetition Loans_**") to and for the benefit of the Prepetition Loan Parties, and the other Prepetition Loan Parties that are Guarantors (as defined in the Prepetition Loan Agreement) guaranteed the Prepetition Loans on a joint and several basis.

(ii)    _Prepetition 2026 Term Loan Obligations._    As of the Petition Date, the Prepetition Loan Parties, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition 2026 Term Secured Parties under the Prepetition Loan Documents in the aggregate principal amount of not less than $20,000,000, _plus_ accrued and unpaid interest thereon and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Prepetition Loan Agreement) in connection with the 2026 Term Loans (as defined in the Prepetition Loan Agreement), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in connection with the 2026 Term Loans under the Prepetition Loan Documents, in each case, as and to the extent provided in the Prepetition Loan Documents (collectively, the "**_Prepetition 2026 Term Loan Obligations_**").

(iii)   *Prepetition 2021 Term Loan Obligations.*  As of the Petition Date, the Prepetition Loan Parties, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition 2021 Term Secured Parties under the Prepetition Loan Documents in the aggregate principal amount of not less than $177,500,000, *plus*, as of the Petition Date, accrued and unpaid interest thereon and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Prepetition Loan Agreement) in connection with the 2021 Term Loans (as defined in the Prepetition Loan Agreement), and all other obligations of whatever nature owing, whether or not contingent, in connection with the 2021 Term Loans under the Prepetition Loan Documents (collectively, the "***Prepetition 2021 Term Loan Obligations***").

(iv)   *Prepetition RCF Obligations.*  As of the Petition Date, the Prepetition Loan Parties, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition RCF Secured Parties under the Prepetition Loan Documents in the aggregate principal amount of not less than $475,000,000, *plus*, as of the Petition Date, accrued and unpaid interest thereon and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined in the Prepetition Loan Agreement) in connection with the Revolving Loans and the Revolving Credit Commitments, and all other obligations of whatever nature owing, whether or not contingent, in connection with the Revolving Loans and the Revolving Credit Commitments under the Prepetition Loan Documents (collectively, the "***Prepetition RCF Obligations***" and, collectively with the Prepetition 2026 Term Loan

Obligations and the Prepetition 2021 Term Loan Obligations, and all other Prepetition Obligations (as defined in the DIP Loan Agreement), the "***Prepetition Secured Obligations***").

(v)    *Prepetition Liens*.   As set forth more fully in the Prepetition Loan Documents, as of the Petition Date, pursuant to and in connection with the Prepetition Loan Documents, to secure the Prepetition Secured Obligations, the Prepetition Loan Parties granted to the Prepetition Loan Agent, for the benefit of itself and the other Prepetition Secured Parties, valid, binding, non-avoidable, properly perfected and enforceable continuing liens on and security interests (collectively, the "***Prepetition Liens***") in the "Collateral" as defined in the Prepetition Loan Agreement (the "***Prepetition Collateral***").

(vi)    *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Secured Obligations*. The Debtors acknowledge and agree that, as of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral were and continue to be valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to the Permitted Prior Senior Liens; (c) the Prepetition Secured Obligations constitute legal, valid, binding and non-avoidable obligations of the applicable Debtors enforceable in accordance with the terms of the applicable Prepetition Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors

and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Loan Documents or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date; and (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens securing the Prepetition Secured Obligations.

G.     *Findings Regarding DIP Facility and Use of Cash Collateral.*

(i)     *Need for Immediate Access.* The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral, solely to the extent and for the purposes permitted in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, subject to any Permitted Variances, to, among other things, (a) permit the orderly continuation of their business; (b) maintain business relationships with their vendors, suppliers, customers, and other parties; (c) implement a sale transaction; (d) pay certain adequate protection payments, if any, required hereunder; and (e) pay the costs of administration of their estates and satisfy other working capital and general corporate purposes of the Debtors. The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations under the DIP Facility is vital to the preservation and maintenance of the Debtors' ongoing-concern value of their business, the sale transaction, and the restructuring process. The Debtors will not have sufficient sources of

working capital and financing to operate their business in the ordinary course of business throughout the Chapter 11 Cases and to consummate the sale transaction without access to the DIP Facility and the authorized use of Cash Collateral.  Immediate and irreparable harm will be caused to the Debtors and their estates if the remainder of the DIP financing is not obtained and permission for the Debtors to continue to use Cash Collateral is not granted.

(ii)     *Inability to Obtain More Favorable Financing.*  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Loan Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as administrative expense claims. The Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Loan Documents without the Debtors granting the DIP Liens (as defined below) and the DIP Superpriority Claims (as defined below) to the DIP Secured Parties under the terms and conditions set forth in the Interim ~~Order~~Orders, this Final Order and the other DIP Loan Documents, in each case, subject and subordinate to the Carve Out in all respects.

(iii)    *Business Judgment*.   The terms of the DIP Facility and the DIP Loan Documents are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(iv)     *Good Faith.* The DIP Facility, the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the

Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted, or payments made, in each case, to the DIP Secured Parties and arising prior to the effective date of any such vacatur, reversal, or modification of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all of the rights, remedies, privileges, and benefits granted herein.

(v)      *Arm's-Length, Good Faith Negotiations*. The terms of the Interim ~~Order~~Orders and this Final Order were negotiated in good faith and at arm's length between the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties. The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties have acted in good faith in respect of all actions taken by them in negotiating, implementing, documenting, or obtaining requisite approvals of the Debtors' incurrence of the DIP Facility and use of Prepetition Collateral (including Cash Collateral), including in respect of all of the terms of the Interim ~~Order~~Orders and this Final Order, all documents related thereto, and all transactions contemplated by the foregoing.

(vi)      *Cash Collateral*. The Debtors continue to collect cash, rents, income, offspring, products, proceeds and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, certain of which constitute Prepetition Collateral under the Prepetition Loan Documents that are subject to the Prepetition Liens as set forth in the Prepetition Loan Documents. The Debtors desire to use in their business operations a portion of such cash, rents, income, offspring, products, proceeds and profits that constitutes

-13-

Cash Collateral of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds and profits in existence as of the Petition Date also constitute Cash Collateral.

(vii)   *Roll-Up*. The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral securing their respective secured obligations or the subordination of their liens to the DIP Liens, and the DIP Lenders would not be willing to provide the DIP Loans or extend credit to the Debtors thereunder without the DIP Roll-Up Loans. The DIP Roll-Up Loans shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lenders who are also Prepetition Secured Parties to fund amounts under the DIP Facility, and shall be converted from Prepetition Secured Obligations on a 3:1 basis (*i.e.*, $3.00 of Prepetition Secured Obligations converted for each $1.00 of New Money DIP Loans actually drawn and funded), and not as Adequate Protection for, or otherwise on account of, any Prepetition Secured Obligations. The Prepetition Secured Obligations shall be converted into and exchanged for DIP Roll-Up Loans in accordance with the DIP Loan Agreement.

(viii)   *Approved DIP Budget*. The Debtors have prepared and delivered to the DIP Secured Parties an initial cash flow forecast which has been approved by the DIP Agent and the Required DIP Lenders (as defined in the DIP Loan Agreement) (the "***Initial DIP Budget***," and as the same may be amended, supplemented, or updated from time to time in accordance with the terms of the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Agreement, the "***Approved DIP Budget***"), reflecting (a) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures expected to be incurred or made, by the Debtors for each calendar week during the period from the calendar week ending on June 13,

-14-

2026 through and including the end of the eighth (8th) calendar week thereafter, (b) the sum of weekly unused availability under the DIP Facility, plus restricted and unrestricted balances of cash on hand, (c) the weekly outstanding principal balance of amounts outstanding under the DIP Facility, and (d) a weekly report of the Debtors' accounts payable aging reports (including vendors, dates and applicable payment terms) certified by an Authorized Officer of the DIP Borrower. The Debtors shall promptly provide the Official Committee (or their advisors) with the foregoing reporting. Commencing on the Wednesday of the fourth (4th) full calendar week occurring after the Petition Date and on every fourth Wednesday that occurs thereafter (each, an "*Updated Budget Delivery Date*"), the Debtors will, by no later than 5:00 p.m. prevailing Eastern Time, provide the DIP Agent with an updated budget for the rolling eight (8) week period commencing on the Sunday immediately preceding the applicable Updated Budget Delivery Date (each such updated budget, a "*Proposed DIP Budget*").  Each Proposed DIP Budget shall be subject to the approval of the DIP Agent and the Required DIP Lenders and, following confirmation of approval from the DIP Agent, shall constitute the Approved DIP Budget (which Approved DIP Budget then shall be promptly provided to the Official Committee (email to its counsel being sufficient)); *provided,* that until such time as the DIP Agent approves any Proposed DIP Budget, the Debtors shall be subject to and be governed by the terms of the Initial DIP Budget or such previous Approved DIP Budget as may then be in effect, as applicable, in accordance with the DIP Orders. The ApprovedProposed DIP Budget shall provide for, among other things, the funding of the Stub Rent Reserve. By no later than 5:00 p.m. prevailing Eastern Time on the Wednesday of each week, the Debtors shall provide to the DIP Agent (and concurrently to the Official Committee (email to its counsel being sufficient)) a budget variance report (the "*Budget Variance Report*"), which Budget Variance Report shall set

-15-

forth in reasonable detail actual receipts and disbursements of the Debtors and a weekly budget-to-actual comparison to the Approved DIP Budget, as certified by an Authorized Officer of the DIP Borrower (and reviewed by any consultant or other advisor of the DIP Agent in its sole discretion). The Debtors shall not (A) request a New Money DIP Loan in an amount that exceeds, on an aggregate basis, 110.0% of the amount of DIP Loan proceeds approved for such draw period as set forth in the then-applicable Approved DIP Budget measured on a cumulative basis beginning on the Petition Date through the date of the applicable Notice of Loan (as defined in the DIP Loan Agreement), (B) as of the last day of each week, permit or suffer to exist the aggregate amount of operating receipts during the consecutive four (4) week period then ending to be less than 90.0% of the aggregate budgeted "*Operating Receipts*" of the Debtors for such consecutive four (4) week period as set forth in the applicable Approved DIP Budget, or (C) as of the last day of each week, permit or suffer to exist the aggregate amount of disbursements and other dispositions of cash, cash equivalents and other assets of the Debtors during the consecutive four-week period then ending to exceed 110.0% of the budgeted "*Total Disbursements*" of the DIP Loan Parties for such consecutive four-week period in the applicable Approved DIP Budget (such deviations from the applicable projected amounts set forth in the applicable Approved DIP Budget satisfying (A), (B), and (C), tested on a cumulative rolling weekly basis, the "*Permitted Variances*"). For the avoidance of doubt, the Initial DIP Budget shall constitute an Approved DIP Budget. The Debtors and the DIP Secured Parties agree that the Approved DIP Budget shall include fees and expenses for Committee Professionals (defined below) in the amount of $2.25 million through July 31, 2026, with all rights of the Committee Professionals reserved with respect to any fees and expenses that may be incurred by them during the period after such date, and there shall be no reductions to the fees and expenses

-16-

budgeted for Committee Professionals absent express written consent of the Committee Professionals.

(ix)    *Approved Cash Collateral Budget*.  Following the indefeasible payment in full in cash of the DIP Obligations (the date of such payment in full of the DIP Obligations, the "**DIP Payoff Date**") and until the effective date of a chapter 11 plan in these Chapter 11 Cases, the Debtors shall continue to prepare and deliver budgets and Budget Variance Reports to the Prepetition Loan Agent (and concurrently to the Official Committee (email to its counsel being sufficient)), in each case, in substantially the same form and manner as the Proposed DIP Budgets and Budget Variance Reports, respectively, required under paragraph G(viii) of this Final Order (any budget delivered pursuant to this paragraph G(ix), a "**Proposed Cash Collateral Budget**" and, upon approval by the Prepetition Loan Agent and the Required Lenders (as defined in the Prepetition Loan Agreement) (the "**Required Prepetition Lenders**"), an "**Approved Cash Collateral Budget**"). Any Approved Cash Collateral Budget shall be promptly provided to the Official Committee (email to its counsel being sufficient). Until such time as the Prepetition Loan Agent and the Required Prepetition Lenders approve any Proposed Cash Collateral Budget, the Debtors shall be subject to and governed by the most recently Approved Cash Collateral Budget, as applicable. Following the DIP Payoff Date, the Debtors shall comply with the Permitted Variances with respect to each Approved Cash Collateral Budget in the same manner and to the same extent as required with respect to an Approved DIP Budget prior to the DIP Payoff Date.  Following the DIP Payoff Date, with respect to the Approved Cash Collateral Budget and the Permitted Variances, the Prepetition Loan Agent and the Required Prepetition Lenders shall have the same variance, consent, waiver, approval, and modification rights as the DIP Agent and the Required DIP Lenders had with respect to the Approved DIP Budget and

-17-

Permitted Variances prior to the DIP Payoff Date. The Debtors' obligations set forth in this paragraph G(ix) shall terminate automatically upon consummation of an Acceptable Plan.

(x)       (ix)  *Adequate Protection*. Each of the Prepetition Secured Parties is entitled, pursuant to sections 105, 361, 362, 363(e), 364(d)(1), and 507 of the Bankruptcy Code, to adequate protection (the "***Adequate Protection***") against the net post-petition diminution in value of its respective liens and security interests in the Prepetition Collateral, including Cash Collateral (any such net post-petition diminution, to the maximum extent permitted under the Bankruptcy Code, "***Diminution in Value***"), subject to the reservation of rights set in paragraph 24 hereof (solely as it pertains to the Prepetition Collateral). Based on the Motion and on the record presented to the Court, the terms of the proposed Adequate Protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the DIP Loan Parties (as defined below) prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including the use of Cash Collateral).

H.       *Good Cause Shown; Best Interest*. Good cause has been shown for entry of this Final Order.  The entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing business and enhance the Debtors' prospects for a successful restructuring. Absent the relief granted in the Interim OrderOrders and this Final Order, the Debtors' estates would have been immediately and irreparably harmed.

I.       *Permitted Prior Senior Liens; Continuation of Prepetition Liens*. Notwithstanding anything to the contrary set forth herein, the DIP Liens and the Adequate Protection Liens shall be subject and subordinate to the Permitted Prior Senior Liens; *provided*,

*however*, nothing herein shall constitute a finding or ruling by this Court that any lien over the assets of the Debtors alleged to be a Permitted Prior Senior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including the Debtors, the DIP Secured Parties, or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Senior Lien.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Senior Lien and is expressly subject to the DIP Liens. The Prepetition Liens and the DIP Liens are liens on the Prepetition Collateral or the DIP Collateral, respectively, and the Prepetition Collateral and the DIP Collateral (as applicable) are and will continue to be encumbered by the applicable Prepetition Liens or DIP Liens.

J.      *Notice.* The Final Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate, and sufficient notice of the Motion and the Final Hearing, the best available under the circumstances per the Debtors' belief, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

**NOW, THEREFORE**, based upon the Motion, the DIP Declarations, the evidence adduced at the Hearings and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted.* The Motion is hereby granted on a final basis, entry into the DIP Loan Agreement and other DIP Loan Documents is authorized and approved and the use of Cash

-19-

Collateral is hereby authorized, in each case, upon the terms and conditions set forth in the Interim ~~Order~~Orders, this Final Order and the DIP Loan Documents. Any objections to the relief set forth in this Final Order that have not been withdrawn, waived, settled, or resolved are hereby denied and overruled with prejudice.

2.    *Authorization of DIP Facility and DIP Loan Documents.*

(a)    *Authorization of DIP Loan Documents.* The DIP Loan Parties are hereby authorized and empowered, on a final basis, to execute, enter into and deliver, and perform all their obligations under the DIP Loan Documents and such additional documents, instruments, certificates, and agreements as may be reasonably necessary, required, appropriate, or desirable to perform their obligations under the DIP Facility and this Final Order and to implement the transactions contemplated thereunder and hereunder.

(b)    *Authorization to Borrow.* The DIP Borrower is hereby authorized, on a final basis, to borrow and incur the DIP Loans under the DIP Facility, and each of the subsidiaries and affiliates of the DIP Borrower that are Debtors (the "***DIP Guarantors***" and, together with the DIP Borrower, the "***DIP Loan Parties***") is hereby authorized, on a final basis, to guarantee such borrowing and incurrence and other DIP Obligations on a joint and several basis, in each case subject to the terms and conditions set forth in the DIP Loan Documents and this Final Order without the need to seek further Court approval.

(c)    *Use of DIP Collateral and Prepetition Collateral.* The Debtors are hereby authorized, on a final basis, to use the proceeds of the DIP Loans and any Prepetition Collateral (including Cash Collateral) of the Prepetition Secured Parties solely to the extent and for the purposes permitted in the Approved DIP Budget (or the Approved Cash Collateral Budget, as applicable (in each case, subject to Permitted Variances), subject to the terms and conditions set

-20-

forth in the DIP Loan Documents and this Final Order (including, but not limited to, paragraph 11 of this Final Order). In accordance with any other order entered by the Court providing for the repayment of DIP Obligations upon the sale or other disposition of any DIP Collateral (in accordance with the DIP Loan Documents), the Net Cash Proceeds (as defined in the DIP Loan Agreement) thereof shall first be applied to repay the DIP Obligations with respect to the New Money DIP Loans, and thereafter, subject only to the rights of parties-in-interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations therein), any remaining proceeds shall be used to repay the DIP Obligations with respect to the DIP Roll-Up Loans, in each case, in accordance with the terms and priorities set forth in this Final Order and the DIP Loan Documents.

(d)     *DIP Fees and Expenses; Indemnification.* Subject to paragraph 2(b) of this Final Order, the DIP Loan Parties are hereby authorized and empowered, on a final basis, to pay all DIP Obligations as such amounts become due and payable in accordance with this Final Order and the DIP Loan Documents and any related fee letters, without the need for further order of the Court, and any and all fees payable in respect of the initial draw, including, without limitation, the upfront fee of $5,200,000, which upfront fee has been fully earned and due and paid in cash upon the initial funding of the DIP Loans, and the exit fee in an aggregate amount $5,200,000, which exit fee has been fully earned upon the initial funding of the DIP Loans, and due and payable in cash in an amount equal to 2.00% of the principal amount of the DIP Loans (including DIP Roll-Up Loans) prepaid or repaid on the date of such prepayment or repayment, with the balance of such exit fee to be paid in full upon the full prepayment or repayment of the DIP Loans (including the DIP Roll-Up Loans), are hereby approved on a final basis. Without

-21-

limiting the foregoing, the DIP Loan Parties are hereby authorized and empowered, on a final

basis, to:

    (i)    pay any and all fees, including any upfront fee or arrangement fee, with respect to the DIP Facility set forth in any Administrative Agent Fee Letter (as defined in the DIP Loan Agreement), payable under the DIP Loan Documents;

    (ii)    indemnify each of the DIP Secured Parties (and their respective affiliates, officers, directors, attorneys, agents, and employees) as and to the extent provided under the DIP Loan Agreement; and

    (iii)    jointly and severally pay or reimburse all out-of-pocket costs and expenses incurred, whether prepetition or postpetition, by the DIP Agent and the DIP Lenders, including, without limitation, the reasonable and documented fees and expenses of Faegre Drinker Biddle & Reath LLP, legal counsel to the DIP Agent, as provided for in the DIP Loan Documents (collectively, the "***DIP Professional Fees and Expenses***").

    (e)    *Amendment of DIP Loan Documents.* The DIP Loan Parties are hereby

authorized and empowered, on a final basis, to enter into agreements with the DIP Secured

Parties providing for any consensual modifications to the Approved DIP Budget or to execute,

enter into and deliver, and perform under one or more amendments, waivers, consents or other

modifications to and under the DIP Loan Documents (in each case, in accordance with the terms

of the applicable DIP Loan Documents); *provided*, *however*, that a copy of all amendments,

waivers, consents or other modifications to and under the DIP Loan Documents (other than the

Initial DIP Budget or the Approved DIP Budget) shall be provided (which may be by electronic

mail) to the U.S. Trustee and counsel to the Official Committee no later than two (2) Business

Days prior to the anticipated date of effectiveness thereof; *provided further*, *however*, that any

amendment, waiver, consent or other modification to and under the DIP Loan Documents that

shortens the maturity of the extensions of credit thereunder or increases the aggregate

commitments or the rate of interest payable thereunder (a "**Material DIP Amendment**") shall be

filed with the Court, and if no objection to the Material DIP Amendment is made within two (2) Business Days of the filing of the Material DIP Amendment, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided*, *however*, if an objection is made within such time period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court; *provided*, *further* that, for the avoidance of doubt, updates and supplements to the Approved DIP Budget required to be delivered by the DIP Loan Parties under the DIP Loan Documents shall not be considered amendments or modifications to the Approved DIP Budget or the DIP Loan Documents.

(f)        *Performance of Other Acts*. The DIP Loan Parties are hereby authorized and empowered, on a final basis, to execute such other documents, and perform all such other acts, as may be reasonably necessary or required for the DIP Loan Parties to perform under the DIP Facility and implement the transactions contemplated in the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents.

(g)        *DIP Roll-Up Loans*. Subject to paragraph 12 of this Final Order, (1) upon entry of the First Interim Order and the Second Interim Order, as applicable (and as reaffirmed by this Final Order), and the funding of each draw of Delayed Draw Interim New Money DIP Loans, Prepetition Secured Obligations shall immediately and automatically be deemed to have been converted into DIP Roll-Up Loans on a cashless basis, without constituting a novation, repayment, or release of such Prepetition Secured Obligations on a 3:1 basis (*i.e.*, for each $1.00 of New Money DIP Loans actually drawn and funded under the DIP Facility, $3.00 of Prepetition Secured Obligations shall be deemed to have been converted into Interim DIP Roll-Up Loans) and (2) upon entry of this Final Order and the funding of each Delayed Draw

-23-

New Money DIP Loans and thereafter, Prepetition Secured Obligations shall immediately and automatically be deemed to have been converted into DIP Roll-Up Loans on a cashless basis, without constituting a novation, repayment, or release of such Prepetition Secured Obligations on a 3:1 basis (*i.e.*, for each \$1.00 of New Money DIP Loans actually drawn and funded under the DIP Facility, \$3.00 of Prepetition Secured Obligations shall be deemed to have been converted into Final DIP Roll-Up Loans) and, except as otherwise provided herein and in the DIP Loan Documents, such DIP Roll-Up Loans shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents. The conversion (or "roll-up") was and shall be authorized as compensation for, in consideration for, and solely on account of the agreement of the Prepetition Secured Parties as DIP Lenders to fund amounts and provide other consideration to the Debtors under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Secured Obligations; *provided*, that, notwithstanding anything to the contrary in this Final Order, the DIP Roll-Up Loans shall remain subject to the preservation of rights in paragraph 24(g) hereof. The Prepetition Secured Parties would not otherwise consent to the use of their Cash Collateral, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder, without the inclusion of the DIP Roll-Up Loans in the DIP Obligations upon entry of the Interim ~~Order~~Orders and this Final Order. The roll-up of the Prepetition Secured Obligations in the amount of the DIP Roll-Up Loans will, moreover, enable the Debtors to obtain urgently needed financing to administer these Chapter 11 Cases and fund their operations.

3.	*DIP Obligations.*

(a)	The DIP Loan Documents constitute valid, binding, enforceable, and non-avoidable obligations of each of the DIP Loan Parties, and are fully enforceable against each of the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases, in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "***Successor Cases***"), in each case, in accordance with the terms of the DIP Loan Documents and this Final Order.

(b)	The DIP Loan Parties are jointly and severally liable for any and all DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, on the DIP Termination Declaration Date (as defined below) (subject to paragraph 10 hereof); upon the occurrence of the DIP Termination Declaration Date, the Debtors' rights to use Cash Collateral shall be permitted solely pursuant to paragraph 10(c).

(c)	All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in the Interim ~~Order~~Orders, this Final Order and the DIP Loan Documents by the DIP Loan Parties are granted to or for the benefit of the DIP Secured Parties and the Prepetition Secured Parties (as applicable) for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby.  No obligation, payment, transfer, or grant of liens or security interests under the Interim ~~Order~~Orders, this Final Order or the DIP Loan Documents to the DIP Secured Parties or the Prepetition Secured Parties (as applicable) shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the

-25-

Bankruptcy Code or under any applicable law, or subject to any Challenge (subject, solely in the case of the DIP Professional Fees and Expenses and the Adequate Protection Professional Fees and Expenses (as defined below), to the professional fee review procedures set forth in paragraph 7 of this Final Order).

4.      *DIP Liens.*

(a)      As security for the DIP Obligations, effective as of the entry of the First Interim Order and as reaffirmed by the Second Interim Order and this Final Order (and without the necessity of the execution, recordation or filing by the DIP Loan Parties or the DIP Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), the DIP Agent, for the benefit of the DIP Secured Parties, are granted, on a final basis, valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "***DIP Liens***") in all DIP Collateral, in each case, subject and subordinate to the Carve Out in all respects, and subject to the relative priorities set forth in this Final Order. For the avoidance of doubt, the DIP Collateral does not include Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims. Any provision of any lease (except for nonresidential real property leases) or other license, contract or other agreement that requires (i) the consent or approval of one or more parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any interest in any such lease, license, contract, or other agreement, or the proceeds thereof, or other collateral related thereto, is deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law. Any such provision

-26-

shall have no force and effect with respect to the granting of the DIP Liens and the Adequate

Protection Liens (as defined below) on such interest or the proceeds of any assignment and/or

sale thereof by any Debtor in accordance with the terms of the DIP Loan Agreement or this Final

Order, subject to applicable law.  Notwithstanding anything to the contrary in the foregoing, the

provisions of this paragraph 4(a) shall not (i) render any contract or lease unable to be assumed

and/or assigned by any Debtor or (ii) impair or limit the ability or right of (A) any Debtor to

assume and/or assign any contract or lease or (B) any counterparty to object to such relief on any

other grounds, including, but not limited to, sections 365(b)(3) or 1123 of the Bankruptcy Code.

(b)      The DIP Liens shall be subject to the following priorities (in each case,

subject and subordinate to the Carve Out in all respects):

(i)      First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected first priority senior security interests in and liens upon all DIP Collateral, to the extent such DIP Collateral is not subject to valid, perfected, and non-avoidable liens as of the Petition Date (including the Prepetition Liens and Permitted Prior Senior Liens) or valid and non-avoidable liens in favor of third parties that were in existence immediately prior to the Petition Date that are perfected as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens shall be subject and subordinate in all respects to the Carve Out;

(ii)      Liens Priming the Prepetition Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected priming senior security interests in and liens upon the Prepetition Collateral, which security interests and liens shall (A) be subject and subordinate in all respects to the Carve Out and (B) prime and be senior in all respect to the Prepetition Liens on the Prepetition Collateral and to the Adequate Protection Liens (as defined below) granted to the Prepetition Secured Parties on the DIP Collateral; and

(iii)      Liens Junior to the Permitted Prior Senior Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully perfected security interests in and liens on the DIP Collateral to the extent such DIP Collateral is subject to Permitted Prior Senior Liens, which security interests and liens shall be subject and subordinate in all respects to the Carve Out;

-27-

Other than as set forth above, the DIP Liens: (i) shall be senior to all security interests in, liens on, or claims against any of the DIP Collateral (subject and subordinate to the Carve Out in all respects), including any lien or security interest that is avoided or preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; (ii) shall be valid and enforceable (a) against any trustee appointed in the Chapter 11 Cases or any Successor Case, (b) upon the conversion of any of the Chapter 11 Cases to any Successor Case, and/or (c) upon the dismissal or conversion of any of the Chapter 11 Cases or Successor Cases; (iii) shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases; and (iv) shall not be subject to any of sections 510, 549, or 550 of the Bankruptcy Code.; *provided*, that the DIP Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any DIP Liens prior to collecting from any other DIP Collateral.

5.      *DIP Superpriority Claims.* Subject only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors' estates (without the need to file any proof of claim) to the extent set forth in the Bankruptcy Code (the "***DIP Superpriority Claims***"), having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including without limitation, sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c) (upon

-28-

entry of this Final Order), 507, 546(c), 552(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (except for Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims) to the extent provided in the DIP Loan Documents, the Interim OrderOrders, or this Final Order, including all applicable DIP Collateral, subject and subordinate to the payment of the Carve Out as provided for herein and pursuant to the DIP Loan Documents.; *provided*, that the DIP Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any DIP Superpriority Claims prior to collecting from any other DIP Collateral.

6.     *Adequate Protection*. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to Adequate Protection of their Prepetition Liens in Prepetition Collateral (including Cash Collateral), as follows (collectively, the "***Adequate Protection Obligations***"):

(a)     *Adequate Protection Claims*. The Prepetition Loan Agent, for the benefit of the Prepetition Secured Parties, is hereby granted, on a final basis, in the amount of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, superpriority administrative expense claims to the extent contemplated by section 507(b) of the Bankruptcy Code (the "***Adequate Protection***

*Claims*") against each of the Debtors. The Adequate Protection Claims shall be (a) subject and subordinate only to the Carve Out and the DIP Superpriority Claims, and (b) senior to any and all other administrative expense claims and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever.; *provided*, that the Prepetition Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any Adequate Protection Claims prior to collecting from any other DIP Collateral.

(b)      *Adequate Protection Liens*. The Prepetition Loan Agent, for the benefit of itself and the Prepetition Secured Parties, is hereby granted, on a final basis, effective and perfected as of the entry of the First Interim Order and as reaffirmed by the Second Interim Order and this Final Order (and without the necessity of the execution, recordation or filing by the DIP Loan Parties or the DIP Secured Parties of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, control agreements or other similar documents, or the taking of any other action to take possession of or control over any DIP Collateral), in the amount of any Diminution in Value of the Prepetition Liens in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, valid, binding, enforceable and automatically perfected liens and security interests in the DIP Collateral (the "**Adequate Protection Liens**"). For the avoidance of doubt, the Adequate Protection Liens do not include Avoidance Actions, Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims. The Adequate Protection Liens are senior to all other liens on, or claims against any of the DIP Collateral, but subject and subordinate only to (i) the Carve Out in all respects and (ii) the DIP Liens, it being understood that notwithstanding anything to the contrary in the Interim OrderOrders or this Final Order, in no circumstances and

-30-

at no time in these Chapter 11 Cases or in any Successor Case shall the Adequate Protection Liens be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time-; *provided, that the Prepetition Secured Parties shall exercise commercially reasonable efforts to exercise remedies and collect from DIP Collateral constituting the Prepetition Collateral on account of any Adequate Protection Liens prior to collecting from any other DIP Collateral.*

(c)      *Adequate Protection Professional Fees and Expenses*. The DIP Loan Parties are authorized and directed to pay all of the reasonable and documented out-of-pocket fees, costs and expenses of the Prepetition Loan Agent, including, without limitation, the reasonable and documented fees and expenses of Faegre Drinker Biddle & Reath LLP, legal counsel to the Prepetition Loan Agent (the "**Adequate Protection Professional Fees and Expenses**"), incurred since the Petition Date and relating in any way to the provision of legal services related to the Prepetition Secured Obligations, the Debtors, or the Chapter 11 Cases. The Adequate Protection Professional Fees and Expenses shall be subject to the review procedures set forth in paragraph 7 of this Final Order.

(d)      *Reporting*. The Debtors shall provide the Prepetition Loan Agent (for the benefit of the Prepetition Secured Parties) and counsel to the Official Committee (and their respective advisors) with all written reports delivered to the DIP Secured Parties under the DIP Loan Documents and this Final Order.  Upon any or all DIP Obligations being paid in full, the Prepetition Loan Agent (for the benefit of the Prepetition Secured Parties) shall continue to be entitled hereby to satisfaction of such reporting rights unless and until the applicable Prepetition Secured Obligations of the Prepetition Secured Parties are also paid in full.

-31-

7. *Review of Professional Fees and Expenses.* The payment of all DIP Professional Fees and Expenses and Adequate Protection Professional Fees and Expenses hereunder shall be made without the necessity of filing fee applications with the Court or compliance with the U.S. Trustee's guidelines and shall not be subject to further application to or approval of the Court; *provided*, *however*, that each such professional shall provide summary copies of its invoices (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to the Official Committee (collectively, the "***Review Parties***"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "***Review Period***").  For the avoidance of doubt, the fees provided for in this Final Order must be reasonable. Although the U.S. Trustee fee guidelines do not specifically apply, professionals shall submit time and expense detail entries to the U.S. Trustee, as well as any further information or back up documentation requested by the U.S. Trustee to determine the reasonableness of the invoiced amount of the DIP Professional Fees and Expenses and Adequate Protection Professional Fees and Expenses.  Invoices for such fees and expenses provided to any party other than the U.S. Trustee shall not be required to include any information subject to the attorney-client privilege, joint defense privilege, bank examiner privilege, or any information constituting attorney work product, and time and expense detail entries and other information provided solely to the U.S. Trustee shall be returned or destroyed

-32-

after the U.S. Trustee has reviewed such material and any objections to the applicable fees and expenses have been resolved upon request of the applicable professional.  Furthermore, the provision of invoices, time entries or other information pursuant to the terms hereof shall in no event constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Debtors shall promptly pay such invoices following the expiration of the Review Period. If an objection is received within the Review Period from the Review Parties, the Debtors shall promptly pay the undisputed amount of the invoice, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court.

8.      *Modification of Automatic Stay*. The automatic stay imposed by section 362(a) of the Bankruptcy Code (the "**Automatic Stay**") is hereby vacated and modified, on a final basis, without application to or further order of this Court, to permit: (a) the DIP Loan Parties to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Secured Parties may request to assure the perfection and priority of the DIP Liens, (b) the DIP Loan Parties to incur all DIP Obligations as contemplated under this Final Order and the DIP Loan Documents, (c) the Debtors to grant the Adequate Protection Liens and the Adequate Protection Claims, and to perform such acts as the Prepetition Secured Parties request to ensure the perfection and priority of the Adequate Protection Liens, (d) the DIP Loan Parties to incur all liabilities and obligations to the Prepetition Secured Parties, including all Adequate Protection Obligations, as contemplated under the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents, (e) subject to paragraph 11 of this Final Order, the DIP Secured Parties and the Prepetition Secured Parties to exercise, upon the occurrence of any DIP Termination Event (as

-33-

defined below), all rights and remedies provided for in this Final Order, the DIP Loan Documents, the Prepetition Loan Documents or applicable law, and (f) the DIP Loan Parties to perform under this Final Order and the DIP Loan Documents, and to take any and all other actions that may be reasonably necessary or required for the performance by the DIP Loan Parties under the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder.

9. *Perfection of DIP Liens and Adequate Protection Liens*.

(a) The Interim ~~Order~~Orders (as reaffirmed by this Final Order) and this Final Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the DIP Loan Documents, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action to take possession or control of any DIP Collateral, to attach, validate, perfect or prioritize such liens and security interests, or to entitle the DIP Secured Parties and the Prepetition Secured Parties to the priorities granted herein (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect, or prioritize such liens), it being understood that notwithstanding anything to the contrary in the Interim ~~Order~~Orders or this Final Order, in no circumstances and at no time in these Chapter 11 Cases or in any Successor Case shall the Adequate Protection Liens be senior to or *pari passu* with any DIP Liens, regardless of whether any such liens attach prior in time.

(b) The DIP Secured Parties and the Prepetition Secured Parties are each authorized, but not required, to (and if requested by the DIP Agent and/or the Prepetition Loan

-34-

Agent, the DIP Loan Parties shall) execute, file, and record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction in order to validate, perfect, preserve, and enforce the liens and security interests granted to them hereunder or under the DIP Loan Documents (each, a "***Perfection Action***"). Whether or not the DIP Agent or the Prepetition Loan Agent determine, in their sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable, and shall not be subject to challenge, dispute, or subordination (except, with respect to subordination, to the extent expressly contemplated herein) as of the entry of the First Interim Order (as reaffirmed by the Second Interim Order and this Final Order).

10.  *Cash Collateral and DIP Termination Events; Exercise of Remedies.*

(a)  *DIP Termination Events.*  Subject to any obligations under the Carve Out and any applicable grace period under the DIP Loan Documents and this Final Order, the occurrence of an "Event of Default" (with respect to the DIP Facility) (occurring after the "Fourteenth Amendment Effective Date"(as defined in the DIP Loan Agreement)) under and as defined in the DIP Loan Agreement shall constitute a "***DIP Termination Event***," in each case, unless waived in writing by the DIP Agent (at the direction of the Required DIP Lenders), which waiver may be evidenced by electronic mail from counsel to the DIP Agent.

(b)  *Exercise of Remedies.* Upon the occurrence and during the continuation of a DIP Termination Event, without further application, notice, hearing or order of the Court, the Automatic Stay shall automatically be deemed vacated and modified to the extent necessary to permit the DIP Agent (acting at the instruction of the requisite DIP Lenders under the DIP Loan Agreement) and the Prepetition Loan Agent (acting at the instruction of the requisite Prepetition

-35-

Secured Parties under the applicable Prepetition Loan Documents), to deliver a written notice (which may be via electronic mail) to counsel for the Debtors, the U.S. Trustee, and counsel for the Official Committee (the "**Remedies Notice**") to declare the occurrence of a DIP Termination Event (such date, the "**DIP Termination Declaration Date**") and, subject to the Carve Out in all respects and effective no sooner than seven (7) calendar days following the DIP Termination Declaration Date (the "**Remedies Notice Period**"), (i) terminate, reduce or restrict the commitments under the DIP Facility (to the extent any such commitment remains), (ii) accelerate and declare all DIP Obligations to be immediately due and payable, (iii) terminate the DIP Facility and the DIP Loan Documents as to any further liability or obligation thereunder, but without affecting the DIP Liens, the DIP Superpriority Claims or the DIP Obligations, (iv) terminate, restrict or revoke the ability of the Debtors to use Cash Collateral, (v) charge interest at the default rate set forth in the DIP Loan Agreement, and/or (vi) exercise or enforce any rights against DIP Collateral or Prepetition Collateral (as the case may be); *provided*, *however*, that the DIP Loan Parties and the Official Committee shall, during the Remedies Notice Period, be entitled to seek emergency relief before the Court, subject to the Court's availability ("**Emergency Motion**") (in which case, the Remedies Notice Period shall automatically extend until the Court's adjudication of such Emergency Motion). Unless the Court orders otherwise, upon the expiration of the Remedies Notice Period the Automatic Stay shall automatically be deemed terminated, without further notice, hearing or order of the Court, and the DIP Agent and/or the Prepetition Secured Parties (each acting at the direction of the requisite parties under the applicable documents) shall be permitted to exercise all remedies set forth herein, in the DIP Loan Documents and/or the Prepetition Loan Documents (as applicable) or applicable law.

(c) *Use of Cash Collateral During Remedies Notice Period.* During the Remedies Notice Period, the Debtors shall be permitted to use Cash Collateral solely to (i) fund payroll and critical expenses that are necessary to keep the Debtors' business operating or that have been consented to by the DIP Agent with the consent of the "Required DIP Lenders" under the DIP Loan Agreement (the "***Required DIP Lenders***"), (ii) fund the Carve Out, and (iii) file an Emergency Motion.

(d) *No Waiver for Failure to Seek Relief.* The failure or delay of the DIP Agent, any of the other DIP Secured Parties, or any of the Prepetition Secured Parties to exercise their respective rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

11. *Carve Out.*

(a) *Priority of Carve Out.* For the avoidance of doubt and notwithstanding anything to the contrary in the Interim ~~Order~~Orders and this Final Order, the DIP Loan Documents and the Prepetition Loan Documents, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations shall be subject and subordinate to payment of the Carve Out in all respects. The Carve Out shall have such priority claims and liens over all assets of the Debtors, including any DIP Collateral and any Prepetition Collateral.

(b) *Carve Out.* The term "**Carve Out**" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up

-37-

to $100,000 incurred by a trustee appointed under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed by the Court at any time, whether by interim order, final order, procedural order, or otherwise, all accrued but unpaid fees and expenses (the "*Allowed Professional Fees*") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "*Debtor Professionals*") and the Official Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "*Committee Professionals*" and, together with the Debtor Professionals, the "*Professional Persons*") at any time on and before the first Business Day following delivery by the DIP Agent (at the instruction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors or the Official Committee that are fully earned, due and payable pursuant to the terms of the applicable engagement letters or retention applications prior to the delivery of a Carve Out Trigger Notice) (the amounts set forth in the foregoing clauses (i), (ii) and (iii), the "*Pre-Carve Out Notice Amount*"), and (iv) Allowed Professional Fees of Professional Persons incurred after the first Business Day of delivery the Carve Out Trigger Notice by the DIP Agent (at the instruction of the Required DIP Lenders), in an aggregate amount not to exceed $2,500,000 (the aggregate amount set forth in this clause (iv), the "*Post-Carve Out Notice Amount*").

(c)     *Carve Out Trigger Notice*. For purposes of this Final Order, the "*Carve Out Trigger Notice*" shall mean a written notice (which may be via electronic mail) delivered by the DIP Agent (acting at the direction of the Required DIP Lenders) to the Notice Parties, which notice may be delivered following the occurrence of a DIP Termination Event, stating that the

Carve Out has been triggered and the Post-Carve Out Notice Amount has been invoked. The Carve Out Trigger Notice may be included in a Remedies Notice.

(d)     *Fee Estimates*.   Not later than 6:00 p.m. New York time on Friday (or the last Business Day) of each week starting with the first full calendar week following the Closing Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (other than any restructuring, sale, success, capital raising, or other transaction fee of any investment bankers or financial advisors) (collectively, "***Estimated Fees and Expenses***") incurred during the preceding week by such Professional Person (through Saturday of such week, the "***Calculation Date***"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "***Weekly Statement***"); *provided*, that, within one Business Day of the occurrence of the Carve Out Trigger Date (as defined below), each Professional Person shall deliver one additional statement (the "***Final Statement***") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Carve Out Trigger Date.

(e)     *Carve Out Reserves*.

(i)     Commencing with the week ending on June 20, 2026, and (solely with respect to clauses (A) and (C) below) on or before the Wednesday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement

-39-

delivered to the Debtors for each preceding week from the Petition Date through and ending on the most recent Calculation Date, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, through and including the week ending with the most recent Calculation Date, *plus* (B) the Post-Carve Out Notice Amount, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, for the two weeks occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust (the "***Funded Reserve Account***") to pay such Allowed Professional Fees (the "***Funded Reserves***") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Carve Out Trigger Date shall be paid first from such Funded Reserve Account.

(ii)      On the date on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors (the "***Carve Out Trigger Date***"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund into segregated accounts as follows:  (i) the Debtors shall first deposit and hold such amounts in a segregated account designated by the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "***Pre-Carve Out Trigger Notice Reserve***") prior to any and all other claims.  On the Carve Out Trigger Date and after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor, to fund a reserve in an amount equal to the Post-Carve Out Notice Amount (the "***Post-Carve Out Trigger***

-40-

*Notice Reserve*" and, together with the Pre-Carve Out Trigger Notice Reserve, the "*Carve Out Reserves*") prior to any and all other claims.

(iii)    To the extent the amount of any portion of the obligations benefitting from the Carve Out is not known to the Debtors as of the Carve Out Trigger Date, then the Debtors shall deposit such amount into the Pre-Carve Out Trigger Notice Reserve or Post-Carve Out Trigger Notice Reserve, as applicable, on the date such amount becomes known to the Debtors (or otherwise as soon as practicable thereafter).

(f)    *Application of Carve Out Reserves.*

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the Pre-Carve Out Notice Amount, but not, for the avoidance of doubt, the Post-Carve Out Notice Amount, until paid in full.  If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed first to the DIP Agent on account of the applicable DIP Obligations until indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as set forth in this Final Order.

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the Post-Carve Out Notice Amount.  If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed to the DIP Agent on account of the applicable DIP Obligations until indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as set forth in this Final Order.

(iii)    Notwithstanding anything to the contrary in the DIP Loan Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 11, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Notice Amount and Post-Carve Out Notice Amount, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 11, to the extent of any shortfall in funding prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable.

(iv)    Notwithstanding anything to the contrary in this Final Order, the DIP Loan Documents or the Prepetition Loan Documents, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Loan Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded pursuant to this paragraph 11. The Carve Out Reserves shall not be subject to the control of any of the DIP Secured Parties or the Prepetition Secured Parties, and shall not be subject to the DIP Liens or the Adequate Protection Liens, nor shall the Carve Out constitute DIP Collateral or Prepetition Collateral; *provided*, *however*, that the DIP Secured Parties and the Prepetition Secured Parties shall have a security interest in and lien on any residual cash in the Carve Out Reserves (in accordance with the priorities set forth in this Final Order and the DIP Loan Documents), with any excess cash paid as provided in paragraphs 11(f)(i), (ii) and (iii) above and in accordance with the DIP Loan Documents.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

-42-

(v)     Notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or indebtedness under the DIP Loan Documents or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall, and (iii) in no way shall the Initial DIP Budget, Approved DIP Budget, Approved Cash Collateral Budget, Carve Out, Pre-Carve Out Notice Amount, Post-Carve Out Notice Amount, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons.

(g)     *Payment of Allowed Professional Fees*.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.  Any payment or reimbursement made after the occurrence of the Carve Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve Out Trigger Date shall permanently reduce the Post-Carve Out Notice Amount on a dollar-for-dollar basis.

(h)     *No Direct Obligation to Pay Allowed Professional Fees.* None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code, regardless of whether such fees or expenses have been allowed by the Court. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured

-43-

Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(i)     *Distribution of Funded Reserves Following Repayment of DIP Obligations*.  If a Carve Out Trigger Notice has not been delivered prior to repayment and discharge of all DIP Obligations, upon approval of final fee applications for the Professional Persons and payment of all unpaid Allowed Professional Fees, any amount remaining in the Funded Reserve Account shall automatically revert to the Debtors to be paid pursuant to an Acceptable Plan; *provided*, that, a professional fee reserve (or similar arrangement) contemplated by any chapter 11 plan confirmed in the Chapter 11 Cases with respect to the unpaid fees and expenses of any Professional Person shall be funded first from amounts held in the Funded Reserve Account.

12.     *Effect of the Debtors' Stipulations on Third Parties.*

(a)     The Debtors' Stipulations shall be binding upon the Debtors and any successor thereto immediately upon entry of the First Interim Order (and as reaffirmed by the Second Interim Order and this Final Order). The Debtors' Stipulations shall be binding upon all parties-in-interest, including, without limitation, the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity seeking to act on behalf of the Debtors' estates (including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) (collectively, "***Successor Entities***"), unless the Official Committee or such other party-in-interest (i) files a motion seeking the requisite standing and authority to bring the Challenge (if and to the extent standing is required under applicable law) prior to the Challenge Deadline,[5] which motion shall describe the specific nature and basis of the Challenge and attach

---

[5]  "***Challenge Deadline***" means ~~the earlier of~~ (i) for ~~all parties in interest (including~~ the Official Committee, ~~a chapter 7 trustee or chapter 11 trustee~~July 31, 2026, (ii) for all other parties in interest (except for the Official

a draft complaint (the "***Standing Motion***"), and such standing is obtained pursuant to an order of the Court, (ii) timely and properly commences and serves an adversary proceeding or contested matter (subject to the limitations contained herein) (each, a "***Challenge Proceeding***") by no later than the Challenge Deadline, asserting a Challenge with respect to the amount, validity, perfection, enforceability, priority, scope or extent of the Prepetition Secured Obligations, the Prepetition Liens, the Prepetition Collateral or the Prepetition Loan Documents, or otherwise Challenging any of the Debtors' Stipulations, and (iii) obtains a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such Challenge.

(b)    If no such Standing Motion (to the extent required) or Challenge Proceeding is timely and properly filed by the Challenge Deadline, or if the Court does not rule in favor of plaintiff in any such timely and properly filed Challenge Proceeding (or if such Standing Motion or Challenge Proceeding is withdrawn), then, without application to or further order of the Court, (i) each of the Debtors' Stipulations shall be binding on all parties-in-interest, including, without limitation, any Official Committee, any other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party-in-interest (including, without limitation, any Successor Entities), (ii) the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date shall constitute allowed claims against each of the applicable Debtors in the Chapter 11 Cases and any

---

chapter 7 trustee or chapter 11 trusteeJuly 31, 2026, (ii) for all other parties in interest (except for the Official Committee), the date that is the earlier of (A) August 22, 2026and2026 and (B) the commencement of the Sale Hearing; *provided*, *however*, that the foregoing deadlines shall be without prejudice to any provisions of this Final Order, or (iiiii) any such later date as (x) has been agreed to by the Debtors and the applicable DIP Agent or Prepetition Loan Agent or (y) has been ordered by the Court for cause upon a motion filed and served within any applicable period; *provided*, *further*, that if a party in interest (including the Official Committee) files a Standing Motion before the end of the initial time periodsChallenge Deadline specified herein, then the Challenge Deadline shall be tolled during the pendency of such Standing Motion (but solely for the party seeking standing).

-45-

Successor Cases, and the Prepetition Liens shall forever be deemed to be legal, valid, binding, continuing, non-avoidable, perfected and enforceable, as of the Petition Date, against each of the Debtors in the Chapter 11 Cases and any Successor Cases with the priorities set forth in this Final Order, (iii) the Prepetition Secured Obligations and the Prepetition Liens shall not be subject to any other or further Challenge by any person or entity, and all parties in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action (including any Successor Entity, whether such Successor Entity is appointed or elected prior to or following the expiration of the Challenge Period), and (iv) any and all Challenges of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, against any of the Prepetition Secured Parties shall be deemed forever waived, released and barred.

(c) If any such Standing Motion (to the extent required) or Challenge Proceeding is timely filed by the Challenge Deadline, the Debtors' Stipulations shall nonetheless remain binding and preclusive on any Official Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, and any other party-in-interest (including, without limitation, any Successor Entities), except to the extent that any of the admissions, stipulations, findings, or releases contained in the Debtors' Stipulations were expressly challenged in such Challenge Proceeding (and solely as to the plaintiff party that timely filed such Challenge Proceeding and not, for the avoidance of doubt, any other party-in-interest).

(d) Nothing in this Final Order vests or confers on any person or entity, including any Official Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party-in-interest standing or authority to pursue any Challenge belonging to the Debtors or their estates, and all rights to object to any request for

-46-

such standing are expressly reserved and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any Acceptable Plan.

(e)   The Prepetition Secured Parties stipulate and agree that each of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of limited liability companies, and if the Official Committee or other party in interest pursues or brings forth such a Challenge, the defendant Prepetition Secured Party of such Challenge shall not object on the grounds that the Official Committee or other party in interest lacks standing to file derivative suits on behalf of limited liability companies; *provided*, that all other standing arguments and defenses shall be preserved.

13.   *Limitations on Use of DIP Facility, DIP Collateral, Cash Collateral, and Carve Out*.   None of the DIP Facility, the DIP Collateral, the Prepetition Collateral (including Cash Collateral of the Prepetition Secured Parties) or the proceeds thereof, or any portion of the Carve Out, may be used directly or indirectly for any of the following (each such prohibited use, a "**Prohibited Action**"): (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition Secured Parties (in each case, in their capacities as such) or seeking relief that would impair the rights or remedies of the DIP Secured Parties or the Prepetition Secured Parties (in each case, in their capacities as such) under the DIP Loan Documents, this Final Order, the Prepetition Loan Documents, including for the payment of any services rendered by the Professional Persons in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other

-47-

contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations or any of the Prepetition Secured Obligations or otherwise, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations, the DIP Superpriority Claims, or the DIP Secured Parties' liens or security interests in the DIP Collateral or the Prepetition Collateral, or the Prepetition Secured Obligations, the Adequate Protection Obligations, or the Prepetition Secured Parties' liens or security interests in the Prepetition Collateral or the DIP Collateral, or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition Secured Parties (in each case, in their capacities as such), or their respective liens on or security interests in the DIP Collateral or the Prepetition Collateral or the DIP Superpriority Claims, that would impair the ability of the DIP Secured Parties or the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations, the Prepetition Secured Obligations, or the Adequate Protection Obligations; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of any of the Prepetition Secured Parties related to any of the Prepetition Secured Obligations, or by or on behalf of the DIP Secured Parties related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any Avoidance Actions related to the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, Adequate Protection Obligations, or any payment

-48-

made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of:  (i) any of the DIP Liens, the DIP Superpriority Claims, or any other rights or interests of the DIP Secured Parties related to the DIP Obligations or the DIP Liens, or (ii) any of the Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Claims, Adequate Protection Liens, Adequate Protection Obligations, or any other rights or interests of any of the Prepetition Secured Parties; *provided*, that, no more than $100,000250,000 (the "***Challenge Budget***") of the DIP Collateral, the Prepetition Collateral (including Cash Collateral of the Prepetition Secured Parties), or the DIP Facility, in the aggregate, may be used by (x) any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases or (y) the Official Committee, solely to investigate (but not to prosecute) the foregoing matters with respect to the Prepetition Liens or the Prepetition Secured Obligations (but not claims and/or liens of the DIP Secured Parties) within the Challenge Deadline.

14.     *Payments Held in Trust.*  Except as expressly permitted in this Final Order or the DIP Loan Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to payment in full in cash of all DIP Obligations under the DIP Loan Documents and termination of the DIP Commitments in accordance with the DIP Loan Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the other DIP Secured Parties and shall immediately

turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Loan Documents and this Final Order. For the avoidance of doubt, this paragraph 14 will not apply to payments made or assets transferred by the Debtors as authorized under the DIP Loan Documents, the Bankruptcy Code, or any order of the Court.

15. *Proceeds of Subsequent Financing*. Nothing in this Final Order shall be deemed to prohibit the Debtors from seeking authority to obtain, or from obtaining, additional or replacement debtor-in-possession financing pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code or otherwise; *provided*, *however*, that no such financing shall be effective, and no liens, claims, or priorities granted in connection therewith shall attach to any property of the Debtors' estates, unless and until (a) all DIP Obligations have been indefeasibly paid in full in cash, (b) all DIP Liens and DIP Superpriority Claims granted pursuant to the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents have been fully satisfied, (c) all Adequate Protection Obligations (including the Adequate Protection Claims and the Adequate Protection Liens) have been paid, satisfied, and released in full, and (d) the DIP Lenders' commitments to extend credit under the DIP Facility have been terminated in accordance with the DIP Loan Documents. In furtherance of the foregoing, if the Debtors, their estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time before the repayment in full in cash of all of the DIP Obligations, the satisfaction of the DIP Liens and DIP Superpriority Claims, the payment in full of the Adequate Protection Obligations, and the termination of the DIP Lenders' commitments to extend credit under the DIP Facility, then, unless otherwise agreed by the DIP Agent (acting at

the direction of the Required DIP Lenders), all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, subject to the Carve Out, to be applied in accordance with the DIP Loan Documents until the repayment in full in cash of all DIP Obligations and all Adequate Protection Obligations.

16. *Limitation on Charging Expenses Against Collateral; Waivers.*

(a) *Limitations on Charging Expenses Against Collateral.* Upon entry of this Final Order, in accordance with Bankruptcy Local Rule 4001-2(g)(9), except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral, the DIP Secured Parties, or the Prepetition Secured Parties pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or any similar principle of law or equity, without the prior written consent of the DIP Secured Parties, and the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties, or the Prepetition Secured Parties.

(b) *No Marshaling.* Upon entry of this Final Order, in accordance with Bankruptcy Local Rule 4001-2(g)(9), the DIP Agent shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition Collateral, as applicable, in accordance with the provisions of this Final Order, the DIP Loan Documents or the Prepetition Loan Documents, as applicable, and in no event shall the DIP Secured Parties, or any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral. Nothing herein affects the Court's ability to direct marshaling.

(c)     *Equities of the Case.*   Upon entry of this Final Order, the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no party shall invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code, in each case with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral.

17.     *Section 507(b) Reservation*. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties, that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral; *provided*, *however*, that any such additional section 507(b) claims shall be subject to the same relative priority as such party's Adequate Protection Claims, as provided in this Final Order.

18.      *Credit Bid*.

(a)     Subject to the lien priorities set forth herein and the Bidding Procedures Order, (i) the DIP Agent (acting at the direction of the Required DIP Lenders), on behalf of itself and the other DIP Secured Parties, shall have the right to credit bid, in accordance with the DIP Loan Documents, all or any portion of the DIP Obligations in any sale of the DIP Collateral (or any portion thereof), in accordance with the terms and conditions set forth therein and (ii) subject only to the rights of parties-in-interest specifically set forth in paragraph 12 of this Final Order (and subject to the limitations contained therein), the Prepetition Loan Agent (acting at the

direction of the applicable requisite Prepetition Lenders), on behalf of itself and the other Prepetition Secured Parties, shall have the right, consistent with the provisions of the Prepetition Loan Documents, as applicable, to credit bid up to the full amount of the Prepetition Secured Obligations (including any Adequate Protection Obligations) in the sale of the Prepetition Collateral (or any portion thereof), in each case without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

19.     *Binding Effect; Successors and Assigns*. Immediately upon entry of the First Interim Order (and as reaffirmed by the Second Interim Order and this Final Order), subject to paragraph 12 of this Final Order, the DIP Loan Documents and this Final Order, including all findings of fact and conclusions of law herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Official Committee or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties and their respective successors and assigns; *provided*, *however*, that, for the avoidance of doubt, the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to make any loan, permit the use of DIP Collateral or Prepetition Collateral

-53-

(including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

20.    *Protection of the Debtors, the DIP Agent, the DIP Secured Parties, and the Prepetition Secured Parties.*

(a)    *Reservation of Rights of the DIP Agent, Other DIP Secured Parties, and the Prepetition Secured Parties.* Except as otherwise expressly set forth in this Final Order (including the relative priorities set forth in the DIP Loan Agreement), the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of any of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; (ii) any of the rights of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the DIP Agent, the other DIP Secured Parties, or the Prepetition Secured Parties to (A) request modification of the automatic stay of section 362 of the Bankruptcy Code, (B) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, or (C) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (iii) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the other DIP Secured Parties, or any Prepetition Secured Parties.

(b)    *No Waiver for Failure to Seek Relief.* The failure or delay of the DIP Agent, any of the other DIP Secured Parties, and/or any of the Prepetition Secured Parties to

-54-

exercise their respective rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

21.     *Release.*  Subject to paragraph 12 solely regarding Challenges by parties other than the Debtors in respect of the Prepetition Secured Parties, the Prepetition Liens, and the Prepetition Secured Obligations, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, successors, and assigns hereby to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Secured Parties, the Prepetition Secured Parties (in each case, in their capacities as such), and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds, or investment vehicles, managed, advised, or sub-advised accounts, funds, or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, each in their capacity as such (collectively, the "**Released Parties**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation, or by contract, of every nature and description that exist on the date hereof including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or

defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties, and (iv) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Prepetition Secured Parties; *provided,* that (x) the release set forth in the foregoing clause (iii) in respect of the Delayed Draw Interim New Money DIP Loans, the DIP Liens in respect of the Delayed Draw Interim New Money DIP Loans and any other DIP Obligations approved by the Interim ~~Order~~Orders were effective upon entry of the applicable Interim ~~Order~~Orders (and as reaffirmed by this Final Order) and (y) the release set forth in this paragraph shall not release any claims or liabilities against a Released Party that a court of competent jurisdiction pursuant to a final, non-appealable order determines primarily result from the bad faith, fraud, gross negligence, or willful misconduct of such Released Party. For the avoidance of doubt, nothing in this paragraph shall relieve the DIP Secured Parties, the Prepetition Secured Parties, or the Debtors of their obligations hereunder or under the DIP Loan Documents.

22.     *Limitation of Liability.*   In determining to make any loan under the DIP Loan Documents, permitting the use of any Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to the Interim ~~Order~~Orders, this Final Order, the DIP Loan Documents, or the Prepetition Loan Documents, the DIP Secured Parties and the Prepetition Secured Parties (in each case, solely in their capacities as such) shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental

Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors or their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order, the DIP Loan Documents, or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or any Prepetition Secured Parties (solely in their capacities as such) of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors or their direct or indirect subsidiaries.

23. *Insurance*.  Upon entry of the First Interim Order (and as reaffirmed by the Second Interim Order and this Final Order), the DIP Agent shall be deemed to be, without any further action or notice, named as an additional insured and lender's loss payee on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

24. *Preservation of Rights Granted Under This Final Order.*

(a) Subject to the Carve Out and to the extent provided in this Final Order and the Permitted Prior Senior Liens, other than as set forth in this Final Order, DIP Liens shall not be made subject to, junior to, or *pari passu* with (A) any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date or (B) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and (ii) no claim shall be granted for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior to or equal to the DIP Superpriority Claims.

(b) Subject to the Carve Out, the DIP Liens, and the Permitted Prior Senior Liens, each to the extent provided in this Final Order, (i)  none of the Adequate Protection Liens

or the Prepetition Liens shall be made subject to and/or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases arising after the Petition Date, (ii) the Adequate Protection Liens shall not be subject to, junior to, or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and (iii) absent further order of the Court (with respect to which the Prepetition Secured Parties reserve all rights), no claim shall be granted for any administrative expense, secured claim, or unsecured claim against any of the Debtors with priority superior or equal to the Adequate Protection Claims or the Prepetition Secured Obligations.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any reversal, modification, vacatur, or stay of any use of Cash Collateral, DIP Obligations, DIP Liens, Adequate Protection Obligations, or Adequate Protection Liens incurred by the DIP Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay, such use of Cash Collateral, DIP Obligations, DIP Liens, Adequate Protection Obligations, or Adequate Protection Liens shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in sections 364(e) and 363(m) of the

Bankruptcy Code, the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)      Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code: (i) the DIP Superpriority Claims, the Adequate Protection Claims, the DIP Liens, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been paid in full or otherwise satisfied in accordance with this Final Order or the DIP Loan Documents (and that such DIP Superpriority Claims, Adequate Protection Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(e)      Except as expressly provided in this Final Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the Adequate Protection Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Loan Documents shall survive, shall maintain their priority as provided in this Final Order, and shall not be modified, impaired, or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the

sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases. The terms and provisions of this Final Order and the DIP Loan Documents shall continue in the Chapter 11 Cases, in any Successor Cases if the Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and (x) the DIP Liens and the DIP Superpriority Claims, and all other rights and remedies of the DIP Agent and the DIP Lenders, granted by the provisions of the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents shall continue in full force and effect until consummation of an Acceptable Plan with respect to the Debtors or, the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Loan Documents, and the DIP Commitments have been terminated and (y) the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the Prepetition Loan Agent and the Prepetition Secured Parties granted by the provisions of the Interim ~~Order~~Orders, this Final Order, and the DIP Loan Documents shall continue in full force and effect until the earlier of (A) consummation of an Acceptable Plan and (B) the Prepetition Secured Obligations and all Adequate Protection Obligations have been indefeasibly repaid in full in cash.

(f)    Nothing in this Final Order shall modify, prime, limit, alter, or expand any terms of any surety bonds, any related indemnity agreements, and/or any rights of the Debtors' sureties in any of their collateral.

(g)    Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge by any party in interest in accordance with paragraph 12 hereof and to the extent required by Local Rule 4001-2(g)(5), the Court reserves

-60-

the right to unwind or partially unwind the DIP Roll-Up Loans, after notice and a hearing, in the event that there is a timely and successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition Secured Obligations or Prepetition Liens, and/or a determination that the Prepetition Secured Obligations were under-secured as of the Petition Date and, as a result of which, in each case, the Roll-Up Loans unduly advantaged the Prepetition Secured Parties; *provided*, that to the extent any DIP Roll-Up Loans are unwound or partially unwound by a final and non-appealable order, the corresponding Prepetition Secured Obligations shall be reinstated to the status, priority, and security position held immediately prior to their conversion.

25.     *Leased Premises*.

(a)     Notwithstanding anything to the contrary in this Final Order, DIP Liens and Adequate Protection Liens shall not encumber and DIP Collateral shall not include (i) leasehold interests of non-residential real property that prohibit or restrict the granting of such liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases), (ii) any security deposits (in possession of the Debtors or the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; *provided,* that, the DIP Liens and Adequate Protection Liens shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Debtors, if at all, as well as any proceeds or value of such leasehold interests whether by sale, financing, or other disposition or form of transfer, termination or transaction, or (iii) leasehold interests (other than any or all proceeds thereof) of certain real property lease agreements identified on Schedule 1 to the Debtors' *Omnibus Motion for an Order (I) Approving the Rejection of Certain Real*

*Property Lease Agreements, (II) Approving the Abandonment of Certain Excess Property, and (III) Granting Related Relief* [ECF No. 18]; *provided*, *further*, any liens or rights granted herein relating to the Debtors' insurance policies shall not interfere with any rights held by a landlord under such policies to any such insurance proceeds for damage to landlord's property.

(b)     The DIP Agent's or the Prepetition Loan Agent's exercise of their remedies pursuant to paragraph 10 hereof and under the DIP Loan Documents and the Prepetition Loan Documents shall be subject to, as may be applicable: (a) any agreement in writing between the DIP Agent or Prepetition Loan Agent and any applicable landlord; (b) pre-existing rights of the DIP Agent or Prepetition Loan Agent, and any applicable landlord under applicable non-bankruptcy law; (c) written consent of the applicable landlord; or (d) further order of this Court following notice and a hearing.

(c)     *Stub Rent Reserve*. Subject to the terms and conditions of the DIP ~~Documents~~Loan Documents (except with respect to the funding, use, and disbursement of the Stub Rent Reserve as specifically provided in this paragraph 25(c)) and this Final Order, ~~and subject and subordinate to the Carve Out~~by no later than two (2) business days following the entry of this Final Order, the Debtors shall fund into a segregated account (the "**Stub Rent Reserve**") an amount of $5,193,168 in accordance with the Approved DIP Budget on account of unpaid ~~rent~~lease obligations due under property leases to which a Debtor is party (solely to the extent that such obligations constitute valid claims) for the period from June 12, 2026 through June 30, 2026~~; *provided*, that, the DIP Liens and Prepetition Adequate Protection Liens shall attach to the amounts contained in the Stub Rent Reserve~~ ~~until payment in full of the DIP Claims and Adequate Protection Claims~~ (the "**Stub Rent Claims**").

a.      The DIP Liens, the Prepetition Liens, and the Adequate Protection Liens shall attach to the amounts contained in the Stub Rent Reserve with the same validity, extent, enforceability, and priority as set forth in this Final Order with respect to the DIP Collateral and the Prepetition Collateral without the necessity of a control agreement or any other Perfection Action. For the avoidance of doubt, the Stub Rent Reserve and all amounts on deposit therein shall constitute DIP Collateral and Prepetition Collateral for all purposes of this Final Order and the DIP Loan Documents, *provided*, that upon the occurrence and continuation of a DIP Termination Event, the DIP Agent shall not exercise the rights and remedies in paragraph 10 with respect to the Stub Rent Reserve without further order of the Court with notice to lease counterparties and an opportunity to be heard.

b.      The funds contained in the Stub Rent Reserve shall only be used to pay Stub Rent Claims until all such Stub Rent Claims have been paid in full in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable. For each applicable lease agreement, the Stub Rent Claims thereunder shall be paid from the Stub Rent Reserve to such lease's counterparty upon the earlier of (i) the effective date of assumption of such lease (unless otherwise agreed by the affected counter party), or (ii) upon the effective date of rejection of the affected lease. Upon payment in full of all valid Stub Rent Claims, any amounts remaining on deposit in the Stub Rent Reserve shall automatically, without further action or order of this Court, be returned to the Debtors' general operating accounts and shall be available for use by the Debtors solely in accordance with the Approved DIP Budget or the Approved Cash Collateral Budget, as applicable, and the terms and conditions of the DIP Loan Documents and this Final Order.

c.      Nothing in this paragraph 25(c), the funding of the Stub Rent Reserve, or the payment of any amounts from the Stub Rent Reserve shall constitute a finding or determination by this Court regarding the validity, amount, or priority of any Stub Rent Claim and nothing herein shall be deemed to grant to any landlord or other party any lien on, security interest in, or other interest in or right to the Stub Rent Reserve or the amounts on deposit therein that is senior to or pari passu with the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the DIP Superpriority Claims, or the Adequate Protection Claims.

26.     *Consent to Liens*. To the extent provided in the Interim ~~Order~~Orders or this Final Order, each of the Prepetition Secured Parties is deemed to consent to and agrees not to contest: (a) the grant of all DIP Liens and the Adequate Protection Liens and (b) any changes to priority resulting from the DIP Liens and the Adequate Protection Liens of the Prepetition Liens granted by the Debtors.

27.     *Proofs of Claim.*  None of the DIP Secured Parties or the Prepetition Secured Parties shall be required to file proofs of claim in any of the Chapter 11 Cases or any Successor Cases for any claim allowed herein, and the stipulations in paragraph F shall be deemed to constitute a timely filed proof of claim with respect to the Prepetition Secured Obligations against each of the Debtors in the Chapter 11 Cases.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the DIP Secured Parties, the Prepetition Loan Agent, on behalf of itself and the other Prepetition Secured Parties, are each authorized and entitled, but not required, to file (and amend and/or supplement, as the respective agents see fit) a master proof of claim on account of any and all of the respective claims arising under the DIP Facility or Prepetition Loan Documents, as applicable (the "***Master Proof of***

-64-

*Claim*").  For administrative convenience, any Master Proof of Claim authorized herein may be filed in the case of Debtor Sleep Number Corporation with respect to all amounts asserted in such Master Proof of Claim, and such Master Proof of Claim shall be deemed to be filed and asserted by the applicable entity or entities against every Debtor asserted to be liable for the applicable claim.  For the avoidance of doubt, the provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including not affecting the numerosity requirements set forth in section 1126 of the Bankruptcy Code.  Neither the DIP Agent nor the Prepetition Loan Agent shall be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the DIP Agent and other DIP Secured Parties, or the Prepetition Secured Parties, as applicable, which instruments, agreements, or other documents will be provided (subject to any applicable confidentiality restrictions) upon written request to counsel to the DIP Agent or the Prepetition Loan Agent, as applicable.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including any administrative claim) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the DIP Secured Parties or Prepetition Secured Parties.  For the avoidance of doubt, none of the DIP Secured Parties or the Prepetition Secured Parties will be required to file any request for allowance and/or payment of any administrative expenses, and the Interim ~~Order~~Orders and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations or Adequate Protection Claims constituting administrative expenses or any DIP Obligations or DIP Superpriority Claims constituting administrative expenses, as applicable.

28.      *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 4001(c)(1), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

29.      *DIP Loan Documents; DIP Obligations, etc.*  Notwithstanding that the DIP Loan Documents (and the "Loan Documents" referred to therein) govern both the terms of the DIP Facility and the Prepetition Secured Obligations, nothing therein or in this Final Order shall be interpreted to cause any Prepetition Secured Obligations to be (or be deemed to be) "DIP Loans" or to be afforded the treatment of DIP Loans (including by being secured by the DIP Liens and/or to be treated as DIP Superpriority Claims), except solely in the case of DIP Roll-Up Loans, and in such case, subject to the limitations set forth in this Final Order.  Except as otherwise expressly set forth herein with respect to the Prepetition Secured Obligations (being directly referred to as such in such instances), for the further avoidance of doubt, the automatic stay imposed by section 362 of the Bankruptcy Code remains in effect with respect to the Prepetition Secured Obligations and the Prepetition Liens (including imposing a stay with respect to the exercise of remedies with respect thereto).  References to DIP Secured Parties shall refer to such persons or entities in their capacities solely with respect to the DIP Facility and not in their capacities as Prepetition Secured Parties.  In the event of any conflict or inconsistency between this paragraph 29 and any other provision of this Final Order, this paragraph 29 shall govern and control.  For the avoidance of doubt, nothing in this paragraph 29 shall limit, impair, or modify any rights or remedies of (a) the DIP Secured Parties (as such) under the DIP Loan Agreements

or (b) the Prepetition Secured Parties (as such) under the Prepetition Loan Documents as set forth in this Final Order, which shall remain in full force and effect.

30.     *Final Order Controls.*

(a)     In the event of any conflict or inconsistency between or among the provisions of this Final Order and any of the Motion, the DIP Loan Documents, the Prepetition Loan Documents, or any other order entered by this Court, including the Interim ~~Order~~Orders (but only to the extent of any conflict with the terms of this Final Order), unless such provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the DIP Loan Agreement or the DIP Loan Documents, the provisions of this Final Order shall govern and control.

(b)     Notwithstanding anything to the contrary in the DIP Loan Agreement, other DIP Loan Documents, or the Interim Orders, the Debtors shall not be required to establish the Reserve (as defined in the DIP Loan Agreement), and the payment of DIP Obligations shall not be subject to such Reserve.

31.     *No Third-Party Rights.* Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct or indirect incidental beneficiary.

32.     *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine, and enforce the terms of any and all matters arising from or related to the DIP Facility, the DIP Loan Documents, and this Final Order.

Dated: _____, 2026
          New York, New York                    _____

-67-

THE HONORABLE KYU Y. (MIKE) PAEK
UNITED STATES BANKRUPTCY JUDGE

**Annex A**

**Defined Terms**

(i)    "***Acceptable Plan***" has the meaning set forth in the DIP Loan Agreement.

(ii)    "***Avoidance Action***" means any Claim or Cause of Action arising under Chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law.

(iii)    "***Avoidance Action Proceeds***" means any and all proceeds of or property recovered from Avoidance Actions, whether by adjudication, judgment, settlement, or otherwise.

(iv)    "***Bidding Procedures Motion***" means the *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [ECF No. 17].

(v)    "***Bidding Procedures Order***" means the ~~order entered by the Court granting the relief requested in the~~*Order (I)(A) Approving Bidding Procedures ~~Motion.~~for Sale of the Debtors' Assets, (B) Approving the Designation of SNBR Inc., an affiliate of Sleep Country Canada, Inc., as the Stalking Horse Bidder for the Assets, (C) Authorizing and Approving Entry into the Stalking Horse Asset Purchase Agreement, (D) Approving Bid Protections, (E) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (F) Approving the Form and Manner of Notices of Sale, Auction, and Sale Hearing, and (G) Approving the Assumption and Assignment Procedures and (II) Granting Related Relief* [ECF No. 167].

(vi)    "***Business Day***" has the meaning set forth in the DIP Loan Agreement.

(vii)    "***Cash Collateral***" shall mean all of the Debtors' cash wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of the Prepetition Secured Parties (including the proceeds of Prepetition Collateral) or the DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

(viii)    "***Cause of Action***" means any cause of action under law or equity, of any kind or nature whatsoever, whether arising under United States federal or state law, common law, or otherwise.

(ix)    "***Challenge***" means, with respect to a party other than the Debtors, any challenge, objection, defense, or Claim or Cause of Action, including, without limitation, any Avoidance

Action or any Claim or Cause of Action asserting reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery, or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(x)     "**Claim**" has the meaning set forth in the Bankruptcy Code.

(xi)     "**Closing Date**" means the Fourteenth Amendment Effective Date (as defined in the DIP Loan Agreement).

(xii)     "**DIP Collateral**" means (A) the Debtors' interest in all assets and properties, whether tangible, intangible, real, personal, or mixed, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, in each case to the extent such assets and properties constitute Prepetition Collateral; and (B) property of the Debtors, whether existing on the Petition Date or thereafter acquired, including all unencumbered assets of the Debtors, all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including unencumbered cash (and any investment of such cash) of the Debtors, all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements, and other intellectual property, all commercial tort claims, and any and all proceeds, products, rents, and profits of the foregoing; *provided*, that, notwithstanding the foregoing, DIP Collateral shall not include (x) the Excluded DIP Collateral and (y) Avoidance Actions, ~~but shall include all~~ Avoidance Action Proceeds, commercial tort claims, and proceeds of commercial tort claims. Notwithstanding anything to the contrary herein, to the extent a DIP Lien or an Adequate Protection Lien cannot attach to the DIP Collateral pursuant to applicable law, the DIP Liens and Adequate Protection Liens granted pursuant to this Final Order shall attach to the Debtors' economic rights therein, including any and all such proceeds of such DIP Collateral.

(xiii)     "*DIP Loan Documents*" means the DIP Loan Agreement and all guarantee, collateral, pledge, and security agreements, intellectual property security agreements, control agreements, financing statements, and all other agreements, documents, certificates, and instruments executed, recorded and/or delivered in connection therewith or related thereto including, without limitation, the Loan Documents (as defined in the DIP Loan Agreement), in each case, as amended, supplemented or modified in accordance with the terms thereof and this Final Order; *provided*, that, when used in this Final Order, the "DIP Loan Documents" shall be interpreted to refer only to the DIP Loan Agreement, and the other "Loan Documents" referred to

therein, in each case solely to the extent   such DIP Loan Agreement and/or other "Loan Documents" are governing the terms of the DIP Facility (and then only to such extent).

(xiv)   "***DIP Obligations***" means any and all obligations arising under the DIP Facility and the DIP Loan Documents, but in each case relating solely to the DIP Loans (including, without limitation, all DIP Loans, advances, indebtedness, obligations, extensions of credit, financial accommodations, principal, interest, payments, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other amounts, whenever the same shall become due and payable, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise), to the DIP Agent or any of the DIP Lenders under the DIP Loan Documents or this Final Order; *provided*, that, notwithstanding the foregoing or any provision of this Final Order to the contrary, in no circumstances shall the DIP Obligations include the Prepetition Secured Obligations.

(xv)   "***Excluded DIP Collateral***" has the meaning set forth in the DIP Loan Agreement.

(xvi)   "***Notice Parties***" has the meaning set forth in the Motion.

(xvii)   "***Permitted Prior Senior Liens***" means liens over the assets of the Debtors senior by operation of law or otherwise permitted to be senior by the Prepetition Loan Documents and solely to the extent any such liens were valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code).

(xviii)   "***Prepetition Obligations***" has the meaning set forth in the DIP Loan Agreement.

(xix)   "***Sale Hearing***" has the meaning set forth in the Bidding Procedures Motion.

**<u>Exhibit 1</u>**

**DIP Loan Agreement**