**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

In re:                                                    Chapter 11

SLEEP NUMBER CORPORATION, *et al.*          Case No. 26-11399 (KYP)

          Debtors.                                   Jointly Administered

----------------------------------------------------------------x

## <u>MEMORANDUM DECISION GRANTING DEBTORS' MOTION DIRECTING TRANSFER OF FUNDS HELD IN DEFERRED COMPENSATION TRUST</u>

**APPEARANCES:**

DAVIS POLK & WARDWELL LLP
*Counsel to Debtors*
450 Lexington Avenue
New York, New York 10017
By:   Brian M. Resnick, Esq.
      Angela M. Libby, Esq.
      Stephen D. Piraino, Esq.
      Richard J. Steinberg, Esq.
      Sihui (Sophy) Ma, Esq.
      Mordechai Rivkin, Esq.
         Of Counsel

FAISAL MUSHTAQ
*Pro Se Objector*

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

### <u>INTRODUCTION</u>

Sleep Number Corporation and its affiliated debtors ("Sleep Number" or

"Debtors") seek an order directing the transfer to the Debtors' bankruptcy estates of

over $17.5 million held in a trust originally established to fund deferred compensation

payments to certain high-salary employees ("Motion").[1]  Former Sleep Number employee Faisal Mushtaq ("Mr. Mushtaq"), who is owed $107,000.00 in deferred compensation, objects to the Motion ("Objection").[2]  For the reasons stated, the Objection is OVERRULED, and the Motion is GRANTED.

## JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York.  The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (M), and (O).

## BACKGROUND

### A.    The Executive Deferral Plan and Deferred Compensation Trust

Sleep Number was a retail mattress company that assembled and sold adjustable "smart" beds directly to customers.  The Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code on June 12, 2026 ("Petition Date").  On June 23, 2026, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors ("Creditors Committee") pursuant to 11 U.S.C. § 1102(a)(1).  (ECF Doc. # 110 (notice of appointment of Creditors Committee).)  The Debtors filed these bankruptcy cases with the goal of selling the company as a going concern on an expedited schedule.

---

[1]    *See Motion of Debtors for an Order (I) Directing the Trustee of the Debtors' Non-Qualified Deferred Compensation Plan Trust to Return the Debtors' Assets Held in Trust to the Debtors' Estates and (II) Granting Related Relief*, dated July 5, 2026 (ECF Doc. # 170).  "ECF Doc. # _" refers to documents filed on the electronic docket of the lead bankruptcy case: Case No. 26-11399 (KYP).  "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2]    *See Objection of Faisal Mushtaq to Debtors' Motion*, docketed on July 8, 2026 (ECF Doc. # 210).

On July 2, 2026, the Court approved bid procedures for the auction (ECF Doc. # 167 (order approving bid procedures and stalking horse asset purchase agreement)), and, on July 21, 2026, the Court approved the sale of the company to the winning bidder SNBR, Inc. for a purchase price of $701,800,000.00. (ECF Doc. # 430 (order approving sale).)

Prior to the Petition Date, the Debtors sponsored the Sleep Number Executive Deferral Plan ("Executive Deferral Plan" or "Plan")[3] for the purpose of providing deferred compensation to a select group of management or highly compensated employees. (Plan § 1.3.) The Plan was an unfunded plan designed to comply with section 409A of the Internal Revenue Code and to qualify for the exemptions set forth in sections 201, 301, and 401 of ERISA. (*Id*.) The appeal of deferring compensation is that the participating employee could benefit from a lower tax bracket in the future due to termination of employment or retirement. *Accardi v. IT Litig. Tr.* (*In re IT Grp., Inc.*), 448 F.3d 661, 664 (3d Cir. 2006) (citation omitted). These types of deferred compensation plans are referred to as "top hat" plans and are defined in ERISA as

> a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

*Id*. at 665 (quoting 29 U.S.C. § 1051(2)). "Top hat plans are subject to ERISA's administrative and enforcement provisions but are exempted from ERISA's requirements relating to vesting, participation, fiduciary responsibilities and funding." *Lehman Bros. Inc. Deferred Comp. Def. Steering Comm. v. Giddens* (*In re Lehman Bros. Inc.*), 617 B.R. 231, 240 (Bankr. S.D.N.Y. 2020) (citation and internal quotation marks omitted), *aff'd*, Case Nos. 19-3245, 20-3757, 2021 WL 4127075 (2d Cir. Sept. 10,

---

[3]     A copy of the Plan is available at ECF Doc. # 511.

2021). Congress exempted top hat plans from ERISA's substantive provisions because "management and highly compensated employees have sufficient bargaining power to negotiate favorable deferred compensation plans and are capable of taking the risks attendant to such plans into account." *IT Grp.*, 448 F.3d at 664 n.1 (citing Dep't of Labor, Pension & Welfare Benefit Programs, Op. Ltr. 90-14A, 1990 ERISA LEXIS 12, at *3-4 (May 8, 1990)).

Top hat plans must be "unfunded," meaning the employer "does not set aside the funds in an escrow, trust fund, or otherwise." *Id.* at 665 (quoting David J. Cartano, *Taxation of Compensation & Benefits* § 20.02[A], at 721 (2004) ("Cartano")). Rather, the "assets used to pay the deferred compensation are the general assets of the employer and are subject to the claims of the employer's creditors." *Id.* (quoting Cartano § 20.02[A], at 721). "The employee is not subject to tax on the compensation until he or she actually receives the deferred amount because the employee may never receive the money if the company becomes insolvent." *Id.* (quoting Cartano § 20.02[A], at 721) (internal quotation marks omitted).

Nonetheless, the employer may segregate funds into a trust to pay the deferred compensation owed under a top hat plan without losing the plan's "unfunded" status if the trust funds remain "subject to the claims of the employer's creditors in the event of insolvency or bankruptcy." *Id.* (quoting Cartano § 20:05[D], at 731). These types of trusts are referred to as "rabbi" trusts, which the Third Circuit described as follows:

> The rabbi trust gives employees some measure of security, while at the same time deferring taxes. The assets set aside in the trust are segregated from the employer's other assets and can be used only to pay the deferred compensation. If there is a change in control of the company, the new owners cannot take back the assets of the trust.

> The employee is not taxed until receipt of benefits as long as the trust funds are subject to the claims of the employer's creditors. The employer is treated as the owner of the funds and taxed on all fund earnings until the date of distribution.

*Id.* (quoting Cartano § 20:05[D][3], at 735). "[A] plan will not fail to be 'unfunded' solely because there is maintained in connection with such plan a 'rabbi trust.'" *Id.* (quoting Dep't of Labor, Pension & Welfare Benefit Programs, Op. Ltr. 91–16A, 1991 ERISA LEXIS 16, at *6–7 (Apr. 5, 1991)) (internal quotation marks and alteration omitted).

The deferred compensation to be paid under Sleep Number's Executive Deferral Plan was held in its Executive Investment Plan Trust ("Deferred Compensation Trust" or "Trust"). On September 3, 2013, Sleep Number entered into a Non-Qualified Deferred Compensation Trust Agreement for Select Comfort ("Trust Agreement") with Charles Schwab Bank ("Trustee").[4] The Executive Deferral Plan and Deferred Compensation Trust followed the – top hat plan + rabbi trust – structure described *supra*. Although the Trust was irrevocable by Sleep Number (Trust Agreement § 1(a)), and Trust funds were segregated from other Sleep Number assets (*id*. § 1(c)),

- Plan participants lacked a preferred claim on, or ownership interest in, the Trust funds (Trust Agreement § 1(c); Plan § 5.3);

- the Plan participants' rights to the Trust funds were no greater than the rights held by Sleep Number's general unsecured creditors (Trust Agreement §§ 1(c), 3(b)(3); Plan § 5.3);

- Trust funds were available to satisfy claims of Sleep Number's general creditors in the event of insolvency (Trust Agreement at 1 (preamble); *id*. §§ 1(c), 3(b); Plan § 5.1); and

---

[4] A copy of the Trust Agreement is attached as Exhibit B to the Motion.

5

- the Trustee was required to cease making deferred compensation payments in the event of insolvency, and instead, was required to hold the Trust funds "for the benefit of [Sleep Number's] general creditors." (Trust Agreement § 3(b)(3).)

A bankruptcy filing was an event of insolvency, and the Trust Agreement provided that "the Trustee shall be fully protected in delivering any property held in the Trust as a court of competent jurisdiction may direct to satisfy the claims of the general unsecured creditors of [Sleep Number]." (Trust Agreement § 3(a).)

Ten days after the bankruptcy filing, Sleep Number's Board of Directors provided written notice of insolvency to the Trustee. (Motion ¶ 11.) The Trust currently holds approximately $17,556,560.89. (*Id*. ¶ 8.)

## B.    The Motion and Objection

On July 5, 2026, the Debtors filed the instant Motion seeking an order directing the Trustee to transfer the Trust funds to the Debtors on the basis that those funds constitute property of the estate. (*See* Motion ¶¶ 13-19.) The Debtors report that the Trustee and the Creditors Committee support the Motion. (*Id*. ¶ 20.)

Mr. Mushtaq is a former Sleep Number employee and Plan participant who is owed roughly $107,000.00 in deferred compensation. He opposes the Motion stating that he was unable to access his deferred compensation prior to the bankruptcy filing because he had elected a five-year, post-employment distribution schedule. He states that he would not have participated in the Executive Deferral Plan had he fully understood that the compensation would be inaccessible for years and subject to claims of Sleep Number's creditors. He argues that the transfer of the Trust funds to the Debtors' bankruptcy estate for the benefit of creditors is "fundamentally inequitable." He requests that the Court deny the Motion, or, alternatively, provide Plan participants

6

with additional protections to preserve their contractual and legal rights.  (*See*

Objection.*)

The Court heard oral argument on August 3, 2026 and took the matter under

advisement.

**<u>DISCUSSION</u>**

The filing of a bankruptcy petition creates a bankruptcy estate comprised of "all

legal or equitable interests" of the debtor in property "wherever located and by

whomever held."  11 U.S.C. § 541(a)(1).  The scope of property included under section

541(a)(1) is "broad."  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983).

Because top hat plans are "unfunded," distributions on account of such plans are paid

using the employer's "general assets" and are subject to claims of the employer's

creditors.  *IT Grp.*, 448 F.3d at 665 (quoting Cartano § 20.02[A], at 721); *Lehman Bros.*,

617 B.R. at 240 ("Being exempt from the funding requirements of title I of ERISA, the

assets of a top hat plan are part of the general assets of the employer.") (citation and

internal quotation marks omitted).

Sleep Number's creation of the Deferred Compensation Trust to make payments

under the Executive Deferral Plan did not change the fact that the funds remaining in

the Trust belonged to Sleep Number.  As this Court has previously explained:

> Though rabbi trusts allow employees to defer their tax liability for deferred
> compensation until distribution, the Internal Revenue Code requires
> beneficiaries to hold only a limited interest in the trust assets prior to
> distribution.  Specifically, the Code requires that all trust assets be
> property of the employer, and therefore subject to the claims of creditors

7

of the employer.  It is only the act of distribution which conveys the assets held in a grantor trust from the grantor to the grantee.[5]

*In re WorldCom, Inc.*, 364 B.R. 538, 543 (Bankr. S.D.N.Y. 2007) (citations and internal quotation marks omitted).  As set forth *supra*, the Executive Deferral Plan and Trust Agreement made clear that (i) Plan participants had no ownership interest in the Trust funds, (ii) Plan participants stood on equal footing with Sleep Number's general unsecured creditors with respect to the Trust funds, and (iii) the Trust funds would be used to satisfy claims of Sleep Number's creditors in the event of insolvency.

The Court is sympathetic to Mr. Mushtaq and other Sleep Number employees who expected to receive deferred compensation payments under the Executive Deferral Plan.  Unfortunately, this is the situation that many unsecured creditors face in bankruptcy.  In these cases, for example, many commercial landlords, vendors, and suppliers – all of whom expected full payment of amounts owed to them – will likely receive a fraction of what they are owed from the Debtors' estates.  This Court is unable to give preferential treatment to one set of unsecured creditors over another based solely on equitable principles.

In the end, the funds remaining in the Deferred Compensation Trust constitute property of the estate within the meaning of 11 U.S.C. § 541(a)(1).  Thus, the Trustee is directed to transfer the remaining assets in the Deferred Compensation Trust to the Debtors as set forth in section 3(a) of the Trust Agreement.

The Court adds that this ruling has no effect on Mr. Mushtaq's right, or the right of other Plan participants, to file a general unsecured claim in these bankruptcy cases.

---

[5]   Like the rabbi trust in *WorldCom*, Sleep Number's Deferred Compensation Trust is a grantor trust, of which Sleep Number is the grantor.  (Trust Agreement § 1(b).)

Pursuant to the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (ECF Doc. # 473), the deadline to file such claim is September 10, 2026.  The case-specific website maintained by the claims agent in these cases is informative as to the filing of proofs of claim.  *See https://restructuring.ra.kroll.com/SleepNumber/.*

### **CONCLUSION**

For the reasons stated, the Objection is OVERRULED, and the Motion is GRANTED.  Debtors' counsel shall upload the proposed order previously docketed at ECF Doc. # 479 to the Court's eOrders system with revisions to note the entry of this Memorandum Decision.  The Clerk's Office is directed to mail a copy of this Memorandum Decision to Mr. Mushtaq.

/s/ **Kyu Y. Paek**



**Dated: August 7, 2026**
**Poughkeepsie, New York**

_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**