DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

**NOTICE OF REVISED JOINT CHAPTER 11 PLAN OF LIQUIDATION**
**<u>OF SLEEP NUMBER CORPORATION AND ITS DEBTOR AFFILIATES</u>**

**PLEASE TAKE NOTICE** that on June 12, 2026 (the "**Petition Date**"), the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") commenced cases by filing petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that on September 4, 2026, the Debtors filed the *Joint Chapter 11 Plan of Liquidation of Sleep Number Corporation and its Debtor Affiliates* [ECF No. 616] (the "**Initial Plan**").

**PLEASE TAKE FURTHER NOTICE** that on October 15, 2026, the Debtors filed the *Revised Joint Chapter 11 Plan of Liquidation of Sleep Number Corporation and its Debtor Affiliates* (the "**Revised Plan**"), attached hereto as **<u>Exhibit A</u>**. A blackline comparison of the Revised Plan marked against the Initial Plan is attached hereto as **<u>Exhibit B</u>**.

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to make further changes to the Revised Plan, subject to the terms and conditions thereof.

**PLEASE TAKE FURTHER NOTICE** that copies of the Revised Plan and any other document filed publicly in the Chapter 11 Cases are accessible, free of charge, at the Debtors' case website located at https://restructuring.ra.kroll.com/SleepNumber.

Dated: October 15, 2026
New York, New York

DAVIS POLK & WARDWELL LLP

*/s/ Brian M. Resnick*
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Revised Plan**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

# JOINT CHAPTER 11 PLAN OF LIQUIDATION OF SLEEP NUMBER CORPORATION AND ITS DEBTOR AFFILIATES

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Counsel to the Debtors and Debtors in Possession*

Dated: October 15, 2026
New York, New York

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ....2

A. Defined Terms ....2

B. Rules of Interpretation ....19

C. Computation of Time ....20

D. Governing Law ....20

E. Reference to Monetary Figures ....20

F. Nonconsolidated Plan ....20

ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES ....21

A. Administrative Claims Bar Date; Filing of Administrative Claims ....21

B. Treatment of Administrative Claims and Priority Tax Claims ....22

C. Filing of Professional Fee Claims; Treatment of Professional Fee Claims ....23

D. Payment of Statutory Fees ....25

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....25

A. Summary ....25

B. Classification and Treatment of Claims and Interests ....26

C. Special Provision Governing Unimpaired Claims and Interests ....29

D. Acceptance or Rejection of the Plan ....29

E. Elimination of Vacant Classes ....30

F. Controversy Concerning Impairment ....30

G. Modification and Severability as to Debtors; Reservation of Rights ....30

ARTICLE IV. IMPLEMENTATION OF THE PLAN ....................................................31

A. Wind-Down Transactions ....................................................................31

B. Wind-Down Debtors; Transferred Privileges; Books and Records ...........31

C. Vesting of Assets ..............................................................................32

D. Plan Administrator ............................................................................32

E. Exculpation, Indemnification, Insurance, and Liability Limitation ...........33

F. Tax Returns ......................................................................................33

G. Dissolution of the Wind-Down Debtors ...................................................33

H. Corporate Action ...............................................................................34

I. Effectuating Documents; Further Transactions ........................................34

J. Cancellation of Existing Securities and Related Agreements ....................34

K. Abandonment of Non-Debtor Equity Interests ..........................................34

L. Plan Administrator Reserve ..................................................................34

M. DIP Order Preservation .......................................................................35

ARTICLE V. GUC TRUST ..............................................................................36

A. Creation and Governance of GUC Trust .................................................36

B. Purpose of GUC Trust .........................................................................37

C. GUC Trust Agreement and Funding of GUC Trust ...................................37

D. GUC Trust Beneficial Interests .............................................................37

E. Access to Books and Records; Cooperation of the Wind-Down Debtors and Plan Administrator ...............................................................37

F. Tax Treatment of the GUC Trust ...........................................................38

G. Fiduciary Duties .................................................................................39

H. Withholding .......................................................................................39

I. Dissolution of GUC Trust .....................................................................40

J. Transferred Privileges ..........................................................................41

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..................................41

A. Disbursing Agent ..................................41

B. Timing, Calculation of Amounts, and Delivery of Distributions ..................................42

C. Manner of Payment Under the Plan ..................................44

D. Allocation of Plan Distributions Between Principal and Interest ..................................44

E. Compliance Matters ..................................44

F. Foreign Currency Exchange Rate ..................................45

G. Fractional Dollars ..................................45

H. Undeliverable or Non-Negotiated Distributions ..................................45

I. Claims Paid by Third Parties ..................................46

J. Claims Payable by Third Parties ..................................46

K. Distribution to General Unsecured Claim Holders ..................................46

ARTICLE VII. DISPUTED CLAIMS ..................................47

A. Objections to Claims ..................................47

B. Resolution of Disputed Claims ..................................48

C. Estimation of Claims and Interests ..................................48

D. Payments and Distributions for Disputed Claims ..................................49

E. No Amendments to Claims ..................................50

F. No Interest ..................................50

G. No Late-Filed Claims ..................................50

H. Adjustment to Claims Without Objection ..................................51

I. Reservation of Rights to Object to Claims ..................................51

J. Disallowance of Claims ..................................51

K. Reimbursement or Contribution ..................................51

L. Claims Reconciliation of General Unsecured Claims ..................................52

ARTICLE VIII. Assumption of d&O policies and indemnification obligations ..............52

A. Assumption of D&O Liability Insurance Policies ..............52

B. Assumption of Certain Indemnification Obligations ..............52

C. Modifications, Amendments, Supplements, Restatements, or Other Agreements ..............54

ARTICLE IX. EFFECT OF CONFIRMATION OF THE PLAN ..............54

A. Release of Liens ..............54

B. Releases; Discharges ..............55

C. Term of Injunction or Stays ..............56

D. Exculpation ..............56

E. Releases by the Debtors ..............57

F. Voluntary Releases by the Releasing Parties ..............59

G. Injunction ..............61

H. Setoff and Recoupment ..............62

I. Preservation of Causes of Action; Waiver of Non-Insider Preference Actions ..............63

J. Compromise and Settlement of Claims and Controversies ..............64

K. No Avoidance or Clawback of Plan Distributions ..............64

L. Protection Against Discriminatory Treatment ..............64

M. Utility Deposits ..............65

ARTICLE X. CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN ..............65

A. Conditions to Effectiveness ..............65

B. Waiver of Conditions to Effectiveness ..............66

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ..............66

A. Plan Modifications ..............66

B. Revocation or Withdrawal of the Plan and Effects of Nonoccurrence of Confirmation or Effective Date....67

ARTICLE XII. RETENTION OF JURISDICTION....67

ARTICLE XIII. MISCELLANEOUS PROVISIONS....71

A. Exemption from Transfer Taxes and Recording Fees....71

B. Dissolution of the Committee and Termination of the Challenge Deadline....71

C. Plan Supplement....72

D. No Admission....72

E. Substantial Consummation....72

F. Section 1125 of the Bankruptcy Code....72

G. Nonseverability....72

H. Request for Expedited Determination of Taxes....73

I. Binding Effect....73

J. Service of Documents....73

K. Waiver or Estoppel....74

L. Conflicts....74

# INTRODUCTION

Pursuant to section 1121(a) of the Bankruptcy Code,[2] the Debtors propose this *Joint Chapter 11 Plan of Liquidation of Sleep Number Corporation and Its Debtor Affiliates* (including all appendices, exhibits, schedules, and supplements (including any Plan Supplements), and as it may be amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, the "**Plan**"). The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan contemplates the liquidation of the Debtors and the resolution of all outstanding Claims and Interests. Other agreements and documents may supplement this Plan and may be Filed with the Bankruptcy Court. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Article XI, the Debtors, with the reasonable consent of the Administrative Agent and the Committee, reserve the right to alter, supplement, amend, or otherwise modify (one or more times), revoke, or withdraw the Plan prior to its substantial consummation.

Pursuant to section 1125(b) of the Bankruptcy Code, votes to accept or reject a plan of liquidation cannot be solicited from Holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by a bankruptcy court and distributed to such Holders. On [•], 2026, the Bankruptcy Court entered the Disclosure Statement Order that, among other things, approved the Disclosure Statement, established voting procedures, and scheduled the Confirmation Hearing. The Disclosure Statement that accompanies this Plan includes, among other things, information pertaining to the Debtors' prepetition business operations and financial history, the events leading up to the Chapter 11 Cases, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, how Plan Distributions will be made, the confirmation process, and confirmation requirements.

After the Disclosure Statement is approved, Holders of Claims entitled to vote to accept or reject the Plan will receive a Ballot and a copy of the Disclosure Statement to enable them to vote on the Plan in accordance with the voting instructions and make any other elections or representations required pursuant to the Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**The Debtors and the Committee believe that Confirmation and Consummation of the Plan are in the best interests of the Debtors, their Estates, and their creditors. The Plan provides for an equitable distribution to Holders of Claims. The Debtors and the Committee believe that any alternative to confirmation of the Plan, such as liquidation under chapter 7 of the Bankruptcy Code, could result in the loss of significant value (and a corresponding reduction in the distributions to Holders of Claims in certain Classes), and the potential for delay, litigation, and additional costs. Consequently, the Debtors and the Committee urge all eligible Holders of Claims entitled to vote on the Plan to vote to ACCEPT the Plan and to**

[2] Capitalized terms used herein shall have the meanings ascribed to them in Article I unless otherwise defined herein.

**complete and submit their Ballots so that they will be RECEIVED by the Claims and Noticing Agent on or before the Voting Deadline.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A. *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1. "**2021 Term Loan Claim**" means any Claim held by Holders of 2021 Term Loans or the Administrative Agent arising under or related to the Prepetition Loan Agreement.

2. "**2021 Term Loans**" means the term loans issued on December 3, 2021 pursuant to the sixth amendment to the Prepetition Loan Agreement, with an outstanding principal balance of $177,500,000 as of the Petition Date.

3. "**Administrative Agent**" has the meaning set forth in the Prepetition Loan Agreement.

4. "**Administrative Claim**" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for costs and expenses of administration of the Chapter 11 Cases pursuant to section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including the following: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses pursuant to section 328, 330(a), or 331 of the Bankruptcy Code or otherwise (including the Ordinary Course Professionals Order) for the period commencing on the Petition Date and ending on the Effective Date, including Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code, including the U.S. Trustee Fees; (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code and to the extent approved by the Bankruptcy Court; and (e) any fees and expenses that are earned and payable pursuant to the Plan and the other Plan Documents.

5. "**Adequate Protection Liens**" has the meaning set forth in the DIP Order.

6. "**Administrative Claims Bar Date**" means the deadline for Filing requests for payment of Administrative Claims, which (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

7. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the referenced Entity were a Debtor.

8. "**Allowed**" means, with respect to any Claim or Interest, except as otherwise provided in the Plan, any Claim or Interest: (a) expressly allowed by Final Order or under this Plan; (b) arising on or before the Effective Date that has not been otherwise satisfied or extinguished before the Effective Date that (i) was validly asserted by the Claims Bar Date (or for which Claim a Proof of Claim or request for payment of an Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order) and no objection to allowance has been interposed, including in accordance with Article VII of this Plan, (ii) was validly asserted by the Claims Bar Date (or for which Claim a Proof of Claim or request for payment of an Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order) and as to which any objection has been resolved by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, or (iii) has been compromised, settled, or otherwise resolved pursuant to the Plan; (c) that is listed in the Schedules, as such Schedules may be amended by the Debtors from time to time, as liquidated in amount and not Disputed or Contingent, and for which no Proof of Claim has been Filed; or (d) after the Effective Date, agreed upon to be Allowed by written agreement of the Plan Administrator or the GUC Trustee (solely with respect to General Unsecured Claims), to the extent not already deemed Disallowed or expunged; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject this Plan shall not be considered "Allowed Claims" for any other purpose under this Plan or otherwise, except if and to the extent otherwise determined to be Allowed as provided herein. "**Allow**," "**Allowing**," and "**Allowance**" shall have correlative meanings. Any Claim that has been or is hereafter listed on the Schedules as Contingent, Unliquidated, or Disputed, and for which no contrary or superseding Proof of Claim has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors or the Wind-Down Debtors (as applicable) and without any further notice to any party or action, order, or approval of the Bankruptcy Court. Notwithstanding anything to the contrary herein, to the extent applicable and without prejudice to the rights of any Holder of an Allowed Administrative Claim to argue that section 502(d) of the Bankruptcy Code is inapplicable to its Administrative Claim, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount, or turns over any property, that it owes such Debtor or Wind-Down Debtor, as applicable. If an Entity owes the Debtors or Wind-Down Debtors, as applicable, any amount or property, no Claim of such Entity will be deemed Allowed until the Entity pays in full the amount, or turns over any property, that it owes such Debtor or Wind-Down Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or as agreed by the Debtors or the Wind-Down Debtors (as applicable). Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest, late fees, or other similar related charges on such Claim from and after the Petition Date.

9. "**Asset Purchase Agreement**" shall mean the Amended and Restated Asset Purchase Agreement, dated as of July 18, 2026, by and among Sleep Number Corporation and SNBR Inc., together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time.

10. "**Assets**" means all rights, titles, interest, and assets of the Debtors of any nature whatsoever, including all property of the Estates of any kind pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests in property (including real and personal, tangible and intangible property), and proceeds from all of the foregoing; *provided*, that the foregoing shall not include the Transferred Assets.

11. "**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors, their Estates, or other authorized parties in interest to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code, or under similar or related state, federal, and non-U.S. statutes, non-bankruptcy law, and common law, including fraudulent transfer laws or fraudulent conveyance laws.

12. "**Ballot**" means the ballot upon which Holders of Claims entitled to vote on the Plan shall cast their vote to accept or reject the Plan, including, as applicable, any e-Ballots.

13. "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases, as may be amended from time to time.

14. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York with jurisdiction over these Chapter 11 Cases and, to the extent any reference made under 28 U.S.C. § 157 is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the United States District Court for the Southern District of New York.

15. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court.

16. "**Bar Date Order**" means the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 473] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

17. "**Borrower**" means Sleep Number Corporation.

18. "**Business Day**" means any day other than a Saturday, Sunday, or Legal Holiday.

19. "**Case Information Website**" means the case information website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/Sleepnumber.

20. "**Cash**" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

21. "**Causes of Action**" means any claim, remedy, cause of action, proceeding, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, interest, debt, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or

hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, Secured or unsecured, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract, tort, law, or equity, or otherwise pursuant to any theory of law. For the avoidance of doubt, Causes of Action include the following: (a) any right of setoff, counterclaim, or recoupment and any claim under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any claims or causes of action for aiding and abetting (including of breaches of fiduciary duties), knowing participation (including knowing participation in breach of fiduciary duty), and conspiracy (including conspiracy to breach fiduciary duty); (d) any claims or causes of action for illegal dividends; (e) any claims or causes of action for fraud, misrepresentations, or omissions; (f) the right to object to, subordinate, disallow, or otherwise contest Claims or Interests; (g) claims or causes of action pursuant to sections 362, 510, 542, 543, 544–550, or 553 of the Bankruptcy Code; (h) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (i) any Avoidance Action; (j) any claim or defense related to tax refunds or tax audits; and (k) any Retained Cause of Action.

22. “**Challenge Deadline**” has the meaning set forth in the DIP Order.

23. “**Chapter 11 Cases**” means (a) when used with reference to a particular Debtor or group of Debtors, the chapter 11 case or cases pending for that Debtor or group of Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24. “**Claim**” means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

25. “**Claims and Noticing Agent**” means Kroll Restructuring Administration LLC, the claims and noticing agent employed by the Debtors in the Chapter 11 Cases, as approved by the *Order Authorizing Retention and Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent* [ECF No. 55].

26. “**Claims Bar Date**” means, with reference to a Claim, the date by which Proofs of Claim must be or must have been Filed with respect to such Claim, as ordered by the Bankruptcy Court pursuant to the Bar Date Order or another Final Order of the Bankruptcy Court.

27. “**Claims Objection Deadline**” means 11:59 p.m. on the date that is 180 days from the Effective Date subject to further extensions and/or exceptions as may be ordered by the Bankruptcy Court.

28. “**Claims Register**” means the official register of Claims maintained by the Claims and Noticing Agent.

29. "**Class**" means a category of Holders of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

30. "**Committee**" means the official committee of unsecured creditors, as it may be reconstituted from time to time, appointed on June 23, 2026 by the U.S. Trustee in the Chapter 11 Cases [ECF No. 110] pursuant to section 1102(a) of the Bankruptcy Code.

31. "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

32. "**Confirmation Date**" means the date on which Confirmation occurs.

33. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

34. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan, pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements, and related documents, and granting other related relief.

35. "**Consummation**" means the occurrence of the Effective Date.

36. "**Contingent**" means, when used in reference to a Claim, any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event that has not yet occurred as of the date on which such Claim is sought to be estimated or on which an objection to such Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

37. "**Cure Costs**" means an amount (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease), including an amount of $0.00, as applicable, required to cure any monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed, or assumed and assigned, by the Debtors via the Plan pursuant to section 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) Bankruptcy Code.

38. "**D&O Liability Insurance Policies**" means all directors', managers', officers', or employees' liability insurance policies (including any "tail policy" or excess policies) of any of the Debtors that have been issued or provide coverage at any time to current or former directors, managers, officers, or employees of the Debtors, and all agreements, documents, or instruments related thereto.

39. "**Debtors**" or "**Sleep Number**" means, collectively, the above-captioned Debtors, in their capacities as debtors and debtors-in-possession in the Chapter 11 Cases.

40. "**DIP Documents**" means the DIP Order, DIP Loan Agreement, and all guarantee, collateral, pledge, and security agreements, intellectual property security agreements, control agreements, financing statements, and all other agreements, documents, certificates, and

instruments executed, recorded, and/or delivered in connection therewith or related thereto (including the Loan Documents), in each case, as amended, supplemented, or modified in accordance with the terms thereof and the DIP Order.

41. "**DIP Facility**" means that certain $260,000,000 postpetition, superpriority, senior secured, priming debtor-in-possession facility provided pursuant to, and subject to the terms and conditions of, the DIP Documents.

42. "**DIP Order**" means, collectively, the (a) *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (iv) Modifying the Automatic Stay, (v) Scheduling a Final Hearing, and (vi) Granting Related Relief* entered by the Bankruptcy Court on June 15, 2026 [ECF No. 74]; (b) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (b) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 226]; and (c) *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [ECF No. 429].

43. "**DIP Loan Agreement**" has the meaning set forth in the DIP Order.

44. "**Disallowed**" means, with respect to a Claim, Interest, or any portion thereof, (a) the Claim has been disallowed, subordinated, or expunged, in whole or in part, by a Final Order or stipulation, or provision in this Plan or the Confirmation Order, disallowing a Claim, (b) the Claim has been withdrawn, in whole or in part, (c) the Claim is listed in the Schedules as zero or as Disputed, Contingent, or Unliquidated and in respect of which a Claims Bar Date has been established but a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court, (d) the Claim has been Filed or agreed to be equal to "$0" or to be expunged or (e) is not listed on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

45. "**Disbursing Agent**" means, as applicable, (a) the Debtors, Wind-Down Debtors, or any Entity designated or retained by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, in their sole discretion and without the need for any further order of the Bankruptcy Court, to make or to facilitate Plan Distributions, including the Administrative Agent to the extent it makes or facilitates Plan Distributions; or (b) the GUC Trustee of the Entity or Entities selected by the GUC Trustee to make or facilitate distributions to the GUC Trust Beneficiaries contemplated under the Plan.

46. “**Disclosure Statement**” means the disclosure statement for the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

47. “**Disclosure Statement Order**” means the *Order Approving the (I) Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. [●]].

48. “**Disputed**” means, with respect to a Claim, Interest, or any portion thereof, (a) any such Claim to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code or (b) any such Claim to which an objection has been Filed. To the extent that only a portion of a Claim is disputed, such Claim shall be deemed Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claim.

49. “**Dissolution Date**” has the meaning set forth in Article IV.G.

50. “**Distributable Assets**” means all Assets, including all Cash, of the Debtors or the Wind-Down Debtors (as applicable) at any time, net of the funding of the Plan Administrator Reserve. For the avoidance of doubt, Distributable Assets shall not include the GUC Trust Assets.

51. “**Distribution Date**” means any of (a) the Initial Distribution Date, (b) each Interim Distribution Date, and (c) the Final Distribution Date.

52. “**Distribution Record Date**” means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive Plan Distributions, which date shall be the Confirmation Date or such other date and time designated by the Debtors, Wind-Down Debtors, or Plan Administrator.

53. “**Effective Date**” means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent specified in Article X.A of the Plan have been satisfied or waived (in accordance with Article X.B of the Plan), and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter and shall otherwise be deemed in compliance with the Plan and Confirmation Order.

54. “**Entity**” has the meaning set forth in section 101(15) of the Bankruptcy Code.

55. “**Estate**” means, as to each Debtor, the bankruptcy estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of the applicable Debtor’s Chapter 11 Case.

56. “**Exculpated Party**” means each of the following, and, in each case, in its capacity as such during the Chapter 11 Cases: (a) the Debtors; (b) the Administrative Agent; (c) the Lenders; (d) the Committee and its members (in their capacity as Committee members); and (e) with respect to each of the foregoing in clauses (a) through (d), to the fullest extent permitted by law, such Person’s Related Parties.

57. "**Executory Contract**" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

58. "**Existing Interests**" means all Interests in Sleep Number Corporation.

59. "**Federal Judgment Rate**" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

60. "**File**," "**Filed**," or "**Filing**" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

61. "**Final Distribution Date**" means a date for a final distribution selected by the Plan Administrator or the GUC Trustee, as applicable, that is no earlier than 20 calendar days after the date on which all Disputed Claims have become either Allowed Claims or Disallowed Claims.

62. "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari or leave to appeal has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be Filed, has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be or was sought, or the new trial, reargument, petition for certiorari, leave to appeal, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

63. "**General Unsecured Claim**" means any Claim against any of the Debtors that is not one of the following Claims: (a) Administrative Claim; (b) Priority Tax Claim; (c) Other Secured Claim; (d) Other Priority Claim; (e) Prepetition Loan Claim; (f) Section 510(b) Claim; or (g) Prepetition Intercompany Claim; *provided*, that, for the avoidance of doubt, General Unsecured Claims shall not include the Prepetition Loan Deficiency Claims.

64. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

65. "**Guarantors**" has the meaning set forth in the Prepetition Loan Agreement.

66. "**GUC Transferred Privileges**" shall have the meaning set forth in Article V.J.

67. "**GUC Trust**" means the liquidating trust established on the Effective Date for the benefit of the GUC Trust Beneficiaries in accordance with Article V of the Plan and the GUC Trust Agreement.

68. "**GUC Trust Agreement**" means the agreement, as may be amended, supplemented, restated, or otherwise modified from time to time, to be executed as of the Effective Date establishing the GUC Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement, in form and substance reasonably acceptable to the Debtors and the Committee.

69. "**GUC Trust Assets**" means $3,500,000 in Cash funded from the Debtors' Estates.

70. "**GUC Trust Beneficial Interest**" means the non-certified beneficial interest in the GUC Trust granted to each GUC Trust Beneficiary, which shall entitle such Holder to distributions of the GUC Trust Net Assets in accordance with the Plan.

71. "**GUC Trust Beneficiary**" means Holders of Allowed General Unsecured Claims; *provided*, that, for the avoidance of doubt, GUC Trust Beneficiaries shall not include Prepetition Loan Deficiency Claims.

72. "**GUC Trust Fees and Expenses**" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets) incurred by the GUC Trust, any professional retained by the GUC Trust (including attorneys, accountants, distribution agents, experts, or otherwise), and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust. For the avoidance of doubt, GUC Trust Fees and Expenses shall include all costs incurred by the GUC Trust to reconcile and object to, if necessary, General Unsecured Claims.

73. "**GUC Trust Net Assets**" means the GUC Trust Assets less the GUC Trust Fees and Expenses.

74. "**GUC Trustee**" means the trustee of the GUC Trust appointed to administer the GUC Trust pursuant to the GUC Trust Agreement. The identity of the GUC Trustee shall be chosen by the Committee in accordance with the GUC Trust Agreement and shall be filed with the Plan Supplement.

75. "**Holder**" means the Entity holding a Claim or Interest.

76. "**Impaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

77. "**Indemnification Obligations**" means each indemnification obligation of a Debtor in effect immediately prior to the occurrence of the Effective Date, whether pursuant to a Debtor's bylaws, articles or certificate of incorporation, corporate charter, other formation, corporate, or organizational document, policy or practice of providing indemnification, board resolutions, management or indemnification agreements, employment contracts, other agreement or applicable law, or otherwise, to indemnify, defend, reimburse, or otherwise limit the liability of, or to advance fees and expenses to or on behalf of, any of the Debtors' Related Parties.

78. "**Initial Distribution Date**" means a date selected by the Plan Administrator that is on, or as soon as reasonably practicable after, the Effective Date, which shall be the date on which initial distributions under the Plan are made.

79. "**Insurance Contracts**" means all insurance policies, including the D&O Liability Insurance Policies, that have been issued (or provide coverage) at any time to any of the Debtors (or any of their predecessors) and all agreements, documents, or instruments relating thereto.

80. "**Insurer**" means any company or other entity that issued an Insurance Contract (or provides insurance coverage) and includes any third-party administrator of or for any Insurance Contract, and any respective predecessors, successors, and/or Affiliates of any of these.

81. "**Intercompany Contract**" means any agreement, contract, or lease, all parties to which are Debtors.

82. "**Intercompany Interest**" means any Interest arising prior to the Petition Date against a Debtor and held by another Debtor.

83. "**Interest**" means, collectively, any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including any issued or unissued share of common stock, preferred stock, or other instrument evidencing any other equity, ownership, or profits interests in a Debtor, whether or not transferable, including membership interests in limited liability companies and partnership interests in partnerships, and any option, warrant, right, or other security or agreement, contractual or otherwise, to acquire or subscribe for, or which are convertible into any shares (or any class thereof) of, any such interest in a Debtor that existed immediately prior to the Effective Date, and any award of stock options, restricted stock, restricted stock units, performance stock units, stock appreciation rights, equity appreciation rights, restricted equity, or phantom equity of the Debtors (whether or not arising under or in connection with any employment agreement, award agreement, separation agreement, or employee incentive plan or program of the Debtors and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security, other than Intercompany Interests).

84. "**Interim Compensation Order**" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [ECF No. 357].

85. "**Interim Distribution Date**" means the date that is after the Initial Distribution Date or the most recent Interim Distribution Date thereafter, which shall be the date on which interim distributions under the Plan are made, with such periodic Interim Distribution Dates occurring until the Final Distribution Date has occurred, it being understood that the Plan Administrator may increase the frequency of Interim Distribution Dates in their sole discretion as circumstances warrant.

86. "**IRS**" means the U.S. Internal Revenue Service.

87. "**Legal Holiday**" has the meaning set forth in Bankruptcy Rule 9006(a).

88. "**Lenders**" has the meaning set forth in the Prepetition Loan Agreement.

89. "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

90. "**Loan Documents**" has the meaning set forth in the Prepetition Loan Agreement.

91. "**Local Rules**" means the Local Bankruptcy Rules of the Bankruptcy Court.

92. "**Non-Debtor Equity Interests**" means, collectively, any equity interests held by any Debtor or Wind-Down Debtor in an Entity that is not a Debtor or a Wind-Down Debtor.

93. "**Nonvoting Class**" means Class 1, Class 2, Class 6, Class 7, and Class 8.

94. "**Obligations**" has the meaning set forth in the Prepetition Loan Agreement.

95. "**Ordinary Course Professional**" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

96. "**Ordinary Course Professionals Order**" means the *Order Authorizing the Retention and Compensation of Professionals Utilized in the Ordinary Course of Business* [ECF No. 278].

97. "**Other Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

98. "**Other Secured Claim**" means any Secured Claim, other than a Prepetition Loan Claim.

99. "**Paydown Order**" means the *Order (I) Authorizing the Debtors to Pay Certain Amounts Outstanding Under the Debtors' Prepetition Loan Documents, and (II) Granting Related Relief* [ECF No. 671].

100. "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

101. "**Petition Date**" means June 12, 2026, the date on which the Debtors commenced the Chapter 11 Cases, and, where relevant, the time of the filing of the Debtors' chapter 11 petitions on such date.

102. "**Plan**" has the meaning specified in the Introduction.

103. "**Plan Administration Agreement**" means the agreement between the Debtors or the Wind-Down Debtors, as applicable, and the Plan Administrator governing the Plan Administrator's rights and obligations in connection with the Plan and the Wind-Down, dated as of the Effective Date, which shall be filed as part of the Plan Supplement and shall be in form and substance acceptable to the Administrative Agent.

104. "**Plan Administrator**" means Rudy Morando, or any successor appointed under the Plan Administration Agreement.

105. "**Plan Administrator Reserve**" means certain segregated accounts established in accordance with Article IV.L, to be administered by the Plan Administrator in accordance with this Plan. The Plan Administrator Reserve shall include the Wind-Down Account, the Professional

Fee Escrow Account, and any Distributable Assets received by the Wind-Down Debtors post-Effective Date after the Initial Distribution Date.

106. "**Plan Distribution**" means a payment or distribution to Holders of Allowed Claims under the Plan or Plan Supplement documents.

107. "**Plan Documents**" means the documents (other than the Plan) to be executed, delivered, assumed, and performed in conjunction with the Consummation of the Plan on, prior to, or after, the Effective Date, including any documents included in the Plan Supplement.

108. "**Plan Objection Deadline**" has the meaning set forth in the Disclosure Statement Order.

109. "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules), in form and substance reasonably acceptable to the Debtors, the Committee, and the Administrative Agent, including the following, as applicable: (a) the Plan Administration Agreement; (b) the GUC Trust Agreement; (c) the Schedule of Retained Causes of Action; and (d) any other documentation that is contemplated by the Plan. The Debtors, with the reasonable consent of the Committee and the Administrative Agent, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement pursuant to Article XI.A herein through the Effective Date without further action or order of the Bankruptcy Court.

110. "**Post-Effective Date Claims**" means any Administrative Claims that have been timely Filed after the Effective Date and have not otherwise been satisfied as of the Effective Date.

111. "**Prepetition Intercompany Claim**" means any Claim arising prior to the Petition Date against a Debtor and held by another Debtor.

112. "**Prepetition Liens**" has the meaning set forth in the DIP Order.

113. "**Prepetition Loan Agreement**" means that certain *Fourteenth Amendment to Amended and Restated Credit and Security Agreement*, dated as of February 14, 2018, by and among the Borrower, the Guarantors, the Lenders, and the Administrative Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

114. "**Prepetition Loan Claims**" means, collectively, the 2021 Term Loan Claims and RCF Claims, including, for the avoidance of doubt, the Prepetition Loan Deficiency Claims.

115. "**Prepetition Loan Deficiency Claims**" means the portion of the Prepetition Loan Claim, if any, that is not a Secured Claim.

116. "**Prepetition Loans**" means, collectively, the 2021 Term Loans and the RCF Loan.

117. "**Priority Claims**" means, collectively, Priority Tax Claims and Other Priority Claims.

118. “**Priority Tax Claim**” means any Claim of a Governmental Unit against any of the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

119. “**Privileges**” shall have the meaning set forth in Article IV.B.

120. “**Professional**” means an Entity (other than an Ordinary Course Professional) (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with section 327, 328, 330, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (ii) a Final Order authorizing such retention or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code (excluding those Entities entitled to compensation for services rendered after the Petition Date in the ordinary course of business pursuant to or in accordance with a Final Order granting such relief, including the Ordinary Course Professionals Order).

121. “**Professional Fee Claims**” means, at any given moment, all Administrative Claims arising from all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to or in accordance with an order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses. To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional’s fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

122. “**Professional Fee Escrow Account**” means an interest-bearing account funded by the Debtors before the Effective Date in an amount equal to the Professional Fee Reserve Amount.

123. “**Professional Fee Reserve Amount**” has the meaning set forth in Article II.C.3 herein.

124. “**Proof of Claim**” means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable Claims Bar Date.

125. “**Pro Rata**” means, as applicable, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in such particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

126. “**Purchaser**” means SNBR Inc., the purchaser under the Asset Purchase Agreement.

127. “**Quarterly Fees**” means any and all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the U.S. Code to the extent applicable.

128. "**RCF Claim**" means any Claim held by Holders of RCF Loans or the Administrative Agent arising under or related to the Prepetition Loan Agreement.

129. "**RCF Loan**" means the revolving loans issued pursuant to the Prepetition Loan Agreement, with an outstanding principal balance of $475,000,000 as of the Petition Date.

130. "**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (i) curing any such default that occurred before, on, or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured, (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default, (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than the Debtors or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure, and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

131. "**Related Parties**" means, with respect to an Entity, each of, and in each case in its capacity as such, such Entity's current and former Affiliates, and such Entity's and such Affiliates' current and former directors, board observers, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), predecessors, participants, successors, assigns, subsidiaries, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, actuaries, consultants, representatives, and other professionals and advisors and any such person's or Entity's respective heirs, executors, estates, and nominees.

132. "**Released Party**" means each of the following, and in each case, solely in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Administrative Agent; (d) the Disbursing Agents; (e) the Lenders; (f) the Committee; (g) each Holder of a Claim that returns a Ballot that does not affirmatively elect to "opt out" of being a Releasing Party by checking the appropriate box on such Holder's timely and properly submitted Ballot to indicate that such Holder elects to opt out of the Plan's release provisions; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entity's Related Parties, in its capacity as such; *provided*, *however*, that an Entity that (i) affirmatively elects to "opt out" of being a Releasing Party by timely objecting to Confirmation or by checking the appropriate box on such Holder's timely and

properly submitted Ballot, thereby indicating that such Holder elects to opt out of the Plan's release provisions, or (ii) timely objects to the releases herein and such objection is not resolved before Confirmation shall not be considered a "Released Party" notwithstanding anything to the contrary herein.

133. "**Releasing Party**" means each of the following, and in each case, solely in its capacity as such: (a) the Debtors and their Estates; (b) the Wind-Down Debtors; (c) the Administrative Agent; (d) the Disbursing Agents; (e) the Lenders; (f) the Committee; (g) each Holder of a Claim that returns a Ballot that does not affirmatively elect to "opt out" of being a Releasing Party by checking the appropriate box on such Holder's timely and properly submitted Ballot to indicate that such Holder elects to opt out of the Plan's release provisions; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' Related Parties, solely to the extent that the Releasing Party has the authority under applicable law to grant such release on behalf of such Related Party. For the avoidance of doubt, each Holder of a Claim or Interest in a Nonvoting Class shall not be a Releasing Party in its capacity as a Holder of such Claim or Interest.

134. "**Retained Causes of Action**" means the Causes of Action of the Debtors listed on the Schedule of Retained Causes of Action.[3]

135. "**Sale Order**" means the *Amended Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [ECF No. 470].

136. "**Sale Transaction**" means the sale of all or substantially all of the Debtors' Assets to the applicable Purchasers as approved by the Sale Order.

137. "**Sale Transaction Documents**" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors will effectuate the Sale Transaction, including, for the avoidance of doubt, the Asset Purchase Agreement, the Sale Order, and the Transition Services Agreement.

138. "**Schedule of Retained Causes of Action**" means a schedule of certain Causes of Action, a copy of which will be Filed with the Plan Supplement, that are not released, exculpated, or waived pursuant to the Plan or otherwise, as the same may be amended, supplemented, or otherwise modified from time to time; *provided*, that the Wind-Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action.

139. "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules (as they may be amended, modified, or supplemented from time to time).

---

[3] For the avoidance of doubt, the Retained Causes of Action shall be limited to (i) any Claims related to Google's advertising practices, (ii) any Claims related to tariff refunds, or (iii) any Claims that the Debtors, the Committee, and the Administrative Agent agree, by mutual consent, to add to the Schedule of Retained Causes of Action.

140. "**Section 510(b) Claim**" means a Claim or Cause of Action against any of the Debtors (a) arising from rescission of a purchase or sale of shares, notes, or any other Securities of any of the Debtors or an Affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of any such Security, (c) for violations of the Securities laws, misrepresentations, or any similar Claims related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (d) for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim, including Claims based upon allegations that the Debtors made false and misleading statements or engaged in other deceptive acts in connection with the offer or sale of Securities, or (e) for attorneys' fees, other charges, or costs incurred on account of any of the foregoing Claims or Causes of Action.

141. "**Secured**" means, with respect to a Claim, any Claim or portion thereof that is (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan, or separate Final Order of the Bankruptcy Court, as a secured claim.

142. "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local law.

143. "**Securities Exchange Act**" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as now in effect and hereafter amended, or any similar federal, state, or local law.

144. "**Security**" has the meaning set forth in section 2(a)(1) of the Securities Act.

145. "**Solicitation**" means the solicitation of votes with respect to this Plan.

146. "**Transferred Assets**" shall have the meaning set forth in the Asset Purchase Agreement.

147. "**Transferred Privileges**" shall have the meaning set forth in Article IV.B.

148. "**Transition Services Agreement**" means that certain transition services agreement dated as of July 31, 2026 by and between the Debtors and SNBR Inc. and its subsidiaries, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time.

149. "**Unexpired Lease**" means a nonresidential lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code, or may be amended by mutual agreement of the parties thereto.

150. "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

151. "**Unliquidated**" means, when used in reference to a Claim, any Claim, the amount of liability for which has not been fixed, whether pursuant to an agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

152. "**U.S. Trustee**" means the office of the United States Trustee for the Southern District of New York.

153. "**U.S. Trustee Fees**" means fees arising under section 1930(a)(6) of title 28 of the United States Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717, or as otherwise agreed by the U.S Trustee.

154. "**Voting Deadline**" means the date to be established by the Disclosure Statement Order by which the Claims and Noticing Agent must actually receive an otherwise valid vote on this Plan in order for such vote to count as a vote to accept or reject this Plan.

155. "**Voting Record Date**" has the meaning set forth in the Disclosure Statement Order.

156. "**Wind-Down**" means the wind-down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

157. "**Wind-Down Account**" means a segregated account in the Plan Administrator Reserve and established in accordance with Article IV.L, to be administered by the Plan Administrator in accordance with this Plan, that was funded by the Debtors with Cash on hand equal to the Wind-Down Reserve Amount. Any residual amounts remaining from the Wind-Down Account upon the Dissolution Date shall be distributed to the Holders of Allowed Prepetition Loan Claims in accordance with the Plan.

158. "**Wind-Down Budget**" means a budget, which shall be included in the Plan Supplement and subject to the consent of the Administrative Agent, for the activities and expenses to be incurred in connection with the Wind-Down and which shall include the amount necessary to fund the Wind-Down Account contained in the Plan Administrator Reserve.

159. "**Wind-Down Debtors**" means the Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

160. "**Wind-Down Debtors' Assets**" means all of the remaining Assets of the Debtors' Estates on the Effective Date, excluding (a) the Professional Fee Escrow Amounts held in the Professional Fee Escrow Account and (b) the GUC Trust Assets.

161. "**Wind-Down Reserve Amount**" means Cash in the amount of [●], to be funded into the Wind-Down Account in accordance with the Wind-Down Budget.

162. "**Wind-Down Transactions**" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably

determines to be necessary to implement the Wind-Down, as described in more detail in Article IV.A herein.

B. *Rules of Interpretation*

The following rules for interpretation and construction shall apply to the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether Filed, to be Filed, or otherwise, shall mean such document, schedule, or exhibit as it may have been or thereafter may be amended, modified, or supplemented; *provided*, that any capitalized terms herein that are defined with reference to another document or other source, are defined with reference to such other source as of the date hereof, without giving effect to any termination of such other document or amendments to such capitalized terms in any such other source following the date hereof; (4) unless otherwise specified, all references herein to "Articles" or "Sections" are references to articles or sections, respectively, hereof or hereto; (5) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion hereof; (6) captions and headings to Articles, Sections, schedules, and exhibits are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (11) references to "shareholders," "directors," and "officers" shall also include "members" and "managers," as applicable, as such terms are defined under the applicable state limited liability company laws or applicable foreign law; (12) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and are deemed to be followed by the words "without limitation"; (13) unless otherwise stated, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) any reference herein to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (16) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (17) "Wind-Down Debtors" are deemed to be written as "the Debtors or the Wind-Down Debtors, as applicable"; and (18) unless otherwise specified, any section or exhibit references to an existing document, schedule, or exhibit are deemed to reference the equivalent provisions in any amendment thereto, whether or not such references herein are updated.

Any immaterial effectuating provisions may be interpreted by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided*, that no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any Entity.

C. *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Unless otherwise specified, all references herein to times of day shall be references to prevailing Eastern Time. In the event that any payment or act hereunder is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

D. *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters, without giving effect to conflict of laws principles; *provided*, *however*, that corporate governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state or other jurisdiction of incorporation of the applicable Debtor or Wind-Down Debtor, as applicable.

E. *Reference to Monetary Figures*

All monetary figures referenced herein are denominated in U.S. dollars, unless otherwise expressly provided.

F. *Nonconsolidated Plan*

For purposes of administrative convenience and efficiency, the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors. The Plan does not provide for the substantive consolidation of any of the Debtors. Except as expressly provided herein, nothing in this Plan, the Confirmation Order, the Disclosure Statement, or the Plan Supplement shall constitute or be deemed to constitute a representation that any one or all of the Debtors is subject to or liable for any Claims or Interests against or in any other Debtor. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed the amount of the Allowed Claim.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES

All Claims and Interests (except Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee Fees) are placed in the Classes set forth in Article III of the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee Fees have not been classified, and the Holders thereof are not entitled to vote on the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A. *Administrative Claims Bar Date; Filing of Administrative Claims*

1. A notice setting forth the Administrative Claims Bar Date shall be (a) Filed on the Bankruptcy Court's docket and served with the notice of the Effective Date and (b) posted on the Case Information Website. No other notice of the Administrative Claims Bar Date will be provided.

2. All requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of this Article II of the Plan) must be Filed and served on the Claims and Noticing Agent and served on counsel to the Debtors and Wind-Down Debtors, counsel to the Administrative Agent, and the Plan Administrator by the Administrative Claims Bar Date. Such Proof of Claim must include, at a minimum: (a) the name of the applicable Debtor that is purported to be liable for the Administrative Claim and, if the Administrative Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (b) the name of the Holder of the Administrative Claim; (c) the asserted amount of the Administrative Claim; (d) the basis of the Administrative Claim; and (e) supporting documentation for the Administrative Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED, DISALLOWED, AND DISCHARGED. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED, DISALLOWED, AND DISCHARGED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THIS PLAN**. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, the Plan Administrator, or their property, and such Administrative Claims shall be deemed released and discharged as of the Effective Date without the need for any objection from the Debtors, the Wind-Down Debtors, or the Plan Administrator, or any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3. The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, shall have exclusive authority to settle Administrative Claims without further Bankruptcy Court

approval. The Debtors, Wind-Down Debtors, the Plan Administrator, and the Claims and Noticing Agent are authorized to update the Claims Register to reflect the foregoing without the need to File an application, motion, complaint, objection, or any other legal proceeding seeking to adjust such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable.

4. Unless the Debtors, the Wind-Down Debtors, or the Plan Administrator object to a timely Filed and properly served Administrative Claim by the Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount requested. If the Debtors, the Wind-Down Debtors, or the Plan Administrator object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be Allowed and, if so, in what amount.

5. **Notwithstanding the foregoing, requests for payment of Administrative Claims need not be Filed for Administrative Claims that (a) previously have been Allowed by Final Order of the Bankruptcy Court or pursuant to this Plan, (b) the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, have otherwise agreed in writing (email being sufficient) do not require such a filing, or (c) arise pursuant to 28 U.S.C. § 1930.**

B. *Treatment of Administrative Claims and Priority Tax Claims*

1. Except with respect to Professional Fee Claims and except to the extent that (a) an Administrative Claim has already been paid during the Chapter 11 Cases or (b) a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, discharge, and release of each Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtors, the Wind-Down Debtors, and the Plan Administrator (as applicable); or (v) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

2. For the avoidance of doubt, the failure by a Holder of an Allowed Administrative Claim to properly object to Article II.B.1 before the Plan Objection Deadline shall be deemed to be such Holder's consent, pursuant to section 1129(a)(9) of the Bankruptcy Code, to be paid in accordance with the Plan following the Effective Date.

3. Except to the extent that a Priority Tax Claim has already been paid during the Chapter 11 Cases or to the extent that a Holder of a Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, on the applicable

Distribution Date, payment in full in Cash in an amount equal to such Holder's Allowed Priority Tax Claim. The failure to object to Confirmation by a Holder of an Allowed Priority Tax Claim shall be deemed to be such Holder's consent, pursuant to section 1129(a)(9) of the Bankruptcy Code, to be paid in accordance with the Plan following the Effective Date.

4. Allowed Professional Fee Claims shall be paid from (a) first the Professional Fee Escrow Account and (b) if the Professional Fee Escrow Account is insufficient to pay the full amount of Allowed Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be paid by the Plan Administrator from the Wind-Down Account without any further action or order of the Bankruptcy Court pursuant to the priorities set forth in the Plan.

5. On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, shall pay all accrued and unpaid fees, expenses, disbursements, contribution, or indemnification of the Administrative Agent, whether incurred prior to or after the Petition Date, in each case to the extent payable or reimbursable under or pursuant to the DIP Orders. Such fees, expenses, disbursements, contribution, or indemnification obligations shall constitute Allowed Administrative Claims. Nothing herein shall require the Administrative Agent, Lenders, or their respective professionals, to File applications, a Proof of Claim, or otherwise seek approval of the Court as a condition to the payment of such Allowed Administrative Claims.

C. *Filing of Professional Fee Claims; Treatment of Professional Fee Claims*

Except to the extent that the applicable Holder of an Allowed Professional Fee Claim agrees to such other less favorable treatment with the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, each Holder of a Professional Fee Claim shall be paid in full in Cash pursuant to the provisions of this Article II.C of the Plan.

1. <u>Final Fee Applications</u>

All requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court by the date that is no later than 45 calendar days after the Effective Date. The objection deadline relating to a request for payment of Professional Fee Claims shall be 4:00 p.m. on the date that is 20 calendar days after the Filing of such request. Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

2. <u>Post-Confirmation Date Fees</u>

On the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or the Ordinary Course Professionals Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Wind-Down Debtors, or the Plan Administrator may employ and pay all professionals without any further notice to, action by, or order or approval of the Bankruptcy Court or any other party; *provided*, *however*, that each Professional shall provide to the Debtors, the Wind-Down Debtors, the Administrative Agent, and the Plan Administrator (as applicable), its invoices for fees and expenses incurred after the Confirmation Date that are compensable pursuant to the Plan, in summary form, which shall not be required to contain time entries but shall include the number of

hours billed by the applicable Professional (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed summary statement of services provided and the expenses incurred (which summary may be redacted or modified to the extent necessary to delete any information subject to the attorney-client or other privilege, any information constituting attorney work product, or any other confidential or otherwise sensitive information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). The Debtors shall pay in Cash all such fees and expenses of any Professional, within 10 days of presentment of such statements or invoices to the Debtors, if no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable. Any objection raised by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, with respect to such fee and expense statements or invoices shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, the Wind-Down Debtors, the Plan Administrator, and the issuer of the invoice, either party may submit such dispute to the Bankruptcy Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice.

3. Professional Fee Escrow Account

All Professionals shall (a) estimate their accrued and unpaid Professional Fee Claims (whether billed or unbilled) prior to and as of the Effective Date and (b) estimate their expected fees and expenses for professional services to be rendered or costs to be incurred following the Effective Date (the aggregate amount of such estimated fees and expenses, the "**Professional Fee Reserve Amount**"); *provided*, that such estimates shall not be considered an admission or limitation with respect to the fees and expenses incurred or to be incurred by the Professionals. Each Professional shall deliver its respective estimates for its portion of the Professional Fee Reserve Amount to the Debtors no later than five Business Days prior to the anticipated Effective Date. If a Professional does not provide its estimate, then the Debtors may estimate in good faith the unbilled fees and expenses for such Professional and shall fund such amount into the Professional Fee Escrow Account.

On or prior to the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash in an amount equal to the Professional Fee Reserve Amount.

Funds held in the Professional Fee Escrow Account shall revert to the Wind-Down Account only after all Allowed Professional Fee Claims have been paid in full and following satisfaction of the Prepetition Loan Claims. Fees owing to the applicable Holder of a Professional Fee Claim shall be paid in Cash to such Holder from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid pursuant to the Interim Compensation Order; *provided*, that the Wind-Down Debtors' obligations with respect to Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Professional Fee Escrow Account. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of accrued Professional Fee Claims, the Holders of Professional Fee Claims shall have an Allowed Administrative Claim for any such

deficiency, which shall be satisfied in accordance with Article II.B.4 of the Plan, including from the Plan Administrator Reserve.

The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates, the Debtors, or the Wind-Down Debtors. No Liens, Claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.

D. *Payment of Statutory Fees*

Quarterly Fees due and payable on or prior to the Effective Date shall be paid by the Debtors, including on account of disbursements made pursuant to the Plan on the Effective Date. After the Effective Date, the Wind-Down Debtors, or any entity making disbursements on behalf of any of the Wind-Down Debtors or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor (each, a "**Disbursing Entity**"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Wind-Down Debtors, or any entity making disbursements on behalf of the Wind-Down Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, and the Wind-Down Debtors shall remain obligated to pay Quarterly Fees as and when due to the Office of the U.S. Trustee until the Debtor's case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Summary*

1. The Plan groups the Debtors together solely for the purposes of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan in respect of Claims against, and Interests in, the Debtors under the Plan. Notwithstanding such groupings, the Plan constitutes a separate chapter 11 plan of liquidation for each Debtor. The Plan is not premised upon, and will not cause, the substantive consolidation of any of the Debtors. For brevity and convenience, the classification and treatment of Claims and Interests have been arranged into one chart. Such classification shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any Assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

2. The categories of Claims and Interests listed in the table below classify Claims and Interests for all purposes, including voting, confirmation, and Plan Distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.[4] The treatment

[4] The claims contained in this Article III do not represent claims actually asserted by Holders in Proofs of Claim or otherwise. Any controversies regarding the classification of any Claim herein shall be governed by the procedures set forth in the Disclosure Statement Order. If the Bankruptcy Court finds that the classification of any Claim is improper,

provided in this chart is for informational purposes only and is qualified in its entirety by this Plan, including this Article III and the disclaimers included herein. The Class numbers assigned below are for purposes of identifying each separate Class.

| **Class** | **Claim or Interest** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Loan Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Prepetition Intercompany Claims | Impaired | Presumed to Reject |
| 6 | Section 510(b) Claims | Impaired | Presumed to Reject |
| 7 | Existing Interests | Impaired | Presumed to Reject |
| 8 | Intercompany Interests | Impaired | Presumed to Reject |

B. *Classification and Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1. Class 1 – Other Secured Claims

(a) *Classification*: Class 1 consists of all Other Secured Claims.

(b) *Treatment*: Each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors, either of the following:

(i) payment in full in Cash, payable on the later of (A) the Effective Date and (B) the date that is thirty (30) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; or

(ii) any other treatment consistent with the provisions of section 1129 of the Bankruptcy Code, including by providing such Holder with the "indubitable equivalent" of its Allowed Other Secured Claim.

(c) *Voting*: Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan

---

then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

pursuant to section 1126(f) of the Bankruptcy Code. No Holder of an Allowed Other Secured Claim is entitled to vote to accept or reject the Plan.

2. Class 2 – Other Priority Claims

(a) *Classification*: Class 2 consists of all Other Priority Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to such other treatment, in full and final satisfaction of such Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor or Wind-Down Debtor, on the applicable Distribution Date, payment in full in Cash or other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code. The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired by the Plan. Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of an Allowed Other Priority Claim is entitled to vote to accept or reject the Plan.

3. Class 3 – Prepetition Loan Claims

(a) *Classification*: Class 3 consists of all Prepetition Loan Claims.

(b) *Allowance of Prepetition Loan Claims*: The Prepetition Loan Claims shall be Allowed in the aggregate amount of $477,500,000.00 less any amounts paid to the Holders of Prepetition Loan Claims pursuant to the Paydown Order prior to the Effective Date.

(c) *Treatment*: Except to the extent that a Holder of an Allowed Prepetition Loan Claim agrees to less favorable treatment, each Holder of an Allowed Prepetition Loan Claim shall (i) retain its Prepetition Liens and Adequate Protection Liens and (ii) receive its Pro Rata share of the Distributable Assets.

(d) *Voting*: Class 3 is Impaired by the Plan. Each Holder of an Allowed Prepetition Loan Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4. Class 4 – General Unsecured Claims

(a) *Classification*: Class 4 consists of all General Unsecured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an

Allowed General Unsecured Claim shall be entitled solely to its Pro Rata share of distributions of the GUC Trust Net Assets; *provided*, that, for the avoidance of doubt, Prepetition Loan Deficiency Claims shall not constitute a General Unsecured Claim.

(c) *Voting*: Class 4 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

5. Class 5 – Prepetition Intercompany Claims

(a) *Classification*: Class 5 consists of all Prepetition Intercompany Claims.

(b) *Treatment*: All Prepetition Intercompany Claims shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Prepetition Intercompany Claims shall not receive any distribution under the Plan on account of such Prepetition Intercompany Claims.

(c) *Voting*: Class 5 is Impaired and not receiving any distribution under the Plan, in which case the Holders of such Allowed Prepetition Intercompany Claims are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, no Holder of an Allowed Prepetition Intercompany Claim is entitled to vote to accept or reject the Plan.

6. Class 6 – Section 510(b) Claims

(a) *Classification*: Class 6 consists of all Section 510(b) Claims.

(b) *Treatment*: All Section 510(b) Claims shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Section 510(b) Claims shall not receive any distribution under the Plan on account of such Section 510(b) Claims.

(c) *Voting*: Class 6 is Impaired by the Plan. Each Holder of a Section 510(b) Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. No Holder of a Section 510(b) Claim is entitled to vote to accept or reject the Plan.

7. Class 7 – Existing Interests

(a) *Classification*: Class 7 consists of all Existing Interests.

(b) *Treatment*: All Existing Interests shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Existing Interests shall not receive any distribution under the Plan on account of such Existing Interests.

(c) *Voting*: Class 7 is Impaired by the Plan. Each Holder of an Existing Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. No Holder of an Existing Interest is entitled to vote to accept or reject the Plan.

8. Class 8 – Intercompany Interests

(a) *Classification*: Class 8 consists of all Intercompany Interests.

(b) *Treatment*: All Intercompany Interests shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Intercompany Interests shall not receive any distribution under the Plan on account of such Intercompany Interests.

(c) *Voting*: Class 8 is Impaired and not receiving any distribution under the Plan, in which case the Holders of such Allowed Intercompany Interests are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, no Holder of an Allowed Intercompany Interest is entitled to vote to accept or reject the Plan.

For the avoidance of doubt, any Administrative Claim, Other Priority Claim, Priority Tax Claim, or Other Secured Claim that is an Assumed Liability under the Asset Purchase Agreement shall not (i) constitute an Administrative Claim, Other Priority Claim, Priority Tax Claim, or Other Secured Claim pursuant to this Plan, (ii) be satisfied from the Plan Administrator Reserve, (iii) be an obligation of the Debtors or the Wind-Down Debtors.

C. *Special Provision Governing Unimpaired Claims and Interests*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims or Interests, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims or Interests.

D. *Acceptance or Rejection of the Plan*

1. Voting Classes Under the Plan

Under the Plan, Classes 3 and 4 are Impaired, and each Holder of a Claim as of the Voting Record Date in such Classes is entitled to vote to accept or reject the Plan.

2. Acceptance of the Plan by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class that actually voted on the Plan have voted to accept the Plan.

3. Presumed Acceptance of the Plan

Under the Plan, (a) Classes 1 and 2 are Unimpaired, (b) the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan, and (c) such Holders are not entitled to vote to accept or reject the Plan and the votes of such Holders shall not be solicited.

4. Presumed Rejection of the Plan

Under the Plan, (a) Classes 5, 6, 7 and 8 are Impaired, (b) the Holders of Claims or Interests in such Classes are deemed to have rejected the Plan and shall receive no distributions under the Plan on account of their Claims or Interests, and (c) such Holders are not entitled to vote to accept or reject the Plan and the votes of such Holders shall not be solicited.

5. Presumed Acceptance by Voting Classes with No Votes

If a Class contains Claims eligible to vote on the Plan, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

E. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not contain a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the Voting Deadline, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

G. *Modification and Severability as to Debtors; Reservation of Rights*

Subject to Article XI of the Plan, the Debtors, with the reasonable consent of the Committee and the Administrative Agent, reserve the right to modify or withdraw the Plan in its entirety or in part, for any reason, including if the Plan as it applies to any particular Debtor is not confirmed. In addition, and also subject to Article XI of the Plan, should the Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Debtors, with the reasonable consent of the Administrative Agent, reserve the right to reclassify Claims or otherwise amend or modify or withdraw the Plan in its entirety, in part or as to a particular Debtor. Without limiting the foregoing, if the Debtors withdraw the Plan as to any particular Debtor because the Plan as to such Debtor fails to be accepted by the requisite number and amount of Claims voting or due to the Bankruptcy Court, for any reason, denying Confirmation as to such Debtor, then at the option of such Debtor, with the reasonable consent of the Administrative Agent, (a) the Chapter 11 Case for such Debtor may be dismissed or (b) such Debtor's Assets may be sold to another Debtor, such sale to be effective at or before the Effective Date of the Plan of the Debtor transferee, and the sale price shall be paid to the seller in Cash and

shall be in an amount equal to the fair value of such Assets as proposed by the Debtors, and approved by the Bankruptcy Court.

## ARTICLE IV.
## IMPLEMENTATION OF THE PLAN

A. *Wind-Down Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, including, as applicable and without limitation: (1) the winding down and dissolution of any direct or indirect subsidiaries of the Wind-Down Debtors; (2) all transactions necessary to provide for the purchase of some or all of the Assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (3) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law; and (4) abandoning any Non-Debtor Equity Interests. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

B. *Wind-Down Debtors; Transferred Privileges; Books and Records*

1. The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any Wind-Down Debtors' Assets held by the Wind-Down Debtors, if any, (b) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (c) paying or otherwise satisfying Allowed Claims (other than Allowed General Unsecured Claims), (d) filing appropriate tax returns, and (e) administering the Plan in an efficacious manner in accordance with the Wind-Down Budget. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned, or sold pursuant to the Asset Purchase Agreement, a prior order or the Plan, the Wind-Down Debtors specifically retain and reserve the right to assert, after the Effective Date, any and all of the Retained Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan. For the avoidance of doubt, any proceeds of Retained Causes of Action shall constitute Distributable Assets and shall be distributed to Holders of Allowed Prepetition Loan Claims in accordance with Article III.B.3.

2. Subject to the terms of this Plan (including Article V.J and the Schedule of Retained Causes of Action) and the Confirmation Order, all of the Debtors' privileges (the "**Privileges**"), including, but not limited to, corporate privileges, confidential information, work product

protections, attorney-client privileges, and other immunities or protections (the "**Transferred Privileges**"), shall be transferred, assigned, and delivered to the Plan Administrator, as applicable, in each case without waiver, limitation, or release, and shall vest with the Plan Administrator on the Effective Date; *provided*, *however*, that notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any way to (i) any rights, claims, or Causes of Action released under the Plan and (ii) any legal advice provided by Davis Polk & Wardwell LLP in its capacity as counsel to the Debtors. The Plan Administrator shall hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges. No Privilege shall be waived by disclosures to the Plan Administrator of the Debtors' documents, information, or communications subject to any privilege, protection, or immunity, or protections from disclosure held by the Plan Administrator.

3. On the Effective Date, the Sale Transaction Documents, as applicable shall be deemed assumed by the Wind-Down Debtors, and such documents, as applicable, shall vest with the Wind-Down Debtors. For the avoidance of doubt, such assumption will be deemed to not be an assignment pursuant to Section 3.12 of the Transition Services Agreement. The Plan Administrator shall have access to the Debtors' books and records in accordance with the Plan Administration Agreement. To the extent that the Books and Records were transferred to the Purchaser under the Sale Transaction, the Wind-Down Debtors, or Plan Administrator shall be deemed to be substituted as the party-in-lieu of the Debtors to the extent set forth in the Sale Transaction Documents solely with respect to accessing Books and Records.

C. *Vesting of Assets*

On the Effective Date, the Wind-Down Debtors' Assets shall vest in the Wind-Down Debtors for the primary purpose of liquidating the Wind-Down Debtors' Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan, including, but not limited to, Article VIII.AArticle IX.A of the Plan. The Wind-Down Debtors shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

D. *Plan Administrator*

1. On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor as the sole director and the sole officer of the Wind-Down Debtors and shall succeed to the powers of such Debtor's directors and officers. The Plan Administrator shall be the sole representative of, and shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). The Plan Administrator shall be vested with all other powers and authority set forth in the Plan and the Plan Administration Agreement, shall be deemed to have been appointed as the Debtors' Estates' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2), and 704(a)(5) of the Bankruptcy Code. For

the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former director or officer.

2. The Plan Administrator shall have the power and authority to implement the Wind-Down Transactions, including administering and distributing the amounts set forth in the Plan Administrator Reserve in accordance with the Plan. The Plan Administrator shall be entitled to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors, upon the monthly submission of statements to the Plan Administrator in accordance with the Wind-Down Budget. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

E. *Exculpation, Indemnification, Insurance, and Liability Limitation*

Subject to Article IX.D in its entirety, the Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Wind-Down Debtors. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

F. *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Wind-Down Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

G. *Dissolution of the Wind-Down Debtors*

Upon (a) a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Plan Distributions having been made and completion of all its duties under the Plan and (b) entry of a final decree closing the last of the Chapter 11 Cases (the date on which the foregoing (a) and (b) have occurred, the "**Dissolution Date**"), each of the Wind-Down Debtors shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

H. *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) selection of the Plan Administrator; (b) implementation of the Wind-Down Transactions; (c) funding of all applicable escrows and accounts; and (d) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I. *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order, and the Wind-Down Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

J. *Cancellation of Existing Securities and Related Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan, all rights of any Holder of Claims or Interests, including options or warrants to purchase Interests or obligating the Debtors to issue, transfer, or sell Interests of the Debtors, shall be cancelled.

K. *Abandonment of Non-Debtor Equity Interests*

On or after the Effective Date, the Debtors and the Wind-Down Debtors may, with the consent of the Administrative Agent, abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

L. *Plan Administrator Reserve*

1. Prior to or on the Effective Date, the Debtors shall establish the Plan Administrator Reserve and fund it with Cash (inclusive of the Wind-Down Reserve Amount and the Professional Fee Escrow Amount) in accordance with the Plan and, with respect to the Wind-Down Reserve

Amount, the Wind-Down Budget. Before or on the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall use the funds in the Plan Administrator Reserve to establish segregated accounts for (a) the Professional Fee Escrow Account in the amount of the Professional Fee Escrow Amount, and (b) the Wind-Down Account in the amount equal to the Wind-Down Reserve Amount (in each case, which may be effected by either establishing a segregated account or establishing book entry accounts, in the discretion of the Plan Administrator).

2. On and after the Effective Date, the funds in the Plan Administrator Reserve shall be used to make payments, including (a) to satisfy the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan, (b) to make distributions to Holders of Allowed Post-Effective Date Claims from the Wind-Down Account, and (c) to make distributions on account of Professional Fee Claims incurred from and following the Effective Date; *provided*, that if the Plan Administrator Reserve is insufficient to pay any Allowed Post-Effective Date Claims in full, any Distributable Assets received by the Wind-Down Debtors after the Effective Date shall first be used to pay any such outstanding Allowed Post-Effective Date Claims prior to any distribution to Holders of Allowed Prepetition Loan Claims; *provided*, *further*, that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents of the Wind-Down Debtors shall constitute expenses of the Wind-Down Debtors in accordance with the Wind-Down Budget.

3. Any amount remaining in the Plan Administrator Reserve upon the Dissolution Date shall be distributed to Holders of Allowed Prepetition Loan Claims in accordance with the Plan.

4. <u>Professional Fee Escrow Account</u>

Before the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount using Cash from the Plan Administrator Reserve in accordance with Article II.C.3 of the Plan. For the avoidance of doubt, the Professional Fee Escrow Account is reserved exclusively for satisfying Professional Fee Claims, and may not be used to satisfy other Claims or obligations, until all Professional Fee Claims are paid in full in accordance with Article II.C.3 of the Plan.

5. <u>Other Reserves and Modifications to Reserves</u>

The Plan Administrator, with the consent of the Administrative Agent, may establish and administer any other necessary reserves that may be required under the Plan. Notwithstanding anything to the contrary contained in the Plan, the Plan Administrator, with the consent of the Administrative Agent, may make transfers of Cash between the accounts and reserves established hereunder to satisfy Claims and other obligations in accordance with the Plan.

M. *DIP Order Preservation*

Nothing in the Plan, the Confirmation Order, or any Plan Supplement shall modify, amend, waive, reject, or impair the rights of the Prepetition Secured Parties under the DIP Orders, except to the extent expressly agreed to in writing by the Administrative Agent. Subject to the terms of the Plan, the Confirmation Order, and the DIP Orders, the DIP Orders shall remain in full force

and effect following the Confirmation Date, shall be binding on the Debtors, Wind-Down Debtors, Plan Administrator, and any party in interest, and shall not be rejected, modified, supplemented, or otherwise altered by the Plan, the Confirmation Order, or any Plan Supplement without the prior written consent of the Administrative Agent. Notwithstanding anything to the contrary in this Plan, the Confirmation Order, or any Plan Supplement, the protections granted to the Prepetition Secured Parties under the DIP Orders shall survive Confirmation and the Effective Date.

## ARTICLE V.
## GUC TRUST

A. *Creation and Governance of GUC Trust*

1. On the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deemed to be vested in the GUC Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. Under no circumstance shall the Debtors, Wind-Down Debtors, or any other party be required to contribute any assets to the GUC Trust other than the GUC Trust Assets. After the Effective Date, neither the Debtors, Wind-Down Debtors, nor any other party shall have any interest in the GUC Trust Assets except as expressly set forth herein.

2. The GUC Trust shall be administered by the GUC Trustee and governed by the Plan and GUC Trust Agreement, and the GUC Trustee shall have the sole power and authority to distribute the GUC Trust Net Assets to Holders of Allowed General Unsecured Claims in accordance with the treatment set forth in Article III.B of the Plan. The GUC Trustee shall be the exclusive trustee of the GUC Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4) of the Tax Code. The GUC Trust, acting through the GUC Trustee, shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the GUC Trust Assets and Allowance and Disallowance of General Unsecured Claims and Plan Distributions to Holders of Allowed General Unsecured Claims. The GUC Trust, acting through the GUC Trustee, shall be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code for all purposes in these Chapter 11 Cases.

3. To the extent necessary to the performance of the GUC Trustee's duties and responsibilities related to the reconciliation of or objection to General Unsecured Claims, and subject to the GUC Trust Agreement, the Debtors or Wind-Down Debtors, as applicable, shall share communications or documents related to the GUC Trust Materials that are subject to the attorney-client privilege, work product protection, or other applicable privilege with the GUC Trust; the sharing of such information shall not operate as a waiver of any applicable privileges. The Debtors, Wind-Down Debtors, Committee, and GUC Trustee, as applicable, shall agree on how to document the sharing of the attorney-client privilege in accordance with the foregoing such that any privilege is preserved (such as through a common interest agreement), and in the absence of such agreement, the Bankruptcy Court shall decide as set forth in the Confirmation Order or any other order(s).

B. *Purpose of GUC Trust*

The GUC Trust shall be established for the purpose of reconciling and objecting, if necessary, to General Unsecured Claims, and distributing the GUC Trust Net Assets to the GUC Trust Beneficiaries in accordance with the terms of the Plan and GUC Trust Agreement. The GUC Trust is intended to qualify as a liquidation trust pursuant to Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with the purpose of the GUC Trust.

C. *GUC Trust Agreement and Funding of GUC Trust*

1. The GUC Trust Agreement will generally provide for, among other things: (a) the payment of the GUC Trust Fees and Expenses; (b) the orderly distribution of the GUC Trust Net Assets to the GUC Trust Beneficiaries; and (c) the retention of counsel, accountants, financial advisors, or other professionals by the GUC Trust and the payment of their reasonable compensation. The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust and the GUC Trustee solely from the proceeds of the GUC Trust Assets; *provided*, that, for the avoidance of doubt, any such indemnification shall be by the GUC Trust and the GUC Trustee alone and shall not implicate the Debtors or the Wind-Down Debtors. In the event of any conflict between the terms of the Plan and the GUC Trust Agreement, the terms of the Plan shall govern.

2. The GUC Trust Fees and Expenses shall be paid solely from the GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement. The GUC Trustee, on behalf of the GUC Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder, including Professionals in these Chapter 11 Cases, and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement.

D. *GUC Trust Beneficial Interests*

GUC Trust Beneficial Interests shall be passive and shall not have voting, consent, or other shareholder-like control rights with respect to the GUC Trust. The GUC Trust Beneficial Interests will not be certificated and may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except in accordance with applicable law. The GUC Trust will operate in compliance with applicable federal and state securities laws and SEC staff guidance, including those regarding liquidating trusts, if applicable.

E. *Access to Books and Records; Cooperation of the Wind-Down Debtors and Plan Administrator*

1. The Debtors and Wind-Down Debtors shall provide commercially reasonable access to the GUC Trustee and any professionals retained by the GUC Trustee to records and information relating to the General Unsecured Claims (including, but not limited to, information necessary for the GUC Trustee to reconcile and, if necessary, prepare objections to General Unsecured Claims) including electronic records, documents, or work product related to the

foregoing; *provided*, that the Debtors and Wind-Down Debtors shall not incur any expenses to provide such access to the GUC Trustee and any professionals retained by the GUC Trust.

2. Subject to this Article V.E, to the extent the GUC Trust receives GUC Trust Materials from the Debtors or the Wind-Down Debtors, the GUC Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors or the Wind-Down Debtors, as applicable, and the Debtors or the Wind-Down Debtors, as applicable, retain the sole right to waive their own privileges. Reasonable agreements will be made with the GUC Trustee such that confidential information and privileges are preserved, while permitting the GUC Trustee to use such information and privilege to perform its duties and responsibilities related to the reconciliation of or objection to General Unsecured Claims; absent such agreements, either the GUC Trustee or the Wind-Down Debtors may present the issue to the Bankruptcy Court for resolution.

3. Subject to the Wind-Down Budget, the Wind-Down Debtors shall preserve all records, documents, or work product (including all electronic records, documents, or work product) related to the reconciliation of or objection to General Unsecured Claims (collectively, "**GUC Trust Materials**") until the earlier of (a) such time as the GUC Trustee notifies the Wind-Down Debtors in writing that such records are no longer required to be preserved or (b) the termination of the GUC Trust; *provided*, *however*, that the Wind-Down Debtors may satisfy such preservation obligation by abandoning the GUC Trust Materials to the GUC Trustee; *provided*, *further*, that the Claims and Noticing Agent is authorized to destroy all paper/hardcopy records related to the Chapter 11 Cases two (2) years after the Effective Date has occurred.

4. To the extent that the GUC Trust Materials were transferred to the Purchaser under the Sale Transaction, the GUC Trustee shall be deemed to be substituted as the party-in-lieu of the Debtors to the extent set forth in the Sale Transaction Documents solely with respect to accessing GUC Trust Materials.

F. *Tax Treatment of the GUC Trust*

1. To the extent reasonably practicable, the GUC Trust will be treated for U.S. federal income tax purposes as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code. If such treatment applies, for U.S. federal income tax purposes, the transfer of assets to the GUC Trust would be deemed to occur as (a) a first-step transfer of the GUC Trust Assets to the Holders of the applicable General Unsecured Claims, and (b) a second-step transfer by such Holders to the GUC Trust. Thus, such Holders would be treated as the grantors and owners of a grantor trust for federal income tax purposes.

2. As soon as practicable after the transfer of the GUC Trust Assets to the GUC Trust, the GUC Trustee shall make a good faith valuation of the GUC Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the GUC Trustee, and the Holders of Claims receiving GUC Trust Beneficial Interests shall take consistent positions with respect to the valuation of the GUC Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

3. Allocations of taxable income and loss of the GUC Trust among the GUC Trust Beneficiaries shall be determined by reference to the GUC Trust Beneficiaries' economic entitlements in respect of the GUC Trust, as will be further described in the organizational documents of the GUC Trust.

4. The GUC Trustee shall be liable to prepare and provide to, or file with, the appropriate taxing authorities and other required parties such notices, tax returns and other filings for the GUC Trust, including all federal, state and local tax returns as may be required under the Bankruptcy Code, the Plan or by other applicable law, including, if required under applicable law, notices required to report interest or dividend income. The GUC Trustee will file tax returns pursuant to section 1.671-4(a) of the Treasury Regulations on the basis that the GUC Trust is a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations and related Treasury Regulations. As soon as reasonably practicable after the close of each calendar year, the GUC Trustee will send each affected beneficiary a statement setting forth such beneficiary's respective share of income, gain, deduction, loss and credit for the year, and will instruct the Holder to report all such items on its tax return for such year and to pay any tax due with respect thereto.

5. However, notwithstanding the foregoing, with respect to any of the assets of the GUC Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable, such assets may, at the sole election of the GUC Trustee, be treated as disputed ownership funds under section 1.468B-9 of the Treasury Regulations, *provided* that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return would be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account would be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

G. *Fiduciary Duties*

The GUC Trustee shall owe fiduciary duties to the Holders of GUC Trust Beneficial Interests of the type that a chapter 7 trustee would owe to unsecured creditors, and shall have in place under the GUC Trust Agreement applicable indemnity, limitation of liability, and waiver provisions (payable solely out of proceeds of the GUC Trust Assets) to protect the GUC Trustee from being personally liable for any claims or causes of action asserted by any Holder or purported Holder of GUC Trust Beneficial Interests, except for any claims of fraud, gross negligence, or willful misconduct.

H. *Withholding*

1. The GUC Trustee may deduct and withhold and pay to the appropriate taxing authority all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local, or non-U.S. tax law with respect to any GUC Trust Beneficiaries, including with respect to any payment or distribution to the GUC Trust Beneficiaries, any amounts received by, collections of, or earnings of the GUC Trust and any proceeds from the GUC Trust Assets. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Plan

Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any governmental authority, including income, withholding, and other tax obligations, on account of such distribution or with respect to its ownership of GUC Trust Beneficial Interests. All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such GUC Trust Beneficiaries to the extent permitted by applicable Law. The GUC Trustee shall be authorized to collect such tax information from the GUC Trust Beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and the GUC Trust Agreement and to determine whether any deduction or withholding applies with respect to a payment to such GUC Trust Beneficiary and the amount of such deduction or withholding.

2. As a condition to receiving, or being entitled to receive, Plan Distributions from the GUC Trust, all GUC Trust Beneficiaries shall be required to identify themselves to the GUC Trustee and provide tax information and the specifics of their holdings, to the extent requested by the GUC Trustee, including an IRS Form W-9 or, in the case of non-U.S. Persons for U.S. federal income tax purposes, certification of foreign status on an applicable IRS Form W-8, including all applicable supporting documents. If a Holder of a General Unsecured Claim does not, within 90 days of the GUC Trustee's first written request, provide sufficient documentation that is, in the GUC Trustee's reasonable business judgment, necessary to determine the tax withholding and reporting requirements for such Claim, any current or future distribution on such Claim shall be deemed forfeited, the underlying General Unsecured Claim disallowed and expunged in its entirety, and the funds in respect of such present and future distribution(s) shall revert to the GUC Trust for all purposes including, but not limited to, redistribution to other GUC Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and the GUC Trust Agreement.

I. *Dissolution of GUC Trust*

1. The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at such time as all Plan Distributions of GUC Trust Assets required to be made by the GUC Trustee have been made, but in no event shall the GUC Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon *ex parte* motion made by the GUC Trustee before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation of, the GUC Trust Assets.

2. Upon dissolution of the GUC Trust, any remaining GUC Trust Net Assets shall be distributed to all Holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement as appropriate; *provided*, *however*, that if the GUC Trustee reasonably determines that such remaining GUC Trust Net Assets are insufficient to render a further Plan Distribution practicable, the GUC Trustee may, after reserving any amount necessary to dissolve the GUC Trust, donate any balance to a charitable organization that is (a) described in section 501(c)(3) of the Internal Revenue Code, (b) exempt from U.S. federal income tax under section 501(a) of the Internal Revenue Code, (c) not a "private foundation" as defined in section 509(a) of the Internal Revenue Code, and (d) unrelated to the Debtors, the Wind-Down Debtors, the GUC Trust, and any insider of the GUC Trustee.

J. *Transferred Privileges*

Subject to this Article V.J in all events, in respect of privileges (if any) transferred to the GUC Trust under the GUC Trust Agreement (the "**GUC Transferred Privileges**"), the GUC Trust Agreement shall contain terms substantially reflecting the following: subject to this Article V.J, the GUC Trust may not waive any GUC Transferred Privileges in respect of records, documents, or information related to the GUC Trust Assets without first providing to the Wind-Down Debtors reasonable advance written notice and an opportunity to protect their respective rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. The Wind-Down Debtors may not make disclosure in a manner that could effectuate a waiver of any GUC Transferred Privilege in respect of records, documents, or information related to the GUC Trust Assets without first providing to the GUC Trustee reasonable advance written notice (in no event less than five Business Days) and an opportunity to protect the GUC Trust's rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. If the GUC Trustee or the Wind-Down Debtors object to an action proposed to be taken by the other with regard to records, documents, or information related to the GUC Trust Assets that are covered by the GUC Transferred Privilege (or a disclosure that would result in a waiver), the parties shall be permitted to raise the issue promptly with the Bankruptcy Court. The party providing advance written notice may take its proposed action unless the Bankruptcy Court determines that (a) such action would cause material adverse harm to the other party, or (b) the harm to the objecting party would substantially outweigh the benefit to the party seeking to take the proposed action. The objecting party shall bear the burden of proof. Each of the parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Disbursing Agent*

1. The Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may retain and direct a Disbursing Agent to assist with the distributions to be made under the Plan. All Plan Distributions shall be made by the applicable Disbursing Agent as required under the Plan.

2. If the Disbursing Agent is an independent third party designated to serve in such capacity, the Plan Administrator or the GUC Trustee, as applicable, shall be permitted to provide to such Disbursing Agent from the Wind-Down Account or the GUC Trust, as applicable, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable, actual, and documented out-of-pocket expenses incurred in providing post-Confirmation services directly related to distributions pursuant to the Plan.

B. *Timing, Calculation of Amounts, and Delivery of Distributions*

1. Timing and Calculation of Amounts to be Distributed

(a) Subject to any reserves or holdbacks established pursuant to the Plan, and taking into account the matters set forth in Article VI.C and Article III of the Plan, on the appropriate Distribution Date or as soon as practicable thereafter, Holders of Allowed Claims shall receive the distributions from the applicable Disbursing Agent provided for Allowed Claims in the applicable Classes as of such date.

(b) If and to the extent there are Disputed Claims as of the Effective Date, distributions on account of such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in the Plan with respect to the treatment of Allowed Claims on or as soon as reasonably practicable after the next Distribution Date that is at least 20 calendar days after each such Claim is Allowed; *provided*, that distributions on account of the Claims set forth in Article III of the Plan shall be made as set forth therein and Professional Fee Claims shall be made as soon as reasonably practicable after such Claims are Allowed by the Bankruptcy Court or as provided in any other applicable order of the Bankruptcy Court. Because of the size and complexities of the Chapter 11 Cases, the Debtors at the present time cannot accurately predict the timing of the Final Distribution Date.

(c) For all purposes associated with Plan Distributions, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor or could be asserted more than once against a single Debtor shall result in a single Plan Distribution. For the avoidance of doubt, Claims held by a single Entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor. Any such Claims shall be released and discharged pursuant to Article IX and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.

2. *De Minimis* Distributions

(a) Notwithstanding any other provision of the Plan, no Disbursing Agent, as applicable, shall be required to make any distributions to Holders of Allowed Claims aggregating less than $250.00 (whether Cash or otherwise). Cash that otherwise would be payable under the Plan to Holders of Allowed Claims but for this Article VI.B.2 of the Plan shall be available for distributions to Holders of other Allowed Claims.

(b) Notwithstanding any other provision of the Plan, no Disbursing Agent, as applicable, shall have any obligation to make any distributions on any Interim Distribution Date unless the sum of all distributions authorized to be made to all Holders of Allowed Claims on such Interim Distribution Date exceeds $10,000 in value.

3. Delivery of Distributions—Allowed Claims

(a) Distributions shall only be made to the record Holders of Allowed Claims as of the Distribution Record Date. On the Distribution Record Date, at the close of business for the relevant register, all registers maintained by the Debtors, the Wind-Down Debtors, the Plan Administrator, the Disbursing Agent, the Administrative Agent, the GUC Trustee, and each of the foregoing's respective Related Parties shall be deemed closed for purposes of determining whether a Holder of such a Claim is a record Holder entitled to distributions under the Plan. The Debtors, the Wind-Down Debtors, the Plan Administrator, the Disbursing Agent, the Administrative Agent, the GUC Trustee, and each of the foregoing's respective Related Parties shall have no obligation to recognize, for purposes of distributions pursuant to, or in any way arising from, the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date. Instead, the foregoing parties shall be entitled to recognize only those record Holders set forth in the registers as of the Distribution Record Date, irrespective of the number of distributions made under the Plan or the date of such distributions. Furthermore, if a Claim is transferred 20 or fewer calendar days before the Distribution Record Date, the applicable Disbursing Agent shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b) If any dispute arises as to the identity of a Holder of an Allowed Claim that is entitled to receive a distribution pursuant to the Plan, the applicable Disbursing Agent may, in lieu of making such distribution to such person, make the distribution into an escrow account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

(c) Subject to Bankruptcy Rule 9010, a distribution to a Holder of an Allowed Claim may be made by the applicable Disbursing Agent in its sole discretion to (i) the address set forth on the first page of the Proof of Claim Filed by such Holder (or at the last known address of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address), (ii) the last known address of such Holder on the books and records of the Debtors or their agents after the date of any related Proof of Claim, (iii) the address set forth in any written notice of an address change delivered to the applicable Disbursing Agent, (iv) the address set forth on the Schedules, if no Proof of Claim has been Filed and the applicable Disbursing Agent has not received a written notice of an address change, or (v) the address of any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf. The foregoing shall also apply with respect to any forms or notices related to the distributions that, for the avoidance of doubt, may be sent via email to an email address that satisfies any of subclauses (i) – (v) in the previous sentence.

(d) All distributions on account of the Prepetition Loan Claims shall be made to, or at the direction of, the Administrative Agent for further distribution in accordance with the Loan Documents, and subject to the rights of the Administrative Agent to assert its charging lien under the Loan Documents. If the Administrative Agent is unable to make, or consents to the Wind-Down Debtors making, such distributions, the Wind-Down Debtors, with the cooperation of the Administrative Agent, shall make such distributions to the extent practicable to do so; *provided*, that any charging lien of the Administrative Agent shall attach to the property to be distributed in the same manner as if such distributions were made through the Administrative Agent. The Wind-Down Debtors shall reimburse the Administrative Agent for any reasonable and

documented fees and expenses incurred after the Effective Date in connection with making distributions pursuant to and in accordance with the Plan.

C. *Manner of Payment Under the Plan*

At the applicable Disbursing Agent's option, any Cash payment may be made by check, wire transfer, or any other customary payment method. In the case of foreign creditors, Cash payments may be made, at the option of the applicable Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

D. *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Claim entitled to a distribution under the Plan is based upon any obligation or instrument that is treated for U.S. federal income tax purposes as indebtedness of any Debtor and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes.

E. *Compliance Matters*

In connection with the Plan, each Debtor, each Wind-Down Debtor, the Disbursing Agent, the GUC Trustee, and the Plan Administrator, as applicable, shall comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Allowed Claims and distributions hereunder shall be subject to any such withholding and reporting requirements. In connection with the Plan and all distributions thereunder, the applicable Disbursing Agent is authorized to take any and all actions that may be necessary or appropriate to comply with the foregoing requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms that the Debtors, the Wind-Down Debtors, the Disbursing Agent, the GUC Trustee, or the Plan Administrator, as applicable, believe are reasonable and appropriate, and all Allowed Claims and distributions hereunder shall be subject to any such withholding and reporting requirements. All Holders of Claims shall be required to provide an IRS Form W-9 or an appropriate IRS Form W-8 and any other IRS Form and any other information necessary to allow the applicable Disbursing Agent to comply with all withholding, payment, and reporting requirements with respect to such taxes. The applicable Disbursing Agent reserves the right to withhold the full amount required by law on any distribution on account of any Holder of an Allowed Claim that fails to timely provide to the applicable Disbursing Agent the required information. The Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, and the Disbursing Agent, as applicable, reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

F. *Foreign Currency Exchange Rate*

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m., midrange spot rate of exchange for the applicable currency as published in the *Wall Street Journal*, national edition, on the day after the Petition Date.

G. *Fractional Dollars*

Notwithstanding any other provision of the Plan, the applicable Disbursing Agent shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole dollar.

H. *Undeliverable or Non-Negotiated Distributions*

1. If any distribution is returned as undeliverable or is otherwise unclaimed, no further distributions to the applicable Holder of an Allowed Claim shall be made unless and until the applicable Disbursing Agent is notified in writing of such Holder's then-current address, at which time the undelivered distribution shall be made to such Holder without interest or dividends. Undeliverable distributions shall be returned to the Wind-Down Debtors or the GUC Trustee, as applicable, until such distributions are claimed. Any Holder of an Allowed Claim that does not claim an undeliverable or unclaimed distribution within 90 calendar days after the date such distribution was returned undeliverable shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors and their Estates, the Wind-Down Debtors, the Plan Administrator, the Disbursing Agent, the GUC Trustee, and each of the foregoing's respective agents, attorneys, representatives, employees, or independent contractors and/or any of its or their property. All title to and all beneficial interests in the Cash relating to such undeliverable or unclaimed distribution, including any dividends or interest attributable thereto, shall revert to the Wind-Down Debtors or the GUC Trustee, as applicable, and such Cash shall be deposited in the Wind-Down Account or the GUC Trust, as applicable, for distribution in accordance with the Plan. The reversion of such Cash shall be free of any restrictions thereon notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

2. Checks issued on account of Allowed Claims shall be null and void if not negotiated within 120 calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the applicable Disbursing Agent by the Holder of the relevant Allowed Claim within such 120-calendar-day period. Nothing contained in the Plan shall require the Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, or any Disbursing Agent to attempt to issue a new check following such 120-calendar-day period. After such 120-calendar-day period, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and all title to and all beneficial interests in the Cash represented by any such non-negotiated check, including any dividends or interest attributable thereto, shall revert to the Wind-Down Debtors or the GUC

Trustee, as applicable, and such Cash shall be deposited in the Wind-Down Account or the GUC Trust, as applicable, for distribution in accordance with the Plan. The reversion of such Cash shall be free of any restrictions thereon notwithstanding any federal or state escheat laws to the contrary.

I. *Claims Paid by Third Parties*

1. To the extent a Holder of an Allowed Claim receives a distribution on account of a Claim and also receives payment from a party that is not a Debtor, a Wind-Down Debtor, the GUC Trustee, or the Disbursing Agent on account of such Claim, such Holder shall, within fourteen (14) calendar days of receipt thereof, repay, and/or return the distribution to the applicable Wind-Down Debtor or GUC Trustee to the extent that the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the Wind-Down Debtors or the GUC Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each calendar day after the 14-day grace period specified above until the amount is repaid.

2. A Claim may be adjusted or expunged on the Claims Register without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court to the extent that a Holder receives payment in full or in part on account of such Claim; *provided*, that, to the extent the non-Debtor party making the payment is subrogated to the Holder's Claim, the non-Debtor party shall have a 30-calendar-day grace period following payment in full to notify the Claims and Noticing Agent, the Plan Administrator, and the GUC Trustee, as applicable, of such subrogation rights.

J. *Claims Payable by Third Parties*

To the extent that one or more of the Debtors' Insurers satisfies any Claim in full or in part, then immediately upon such Insurers' satisfaction, such Claim may be expunged (to the extent of such satisfaction) on the Claims Register without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that a Debtor or any Entity may hold against any other non-Debtor Entity (including Insurers) under any Insurance Contract(s), nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers under any such Insurance Contract(s).

K. *Distribution to General Unsecured Claim Holders*

Notwithstanding anything in the Plan to the contrary, all distributions on account of the General Unsecured Claims shall be made by the GUC Trustee (or Disbursing Agent appointed at the GUC Trustee's direction) in accordance with the terms of the Plan and the GUC Trust Agreement. On the Effective Date, and solely for administrative purposes to facilitate distributions from the GUC Trust: (1) all General Unsecured Claims against each of the Debtors shall be deemed merged or treated as liabilities of the GUC Trust to the extent Allowed; (2) all General Unsecured Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any General Unsecured Claim against any Debtor and any guarantee

thereof executed by any Debtor and any joint or several General Unsecured Claim against any of the Debtors shall be deemed to be one obligation of the GUC Trust; (3) each and every General Unsecured Claim filed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one General Unsecured Claim against and obligation of the GUC Trust. For the avoidance of doubt, for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as separate entities so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may not be set off against the liabilities of any of the other Debtors. Such administrative consolidation is solely for the purpose of facilitating distributions to holders of General Unsecured Claims under this Plan and shall not affect the legal and corporate structures of the Wind-Down Debtors. Moreover, such administrative consolidation shall not affect any subordination provisions set forth in any agreement relating to any General Unsecured Claim or the ability of the GUC Trustee to seek to have any General Unsecured Claim subordinated in accordance with any contractual rights or equitable principles.

## ARTICLE VII.
## DISPUTED CLAIMS

A. *Objections to Claims*

1. If a Holder of a Claim elects to File or submit a Proof of Claim in the Chapter 11 Cases, such Holder shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to the Claim.

2. Before the Effective Date, any party in interest may object to Claims. After the Effective Date, the Plan Administrator or the GUC Trustee, as applicable, shall have the sole authority (in the case of the GUC Trustee, solely in relation to General Unsecured Claims, and in the case of the Plan Administrator, in relation to any other Claims) to object to all Claims against the Debtors or the GUC Trust, as applicable; *provided*, that the Plan Administrator or GUC Trustee, as applicable, shall not be entitled to object to any Claim that has been expressly Allowed by Final Order or under the Plan. In the event that any objection Filed by the Debtors remains pending as of the Effective Date, the Plan Administrator or GUC Trustee, as applicable, shall be deemed substituted for the Debtors as the objecting party. Any objections to Claims shall be Filed on the Bankruptcy Court's docket on or before the Claims Objection Deadline.

3. Except as otherwise provided herein or otherwise approved by the Bankruptcy Court, all Proofs of Claim Filed after the Claims Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Wind-Down Debtor or the GUC Trust, without the need for any objection by the Wind-Down Debtors, Plan Administrator, or the GUC Trustee or any further notice to or action, order, or approval of the Bankruptcy Court.

4. Claims objections Filed before, on, or after the Effective Date shall be Filed, served, and administered as permitted under the Bankruptcy Code, the Bankruptcy Rules, or as ordered by the Bankruptcy Court and with notice to the parties listed in Article XIII.J of the Plan; *provided*, that on and after the Effective Date, Filings and notices need only be served on the relevant claimants.

5. The Plan Administrator or GUC Trustee, as applicable, shall be entitled to assert all of the Debtors' and the Wind-Down Debtors' rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination and counterclaims with respect to the applicable Claims.

B. *Resolution of Disputed Claims*

On and after the Effective Date, the Plan Administrator or GUC Trustee, as applicable, shall have the sole authority (in the case of the GUC Trustee, solely in relation to General Unsecured Claims, and in the case of the Plan Administrator, in relation to any other Claims) to File, litigate, compromise, settle, otherwise resolve, or withdraw any objections to all applicable Claims, to compromise and settle any such Claims, and to administer and adjust the Claims Register to reflect any such settlement or compromise, in each case without notice to or approval by the Bankruptcy Court or any other party; *provided*, *however*, that (1) the Plan Administrator shall provide at least seven days' prior notice to the GUC Trustee prior to seeking the reclassification, in whole or in part, of any Claim (other than a General Unsecured Claim) to a General Unsecured Claim and the GUC Trustee shall have standing to object to any such reclassification and (2) the GUC Trustee shall provide at least seven days' prior notice to the Plan Administrator prior to seeking the reclassification, in whole or in part, of any General Unsecured Claim to any Claim (other than a General Unsecured Claim) and the Plan Administrator shall have standing to object to any such reclassification. After the Effective Date, the Plan Administrator or the GUC Trustee, as applicable, shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of the Plan and the GUC Trust Agreement, as applicable.

C. *Estimation of Claims and Interests*

1. The Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may, in their sole discretion (in the case of the GUC Trustee, solely in relation to General Unsecured Claims, and in the case of the Plan Administrator, in relation to any other Claims), determine, resolve, and otherwise adjudicate all Contingent Claims, Unliquidated Claims, and Disputed Claims in the Bankruptcy Court or such other court of the Debtors', the Wind-Down Debtors', the Plan Administrator's, or GUC Trustee's, as applicable, choice having jurisdiction over the validity, nature, or amount thereof. The Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, regardless of whether any party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but either is subject to appeal or has not become a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. If the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim for all purposes and may be used as evidence in any supplemental proceedings, and the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may pursue supplementary proceedings to object to the ultimate allowance of such Claim; *provided*,

that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

2. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such Claim unless the Holder of such Claim has Filed a motion requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

D. *Payments and Distributions for Disputed Claims*

1. <u>No Distributions Pending Allowance or Settlement of Causes of Action</u>

Notwithstanding any other provision in the Plan, no payments or distributions shall be made (a) for a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim, (b) to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim, or (c) to a specific Holder of an Allowed Claim if such Holder is or may be liable to the Debtors or the Wind-Down Debtors on account of a Cause of Action unless and until such Cause of Action (to the extent applicable and without prejudice to the rights of any Holder of an Allowed Administrative Claim to argue that section 502(d) of the Bankruptcy Code is inapplicable to its Administrative Claim) has been settled or withdrawn or has been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter; *provided*, that if only a portion of an Allowed Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount. Following any such settlement or determination in clause (c) of the preceding sentence where the Holder of a Claim is liable to the Debtors or the Wind-Down Debtors on account of any Cause of Action, any such payment or distribution to such Holder may be offset against the liability such Holder has to the Debtors or the Wind-Down Debtors. Notwithstanding the foregoing or any other provision in the Plan or the Plan Documents, nothing in the Plan or the Plan Documents shall (a) constitute a determination that section 502(d) of the Bankruptcy Code is, or is not, applicable to Administrative Claims or (b) prejudice the rights of (i) any Holder of an Allowed Administrative Claim to file a motion (or prosecute a pending motion) before or after the Effective Date, seeking entry of an order compelling payment of its Allowed Administrative Claim on or after the Effective Date on the basis that section 502(d) of the Bankruptcy Code is inapplicable to its Allowed Administrative Claim, or (ii) the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee to oppose any such motion on any grounds.

2. <u>Distributions After Allowance</u>

To the extent that a Disputed Claim (excluding Disputed General Unsecured Claims) becomes an Allowed Claim after the Effective Date, the applicable Disbursing Agent will

distribute to the Holder thereof the distribution, if any, to which such Holder is entitled under the Plan in accordance with Article VI.B.1 of the Plan. To the extent that a Disputed General Unsecured Claim becomes an Allowed Claim after the Effective Date, the Disbursing Agent or GUC Trustee, as applicable, will, out of the GUC Trust, distribute to the Holder thereof the distribution, if any, to which such Holder is entitled under the Plan in accordance with Article VI.B.1 of the Plan. Subject to Article VII.F of the Plan, all distributions made under this Article VII.D.2 of the Plan on account of Allowed Claims will be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property, as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Allowed Claim Holders included in the applicable Class.

E. *No Amendments to Claims*

A Claim may be amended before the Confirmation Date only as agreed upon by the Debtors and the Holder of such Claim or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules, the Local Rules, or applicable non-bankruptcy law. On or after the Confirmation Date, the Holder of a Claim (other than an Administrative Claim or a Professional Fee Claim) must obtain prior authorization from the Bankruptcy Court, the Debtors, the Wind-Down Debtors, or the GUC Trustee, as applicable, to amend a Claim.

F. *No Interest*

Other than as provided by section 506(b) of the Bankruptcy Code, the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Claim or Disputed Claim for the period from and after the Effective Date; *provided*, that, nothing in this Article VII.F of the Plan shall limit any rights of any Governmental Unit to interest under section 503, 506(b), 1129(a)(9)(A), or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

G. *No Late-Filed Claims*

Unless otherwise consented to by the Debtors, Wind-Down Debtors, or GUC Trustee, as applicable, any Claims Filed after the Claims Bar Date and for which no Final Order has been entered by the Bankruptcy Court determining that such Claims were timely Filed shall be Disallowed and expunged from the Claims Register (including by the Claims and Noticing Agent) at the direction of the Wind-Down Debtors or GUC Trustee, as applicable, to reflect the same, without the need to File an application, motion, complaint, objection, or any other legal proceeding seeking to adjust or expunge such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable. Any distribution of the Plan on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent, and liquidated. The Wind-Down Debtors and the GUC Trustee, as applicable, have no obligation to review or respond to any Claim Filed after the Claims Bar Date unless (1) the filer has obtained a Final Order from the Bankruptcy Court authorizing it to File such Claim after the Claims Bar Date or (2) the Wind-Down Debtors or the GUC Trustee, as applicable, have consented to the Filing of such Claim in writing.

H. *Adjustment to Claims Without Objection*

Any Claim that has been paid or otherwise satisfied (in whole or in part), amended, superseded, assumed, cancelled, or otherwise Disallowed (including pursuant to the Plan), any Claim that has been Filed against the wrong Debtor, and any Claim that is duplicative or redundant of another Claim against the same Debtor, may, on or after the Confirmation Date, be adjusted on or expunged from the Claims Register (including by the Claims and Noticing Agent) at the direction of the Wind-Down Debtors or GUC Trustee, as applicable, to reflect the same, without the need to File an application, motion, complaint, objection, or any other legal proceeding seeking to adjust or expunge such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable.

I. *Reservation of Rights to Object to Claims*

The failure of the Wind-Down Debtors or the GUC Trustee, as applicable, to object to any Claim shall not be construed as an admission to the amount, priority, character, or validity of any such Claim, any portion thereof, or any other claim related thereto, whether or not such claim is asserted in any currently pending or subsequently initiated proceeding, and shall be without prejudice to the right of the Wind-Down Debtors or the GUC Trustee, as applicable, to contest, challenge the validity of, or otherwise defend against, any such Claim in the Bankruptcy Court or non-bankruptcy forum.

J. *Disallowance of Claims*

Any Claims held by an Entity from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Entity has paid the amount, or turned over any such property, for which such Entity is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions under the Plan on account of such Claims until such time as all Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

K. *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is Contingent as of the Effective Date, such Claim, notwithstanding section 502(j) of the Bankruptcy Code, (a) shall be deemed Disallowed as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court and (b) can be expunged from the Claims Register (including by the Claims and Noticing Agent) unless, in each case, prior to the Effective Date (A) such Claim has been adjudicated as noncontingent or (B) the Holder of such Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer Contingent.

L. *Claims Reconciliation of General Unsecured Claims*

All Claims reconciliation on account of General Unsecured Claims shall be conducted by the GUC Trustee in accordance with the terms of the Plan and the GUC Trust Agreement and the terms of the Plan and all fees, costs, and expenses incurred by the GUC Trust relating to Claims reconciliation on account of General Unsecured Claims shall be GUC Trust Fees and Expenses.

## ARTICLE VIII.
## ASSUMPTION OF D&O POLICIES AND INDEMNIFICATION OBLIGATIONS

A. *Assumption of D&O Liability Insurance Policies*

1. As of the Effective Date, the Wind-Down Debtors shall be deemed to have assumed all of the Debtors' Insurance Contracts, including the D&O Liability Insurance Policies, pursuant to sections 105 and 365(a) of the Bankruptcy Code and, after such assumption, all Insurance Contracts, including the D&O Liability Insurance Policies, shall vest, unaltered and in their entireties, in the Wind-Down Debtors. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Wind-Down Debtors' foregoing assumption of each of the Insurance Contracts, including the D&O Liability Insurance Policies. The Cure Costs for each Insurance Contract shall be $0.00. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, release, impair, alter, amend, or otherwise modify any advancement, indemnity, or other obligations of any party under the Insurance Contracts, including the D&O Liability Insurance Policies.

2. After the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled, subject to the terms and conditions of the D&O Liability Insurance Policies, to the full benefits of any such policy from the applicable Insurers for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

3. The Debtors and the Wind-Down Debtors, as applicable, shall maintain directors', officers', and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, and employee coverage upon placement. Reasonable directors' and officers' insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

B. *Assumption of Certain Indemnification Obligations*

1. Each Indemnification Obligation to a current or former director, officer, manager, or employee who was employed by any of the Debtors in such capacity on or prior to the Effective Date (including, for the avoidance of doubt, the members of the board of directors, board of managers, or equivalent body of each Debtor at any time) shall be deemed assumed effective as of the Effective Date. Each Indemnification Obligation that is deemed assumed pursuant to the Plan

shall (a) remain in full force and effect, (b) not be modified, reduced, discharged, impaired, or otherwise affected in any way, (c) be deemed and treated as an Executory Contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not Proofs of Claim have been Filed with respect to such obligations, and (d) survive unaffected irrespective of whether such indemnification is owed for an act or event occurring before, on, or after the Petition Date.

2. Any obligations of the Debtors (whether pursuant to their corporate charters, bylaws, certificates of incorporation, other organizational documents, board resolutions, indemnification agreements, employment contracts, policy of providing employee indemnification, applicable state law, specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Persons or agreements, including amendments, or otherwise) entered into at any time prior to the Effective Date to indemnify, reimburse, or limit the liability of the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, in each case, based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation and, except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, that all obligations under this Article VIII.B of the Plan shall be limited solely to recovery available under applicable Insurance Contracts and, subject to Article VIII.B.3 of the Plan, neither the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, nor any of their Assets (other than the Insurance Contracts) shall be liable for any such obligations. Any Claim based on the Debtors' obligations set forth in this Article VIII.B of the Plan shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code. This provision for Indemnification Obligations shall not apply to or cover any Causes of Action against a Person that result in a Final Order determining that such Person seeking indemnification is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

3. Notwithstanding anything to the contrary in the Plan;

(a) neither the Debtors, Wind-Down Debtors, the Plan Administrator, the GUC Trust, nor the GUC Trustee shall have any liability or obligation to advance fees and expenses to or on behalf of any Person, to pay any costs, expenses, deductibles, retentions, or obligations arising under or in connection with the Insurance Contracts, D&O Liability Insurance Policies or the Indemnification Obligations or fund, replenish, or post any collateral, letter of credit, or other security from any Assets of the Wind-Down Debtors, the Estates, the Plan Administrator Reserve, or the GUC Trust except to the extent necessary to maintain the D&O Liability Insurance Policies;

(b) any cost, expense, or obligation of the Wind-Down Debtors, the Plan Administrator, the GUC Trust, or the GUC Trustee under this Article VIII shall be satisfied solely and exclusively from the applicable Insurance Contracts (including the D&O Liability Insurance Policies) and the proceeds thereof or by the Person seeking coverage thereunder except to the extent necessary to maintain the D&O Liability Insurance Policies;

(c) no director, officer, manager, employee, or other Person entitled to coverage under any D&O Liability Insurance Policy or to indemnification under any Indemnification Obligation shall have any Claim, Cause of Action, or other remedy against or recourse to the Debtors, Wind-Down Debtors, the Plan Administrator, the Plan Administrator Reserve, the Wind-Down Account, the Professional Fee Escrow Account (or any residual amounts therein), the GUC Trust, the GUC Trust Assets, any Distributable Assets, or any other Assets of the Wind-Down Debtors or the Estates (other than the Insurance Contracts and any proceeds thereof) on account of any obligation arising under or in connection with any D&O Liability Insurance Policy or Indemnification Obligation; *provided*, that the Wind-Down Debtors have maintained the D&O Liability Insurance Policies;

(d) any Person entitled to coverage or indemnification under any Insurance Contract or D&O Liability Insurance Policy shall be solely responsible for the associated cost of pursuing coverage under the applicable Insurance Contracts at such Person's own cost and expense; and

(e) any failure of an Insurer to pay or any denial, limitation, or exhaustion of coverage under any Insurance Contract or D&O Liability Insurance Policy relating to any Indemnification Obligation shall not give rise to any Claim, Cause of Action, or other liability against the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, or any of their Assets; *provided*, that the Wind-Down Debtors have maintained the D&O Liability Insurance Policies.

C. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith (1) do not alter in any way the prepetition nature of the Executory Contracts and Unexpired Leases, or the validity, priority, or amount of any Claims that may arise under the same, (2) are not and do not create post-petition contracts or leases, (3) do not elevate to administrative expense priority any Claims of the counterparties to the Executory Contracts and Unexpired Leases against any of the Debtors, and (4) do not entitle any Entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any prepetition Executory Contracts and Unexpired Leases and subsequent modifications, amendments, supplements, or restatements.

## ARTICLE IX.
## EFFECT OF CONFIRMATION OF THE PLAN

A. *Release of Liens*

1. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, on the Effective Date and concurrently with the applicable Plan Distributions being made and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors or the Wind-Down Debtors,

as applicable, and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Wind-Down Debtors and their successors and assigns. On and after the Effective Date, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date in accordance with the Plan, each party secured by such pre-Effective Date mortgages, deeds of trust, Liens, pledges, or other security interests (including, to the extent applicable, the Administrative Agent) shall execute and deliver (at the request and expense of the Wind-Down Debtors), and the Wind-Down Debtors shall be authorized to file any documents deemed necessary or appropriate to evidence such release in the name of such party secured by such pre-Effective Date mortgages, deeds of trust, Liens, pledges, or other security interests. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such pre-Effective Date mortgages, deeds of trust, Liens, pledges, or other security interests; *provided*, *however*, that, notwithstanding anything to the contrary herein or in the Confirmation Order, (a) no Lien or security interest securing the Prepetition Loan Claims, and no Adequate Protection Lien granted under the DIP Orders, shall be released, settled, discharged, or compromised, and the Administrative Agent shall have no obligation to execute any release or other documentation evidencing such release; *provided*, that as distributions under the Plan are made to Prepetition Loan Claims, Liens or security interests securing the Prepetition Loan Claims and Adequate Protection Liens shall be reduced by the amount of such distribution; and (b) the Confirmation Order shall not discharge, release, modify, or impair any Prepetition Lien or Adequate Protection Lien. Upon the Dissolution Date pursuant to the terms of the Plan, all remaining Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. For the avoidance of doubt, such Liens and security interests that remain after the Effective Date shall not affect the distributions under the Plan in any way.

2. To the extent that any Holder of a Secured Claim that has been satisfied in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or its agent) shall take any and all steps requested by the Wind-Down Debtors that are deemed reasonable, necessary, or appropriate to record or effectuate the cancellation or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

B. *Releases; Discharges*

1. The releases and discharges of Claims, Interests, and Causes of Action described in the Plan, including releases by the Debtors and by Holders, constitute good-faith compromises and settlements of the matters covered thereby and such releases are consensual. Such compromises and settlements are made in exchange for consideration, are in the best interest of Holders, are fair, equitable, and reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan.

2. Each of the release, indemnification, discharge, and exculpation provisions set forth in the Plan or in the Confirmation Order (a) is within the jurisdiction of the Bankruptcy Court under sections 1334(a), 1334(b), and 1334(e) of title 28 of the United States Code, (b) is an essential means of implementing the Plan, (c) is an integral and non-severable element of the transactions incorporated into the Plan, (d) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors, (e) is important to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, (f) is fair, equitable, and reasonable and in exchange for good and valuable consideration, and (g) is consistent with sections 105, 1123, 1129, 1141, and other applicable provisions of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the releases, stipulations, and exculpation provisions hereof are in addition to and do not replace, the release, stipulations, and other provisions of any Final Order of the Bankruptcy Court.

3. To the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided in the Plan or the Confirmation Order: (1) all consideration distributed under the Plan shall be in complete satisfaction, settlement, discharge, and release of, or in exchange for (as applicable), all Claims and Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests; (2) the Plan shall bind all Entities who have held, hold, or may hold Claims against or Interests in the Debtors; and (3) all Entities shall be precluded from asserting against the Wind-Down Debtors, their Estates, their successors and assigns, and their Assets and properties any other Claims or Interests based upon any documents, instruments, act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. Except as otherwise expressly provided for in the Plan or the Confirmation Order, upon the Effective Date, the Debtors shall be deemed discharged and released under and to the fullest extent provided under sections 1141(d)(1)(A) and 1141(d)(3) of the Bankruptcy Code from any and all Claims and Interests of any kind or nature whatsoever, including demands and liabilities that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

C. *Term of Injunction or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the later of (1) the Effective Date or (2) the date indicated in the order providing for such injunction or stay. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

D. *Exculpation*

1. **Pursuant to sections 1123(b) and 105(a) of the Bankruptcy Code, to the fullest extent permitted by applicable law, and except as otherwise specifically provided for in the Plan or Confirmation Order, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is released, discharged, and exculpated from any Cause of**

**Action for any claim related to, any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the formulation, preparation, marketing, dissemination, negotiation, filing, or pursuit of approval, confirmation, or consummation of the DIP Facility, the DIP Documents, the Plan (including the Plan Supplement and other Plan Documents), the Disclosure Statement, the Sale Transaction, or any settlement, contract, instrument, release, or other agreement or document created or entered into in connection therewith or in the Chapter 11 Cases, and any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases, the liquidation of the Debtors, the Sale Transaction, or the administration of, or property to be distributed under, the Plan (including the issuance and distribution of any interests issued or to be issued under or in connection with the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct (including actual fraud) or gross negligence. Notwithstanding anything to the contrary herein, the scope of claims subject to exculpation pursuant to this Article IX.D is temporally limited to claims arising during the period between the commencement of the Chapter 11 Cases and the Effective Date. Each Exculpated Party shall be entitled to raise as a defense that it relied upon the advice of counsel concerning its duties and responsibilities pursuant to, or in connection with, the Plan, to the extent permitted by and under applicable law.**

2. **The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. To the extent that any of the Exculpated Parties owed fiduciary duties to the Debtors, their Estates, or the Bankruptcy Court in connection with the Chapter 11 Cases, the Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, fully, completely, professionally, and admirably satisfied such duties.**

E. *Releases by the Debtors*

1. **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided for in the Plan or Confirmation Order, on and after the Effective Date, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties shall be deemed released and discharged by the Debtors, the Wind-Down Debtors, and their Estates from any and all claims, obligations, debts, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal, state, foreign, or other applicable laws, or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, lender liability, joint liability, or otherwise that the Debtors, the Wind-Down Debtors, and their Estates and their respective Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity or that any Holder of a Claim or Interest or**

**other Entity would have been legally entitled to assert derivatively for or on behalf of the Debtors, the Wind-Down Debtors, or their Estates or their respective Affiliates, based on, relating to, or in any manner arising from, in whole or in part, the following:**

(a) **the Debtors, the Wind-Down Debtors, the Plan Administrator, the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, or the formulation, preparation, marketing, dissemination, negotiation, or Filing of the DIP Facility, the DIP Documents, the Plan, the Plan Documents, the Disclosure Statement, the Loan Documents, any settlement, contract, instrument, release, or other agreement or document created or entered into in connection therewith, any prepetition transactions, or in the Chapter 11 Cases, and any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases, the liquidation of the Debtors, or the administration of, or property to be distributed under, the Plan;**

(b) **any Plan Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by, or in furtherance of, the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan or the Disclosure Statement;**

(c) **the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the business or contractual arrangements between the Debtors and any Released Party (excluding any assumed Executory Contract or Unexpired Lease), or the restructuring of Claims or Interests prior to or in the Chapter 11 Cases; and**

(d) **the negotiation, formulation, marketing, preparation, or performance of or under the Plan, the Disclosure Statement, the Plan Supplement, the Plan Documents, the DIP Facility, the DIP Documents, or, in each case, related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, that if any Released Party directly or indirectly brings or asserts any Claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, and such Released Party does not abandon such Claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void ab initio with respect to the Released Party bringing or asserting such Claim or Cause of Action; *provided*, *further*, that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority, or secured status of any prepetition Claim or Administrative Claim against the Debtors or (ii) any release or indemnification provided for in any settlement or granted under any other Final Order (*provided*,**

**that, in the case of the proceeding proviso, the Debtors shall retain all defenses related to any such action).**

2. **The foregoing releases in this Article IX.E shall not apply to any Retained Causes of Action or any claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including actual fraud) or gross negligence. Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument, or agreement executed to implement the Plan (including the Plan Supplement).**

3. **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is (a) in exchange for the good and valuable consideration provided by the Released Parties (including the Released Parties' contributions to facilitate the resolution of the Chapter 11 Cases and implementation of the Plan), a good faith settlement, and compromise of such claims, (b) in the best interests of the Debtors and all Holders of Claims, (c) fair, equitable, and reasonable, (d) given and made after due notice and opportunity for hearing, and (e) subject to the occurrence of the Effective Date, a bar to the Debtors or the Wind-Down Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the applicable Released Parties or their respective property.**

F. *Voluntary Releases by the Releasing Parties*

1. **Except as otherwise specifically provided for in the Plan or Confirmation Order, on and after the Effective Date and to the fullest extent authorized by applicable law, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal, state, foreign, or other applicable laws, or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the following:**

(a) **the Debtors, the Wind-Down Debtors, the Plan Administrator, the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, or the formulation, preparation, marketing, dissemination, negotiation, or Filing of the DIP Facility, the DIP Documents, the Plan, the Plan Documents, the Disclosure Statement, the Loan Documents, any settlement, contract, instrument, release, or other agreement or document created or entered into in connection therewith, any prepetition transactions, or in the Chapter**

**11 Cases, and any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases, the liquidation of the Debtors, or the administration of, or property to be distributed under, the Plan;**

(b) **any Plan Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by, or in furtherance of, the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan or the Disclosure Statement;**

(c) **the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party (excluding any assumed Executory Contract or Unexpired Lease), the restructuring of Claims or Interests prior to or in the Chapter 11 Cases;**

(d) **the negotiation, formulation, marketing, preparation, or performance of or under the Plan, the Disclosure Statement, the Plan Supplement, the Plan Documents, the DIP Facility, the DIP Documents, or, in each case, related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, that if any Released Party directly or indirectly brings or asserts any claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, and such Released Party does not abandon such claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void ab initio with respect to the Released Party bringing or asserting such claim or Cause of Action; *provided*, *further*, that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority, or secured status of any prepetition Claim or Administrative Claim against the Debtors or (ii) any release or indemnification provided for in any settlement or granted under any other Final Order (*provided*, that, in the case of the proceeding proviso, the Debtors shall retain all defenses related to any such action).**

2. **The foregoing releases in this Article IX.F shall not apply to any Retained Causes of Action or any claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including actual fraud) or gross negligence. Notwithstanding anything contained herein to the contrary, the foregoing releases shall not release any obligation of any party under the Plan or any document, instrument, or agreement executed to implement the Plan (including the Plan Supplement).**

3. **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is (a) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement, and compromise of such claims, (b) in the best interests of the Debtors and all Holders of Claims, (c) fair, equitable, and reasonable, (d) given and made after due notice and opportunity for hearing, and (e) subject to the occurrence of the Effective Date, a bar to the Releasing Party asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the applicable Released Parties or their respective property.**

G. *Injunction*

1. **Except as otherwise specifically provided in the Plan, the Confirmation Order, or any Final Order entered by the Bankruptcy Court in the Chapter 11 Cases, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that arose prior to the Effective Date, and all other parties in interest, along with their respective Related Parties, are permanently enjoined, from and after the Effective Date, on account of, in connection with, or with respect to any such claim, interest, Cause of Action, or liability for which an Exculpated Party has been exculpated under Article IX.D of the Plan or for which a Released Party has been released under EArticle IX.E or FArticle IX.F of the Plan (as applicable), from (a) commencing or continuing in any manner any action or other proceeding on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, other than to enforce any right to a distribution pursuant to the Plan, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Released Party or Exculpated Party, or the property or interest in property thereof, on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, other than to enforce any right to a Plan Distribution, (c) creating, perfecting, or enforcing any Lien or encumbrance against any Released Party or Exculpated Party, or the property or interest in property thereof, on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, other than to enforce any right to a Plan Distribution, (d) asserting any right of setoff or subrogation against any obligation due from any Released Party or Exculpated Party, or against the property or interest in property thereof, on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, notwithstanding an indication of a claim, interest, Cause of Action, or liability or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, except to the extent that (i) a right to setoff is asserted with respect to a Proof of Claim that explicitly preserves such setoff and is timely and properly Filed by the Effective Date or pursuant to section 502(h) of the Bankruptcy Code and Bankruptcy Rule 3002(c)(3) or (ii) such Entity was excused from Filing or otherwise not required to File a Proof of Claim pursuant to a Final Order of the Bankruptcy Court, and (e) interfering with the implementation or Consummation of the Plan or any of the Plan Documents. Such injunction shall extend to any successors or assignees of the Released Parties and Exculpated Parties and their respective properties and**

**interest in properties. Each of the Debtors, the Wind-Down Debtors, the Plan Administrator, the Exculpated Parties, and the Released Parties is expressly authorized hereby to seek the enforcement of such injunctions.**

2. **No Entity may commence, continue, amend, or otherwise pursue, join in, or support any other Entity commencing, continuing, amending, or pursuing, a Cause of Action or claim of any kind against any Released Party or Exculpated Party, as applicable, that arose, arises from, or is reasonably likely to arise from, or relates to or is reasonably likely to relate to, any claim subject to Articles IX.D, E, or F of the Plan without first (a) requesting a determination from the Bankruptcy Court, after notice (to all affected parties) and a hearing, that such claim or Cause of Action, as applicable, represents a colorable claim against a Debtor or a Released Party, as applicable, and is not a claim or Cause of Action that was released or exculpated under or pursuant to the Plan, which request must attach the complaint or petition proposed to be filed by the requesting Entity (which complaint or petition must satisfy the applicable Rules of Federal Procedure), and (b) obtaining from the Bankruptcy Court, in the form of a Final Order, specific authorization for such Entity to bring such claim or Cause of Action, as applicable, against a Debtor or any other Released Party or Exculpated Party, as applicable. Any such request shall include a proposed attorney fee reserve, subject to modification by the Bankruptcy Court, that shall be deposited to the Bankruptcy Court's registry to indemnify all potential defendants against costs associated with the successful defense of any claim that is allowed to proceed. For the avoidance of doubt, any Entity that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claim or Cause of Action, not explicitly included in the authorized complaint or petition must first obtain authorization from the Bankruptcy Court *before* filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a claim or Cause of Action, is colorable and, only to the extent legally permissible, shall have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.**

H. *Setoff and Recoupment*

**Except as otherwise expressly provided for in the Plan or the Confirmation Order, each Debtor and Wind-Down Debtor, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off or recoup (to the extent applicable) against any Allowed Claim and any Plan Distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature that such Debtor or Wind-Down Debtor, as applicable, may have against the Holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver, abandonment, or release by such Debtor, or Wind-Down Debtor, of any such claims, rights, and Causes of Action that they may have against such Holder. Except as otherwise specifically provided in the Plan, including Article IX.G, nothing herein shall (1) alter any rights of setoff or recoupment (to the extent available**

**under applicable law) of any Holder of an Allowed Claim or Allowed Administrative Claim against the Debtors or Wind-Down Debtors (as applicable) or (2) constitute a waiver of the rights, claims, or defenses of the Debtors, the Wind-Down Debtors, or any other party in interest to dispute such rights of setoff or recoupment on any grounds. In no event shall any Holder of a Claim be entitled to set off any such Claim against any Claim, right, or Cause of Action of the Debtor, unless (1) such Holder has indicated in any timely and properly Filed Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise or (2) such Holder was not required to File a Proof of Claim pursuant to a Final Order of the Bankruptcy Court (including the Bar Date Order).**

I. *Preservation of Causes of Action; Waiver of Non-Insider Preference Actions*

1. The Debtors, the Wind-Down Debtors, and their Estates retain all Retained Causes of Action and may enforce all rights related thereto that they may have or choose to assert on behalf of their respective Estates, as applicable, under any provision of the Bankruptcy Code or any applicable analogous statute or non-bankruptcy law, whether such Cause of Action arose before or after the Petition Date. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Retained Causes of Action shall not include any Causes of Action of any kind that were (i) released pursuant to a Final Order of the Bankruptcy Court, (ii) assigned and transferred pursuant to the Asset Purchase Agreement, or (iii) assertable by the Debtors as of the Effective Date under section 547 of the Bankruptcy Code or any state law analogs against any non-insider, which Causes of Action are expressly waived under the Plan. Upon Consummation, the Wind-Down Debtors shall have, retain, reserve, and be entitled to commence, assert, and pursue all Retained Causes of Action. For the avoidance of doubt, the Plan Administrator shall have the right to enforce the foregoing.

2. Except as set forth in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall, or shall be deemed to, release any post-Effective Date obligations of any party under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or in connection with Consummation.

3. The Debtors' inclusion or failure to include or describe with sufficient specificity any Retained Cause of Action herein, on any Schedule of Retained Causes of Action, or in the Confirmation Order shall not be deemed an admission, denial, or waiver of any Retained Cause of Action that the Debtors or their Estates may hold. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation, including any argument of waiver on account of the failure to include or describe with sufficient specificity any Retained Cause of Action herein, on any Schedule of Retained Causes of Action, or in the Confirmation Order. For the avoidance of doubt, in no instance shall any Retained Causes of Action include any claim or Cause of Action with respect to, or against, a Released Party that was released pursuant to the Plan.

4. **No Entity may rely on the absence of a specific reference herein, on any Schedule of Retained Causes of Action, or in the Confirmation Order to any Cause of Action**

**against them as any indication that the Wind-Down Debtors will not pursue any and all available Causes of Action against them.**

J. *Compromise and Settlement of Claims and Controversies*

1. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Plan Distributions and other benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, the provisions of the Plan shall also constitute a good-faith compromise and settlement of all Claims, Causes of Action, and controversies incorporated in the Plan.

2. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, controversies, and Causes of Action and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and the Holders of such Claims, and is fair, equitable, and reasonable. Subject to Article VI, all Plan Distributions made to or for the benefit of Holders of Allowed Claims in any Class are intended to be and shall be final. In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order, or approval of the Bankruptcy Court, the Debtors may compromise and settle claims and Causes of Action against other Entities and, upon Consummation, such right shall pass to the Wind-Down Debtors and the Plan Administrator.

3. Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

K. *No Avoidance or Clawback of Plan Distributions*

1. Notwithstanding any provision of the Bankruptcy Code, applicable non-bankruptcy law, or any contrary provision in this Plan or the Confirmation Order, all Plan Distributions made to any holder of an Allowed Claim, whether made on or after the Effective Date, shall be final, non-avoidable, and not subject to any claim, suit, action, right of recovery, avoidance, clawback, or disgorgement by the Debtors, the Wind-Down Debtors, the Estates, the Plan Administrator, the GUC Trustee, or any party acting or purporting to act on their behalf.

2. Without limiting the foregoing, no Plan Distribution, whether made on or after the Effective Date, shall be subject to avoidance or recovery under any theory, including under sections 105, 362, 502(d), 510, and 542-550 of the Bankruptcy Code, or under any federal or state fraudulent-transfer, preference, or similar recovery law. Recipients of Plan Distributions shall be conclusively deemed to have taken such distributions in good faith and for reasonably equivalent value.

L. *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Wind-Down Debtor or any Entity with which a Wind-Down Debtor has been or is associated, solely because such Wind-Down Debtor (1) is or was a debtor under chapter 11, (2) may have been

insolvent before the commencement of the Chapter 11 Cases or during the Chapter 11 Cases prior to the Effective Date, or (3) has not paid a debt that is dischargeable in the Chapter 11 Cases.

M. *Utility Deposits*

To the extent they have not already done so, all utilities or other Entities that received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases, whether pursuant to the Bankruptcy Court's *Final Order (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance* [ECF No. 282] (the "**Utilities Order**") or otherwise, are directed to return such deposits to the Wind-Down Debtors, either by setoff against post-petition indebtedness or by Cash refund, no later than 30 days after the Effective Date. Further, on or as reasonably practicable after the Effective Date, the Wind-Down Debtors (a) are authorized to withdraw the funds held in the Utility Deposit Account pursuant to and as defined in the Utilities Order and (b) shall have no further obligations to comply with the Utilities Order.

## ARTICLE X.
## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN

A. *Conditions to Effectiveness*

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied on or prior to the Effective Date or waived in accordance with Article X.B of the Plan:

1. the Confirmation Order shall have been entered and shall not be subject to a stay nor have been rescinded, vacated, or reversed on appeal, *provided* that the form of Confirmation Order shall be reasonably acceptable to the Committee and the Administrative Agent;

2. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3. any and all professional fees and expenses of Professionals already approved by the Bankruptcy Court shall have been paid in full;

4. the Professional Fee Escrow Account shall have been funded in Cash in full;

5. the Plan Administration Agreement shall have been executed by the Plan Administrator and the Debtors and the Plan Administrator shall have been appointed and assumed its rights and responsibilities under the Plan and Plan Administration Agreement;

6. the Plan Administrator Reserve shall have been created and funded in full in Cash, including the Wind-Down Account in an amount equal to the Wind-Down Reserve Amount and the Professional Fee Escrow Account in an amount equal to the Professional Fee Escrow Amount;

7. the GUC Trust Agreement shall have been executed, the GUC Trust Assets shall have vested or be deemed to have vested in the GUC Trust, and the cash portion of the GUC Trust Assets shall have been wired to the GUC Trust;

8. all documents and agreements necessary to implement the Plan, including the Plan Supplement, shall have been executed; and

9. no governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced, or entered any law or order (whether temporary, preliminary, or permanent) in any case that is in effect and that prevents or prohibits Consummation of the Plan, and no Governmental Unit shall have instituted any action or proceeding (that remains pending on what could otherwise be the Effective Date) seeking to stay, enjoin, restrain, or otherwise prohibit Plan Consummation.

B. *Waiver of Conditions to Effectiveness*

The Debtors, with the reasonable consent of the Committee and the Administrative Agent, may waive or modify any of the conditions set forth in Article X.A of the Plan at any time (other than entry of the Confirmation Order), without any notice to other parties in interest or the Bankruptcy Court and without any further notice to or formal action other than proceeding to confirm or consummate the Plan; *provided*, that the conditions in Article X.A.4-A.5 may only be waived with the express written consent (email being sufficient) of each affected Professional. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of such rights or any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A. *Plan Modifications*

1. Subject to certain restrictions and requirements set forth in section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors, with the reasonable consent of the Committee and the Administrative Agent, may alter, amend, or modify the Plan, including the Plan Supplement, in its entirety, in part, or as to a particular Debtor, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date. In addition, should the Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Debtors reserve the right to reclassify Claims and Interests.

2. After the Confirmation Date and before substantial Consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, including the Plan Supplement or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and effects of the Plan.

3. After the Confirmation Date but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, including the Plan Supplement, without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders or their Claims or Interests.

4. After the Effective Date, the Wind-Down Debtors may amend, supplement, or otherwise modify the Plan Documents in accordance with their terms and applicable non-bankruptcy law.

5. Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon, pursuant to section 1127(a) of the Bankruptcy Code, and a finding that such modifications to the Plan do not require additional disclosure or solicitation under Bankruptcy Rule 3019.

B. *Revocation or Withdrawal of the Plan and Effects of Nonoccurrence of Confirmation or Effective Date*

The Debtors reserve the right to revoke, withdraw, or delay consideration of the Plan as to any or all of the Debtors prior to the Confirmation Date, either entirely or as to any one or more of the Debtors, and to File subsequent plans. If the Plan is revoked, withdrawn, or delayed as to fewer than all of the Debtors, such revocation, withdrawal, or delay shall not affect the enforceability of the Plan as it relates to the Debtors for which the Plan is not revoked, withdrawn, or delayed. If the Debtors revoke or withdraw the Plan, or if the Confirmation Order is vacated pursuant to a Final Order, in each case, in its entirety, in part, or as to a particular Debtor, or if the Confirmation Date or the Effective Date does not occur, then, absent further order of the Bankruptcy Court and as to all or such Debtors, as applicable, (1) the Plan shall be null and void in all respects, (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), and any document or agreement executed pursuant hereto, shall be deemed null and void, and (3) nothing contained in the Plan or Confirmation Order, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of such Debtors or any other Person or Entity (including the application of res judicata or collateral estoppel), or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on or after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(i) hear, adjudicate, decide, determine, or resolve any motion, adversary proceeding, application, contested matter, or other matter pending on the Effective Date;

(ii) hear, adjudicate, decide, determine, or resolve all matters relating to the allowance, disallowance, liquidation, classification, priority, amount, validity, or estimation of any Claim, including, but not limited to, the reclassification of any Claim under Article VII.B;

(iii) ensure that Plan Distributions to Holders of Allowed Claims are accomplished as provided herein;

(iv) hear, adjudicate, decide, determine, or resolve all applications for compensation and reimbursement of Professional Fee Claims;

(v) hear, adjudicate, decide, determine, or resolve any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(vi) hear, adjudicate, decide, determine, or resolve disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any Plan Document, any settlements, transactions, or payments contemplated hereby or in furtherance hereof, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(vii) take any action, issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, any Plan Document, or any other order of the Bankruptcy Court;

(viii) take any action or issue such orders as may be necessary or appropriate to construe, enforce, implement, execute, and consummate, or to maintain the integrity of, the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, the Plan Documents, and contracts, instruments, releases, and other agreements or documents created or entered into in connection with the Plan;

(ix) enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(x) hear, adjudicate, decide, determine, or resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(xi) hear, adjudicate, decide, determine, or resolve any other matter not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(xii) hear, adjudicate, decide, determine, or resolve any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan Documents, or any other contract, instrument, release, or other agreement or document related to the Plan, the Disclosure Statement, or the Plan Supplement; *provided*, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in a Plan Document that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court and any disputes contained in such Plan Documents shall be governed in accordance with the provisions thereof;

(xiii) recover all Assets of the Debtors and property of the Debtors' Estates, which shall be for the benefit of the Wind-Down Debtors, wherever located;

(xiv) hear, adjudicate, decide, determine, or resolve any disputes concerning whether a Person or an Entity had sufficient notice of the Chapter 11 Cases, the Confirmation Hearing, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases (including the Solicitation), or any Claims Bar Date established in the Chapter 11 Cases, in each case, for the purpose of determining whether a Claim or an Interest is discharged hereunder or for any other purpose;

(xv) hear, adjudicate, decide, determine, or resolve any rights, claims, or Causes of Action held by or accruing to the Debtors or the Wind-Down Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(xvi) enforce and interpret all orders, judgments, injunctions, releases, discharges, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity;

(xvii) enter a final decree closing the Chapter 11 Cases;

(xviii) enforce any order for the sale of property pursuant to section 363, 1123, or 1146(a) of the Bankruptcy Code;

(xix) hear, adjudicate, decide, determine, or resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including (a) with respect to the repayment or return of Plan Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII, (b) with respect to the releases, injunctions, discharges, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such provisions, (c) those that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan, or (d) related to section 1141 of the Bankruptcy Code;

(xx) hear, adjudicate, decide, determine, or resolve whether a party's potential claim or Cause of Action represents a colorable claim against a Debtor or any other Released Party or Exculpated Party, as applicable, and is not a claim that was released or exculpated hereunder;

(xxi) hear and determine any rights, claims, or Causes of Action held by, or accruing to, any Debtor pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including those set forth on the Schedule of Retained Causes of Action;

(xxii) hear, adjudicate, decide, determine, or resolve any issue or dispute that the GUC Trustee may bring to the Court relating to the GUC Trust Agreement, the GUC Trust Assets, the discharge of the GUC Trustee's duties under the Plan or GUC Trust Agreement, or any General Unsecured Claim;

(xxiii) hear, adjudicate, decide, determine, or resolve such other matters, and for such other purposes as may be provided in the Confirmation Order; and

(xxiv) hear, adjudicate, decide, determine, or resolve any and all disputes arising from or relating to the Chapter 11 Cases, any orders entered therein (including the interpretation thereof), and any of the foregoing;

(xxv) hear any other matter not inconsistent with the Bankruptcy Code.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have jurisdiction to hear and determine disputes concerning Claims that arose prior to the Effective Date.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A. *Exemption from Transfer Taxes and Recording Fees*

To the maximum extent permitted by section 1146(a) of the Bankruptcy Code and to the maximum extent permitted by law, none of (1) the issuance, distribution, transfer, or exchange of notes, securities, instruments, or documents under this Plan, (2) the creation, modification, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (3) the making, assignment, filing, or recording of any lease or sublease, (4) the transfer of title to or ownership of any of the Debtors' interest in any Assets or property, or the making or delivery of any deed, bill of sale, or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, this Plan, or any merger agreements, purchase agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under this Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in this Plan, (5) the grant of collateral under this Plan, or (6) the issuance, renewal, modification, or securing of indebtedness, and the making, delivery, or recording of any deed, bill of sale, assignment, or other instrument of transfer under, in furtherance of, contemplated by, arising out of, or in any way related to this Plan and the Plan Documents, including the Confirmation Order, shall be subject to any document recording tax, sales tax, use tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, stamp act, personal, or real property tax (including real estate transfer tax), mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment in the United States. Upon entry of the Confirmation Order, the appropriate federal, state, or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

B. *Dissolution of the Committee and Termination of the Challenge Deadline*

1. On the Effective Date, the Challenge Deadline shall irrevocably terminate and the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purposes of (a) prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Committee and its Professionals and (b) appearing in connection with any appeals taken of the Confirmation Order. The Wind-Down Debtors and the Plan Administrator shall no longer be responsible for paying any fees or expenses incurred by the members of, or advisors to, the Committee after the Effective Date except for matters related to (a) or (b) in the immediately preceding sentence.

2. The termination of the Challenge Deadline and the dissolution of the Committee shall constitute final and irrevocable confirmation that (a) the GUC Trust established pursuant to Article V and the vesting of the GUC Trust Assets in the GUC Trust pursuant to the Plan constitute the sole consideration for the Committee's release of all challenge rights under paragraph 12 of the DIP Orders, (b) the Debtors' Stipulations and Releases set forth in paragraph F of the DIP Orders are permanently binding on all parties in interest in these Chapter 11 Cases and any successor cases, and (c) no party may seek to reopen, revive, or assert any Challenge (as defined in the DIP Orders) to the Prepetition Liens, the Prepetition Secured Obligations, or the Adequate Protection Obligations.

C. *Plan Supplement*

Draft forms of certain Plan Documents and certain other documents, agreements, instruments, schedules, and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement and Filed from time to time.

D. *No Admission*

Other than as expressly provided under the Plan or the Confirmation Order, nothing in the Plan or Disclosure Statement or any document or pleading Filed in connection therewith shall constitute or be deemed to constitute an admission that any of the Debtors are subject to or liable for any Claim.

E. *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

F. *Section 1125 of the Bankruptcy Code*

As of, and subject to the occurrence of, the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

G. *Nonseverability*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided*, that any such alteration or interpretation shall be reasonably acceptable to the Debtors, the Committee, and the Administrative Agent. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the

consent of the Debtors (with the reasonable consent of the Committee and the Administrative Agent), and (3) nonseverable and mutually dependent.

H. *Request for Expedited Determination of Taxes*

The Debtors or the Wind-Down Debtors, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

I. *Binding Effect*

Upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Wind-Down Debtors, all present and former Holders of Claims or Interests (whether or not such Holders shall receive or retain any property or interest in property under the Plan), and their respective heirs, executors, administrators, successors, and assigns, including the Wind-Down Debtors, the Plan Administrator, and all other parties in interest in the Chapter 11 Cases.

J. *Service of Documents*

To be effective, any notice, request, or demand to or upon, as applicable, the Debtors or the Committee must be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually received and confirmed by the relevant party as follows:

If to the Debtors:

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

If to the Administrative Agent:

**Faegre Drinker Biddle & Reath LLP**
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN 55402
Michael R. Stewart (michael.stewart@faegredrinker.com)
Adam C. Ballinger (adam.ballinger@faegredrinnker.com)

If to the Committee:

**Pachulski Stang Ziehl & Jones LLP**
1700 Broadway, 36th Floor
New York, NY 10019
Robert J. Feinstein
Bradford J. Sandler
Shirley S. Cho
Theodore S. Heckel, Sr.
(rfeinstein@pszjlaw.com; bsandler@pszjlaw.com; scho@pszjlaw.com;
theckel@pszjlaw.com)

After the Effective Date, the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 shall be limited to those Entities who have Filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

K. *Waiver or Estoppel*

**Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.**

L. *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, unless otherwise ordered by the Bankruptcy Court, the nonexhibit or nondocument portion of the Plan shall govern and control.

Dated: [●], 2026

Respectfully submitted,

**SLEEP NUMBER CORPORATION** (for itself and on behalf of all Debtors)

By: */s/ DRAFT*
Name: Kent Percy
Title: Chief Restructuring Officer

**Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SLEEP NUMBER CORPORATION, *et al.*,** | **Case No. 26-11399 (KYP)** |
| **Debtors.**[1] | **Jointly Administered** |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF**
**SLEEP NUMBER CORPORATION AND ITS DEBTOR AFFILIATES**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

*Counsel to the Debtors and Debtors in Possession*

Dated: ~~September 4~~October 15, 2026
New York, New York

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

[1] The Debtors' names and last four digits of their respective employer identification numbers are as follows: Sleep Number Corporation (7886); Select Comfort Retail Corporation (9757); Select Comfort Canada Holding Inc. (4273); Select Comfort SC LLC (5901); and Sleep Number Health Corporation (2499). The Debtors' mailing address is 1001 Third Avenue South, Minneapolis, MN 55404.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ..... 2

A. Defined Terms ..... 2

B. Rules of Interpretation ..... 19

C. Computation of Time ..... 20

D. Governing Law ..... 20

E. Reference to Monetary Figures ..... 20

F. Nonconsolidated Plan ..... 20

ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES ..... 21

A. Administrative Claims Bar Date; Filing of Administrative Claims ..... 21

B. Treatment of Administrative Claims and Priority Tax Claims ..... 22

C. Filing of Professional Fee Claims; Treatment of Professional Fee Claims ..... 23

D. Payment of Statutory Fees ..... 25

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 25

A. Summary ..... 25

B. Classification and Treatment of Claims and Interests ..... 26

C. Special Provision Governing Unimpaired Claims and Interests ..... 29

D. Acceptance or Rejection of the Plan ..... 29

E. Elimination of Vacant Classes ..... 30

F. Controversy Concerning Impairment ..... 30

G. Modification and Severability as to Debtors; Reservation of Rights ..... 30

ARTICLE IV. IMPLEMENTATION OF THE PLAN ..... 31

A. Wind-Down Transactions ..... 31

B. Wind-Down Debtors; Transferred Privileges; Books and Records ..... 31

C. Vesting of Assets ..... 32

D. Plan Administrator ..... 32

E. Exculpation, Indemnification, Insurance, and Liability Limitation ..... 33

F. Tax Returns ..... 33

G. Dissolution of the Wind-Down Debtors ..... 33

H. Corporate Action ..... 34

I. Effectuating Documents; Further Transactions ..... 34

J. Cancellation of Existing Securities and Related Agreements ..... 34

K. Abandonment of Non-Debtor Equity Interests ..... 34

L. Plan Administrator Reserve ..... ~~35~~34

M. DIP Order Preservation ..... ~~36~~35

ARTICLE V. GUC TRUST ..... 36

A. Creation and Governance of GUC Trust ..... 36

B. Purpose of GUC Trust ..... 37

C. GUC Trust Agreement and Funding of GUC Trust ..... 37

D. GUC Trust Beneficial Interests ..... 37

E. Access to Books and Records; Cooperation of the Wind-Down Debtors and Plan Administrator ..... ~~38~~37

F. Tax Treatment of the GUC Trust ..... 38

G. Fiduciary Duties ..... 39

H. Withholding ..... ~~40~~39

I. Dissolution of GUC Trust ..... 40

J. Transferred Privileges ..... 41

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..... 41

A. Disbursing Agent ..... 41

B. Timing, Calculation of Amounts, and Delivery of Distributions ..... 42

C. Manner of Payment Under the Plan ..... 44

D. Allocation of Plan Distributions Between Principal and Interest ..... 44

E. Compliance Matters ..... 44

F. Foreign Currency Exchange Rate ..... 45

G. Fractional Dollars ..... 45

H. Undeliverable or Non-Negotiated Distributions ..... 45

I. Claims Paid by Third Parties ..... 46

J. Claims Payable by Third Parties ..... 46

K. Distribution to General Unsecured Claim Holders ..... 46

ARTICLE VII. DISPUTED CLAIMS ..... 47

A. Objections to Claims ..... 47

B. Resolution of Disputed Claims ..... 48

C. Estimation of Claims and Interests ..... 48

D. Payments and Distributions for Disputed Claims ..... 49

E. No Amendments to Claims ..... 50

F. No Interest ..... 50

G. No Late-Filed Claims ..... 50

H. Adjustment to Claims Without Objection ..... 51

I. Reservation of Rights to Object to Claims ..... 51

J. Disallowance of Claims ..... 51

K. Reimbursement or Contribution 51

L. Claims Reconciliation of General Unsecured Claims 52

ARTICLE VIII. Assumption of d&O policies and indemnification obligations 52

A. Assumption of D&O Liability Insurance Policies 52

B. Assumption of Certain Indemnification Obligations 52

C. Modifications, Amendments, Supplements, Restatements, or Other Agreements 54

ARTICLE IX. EFFECT OF CONFIRMATION OF THE PLAN 54

A. Release of Liens 54

B. Releases; Discharges 55

C. Term of Injunction or Stays 56

D. Exculpation 56

E. Releases by the Debtors 57

F. Voluntary Releases by the Releasing Parties 59

G. Injunction 61

H. Setoff and Recoupment 62

I. Preservation of Causes of Action; Waiver of Non-Insider Preference Actions 63

J. Compromise and Settlement of Claims and Controversies 64

K. No Avoidance or Clawback of Plan Distributions 64

L. Protection Against Discriminatory Treatment 64

M. Utility Deposits 65

ARTICLE X. CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN 65

A. Conditions to Effectiveness 65

B. Waiver of Conditions to Effectiveness 66

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN 66

A. Plan Modifications 66

B. Revocation or Withdrawal of the Plan and Effects of Nonoccurrence of Confirmation or Effective Date 67

ARTICLE XII. RETENTION OF JURISDICTION 67

ARTICLE XIII. MISCELLANEOUS PROVISIONS 71

A. Exemption from Transfer Taxes and Recording Fees 71

B. Dissolution of the Committee and Termination of the Challenge Deadline 71

C. Plan Supplement 72

D. No Admission 72

E. Substantial Consummation 72

F. Section 1125 of the Bankruptcy Code 72

G. Nonseverability 72

H. Request for Expedited Determination of Taxes 73

I. Binding Effect 73

J. Service of Documents 73

K. Waiver or Estoppel 74

L. Conflicts 74

## INTRODUCTION

Pursuant to section 1121(a) of the Bankruptcy Code,[2] the Debtors propose this *Joint Chapter 11 Plan of Liquidation of Sleep Number Corporation and Its Debtor Affiliates* (including all appendices, exhibits, schedules, and supplements (including any Plan Supplements), and as it may be amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, the "**Plan**"). The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan contemplates the liquidation of the Debtors and the resolution of all outstanding Claims and Interests. Other agreements and documents may supplement this Plan and may be Filed with the Bankruptcy Court. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Article XI, the Debtors, with the reasonable consent of the Administrative Agent and the Committee, reserve the right to alter, supplement, amend, or otherwise modify (one or more times), revoke, or withdraw the Plan prior to its substantial consummation.

Pursuant to section 1125(b) of the Bankruptcy Code, votes to accept or reject a plan of liquidation cannot be solicited from Holders of Claims or Interests entitled to vote on the plan until a disclosure statement has been approved by a bankruptcy court and distributed to such Holders. On [•], 2026, the Bankruptcy Court entered the Disclosure Statement Order that, among other things, approved the Disclosure Statement, established voting procedures, and scheduled the Confirmation Hearing. The Disclosure Statement that accompanies this Plan includes, among other things, information pertaining to the Debtors' prepetition business operations and financial history, the events leading up to the Chapter 11 Cases, certain effects of confirmation of the Plan, certain risk factors associated with the Plan, how Plan Distributions will be made, the confirmation process, and confirmation requirements.

After the Disclosure Statement is approved, Holders of Claims entitled to vote to accept or reject the Plan will receive a Ballot and a copy of the Disclosure Statement to enable them to vote on the Plan in accordance with the voting instructions and make any other elections or representations required pursuant to the Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**The Debtors and the Committee believe that Confirmation and Consummation of the Plan are in the best interests of the Debtors, their Estates, and their creditors. The Plan provides for an equitable distribution to Holders of Claims. The Debtors and the Committee believe that any alternative to confirmation of the Plan, such as liquidation under chapter 7 of the Bankruptcy Code, could result in the loss of significant value (and a corresponding reduction in the distributions to Holders of Claims in certain Classes), and the potential for delay, litigation, and additional costs. Consequently, the Debtors and the Committee urge all eligible Holders of Claims entitled to vote on the Plan to vote to**

[2] Capitalized terms used herein shall have the meanings ascribed to them in Article I unless otherwise defined herein.

**ACCEPT the Plan and to complete and submit their Ballots so that they will be RECEIVED by the Claims and Noticing Agent on or before the Voting Deadline.**

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A. *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1. "**2021 Term Loan Claim**" means any Claim held by Holders of 2021 Term Loans or the Administrative Agent arising under or related to the Prepetition Loan Agreement.

2. "**2021 Term Loans**" means the term loans issued on December 3, 2021 pursuant to the sixth amendment to the Prepetition Loan Agreement, with an outstanding principal balance of $177,500,000 as of the Petition Date.

3. "**Administrative Agent**" has the meaning set forth in the Prepetition Loan Agreement.

4. "**Administrative Claim**" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for costs and expenses of administration of the Chapter 11 Cases pursuant to section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including the following: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses pursuant to section 328, 330(a), or 331 of the Bankruptcy Code or otherwise (including the Ordinary Course Professionals Order) for the period commencing on the Petition Date and ending on the Effective Date, including Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code, including the U.S. Trustee Fees; (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code and to the extent approved by the Bankruptcy Court; and (e) any fees and expenses that are earned and payable pursuant to the Plan and the other Plan Documents.

5. "**Adequate Protection Liens**" has the meaning set forth in the DIP Order.

6. "**Administrative Claims Bar Date**" means the deadline for Filing requests for payment of Administrative Claims, which (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

7. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the referenced Entity were a Debtor.

8. "**Allowed**" means, with respect to any Claim or Interest, except as otherwise provided in the Plan, any Claim or Interest: (a) expressly allowed by Final Order or under this Plan; (b) arising on or before the Effective Date that has not been otherwise satisfied or extinguished before the Effective Date that (i) was validly asserted by the Claims Bar Date (or for which Claim a Proof of Claim or request for payment of an Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order) and no objection to allowance has been interposed, including in accordance with Article VII of this Plan, (ii) was validly asserted by the Claims Bar Date (or for which Claim a Proof of Claim or request for payment of an Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order) and as to which any objection has been resolved by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder, or (iii) has been compromised, settled, or otherwise resolved pursuant to the Plan; (c) that is listed in the Schedules, as such Schedules may be amended by the Debtors from time to time, as liquidated in amount and not Disputed or Contingent, and for which no Proof of Claim has been Filed; or (d) after the Effective Date, agreed upon to be Allowed by written agreement of the Plan Administrator or the GUC Trustee (solely with respect to General Unsecured Claims), to the extent not already deemed Disallowed or expunged; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject this Plan shall not be considered "Allowed Claims" for any other purpose under this Plan or otherwise, except if and to the extent otherwise determined to be Allowed as provided herein. "**Allow**," "**Allowing**," and "**Allowance**" shall have correlative meanings. Any Claim that has been or is hereafter listed on the Schedules as Contingent, Unliquidated, or Disputed, and for which no contrary or superseding Proof of Claim has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors or the Wind-Down Debtors (as applicable) and without any further notice to any party or action, order, or approval of the Bankruptcy Court. Notwithstanding anything to the contrary herein, to the extent applicable and without prejudice to the rights of any Holder of an Allowed Administrative Claim to argue that section 502(d) of the Bankruptcy Code is inapplicable to its Administrative Claim, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount, or turns over any property, that it owes such Debtor or Wind-Down Debtor, as applicable. If an Entity owes the Debtors or Wind-Down Debtors, as applicable, any amount or property, no Claim of such Entity will be deemed Allowed until the Entity pays in full the amount, or turns over any property, that it owes such Debtor or Wind-Down Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or as agreed by the Debtors or the Wind-Down Debtors (as applicable). Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest, late fees, or other similar related charges on such Claim from and after the Petition Date.

9. "**Asset Purchase Agreement**" shall mean the Amended and Restated Asset Purchase Agreement, dated as of July 18, 2026, by and among Sleep Number Corporation and

SNBR Inc., together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time.

10. "**Assets**" means all rights, titles, interest, and assets of the Debtors of any nature whatsoever, including all property of the Estates of any kind pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests in property (including real and personal, tangible and intangible property), and proceeds from all of the foregoing; *provided*, that the foregoing shall not include the Transferred Assets.

11. "**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors, their Estates, or other authorized parties in interest to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code, or under similar or related state, federal, and non-U.S. statutes, non-bankruptcy law, and common law, including fraudulent transfer laws or fraudulent conveyance laws.

12. "**Ballot**" means the ballot upon which Holders of Claims entitled to vote on the Plan shall cast their vote to accept or reject the Plan, including, as applicable, any e-Ballots.

13. "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases, as may be amended from time to time.

14. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York with jurisdiction over these Chapter 11 Cases and, to the extent any reference made under 28 U.S.C. § 157 is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the United States District Court for the Southern District of New York.

15. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of title 28 of the United States Code and the general, local, and chambers rules of the Bankruptcy Court.

16. "**Bar Date Order**" means the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 473] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

17. "**Borrower**" means Sleep Number Corporation.

18. "**Business Day**" means any day other than a Saturday, Sunday, or Legal Holiday.

19. "**Case Information Website**" means the case information website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/Sleepnumber.

20. "**Cash**" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

21. "**Causes of Action**" means any claim, remedy, cause of action, proceeding, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, interest, debt, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, direct or indirect, Secured or unsecured, assertable directly or derivatively, choate or inchoate, reduced to judgment or otherwise, whether arising before, on, or after the Petition Date, in contract, tort, law, or equity, or otherwise pursuant to any theory of law. For the avoidance of doubt, Causes of Action include the following: (a) any right of setoff, counterclaim, or recoupment and any claim under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any claims or causes of action for aiding and abetting (including of breaches of fiduciary duties), knowing participation (including knowing participation in breach of fiduciary duty), and conspiracy (including conspiracy to breach fiduciary duty); (d) any claims or causes of action for illegal dividends; (e) any claims or causes of action for fraud, misrepresentations, or omissions; (f) the right to object to, subordinate, disallow, or otherwise contest Claims or Interests; (g) claims or causes of action pursuant to sections 362, 510, 542, 543, 544–550, or 553 of the Bankruptcy Code; (h) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (i) any Avoidance Action; (j) any claim or defense related to tax refunds or tax audits; and (k) any Retained Cause of Action.

22. "**Challenge Deadline**" has the meaning set forth in the DIP Order.

23. "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor or group of Debtors, the chapter 11 case or cases pending for that Debtor or group of Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

24. "**Claim**" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

25. "**Claims and Noticing Agent**" means Kroll Restructuring Administration LLC, the claims and noticing agent employed by the Debtors in the Chapter 11 Cases, as approved by the *Order Authorizing Retention and Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent* [ECF No. 55].

26. "**Claims Bar Date**" means, with reference to a Claim, the date by which Proofs of Claim must be or must have been Filed with respect to such Claim, as ordered by the Bankruptcy Court pursuant to the Bar Date Order or another Final Order of the Bankruptcy Court.

27. "**Claims Objection Deadline**" means 11:59 p.m. on the date that is 180 days from the Effective Date subject to further extensions and/or exceptions as may be ordered by the Bankruptcy Court.

28. "**Claims Register**" means the official register of Claims maintained by the Claims and Noticing Agent.

29. "**Class**" means a category of Holders of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

30. "**Committee**" means the official committee of unsecured creditors, as it may be reconstituted from time to time, appointed on June 23, 2026 by the U.S. Trustee in the Chapter 11 Cases [ECF No. 110] pursuant to section 1102(a) of the Bankruptcy Code.

31. "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

32. "**Confirmation Date**" means the date on which Confirmation occurs.

33. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

34. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan, pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements, and related documents, and granting other related relief.

35. "**Consummation**" means the occurrence of the Effective Date.

36. "**Contingent**" means, when used in reference to a Claim, any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event that has not yet occurred as of the date on which such Claim is sought to be estimated or on which an objection to such Claim is Filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

37. "**Cure Costs**" means an amount (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease), including an amount of $0.00, as applicable, required to cure any monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed, or assumed and assigned, by the Debtors via the Plan pursuant to section 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) Bankruptcy Code.

38. "**D&O Liability Insurance Policies**" means all directors', managers', officers', or employees' liability insurance policies (including any "tail policy" or excess policies) of any of the Debtors that have been issued or provide coverage at any time to current or former

directors, managers, officers, or employees of the Debtors, and all agreements, documents, or instruments related thereto.

39. "**Debtors**" or "**Sleep Number**" means, collectively, the above-captioned Debtors, in their capacities as debtors and debtors-in-possession in the Chapter 11 Cases.

40. "**DIP Documents**" means the DIP Order, DIP Loan Agreement, and all guarantee, collateral, pledge, and security agreements, intellectual property security agreements, control agreements, financing statements, and all other agreements, documents, certificates, and instruments executed, recorded, and/or delivered in connection therewith or related thereto (including the Loan Documents), in each case, as amended, supplemented, or modified in accordance with the terms thereof and the DIP Order.

41. "**DIP Facility**" means that certain $260,000,000 postpetition, superpriority, senior secured, priming debtor-in-possession facility provided pursuant to, and subject to the terms and conditions of, the DIP Documents.

42. "**DIP Order**" means, collectively, the (a) *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (iv) Modifying the Automatic Stay, (v) Scheduling a Final Hearing, and (vi) Granting Related Relief* entered by the Bankruptcy Court on June 15, 2026 [ECF No. 74]; (b) *Second Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (b) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [ECF No. 226]; and (c) *Final Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Superpriority Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [ECF No. 429].

43. "**DIP Loan Agreement**" has the meaning set forth in the DIP Order.

44. "**Disallowed**" means, with respect to a Claim, Interest, or any portion thereof, (a) the Claim has been disallowed, subordinated, or expunged, in whole or in part, by a Final Order or stipulation, or provision in this Plan or the Confirmation Order, disallowing a Claim, (b) the Claim has been withdrawn, in whole or in part, (c) the Claim is listed in the Schedules as zero or as Disputed, Contingent, or Unliquidated and in respect of which a Claims Bar Date has been established but a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court, (d) the Claim has been Filed or agreed to be equal to "$0" or to be expunged or (e) is not listed on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

45. "**Disbursing Agent**" means, as applicable, (a) the Debtors, Wind-Down Debtors, or any Entity designated or retained by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, in their sole discretion and without the need for any further order of the Bankruptcy Court, to make or to facilitate Plan Distributions, including the Administrative Agent to the extent it makes or facilitates Plan Distributions; or (b) the GUC Trustee of the Entity or Entities selected by the GUC Trustee to make or facilitate distributions to the GUC Trust Beneficiaries contemplated under the Plan.

46. "**Disclosure Statement**" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

47. "**Disclosure Statement Order**" means the *Order Approving the (I) Adequacy of Information in the Disclosure Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [ECF No. [●]].

48. "**Disputed**" means, with respect to a Claim, Interest, or any portion thereof, (a) any such Claim to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code or (b) any such Claim to which an objection has been Filed. To the extent that only a portion of a Claim is disputed, such Claim shall be deemed Allowed in the amount not disputed, if any, and Disputed as to the balance of such Claim.

49. "**Dissolution Date**" has the meaning set forth in Article IV.G.

50. "**Distributable Assets**" means all Assets, including all Cash, of the Debtors or the Wind-Down Debtors (as applicable) at any time, net of the funding of the Plan Administrator Reserve. For the avoidance of doubt, Distributable Assets shall not include the GUC Trust Assets.

51. "**Distribution Date**" means any of (a) the Initial Distribution Date, (b) each Interim Distribution Date, and (c) the Final Distribution Date.

52. "**Distribution Record Date**" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive Plan Distributions, which date shall be the Confirmation Date or such other date and time designated by the Debtors, Wind-Down Debtors, or Plan Administrator.

53. "**Effective Date**" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent specified in Article X.A of the Plan have been satisfied or waived (in accordance with Article X.B of the Plan), and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter and shall otherwise be deemed in compliance with the Plan and Confirmation Order.

54. "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

55. "**Estate**" means, as to each Debtor, the bankruptcy estate created for the Debtor pursuant to section 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

56. "**Exculpated Party**" means each of the following, and, in each case, in its capacity as such during the Chapter 11 Cases: (a) the Debtors; (b) the Administrative Agent; (c) the ~~Plan Administrator~~Lenders; (d) the ~~GUC Trustee; (e) the Lenders; (f) the~~ Committee and its members (in their capacity as Committee members); and ~~(g)~~ (e) with respect to each of the foregoing in clauses (a) through (~~f~~d), to the fullest extent permitted by law, such Person's Related Parties.

57. "**Executory Contract**" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

58. "**Existing Interests**" means all Interests in Sleep Number Corporation.

59. "**Federal Judgment Rate**" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

60. "**File**," "**Filed**," or "**Filing**" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

61. "**Final Distribution Date**" means a date for a final distribution selected by the Plan Administrator or the GUC Trustee, as applicable, that is no earlier than 20 calendar days after the date on which all Disputed Claims have become either Allowed Claims or Disallowed Claims.

62. "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari or leave to appeal has expired and no appeal or petition for certiorari or motion for leave to appeal has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be Filed, has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be or was sought, or the new trial, reargument, petition for certiorari, leave to appeal, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order shall not prevent such order from being a Final Order.

63. "**General Unsecured Claim**" means any Claim against any of the Debtors that is not one of the following Claims: (a) Administrative Claim; (b) Priority Tax Claim; (c) Other Secured Claim; (d) Other Priority Claim; (e) Prepetition Loan Claim; (f) Section 510(b) Claim;

or (g) Prepetition Intercompany Claim; *provided*, that, for the avoidance of doubt, General Unsecured Claims shall not include the Prepetition Loan Deficiency Claims.

64. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

65. "**Guarantors**" has the meaning set forth in the Prepetition Loan Agreement.

66. "**GUC Transferred Privileges**" shall have the meaning set forth in Article V.J.

67. "**GUC Trust**" means the liquidating trust established on the Effective Date for the benefit of the GUC Trust Beneficiaries in accordance with Article V of the Plan and the GUC Trust Agreement.

68. "**GUC Trust Agreement**" means the agreement, as may be amended, supplemented, restated, or otherwise modified from time to time, to be executed as of the Effective Date establishing the GUC Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement, in form and substance reasonably acceptable to the Debtors and the Committee.

69. "**GUC Trust Assets**" means $3,500,000 in Cash funded from the Debtors' Estates.

70. "**GUC Trust Beneficial Interest**" means the non-certified beneficial interest in the GUC Trust granted to each GUC Trust Beneficiary, which shall entitle such Holder to distributions of the GUC Trust Net Assets in accordance with the Plan.

71. "**GUC Trust Beneficiary**" means Holders of Allowed General Unsecured Claims; *provided*, that, for the avoidance of doubt, GUC Trust Beneficiaries shall not include Prepetition Loan Deficiency Claims.

72. "**GUC Trust Fees and Expenses**" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets) incurred by the GUC Trust, any professional retained by the GUC Trust (including attorneys, accountants, distribution agents, experts, or otherwise), and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust. For the avoidance of doubt, GUC Trust Fees and Expenses shall include all costs incurred by the GUC Trust to reconcile and object to, if necessary, General Unsecured Claims.

73. "**GUC Trust Net Assets**" means the GUC Trust Assets less the GUC Trust Fees and Expenses.

74. "**GUC Trustee**" means the trustee of the GUC Trust appointed to administer the GUC Trust pursuant to the GUC Trust Agreement. The identity of the GUC Trustee shall be chosen by the Committee in accordance with the GUC Trust Agreement and shall be filed with the Plan Supplement.

75. "**Holder**" means the Entity holding a Claim or Interest.

76. "**Impaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

77. "**Indemnification Obligations**" means each indemnification obligation of a Debtor in effect immediately prior to the occurrence of the Effective Date, whether pursuant to a Debtor's bylaws, articles or certificate of incorporation, corporate charter, other formation, corporate, or organizational document, policy or practice of providing indemnification, board resolutions, management or indemnification agreements, employment contracts, other agreement or applicable law, or otherwise, to indemnify, defend, reimburse, or otherwise limit the liability of, or to advance fees and expenses to or on behalf of, any of the Debtors' Related Parties.

78. "**Initial Distribution Date**" means a date selected by the Plan Administrator that is on, or as soon as reasonably practicable after, the Effective Date, which shall be the date on which initial distributions under the Plan are made.

79. "**Insurance Contracts**" means all insurance policies, including the D&O Liability Insurance Policies, that have been issued (or provide coverage) at any time to any of the Debtors (or any of their predecessors) and all agreements, documents, or instruments relating thereto.

80. "**Insurer**" means any company or other entity that issued an Insurance Contract (or provides insurance coverage) and includes any third-party administrator of or for any Insurance Contract, and any respective predecessors, successors, and/or Affiliates of any of these.

81. "**Intercompany Contract**" means any agreement, contract, or lease, all parties to which are Debtors.

82. "**Intercompany Interest**" means any ~~Claim~~Interest arising prior to the Petition Date against a Debtor and held by another Debtor.

83. "**Interest**" means, collectively, any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including any issued or unissued share of common stock, preferred stock, or other instrument evidencing any other equity, ownership, or profits interests in a Debtor, whether or not transferable, including membership interests in limited liability companies and partnership interests in partnerships, and any option, warrant, right, or other security or agreement, contractual or otherwise, to acquire or subscribe for, or which are convertible into any shares (or any class thereof) of, any such interest in a Debtor that existed immediately prior to the Effective Date, and any award of stock options, restricted stock, restricted stock units, performance stock units, stock appreciation rights, equity appreciation rights, restricted equity, or phantom equity of the Debtors (whether or not arising under or in connection with any employment agreement, award agreement, separation agreement, or employee incentive plan or program of the Debtors and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security, other than Intercompany Interests).

84. "**Interim Compensation Order**" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [ECF No. 357].

85. "**Interim Distribution Date**" means the date that is after the Initial Distribution Date or the most recent Interim Distribution Date thereafter, which shall be the date on which interim distributions under the Plan are made, with such periodic Interim Distribution Dates occurring until the Final Distribution Date has occurred, it being understood that the Plan Administrator may increase the frequency of Interim Distribution Dates in their sole discretion as circumstances warrant.

86. "**IRS**" means the U.S. Internal Revenue Service.

87. "**Legal Holiday**" has the meaning set forth in Bankruptcy Rule 9006(a).

88. "**Lenders**" has the meaning set forth in the Prepetition Loan Agreement.

89. "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

90. "**Loan Documents**" has the meaning set forth in the Prepetition Loan Agreement.

91. "**Local Rules**" means the Local Bankruptcy Rules of the Bankruptcy Court.

92. "**Non-Debtor Equity Interests**" means, collectively, any equity interests held by any Debtor or Wind-Down Debtor in an Entity that is not a Debtor or a Wind-Down Debtor.

93. "**Nonvoting Class**" means Class 1, Class 2, Class 6, Class 7, and Class 8.

94. "**Obligations**" has the meaning set forth in the Prepetition Loan Agreement.

95. "**Ordinary Course Professional**" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

96. "**Ordinary Course Professionals Order**" means the *Order Authorizing the Retention and Compensation of Professionals Utilized in the Ordinary Course of Business* [ECF No. 278].

97. "**Other Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

98. "**Other Secured Claim**" means any Secured Claim, other than a Prepetition Loan Claim.

99. "**Paydown ~~Motion~~Order**" means the ~~*Motion of Debtors for Entry of an*~~ *Order (I) Authorizing the Debtors to Pay Certain Amounts Outstanding Under the Debtors' Prepetition Loan Documents, and (II) Granting Related Relief* ~~filed on September 4, 2026~~ [ECF No.● 671].

~~100. "**Paydown Order**" means an order of the Bankruptcy Court approving the Paydown Motion.~~

100. ~~101.~~ "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

101. ~~102.~~ "**Petition Date**" means June 12, 2026, the date on which the Debtors commenced the Chapter 11 Cases, and, where relevant, the time of the filing of the Debtors' chapter 11 petitions on such date.

102. ~~103.~~ "**Plan**" has the meaning specified in the Introduction.

103. ~~104.~~ "**Plan Administration Agreement**" means the agreement between the Debtors or the Wind-Down Debtors, as applicable, and the Plan Administrator governing the Plan Administrator's rights and obligations in connection with the Plan and the Wind-Down, dated as of the Effective Date, which shall be filed as part of the Plan Supplement and shall be in form and substance acceptable to the Administrative Agent.

104. ~~105.~~ "**Plan Administrator**" means Rudy Morando, or any successor appointed under the Plan Administration Agreement.

105. ~~106.~~ "**Plan Administrator Reserve**" means certain segregated accounts established in accordance with Article IV.L, to be administered by the Plan Administrator in accordance with this Plan. The Plan Administrator Reserve shall include the Wind-Down Account, the Professional Fee Escrow Account, and any Distributable Assets received by the Wind-Down Debtors post-Effective Date after the Initial Distribution Date.

106. ~~107.~~ "**Plan Distribution**" means a payment or distribution to Holders of Allowed Claims under the Plan or Plan Supplement documents.

107. ~~108.~~ "**Plan Documents**" means the documents (other than the Plan) to be executed, delivered, assumed, and performed in conjunction with the Consummation of the Plan on, prior to, or after, the Effective Date, including any documents included in the Plan Supplement.

108. ~~109.~~ "**Plan Objection Deadline**" has the meaning set forth in the Disclosure Statement Order.

109. ~~110.~~ "**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules), in form and substance reasonably acceptable to the Debtors, the Committee, and the Administrative Agent, including the following, as applicable: (a) the Plan Administration Agreement; (b) the GUC Trust Agreement; (c) the Schedule of Retained Causes of Action; and (d) any other documentation that is contemplated by the Plan. The Debtors, with the reasonable consent of the Committee and the Administrative Agent, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement

pursuant to Article XI.A herein through the Effective Date without further action or order of the Bankruptcy Court.

110. ~~111.~~ "**Post-Effective Date Claims**" means any Administrative Claims that have been timely Filed after the Effective Date and have not otherwise been satisfied as of the Effective Date.

111. ~~112.~~ "**Prepetition Intercompany Claim**" means any Claim arising prior to the Petition Date against a Debtor and held by another Debtor.

112. ~~113.~~ "**Prepetition Liens**" has the meaning set forth in the DIP Order.

113. ~~114.~~ "**Prepetition Loan Agreement**" means that certain *Fourteenth Amendment to Amended and Restated Credit and Security Agreement*, dated as of February 14, 2018, by and among the Borrower, the Guarantors, the Lenders, and the Administrative Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

114. ~~115.~~ "**Prepetition Loan Claims**" means, collectively, the 2021 Term Loan Claims and RCF Claims, including, for the avoidance of doubt, the Prepetition Loan Deficiency Claims.

115. ~~116.~~ "**Prepetition Loan Deficiency Claims**" means the portion of the Prepetition Loan Claim, if any, that is not a Secured Claim.

116. ~~117.~~ "**Prepetition Loans**" means, collectively, the 2021 Term Loans and the RCF Loan.

117. ~~118.~~ "**Priority Claims**" means, collectively, Priority Tax Claims and Other Priority Claims.

118. ~~119.~~ "**Priority Tax Claim**" means any Claim of a Governmental Unit against any of the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

119. ~~120.~~ "**Privileges**" shall have the meaning set forth in Article IV.B.

120. ~~121.~~ "**Professional**" means an Entity (other than an Ordinary Course Professional) (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with section 327, 328, 330, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (ii) a Final Order authorizing such retention or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code (excluding those Entities entitled to compensation for services rendered after the Petition Date in the ordinary course of business pursuant to or in accordance with a Final Order granting such relief, including the Ordinary Course Professionals Order).

121. ~~122.~~ "**Professional Fee Claims**" means, at any given moment, all Administrative Claims arising from all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Effective Date under sections 328, 330, 331,

503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to or in accordance with an order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses. To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

122. ~~123.~~ "**Professional Fee Escrow Account**" means an interest-bearing account funded by the Debtors before the Effective Date in an amount equal to the Professional Fee Reserve Amount.

123. ~~124.~~ "**Professional Fee Reserve Amount**" has the meaning set forth in Article II.C.3 herein.

124. ~~125.~~ "**Proof of Claim**" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable Claims Bar Date.

125. ~~126.~~ "**Pro Rata**" means, as applicable, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in such particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

126. ~~127.~~ "**Purchaser**" means SNBR Inc., the purchaser under the Asset Purchase Agreement.

127. ~~128.~~ "**Quarterly Fees**" means any and all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the U.S. Code to the extent applicable.

128. ~~129.~~ "**RCF Claim**" means any Claim held by Holders of RCF Loans or the Administrative Agent arising under or related to the Prepetition Loan Agreement.

129. ~~130.~~ "**RCF Loan**" means the revolving loans issued pursuant to the Prepetition Loan Agreement, with an outstanding principal balance of $475,000,000 as of the Petition Date.

130. ~~131.~~ "**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (i) curing any such default that occurred before, on, or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured, (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default, (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, (iv) if such Claim or Interest arises from a failure to

perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Interest (other than the Debtors or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure, and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

131. ~~132.~~ "**Related Parties**" means, with respect to an Entity, each of, and in each case in its capacity as such, such Entity's current and former Affiliates, and such Entity's and such Affiliates' current and former directors, board observers, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), predecessors, participants, successors, assigns, subsidiaries, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, actuaries, consultants, representatives, and other professionals and advisors and any such person's or Entity's respective heirs, executors, estates, and nominees.

132. ~~133.~~ "**Released Party**" means each of the following, and in each case, solely in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the ~~Plan Administrator~~Administrative Agent; (d) the ~~Administrative Agent; (e) the~~ Disbursing Agents; (~~f) the GUC Trustee; (g~~e) the Lenders; (~~h~~f) the Committee; (~~i~~g) each Holder of a Claim that returns a Ballot that does not affirmatively elect to "opt out" of being a Releasing Party by checking the appropriate box on such Holder's timely and properly submitted Ballot to indicate that such Holder elects to opt out of the Plan's release provisions; and (~~j~~h) with respect to each of the foregoing Entities in clauses (a) through (~~i~~g), such Entity's Related Parties, in its capacity as such; *provided*, *however*, that an Entity that (i) affirmatively elects to "opt out" of being a Releasing Party by timely objecting to Confirmation or by checking the appropriate box on such Holder's timely and properly submitted Ballot, thereby indicating that such Holder elects to opt out of the Plan's release provisions, or (ii) timely objects to the releases herein and such objection is not resolved before Confirmation shall not be considered a "Released Party" notwithstanding anything to the contrary herein.

133. ~~134.~~ "**Releasing Party**" means each of the following, and in each case, solely in its capacity as such: (a) the Debtors and their Estates; (b) the Wind-Down Debtors; (c) the ~~Plan Administrator~~Administrative Agent; (d) the ~~Administrative Agent; (e) the~~ Disbursing Agents; (~~f) the GUC Trustee; (g~~e) the Lenders; (~~h~~f) the Committee; (~~i~~g) each Holder of a Claim that returns a Ballot that does not affirmatively elect to "opt out" of being a Releasing Party by checking the appropriate box on such Holder's timely and properly submitted Ballot to indicate that such Holder elects to opt out of the Plan's release provisions; and (~~j~~h) with respect to each of the foregoing Entities in clauses (a) through (~~i~~g), such Entities' Related Parties, solely to the extent that the Releasing Party has the authority under applicable law to grant such release on behalf of such Related Party. For the avoidance of doubt, each Holder of a Claim or Interest in a

Nonvoting Class shall not be a Releasing Party in its capacity as a Holder of such Claim or Interest.

134. ~~135.~~ "**Retained Causes of Action**" means the Causes of Action of the Debtors listed on the Schedule of Retained Causes of Action.[3]

135. ~~136.~~ "**Sale Order**" means the *Amended Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [ECF No. ~~430~~470].

136. ~~137.~~ "**Sale Transaction**" means the sale of all or substantially all of the Debtors' Assets to the applicable Purchasers as approved by the Sale Order.

137. ~~138.~~ "**Sale Transaction Documents**" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors will effectuate the Sale Transaction, including, for the avoidance of doubt, the Asset Purchase Agreement, the Sale Order, and the Transition Services Agreement.

138. ~~139.~~ "**Schedule of Retained Causes of Action**" means a schedule of certain Causes of Action, a copy of which will be Filed with the Plan Supplement, that are not released, exculpated, or waived pursuant to the Plan or otherwise, as the same may be amended, supplemented, or otherwise modified from time to time; *provided*, that the Wind-Down Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action.

139. ~~140.~~ "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules (as they may be amended, modified, or supplemented from time to time).

140. ~~141.~~ "**Section 510(b) Claim**" means a Claim or Cause of Action against any of the Debtors (a) arising from rescission of a purchase or sale of shares, notes, or any other Securities of any of the Debtors or an Affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of any such Security, (c) for violations of the Securities laws, misrepresentations, or any similar Claims related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, (d) for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim, including Claims based upon allegations that the Debtors made false and misleading statements or engaged in other deceptive acts in connection with the offer or sale of Securities, or (e) for attorneys' fees, other charges, or costs incurred on account of any of the foregoing Claims or Causes of Action.

[3] For the avoidance of doubt, the Retained Causes of Action shall be limited to (i) any Claims related to Google's advertising practices, (ii) any Claims related to tariff refunds, or (iii) any Claims that the Debtors, the Committee, and the Administrative Agent agree, by mutual consent, to add to the Schedule of Retained Causes of Action.

141. ~~142.~~ "**Secured**" means, with respect to a Claim, any Claim or portion thereof that is (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan, or separate Final Order of the Bankruptcy Court, as a secured claim.

142. ~~143.~~ "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time, or any similar federal, state, or local law.

143. ~~144.~~ "**Securities Exchange Act**" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as now in effect and hereafter amended, or any similar federal, state, or local law.

144. ~~145.~~ "**Security**" has the meaning set forth in section 2(a)(1) of the Securities Act.

145. ~~146.~~ "**Solicitation**" means the solicitation of votes with respect to this Plan.

146. ~~147.~~ "**Transferred Assets**" shall have the meaning set forth in the Asset Purchase Agreement.

147. ~~148.~~ "**Transferred Privileges**" shall have the meaning set forth in Article IV.B.

148. ~~149.~~ "**Transition Services Agreement**" means that certain transition services agreement dated as of July 31, 2026 by and between the Debtors and SNBR Inc. and its subsidiaries, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time.

149. ~~150.~~ "**Unexpired Lease**" means a nonresidential lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code, or may be amended by mutual agreement of the parties thereto.

150. ~~151.~~ "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

151. ~~152.~~ "**Unliquidated**" means, when used in reference to a Claim, any Claim, the amount of liability for which has not been fixed, whether pursuant to an agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

152. ~~153.~~ "**U.S. Trustee**" means the office of the United States Trustee for the Southern District of New York.

153. ~~154.~~ "**U.S. Trustee Fees**" means fees arising under section 1930(a)(6) of title 28 of the United States Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717, or as otherwise agreed by the U.S Trustee.

154. ~~155.~~ "**Voting Deadline**" means the date to be established by the Disclosure Statement Order by which the Claims and Noticing Agent must actually receive an otherwise valid vote on this Plan in order for such vote to count as a vote to accept or reject this Plan.

155. ~~156.~~ "**Voting Record Date**" has the meaning set forth in the Disclosure Statement Order.

156. ~~157.~~ "**Wind-Down**" means the wind-down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

157. ~~158.~~ "**Wind-Down Account**" means a segregated account in the Plan Administrator Reserve and established in accordance with Article IV.L, to be administered by the Plan Administrator in accordance with this Plan, that was funded by the Debtors with Cash on hand equal to the Wind-Down Reserve Amount. Any residual amounts remaining from the Wind-Down Account upon the Dissolution Date shall be distributed to the Holders of Allowed Prepetition Loan Claims in accordance with the Plan.

158. ~~159.~~ "**Wind-Down Budget**" means a budget, which shall be included in the Plan Supplement and subject to the consent of the Administrative Agent, for the activities and expenses to be incurred in connection with the Wind-Down and which shall include the amount necessary to fund the Wind-Down Account contained in the Plan Administrator Reserve.

159. ~~160.~~ "**Wind-Down Debtors**" means the Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

160. ~~161.~~ "**Wind-Down Debtors' Assets**" means all of the remaining Assets of the Debtors' Estates on the Effective Date, excluding (a) the Professional Fee Escrow Amounts held in the Professional Fee Escrow Account and (b) the GUC Trust Assets.

161. ~~162.~~ "**Wind-Down Reserve Amount**" means Cash in the amount of [●], to be funded into the Wind-Down Account in accordance with the Wind-Down Budget.

162. ~~163.~~ "**Wind-Down Transactions**" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably determines to be necessary to implement the Wind-Down, as described in more detail in Article IV.A herein.

B. *Rules of Interpretation*

The following rules for interpretation and construction shall apply to the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall

include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether Filed, to be Filed, or otherwise, shall mean such document, schedule, or exhibit as it may have been or thereafter may be amended, modified, or supplemented; *provided*, that any capitalized terms herein that are defined with reference to another document or other source, are defined with reference to such other source as of the date hereof, without giving effect to any termination of such other document or amendments to such capitalized terms in any such other source following the date hereof; (4) unless otherwise specified, all references herein to "Articles" or "Sections" are references to articles or sections, respectively, hereof or hereto; (5) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion hereof; (6) captions and headings to Articles, Sections, schedules, and exhibits are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (11) references to "shareholders," "directors," and "officers" shall also include "members" and "managers," as applicable, as such terms are defined under the applicable state limited liability company laws or applicable foreign law; (12) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and are deemed to be followed by the words "without limitation"; (13) unless otherwise stated, all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) any reference herein to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (16) capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (17) "Wind-Down Debtors" are deemed to be written as "the Debtors or the Wind-Down Debtors, as applicable"; and (18) unless otherwise specified, any section or exhibit references to an existing document, schedule, or exhibit are deemed to reference the equivalent provisions in any amendment thereto, whether or not such references herein are updated.

Any immaterial effectuating provisions may be interpreted by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; *provided*, that no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any Entity.

C. *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Unless otherwise specified, all references herein to times of day shall be references to prevailing Eastern Time. In the event that any payment or act hereunder is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

D. *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters, without giving effect to conflict of laws principles; *provided*, *however*, that corporate governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state or other jurisdiction of incorporation of the applicable Debtor or Wind-Down Debtor, as applicable.

E. *Reference to Monetary Figures*

All monetary figures referenced herein are denominated in U.S. dollars, unless otherwise expressly provided.

F. *Nonconsolidated Plan*

For purposes of administrative convenience and efficiency, the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors. The Plan does not provide for the substantive consolidation of any of the Debtors. Except as expressly provided herein, nothing in this Plan, the Confirmation Order, the Disclosure Statement, or the Plan Supplement shall constitute or be deemed to constitute a representation that any one or all of the Debtors is subject to or liable for any Claims or Interests against or in any other Debtor. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed the amount of the Allowed Claim.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES

All Claims and Interests (except Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee Fees) are placed in the Classes set forth in Article III of

the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and U.S. Trustee Fees have not been classified, and the Holders thereof are not entitled to vote on the Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A. *Administrative Claims Bar Date; Filing of Administrative Claims*

1. A notice setting forth the Administrative Claims Bar Date shall be (a) Filed on the Bankruptcy Court's docket and served with the notice of the Effective Date and (b) posted on the Case Information Website. No other notice of the Administrative Claims Bar Date will be provided.

2. All requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of this Article II of the Plan) must be Filed and served on the Claims and Noticing Agent and served on counsel to the Debtors and Wind-Down Debtors, counsel to the Administrative Agent, and the Plan Administrator by the Administrative Claims Bar Date. Such Proof of Claim must include, at a minimum: (a) the name of the applicable Debtor that is purported to be liable for the Administrative Claim and, if the Administrative Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (b) the name of the Holder of the Administrative Claim; (c) the asserted amount of the Administrative Claim; (d) the basis of the Administrative Claim; and (e) supporting documentation for the Administrative Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED, DISALLOWED, AND DISCHARGED. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED, DISALLOWED, AND DISCHARGED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THIS PLAN**. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, the Plan Administrator, or their property, and such Administrative Claims shall be deemed released and discharged as of the Effective Date without the need for any objection from the Debtors, the Wind-Down Debtors, or the Plan Administrator, or any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3. The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, shall have exclusive authority to settle Administrative Claims without further Bankruptcy Court approval. The Debtors, Wind-Down Debtors, the Plan Administrator, and the Claims and Noticing Agent are authorized to update the Claims Register to reflect the foregoing without the need to File an application, motion, complaint, objection, or any other legal proceeding seeking to adjust such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable.

4. Unless the Debtors, the Wind-Down Debtors, or the Plan Administrator object to a timely Filed and properly served Administrative Claim by the Claims Objection Deadline, such Administrative Claim shall be deemed Allowed in the amount requested. If the Debtors, the Wind-Down Debtors, or the Plan Administrator object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be Allowed and, if so, in what amount.

5. **Notwithstanding the foregoing, requests for payment of Administrative Claims need not be Filed for Administrative Claims that (a) previously have been Allowed by Final Order of the Bankruptcy Court or pursuant to this Plan, (b) the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, have otherwise agreed in writing (email being sufficient) do not require such a filing, or (c) arise pursuant to 28 U.S.C. § 1930.**

B. *Treatment of Administrative Claims and Priority Tax Claims*

1. Except with respect to Professional Fee Claims and except to the extent that (a) an Administrative Claim has already been paid during the Chapter 11 Cases or (b) a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, discharge, and release of each Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall receive an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtors, the Wind-Down Debtors, and the Plan Administrator (as applicable); or (v) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

2. For the avoidance of doubt, the failure by a Holder of an Allowed Administrative Claim to properly object to Article II.B.1 before the Plan Objection Deadline shall be deemed to be such Holder's consent, pursuant to section 1129(a)(9) of the Bankruptcy Code, to be paid in accordance with the Plan following the Effective Date.

3. Except to the extent that a Priority Tax Claim has already been paid during the Chapter 11 Cases or to the extent that a Holder of a Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, on the applicable Distribution Date, payment in full in Cash in an amount equal to such Holder's Allowed Priority Tax Claim. The failure to object to Confirmation by a Holder of an Allowed Priority Tax Claim

shall be deemed to be such Holder's consent, pursuant to section 1129(a)(9) of the Bankruptcy Code, to be paid in accordance with the Plan following the Effective Date.

4. Allowed Professional Fee Claims shall be paid from (a) first the Professional Fee Escrow Account and (b) if the Professional Fee Escrow Account is insufficient to pay the full amount of Allowed Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims shall be paid by the Plan Administrator from the Wind-Down Account without any further action or order of the Bankruptcy Court pursuant to the priorities set forth in the Plan.

5. On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, Wind-Down Debtors, or Plan Administrator, as applicable, shall pay all accrued and unpaid fees, expenses, disbursements, contribution, or indemnification of the Administrative Agent, whether incurred prior to or after the Petition Date, in each case to the extent payable or reimbursable under or pursuant to the DIP Orders. Such fees, expenses, disbursements, contribution, or indemnification obligations shall constitute Allowed Administrative Claims. Nothing herein shall require the Administrative Agent, Lenders, or their respective professionals, to File applications, a Proof of Claim, or otherwise seek approval of the Court as a condition to the payment of such Allowed Administrative Claims.

C. *Filing of Professional Fee Claims; Treatment of Professional Fee Claims*

Except to the extent that the applicable Holder of an Allowed Professional Fee Claim agrees to such other less favorable treatment with the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, each Holder of a Professional Fee Claim shall be paid in full in Cash pursuant to the provisions of this Article II.C of the Plan.

1. <u>Final Fee Applications</u>

All requests for payment of Professional Fee Claims must be Filed with the Bankruptcy Court by the date that is no later than 45 calendar days after the Effective Date. The objection deadline relating to a request for payment of Professional Fee Claims shall be 4:00 p.m. on the date that is 20 calendar days after the Filing of such request. Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

2. <u>Post-Confirmation Date Fees</u>

On the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code or the Ordinary Course Professionals Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Wind-Down Debtors, or the Plan Administrator may employ and pay all professionals without any further notice to, action by, or order or approval of the Bankruptcy Court or any other party; *provided*, *however*, that each Professional shall provide to the Debtors, the Wind-Down Debtors, the Administrative Agent, and the Plan Administrator (as applicable), its invoices for fees and expenses incurred after the Confirmation Date that are compensable pursuant to the Plan, in summary form, which shall not be required to contain time entries but shall include the number of hours billed by the applicable Professional (except for financial

advisors compensated on other than an hourly basis) and a reasonably detailed summary statement of services provided and the expenses incurred (which summary may be redacted or modified to the extent necessary to delete any information subject to the attorney-client or other privilege, any information constituting attorney work product, or any other confidential or otherwise sensitive information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). The Debtors shall pay in Cash all such fees and expenses of any Professional, within 10 days of presentment of such statements or invoices to the Debtors, if no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable. Any objection raised by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, with respect to such fee and expense statements or invoices shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, the Wind-Down Debtors, the Plan Administrator, and the issuer of the invoice, either party may submit such dispute to the Bankruptcy Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice.

3. Professional Fee Escrow Account

All Professionals shall (a) estimate their accrued and unpaid Professional Fee Claims (whether billed or unbilled) prior to and as of the Effective Date and (b) estimate their expected fees and expenses for professional services to be rendered or costs to be incurred following the Effective Date (the aggregate amount of such estimated fees and expenses, the "**Professional Fee Reserve Amount**"); *provided*, that such estimates shall not be considered an admission or limitation with respect to the fees and expenses incurred or to be incurred by the Professionals. Each Professional shall deliver its respective estimates for its portion of the Professional Fee Reserve Amount to the Debtors no later than five Business Days prior to the anticipated Effective Date. If a Professional does not provide its estimate, then the Debtors may estimate in good faith the unbilled fees and expenses for such Professional and shall fund such amount into the Professional Fee Escrow Account.

On or prior to the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash in an amount equal to the Professional Fee Reserve Amount.

Funds held in the Professional Fee Escrow Account shall revert to the Wind-Down Account only after all Allowed Professional Fee Claims have been paid in full and following satisfaction of the Prepetition Loan Claims. Fees owing to the applicable Holder of a Professional Fee Claim shall be paid in Cash to such Holder from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid pursuant to the Interim Compensation Order; *provided*, that the Wind-Down Debtors' obligations with respect to Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Professional Fee Escrow Account. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of accrued Professional Fee Claims, the Holders of Professional Fee Claims shall have an Allowed

Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.B.4 of the Plan, including from the Plan Administrator Reserve.

The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates, the Debtors, or the Wind-Down Debtors. No Liens, Claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.

D. *Payment of Statutory Fees*

Quarterly Fees due and payable on or prior to the Effective Date shall be paid by the Debtors, including on account of disbursements made pursuant to the Plan on the Effective Date. After the Effective Date, the Wind-Down Debtors, or any entity making disbursements on behalf of any of the Wind-Down Debtors or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor (each, a "**Disbursing Entity**"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Wind-Down Debtors, or any entity making disbursements on behalf of the Wind-Down Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, and the Wind-Down Debtors shall remain obligated to pay Quarterly Fees as and when due to the Office of the U.S. Trustee until the Debtor's case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Summary*

1. The Plan groups the Debtors together solely for the purposes of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan in respect of Claims against, and Interests in, the Debtors under the Plan. Notwithstanding such groupings, the Plan constitutes a separate chapter 11 plan of liquidation for each Debtor. The Plan is not premised upon, and will not cause, the substantive consolidation of any of the Debtors. For brevity and convenience, the classification and treatment of Claims and Interests have been arranged into one chart. Such classification shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any Assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal entities.

2. The categories of Claims and Interests listed in the table below classify Claims and Interests for all purposes, including voting, confirmation, and Plan Distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.[4] The treatment

[4] The claims contained in this Article III do not represent claims actually asserted by Holders in Proofs of Claim or otherwise. Any controversies regarding the classification of any Claim herein shall be governed by the procedures

provided in this chart is for informational purposes only and is qualified in its entirety by this Plan, including this Article III and the disclaimers included herein. The Class numbers assigned below are for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Loan Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Prepetition Intercompany Claims | Impaired | Presumed to Reject |
| 6 | Section 510(b) Claims | Impaired | Presumed to Reject |
| 7 | Existing Interests | Impaired | Presumed to Reject |
| 8 | Intercompany Interests | Impaired | Presumed to Reject |

B. *Classification and Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below:

1. <u>Class 1 – Other Secured Claims</u>

(a) *Classification*: Class 1 consists of all Other Secured Claims.

(b) *Treatment*: Each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors, either of the following:

otherwise. Any controversies regarding the classification of any Claim herein shall be governed by the procedures set forth in the Disclosure Statement Order. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

(i) payment in full in Cash, payable on the later of (A) the Effective Date and (B) the date that is thirty (30) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; or

(ii) any other treatment consistent with the provisions of section 1129 of the Bankruptcy Code, including by providing such Holder with the "indubitable equivalent" of its Allowed Other Secured Claim.

(c) *Voting*: Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of an Allowed Other Secured Claim is entitled to vote to accept or reject the Plan.

2. <u>Class 2 – Other Priority Claims</u>

(a) *Classification*: Class 2 consists of all Other Priority Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to such other treatment, in full and final satisfaction of such Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor or Wind-Down Debtor, on the applicable Distribution Date, payment in full in Cash or other treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code. The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired by the Plan. Each Holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. No Holder of an Allowed Other Priority Claim is entitled to vote to accept or reject the Plan.

3. <u>Class 3 – Prepetition Loan Claims</u>

(a) *Classification*: Class 3 consists of all Prepetition Loan Claims.

(b) *Allowance of Prepetition Loan Claims*: The Prepetition Loan Claims shall be Allowed in the aggregate amount of $477,500,000.00 less any amounts paid to the Holders of Prepetition Loan Claims pursuant to the Paydown Order prior to the Effective Date.

(c) *Treatment*: Except to the extent that a Holder of an Allowed Prepetition Loan Claim agrees to less favorable treatment, each Holder of an Allowed Prepetition Loan Claim shall (i) retain its Prepetition Liens and Adequate

Protection Liens and (ii) receive its Pro Rata share of the Distributable Assets.

(d) *Voting*: Class 3 is Impaired by the Plan. Each Holder of an Allowed Prepetition Loan Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

4. Class 4 – General Unsecured Claims

(a) *Classification*: Class 4 consists of all General Unsecured Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall be entitled solely to its Pro Rata share of distributions of the GUC Trust Net Assets; *provided*, that, for the avoidance of doubt, Prepetition Loan Deficiency Claims shall not constitute a General Unsecured Claim.

(c) *Voting*: Class 4 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim as of the Voting Record Date is entitled to vote to accept or reject the Plan.

5. Class 5 – Prepetition Intercompany Claims

(a) *Classification*: Class 5 consists of all Prepetition Intercompany Claims.

(b) *Treatment*: All Prepetition Intercompany Claims shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Prepetition Intercompany Claims shall not receive any distribution under the Plan on account of such Prepetition Intercompany Claims.

(c) *Voting*: Class 5 is Impaired and not receiving any distribution under the Plan, in which case the Holders of such Allowed Prepetition Intercompany Claims are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, no Holder of an Allowed Prepetition Intercompany Claim is entitled to vote to accept or reject the Plan.

6. Class 6 – Section 510(b) Claims

(a) *Classification*: Class 6 consists of all Section 510(b) Claims.

(b) *Treatment*: All Section 510(b) Claims shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Section 510(b) Claims shall not receive any distribution under the Plan on account of such Section 510(b) Claims.

(c) *Voting*: Class 6 is Impaired by the Plan. Each Holder of a Section 510(b) Claim is deemed to have rejected the Plan pursuant to section 1126(g) of

the Bankruptcy Code. No Holder of a Section 510(b) Claim is entitled to vote to accept or reject the Plan.

7. Class 7 – Existing Interests

(a) *Classification*: Class 7 consists of all Existing Interests.

(b) *Treatment*: All Existing Interests shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Existing Interests shall not receive any distribution under the Plan on account of such Existing Interests.

(c) *Voting*: Class 7 is Impaired by the Plan. Each Holder of an Existing Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. No Holder of an Existing Interest is entitled to vote to accept or reject the Plan.

8. Class 8 – Intercompany Interests

(a) *Classification*: Class 8 consists of all Intercompany Interests.

(b) *Treatment*: All Intercompany Interests shall be cancelled, released, and extinguished as of the Effective Date, and Holders of Intercompany Interests shall not receive any distribution under the Plan on account of such Intercompany Interests.

(c) *Voting*: Class 8 is Impaired and not receiving any distribution under the Plan, in which case the Holders of such Allowed Intercompany Interests are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, no Holder of an Allowed Intercompany Interest is entitled to vote to accept or reject the Plan.

For the avoidance of doubt, any Administrative Claim, Other Priority Claim, Priority Tax Claim, or Other Secured Claim that is an Assumed Liability under the Asset Purchase Agreement shall not (i) constitute an Administrative Claim, Other Priority Claim, Priority Tax Claim, or Other Secured Claim pursuant to this Plan, (ii) be satisfied from the Plan Administrator Reserve, (iii) be an obligation of the Debtors or the Wind-Down Debtors.

C. *Special Provision Governing Unimpaired Claims and Interests*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims or Interests, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims or Interests.

D. *Acceptance or Rejection of the Plan*

1. Voting Classes Under the Plan

Under the Plan, Classes 3 and 4 are Impaired, and each Holder of a Claim as of the Voting Record Date in such Classes is entitled to vote to accept or reject the Plan.

2. Acceptance of the Plan by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class that actually voted on the Plan have voted to accept the Plan.

3. Presumed Acceptance of the Plan

Under the Plan, (a) Classes 1 and 2 are Unimpaired, (b) the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan, and (c) such Holders are not entitled to vote to accept or reject the Plan and the votes of such Holders shall not be solicited.

4. Presumed Rejection of the Plan

Under the Plan, (a) Classes 5, 6, 7 and 8 are Impaired, (b) the Holders of Claims or Interests in such Classes are deemed to have rejected the Plan and shall receive no distributions under the Plan on account of their Claims or Interests, and (c) such Holders are not entitled to vote to accept or reject the Plan and the votes of such Holders shall not be solicited.

5. Presumed Acceptance by Voting Classes with No Votes

If a Class contains Claims eligible to vote on the Plan, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

E. *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not contain a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the Voting Deadline, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F. *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

G. *Modification and Severability as to Debtors; Reservation of Rights*

Subject to Article XI of the Plan, the Debtors, with the reasonable consent of the Committee and the Administrative Agent, reserve the right to modify or withdraw the Plan in its entirety or in part, for any reason, including if the Plan as it applies to any particular Debtor is not confirmed. In addition, and also subject to Article XI of the Plan, should the Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Debtors, with the reasonable consent of the Administrative Agent, reserve the right to reclassify Claims or otherwise amend or modify or withdraw the Plan in its entirety, in part or as to a particular Debtor. Without limiting the foregoing, if the Debtors withdraw the Plan as to any particular Debtor because the Plan as to such Debtor fails to be accepted by the requisite number and amount of Claims voting or due to the Bankruptcy Court, for any reason, denying Confirmation as to such Debtor, then at the option of such Debtor, with the reasonable consent of the Administrative Agent, (a) the Chapter 11 Case for such Debtor may be dismissed or (b) such Debtor's Assets may be sold to another Debtor, such sale to be effective at or before the Effective Date of the Plan of the Debtor transferee, and the sale price shall be paid to the seller in Cash and shall be in an amount equal to the fair value of such Assets as proposed by the Debtors, and approved by the Bankruptcy Court.

## ARTICLE IV.
## IMPLEMENTATION OF THE PLAN

A. *Wind-Down Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, including, as applicable and without limitation: (1) the winding down and dissolution of any direct or indirect subsidiaries of the Wind-Down Debtors; (2) all transactions necessary to provide for the purchase of some or all of the Assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (3) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law; and (4) abandoning any Non-Debtor Equity Interests. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

B. *Wind-Down Debtors; Transferred Privileges; Books and Records*

1. The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any Wind-Down Debtors' Assets held by the Wind-Down Debtors, if any, (b) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (c) paying or otherwise satisfying Allowed Claims (other than Allowed General Unsecured Claims), (d) filing appropriate tax returns, and (e) administering the Plan in

an efficacious manner in accordance with the Wind-Down Budget. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned, or sold pursuant to the Asset Purchase Agreement, a prior order or the Plan, the Wind-Down Debtors specifically retain and reserve the right to assert, after the Effective Date, any and all of the Retained Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan. For the avoidance of doubt, any proceeds of Retained Causes of Action shall constitute Distributable Assets and shall be distributed to Holders of Allowed Prepetition Loan Claims in accordance with Article III.B.3.

2. Subject to the terms of this Plan (including Article V.J and the Schedule of Retained Causes of Action) and the Confirmation Order, all of the Debtors' privileges (the "**Privileges**"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "**Transferred Privileges**"), shall be transferred, assigned, and delivered to the Plan Administrator, as applicable, in each case without waiver, limitation, or release, and shall vest with the Plan Administrator on the Effective Date; *provided*, *however*, that notwithstanding the foregoing, Transferred Privileges do not include Privileges relating in any way to (i) any rights, claims, or Causes of Action released under the Plan and (ii) any legal advice provided by Davis Polk & Wardwell LLP in its capacity as counsel to the Debtors. The Plan Administrator shall hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges. No Privilege shall be waived by disclosures to the Plan Administrator of the Debtors' documents, information, or communications subject to any privilege, protection, or immunity, or protections from disclosure held by the Plan Administrator.

3. On the Effective Date, the Sale Transaction Documents, as applicable shall be deemed assumed by the Wind-Down Debtors, and such documents, as applicable, shall vest with the Wind-Down Debtors. For the avoidance of doubt, such assumption will be deemed to not be an assignment pursuant to Section 3.12 of the Transition Services Agreement. The Plan Administrator shall have access to the Debtors' books and records in accordance with the Plan Administration Agreement. To the extent that the Books and Records were transferred to the Purchaser under the Sale Transaction, the Wind-Down Debtors, or Plan Administrator shall be deemed to be substituted as the party-in-lieu of the Debtors to the extent set forth in the Sale Transaction Documents solely with respect to accessing Books and Records.

C. *Vesting of Assets*

On the Effective Date, the Wind-Down Debtors' Assets shall vest in the Wind-Down Debtors for the primary purpose of liquidating the Wind-Down Debtors' Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan, including, but not limited to,

Article IX.A of the Plan. The Wind-Down Debtors shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

D. *Plan Administrator*

1. On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor as the sole director and the sole officer of the Wind-Down Debtors and shall succeed to the powers of such Debtor's directors and officers. The Plan Administrator shall be the sole representative of, and shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). The Plan Administrator shall be vested with all other powers and authority set forth in the Plan and the Plan Administration Agreement, shall be deemed to have been appointed as the Debtors' Estates' representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and shall have the duties of a trustee set forth in sections 704(a)(1), 704(a)(2), and 704(a)(5) of the Bankruptcy Code. For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former director or officer.

2. The Plan Administrator shall have the power and authority to implement the Wind-Down Transactions, including administering and distributing the amounts set forth in the Plan Administrator Reserve in accordance with the Plan. The Plan Administrator shall be entitled to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors, upon the monthly submission of statements to the Plan Administrator in accordance with the Wind-Down Budget. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

E. *Exculpation, Indemnification, Insurance, and Liability Limitation*

~~The~~Subject to Article IX.D in its entirety, the Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Wind-Down Debtors. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

F. *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the

Wind-Down Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

G. *Dissolution of the Wind-Down Debtors*

Upon (a) a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Plan Distributions having been made and completion of all its duties under the Plan and (b) entry of a final decree closing the last of the Chapter 11 Cases (the date on which the foregoing (a) and (b) have occurred, the "**Dissolution Date**"), each of the Wind-Down Debtors shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

H. *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) selection of the Plan Administrator; (b) implementation of the Wind-Down Transactions; (c) funding of all applicable escrows and accounts; and (d) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors. The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I. *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order, and the Wind-Down Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

J. *Cancellation of Existing Securities and Related Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan, all rights of any Holder of Claims or Interests, including options or warrants to purchase Interests or obligating the Debtors to issue, transfer, or sell Interests of the Debtors, shall be cancelled.

K. *Abandonment of Non-Debtor Equity Interests*

On or after the Effective Date, the Debtors and the Wind-Down Debtors may, with the consent of the Administrative Agent, abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

L. *Plan Administrator Reserve*

1. Prior to or on the Effective Date, the Debtors shall establish the Plan Administrator Reserve and fund it with Cash (inclusive of the Wind-Down Reserve Amount and the Professional Fee Escrow Amount) in accordance with the Plan and, with respect to the Wind-Down Reserve Amount, the Wind-Down Budget. Before or on the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall use the funds in the Plan Administrator Reserve to establish segregated accounts for (a) the Professional Fee Escrow Account in the amount of the Professional Fee Escrow Amount, and (b) the Wind-Down Account in the amount equal to the Wind-Down Reserve Amount (in each case, which may be effected by either establishing a segregated account or establishing book entry accounts, in the discretion of the Plan Administrator).

2. On and after the Effective Date, the funds in the Plan Administrator Reserve shall be used to make payments, including (a) to satisfy the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan, (b) to make distributions to Holders of Allowed Post-Effective Date Claims from the Wind-Down Account, and (c) to make distributions on account of Professional Fee Claims incurred from and following the Effective Date; *provided*, that if the Plan Administrator Reserve is insufficient to pay any Allowed Post-Effective Date Claims in full, any Distributable Assets received by the Wind-Down Debtors after the Effective Date shall first be used to pay any such outstanding Allowed Post-Effective Date Claims prior to any distribution to Holders of Allowed Prepetition Loan Claims; *provided*, *further*, that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents of the Wind-Down Debtors shall constitute expenses of the Wind-Down Debtors in accordance with the Wind-Down Budget.

3. Any amount remaining in the Plan Administrator Reserve upon the Dissolution Date shall be distributed to Holders of Allowed Prepetition Loan Claims in accordance with the Plan.

4. Professional Fee Escrow Account

Before the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount using Cash from the Plan Administrator Reserve in accordance with Article II.C.3 of the Plan. For the avoidance of doubt, the Professional Fee Escrow Account is reserved exclusively for satisfying Professional Fee Claims, and may not be used to satisfy other Claims or obligations, until all Professional Fee Claims are paid in full in accordance with Article II.C.3 of the Plan.

5. Other Reserves and Modifications to Reserves

The Plan Administrator, with the consent of the Administrative Agent, may establish and administer any other necessary reserves that may be required under the Plan. Notwithstanding anything to the contrary contained in the Plan, the Plan Administrator, with the consent of the Administrative Agent, may make transfers of Cash between the accounts and reserves established hereunder to satisfy Claims and other obligations in accordance with the Plan.

M. *DIP Order Preservation*

Nothing in the Plan, the Confirmation Order, or any Plan Supplement shall modify, amend, waive, reject, or impair the rights of the Prepetition Secured Parties under the DIP Orders, except to the extent expressly agreed to in writing by the Administrative Agent. Subject to the terms of the Plan, the Confirmation Order, and the DIP Orders, the DIP Orders shall remain in full force and effect following the Confirmation Date, shall be binding on the Debtors, Wind-Down Debtors, Plan Administrator, and any party in interest, and shall not be rejected, modified, supplemented, or otherwise altered by the Plan, the Confirmation Order, or any Plan Supplement without the prior written consent of the Administrative Agent. Notwithstanding anything to the contrary in this Plan, the Confirmation Order, or any Plan Supplement, the protections granted to the Prepetition Secured Parties under the DIP Orders shall survive Confirmation and the Effective Date.

## ARTICLE V.
## GUC TRUST

A. *Creation and Governance of GUC Trust*

1. On the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deemed to be vested in the GUC Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. Under no circumstance shall the Debtors, Wind-Down Debtors, or any other party be required to contribute any assets to the GUC Trust other than the GUC Trust Assets. After the Effective Date, neither the Debtors, Wind-Down Debtors, nor any other party shall have any interest in the GUC Trust Assets except as expressly set forth herein.

2. The GUC Trust shall be administered by the GUC Trustee and governed by the Plan and GUC Trust Agreement, and the GUC Trustee shall have the sole power and authority to distribute the GUC Trust Net Assets to Holders of Allowed General Unsecured Claims in accordance with the treatment set forth in Article III.B of the Plan. The GUC Trustee shall be the exclusive trustee of the GUC Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4) of the Tax Code. The GUC Trust, acting through the GUC Trustee, shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the GUC Trust Assets and Allowance and Disallowance of General Unsecured Claims and Plan Distributions to Holders of Allowed General Unsecured Claims. The GUC Trust, acting through the GUC Trustee, shall be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code for all purposes in these Chapter 11 Cases.

3. To the extent necessary to the performance of the GUC Trustee's duties and responsibilities related to the reconciliation of or objection to General Unsecured Claims, and subject to the GUC Trust Agreement, the Debtors or Wind-Down Debtors, as applicable, shall share communications or documents related to the GUC Trust Materials that are subject to the attorney-client privilege, work product protection, or other applicable privilege with the GUC Trust; the sharing of such information shall not operate as a waiver of any applicable privileges. The Debtors, Wind-Down Debtors, Committee, and GUC Trustee, as applicable, shall agree on how to document the sharing of the attorney-client privilege in accordance with the foregoing such that any privilege is preserved (such as through a common interest agreement), and in the absence of such agreement, the Bankruptcy Court shall decide as set forth in the Confirmation Order or any other order(s).

B. *Purpose of GUC Trust*

The GUC Trust shall be established for the purpose of reconciling and objecting, if necessary, to General Unsecured Claims, and distributing the GUC Trust Net Assets to the GUC Trust Beneficiaries in accordance with the terms of the Plan and GUC Trust Agreement. The GUC Trust is intended to qualify as a liquidation trust pursuant to Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with the purpose of the GUC Trust.

C. *GUC Trust Agreement and Funding of GUC Trust*

1. The GUC Trust Agreement will generally provide for, among other things: (a) the payment of the GUC Trust Fees and Expenses; (b) the orderly distribution of the GUC Trust Net Assets to the GUC Trust Beneficiaries; and (c) the retention of counsel, accountants, financial advisors, or other professionals by the GUC Trust and the payment of their reasonable compensation. The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust and the GUC Trustee solely from the proceeds of the GUC Trust Assets; *provided*, that, for the avoidance of doubt, any such indemnification shall be by the GUC Trust and the GUC Trustee alone and shall not implicate the Debtors or the Wind-Down Debtors. In the event of any conflict between the terms of the Plan and the GUC Trust Agreement, the terms of the Plan shall govern.

2. The GUC Trust Fees and Expenses shall be paid solely from the GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement. The GUC Trustee, on behalf of the GUC Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder, including Professionals in these Chapter 11 Cases, and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the GUC Trust Assets in accordance with the Plan and the GUC Trust Agreement.

D. *GUC Trust Beneficial Interests*

GUC Trust Beneficial Interests shall be passive and shall not have voting, consent, or other shareholder-like control rights with respect to the GUC Trust. The GUC Trust Beneficial Interests will not be certificated and may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except in accordance with applicable law. The GUC Trust will operate in compliance with applicable federal and state securities laws and SEC staff guidance, including those regarding liquidating trusts, if applicable.

E. *Access to Books and Records; Cooperation of the Wind-Down Debtors and Plan Administrator*

1. The Debtors and Wind-Down Debtors shall provide commercially reasonable access to the GUC Trustee and any professionals retained by the GUC Trustee to records and information relating to the General Unsecured Claims (including, but not limited to, information necessary for the GUC Trustee to reconcile and, if necessary, prepare objections to General Unsecured Claims) including electronic records, documents, or work product related to the foregoing; *provided*, that the Debtors and Wind-Down Debtors shall not incur any expenses to provide such access to the GUC Trustee and any professionals retained by the GUC Trust.

2. Subject to this Article V.E, to the extent the GUC Trust receives GUC Trust Materials from the Debtors or the Wind-Down Debtors, the GUC Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors or the Wind-Down Debtors, as applicable, and the Debtors or the Wind-Down Debtors, as applicable, retain the sole right to waive their own privileges. Reasonable agreements will be made with the GUC Trustee such that confidential information and privileges are preserved, while permitting the GUC Trustee to use such information and privilege to perform its duties and responsibilities related to the reconciliation of or objection to General Unsecured Claims; absent such agreements, either the GUC Trustee or the Wind-Down Debtors may present the issue to the Bankruptcy Court for resolution.

3. Subject to the Wind-Down Budget, the Wind-Down Debtors shall preserve all records, documents, or work product (including all electronic records, documents, or work product) related to the reconciliation of or objection to General Unsecured Claims (collectively, "**GUC Trust Materials**") until the earlier of (a) such time as the GUC Trustee notifies the Wind-Down Debtors in writing that such records are no longer required to be preserved or (b) the termination of the GUC Trust; *provided*, *however*, that the Wind-Down Debtors may satisfy such preservation obligation by abandoning the GUC Trust Materials to the GUC Trustee;

*provided*, *further*, that the Claims and Noticing Agent is authorized to destroy all paper/hardcopy records related to the Chapter 11 Cases two (2) years after the Effective Date has occurred.

4. To the extent that the GUC Trust Materials were transferred to the Purchaser under the Sale Transaction, the GUC Trustee shall be deemed to be substituted as the party-in-lieu of the Debtors to the extent set forth in the Sale Transaction Documents solely with respect to accessing GUC Trust Materials.

F. *Tax Treatment of the GUC Trust*

1. To the extent reasonably practicable, the GUC Trust will be treated for U.S. federal income tax purposes as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code. If such treatment applies, for U.S. federal income tax purposes, the transfer of assets to the GUC Trust would be deemed to occur as (a) a first-step transfer of the GUC Trust Assets to the Holders of the applicable General Unsecured Claims, and (b) a second-step transfer by such Holders to the GUC Trust. Thus, such Holders would be treated as the grantors and owners of a grantor trust for federal income tax purposes.

2. As soon as practicable after the transfer of the GUC Trust Assets to the GUC Trust, the GUC Trustee shall make a good faith valuation of the GUC Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the GUC Trustee, and the Holders of Claims receiving GUC Trust Beneficial Interests shall take consistent positions with respect to the valuation of the GUC Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

3. Allocations of taxable income and loss of the GUC Trust among the GUC Trust Beneficiaries shall be determined by reference to the GUC Trust Beneficiaries' economic entitlements in respect of the GUC Trust, as will be further described in the organizational documents of the GUC Trust.

4. The GUC Trustee shall be liable to prepare and provide to, or file with, the appropriate taxing authorities and other required parties such notices, tax returns and other filings for the GUC Trust, including all federal, state and local tax returns as may be required under the Bankruptcy Code, the Plan or by other applicable law, including, if required under applicable law, notices required to report interest or dividend income. The GUC Trustee will file tax returns pursuant to section 1.671-4(a) of the Treasury Regulations on the basis that the GUC Trust is a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations and related Treasury Regulations. As soon as reasonably practicable after the close of each calendar year, the GUC Trustee will send each affected beneficiary a statement setting forth such beneficiary's respective share of income, gain, deduction, loss and credit for the year, and will instruct the Holder to report all such items on its tax return for such year and to pay any tax due with respect thereto.

5. However, notwithstanding the foregoing, with respect to any of the assets of the GUC Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable, such assets may, at the sole

election of the GUC Trustee, be treated as disputed ownership funds under section 1.468B-9 of the Treasury Regulations, *provided* that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return would be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account would be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

G. *Fiduciary Duties*

The GUC Trustee shall owe fiduciary duties to the Holders of GUC Trust Beneficial Interests of the type that a chapter 7 trustee would owe to unsecured creditors, and shall have in place under the GUC Trust Agreement applicable indemnity, limitation of liability, and waiver provisions (payable solely out of proceeds of the GUC Trust Assets) to protect the GUC Trustee from being personally liable for any claims or causes of action asserted by any Holder or purported Holder of GUC Trust Beneficial Interests, except for any claims of fraud, gross negligence, or willful misconduct.

H. *Withholding*

1. The GUC Trustee may deduct and withhold and pay to the appropriate taxing authority all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local, or non-U.S. tax law with respect to any GUC Trust Beneficiaries, including with respect to any payment or distribution to the GUC Trust Beneficiaries, any amounts received by, collections of, or earnings of the GUC Trust and any proceeds from the GUC Trust Assets. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any governmental authority, including income, withholding, and other tax obligations, on account of such distribution or with respect to its ownership of GUC Trust Beneficial Interests. All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such GUC Trust Beneficiaries to the extent permitted by applicable Law. The GUC Trustee shall be authorized to collect such tax information from the GUC Trust Beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and the GUC Trust Agreement and to determine whether any deduction or withholding applies with respect to a payment to such GUC Trust Beneficiary and the amount of such deduction or withholding.

2. As a condition to receiving, or being entitled to receive, Plan Distributions from the GUC Trust, all GUC Trust Beneficiaries shall be required to identify themselves to the GUC Trustee and provide tax information and the specifics of their holdings, to the extent requested by the GUC Trustee, including an IRS Form W-9 or, in the case of non-U.S. Persons for U.S. federal income tax purposes, certification of foreign status on an applicable IRS Form W-8, including all applicable supporting documents. If a Holder of a General Unsecured Claim does not, within 90 days of the GUC Trustee's first written request, provide sufficient documentation that is, in the GUC Trustee's reasonable business judgment, necessary to determine the tax

withholding and reporting requirements for such Claim, any current or future distribution on such Claim shall be deemed forfeited, the underlying General Unsecured Claim disallowed and expunged in its entirety, and the funds in respect of such present and future distribution(s) shall revert to the GUC Trust for all purposes including, but not limited to, redistribution to other GUC Trust Beneficiaries in accordance with the Plan, the Confirmation Order, and the GUC Trust Agreement.

I. *Dissolution of GUC Trust*

1. The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at such time as all Plan Distributions of GUC Trust Assets required to be made by the GUC Trustee have been made, but in no event shall the GUC Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon *ex parte* motion made by the GUC Trustee before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation of, the GUC Trust Assets.

2. Upon dissolution of the GUC Trust, any remaining GUC Trust Net Assets shall be distributed to all Holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement as appropriate; *provided*, *however*, that if the GUC Trustee reasonably determines that such remaining GUC Trust Net Assets are insufficient to render a further Plan Distribution practicable, the GUC Trustee may, after reserving any amount necessary to dissolve the GUC Trust, donate any balance to a charitable organization that is (a) described in section 501(c)(3) of the Internal Revenue Code, (b) exempt from U.S. federal income tax under section 501(a) of the Internal Revenue Code, (c) not a "private foundation" as defined in section 509(a) of the Internal Revenue Code, and (d) unrelated to the Debtors, the Wind-Down Debtors, the GUC Trust, and any insider of the GUC Trustee.

J. *Transferred Privileges*

Subject to this Article V.J in all events, in respect of privileges (if any) transferred to the GUC Trust under the GUC Trust Agreement (the "**GUC Transferred Privileges**"), the GUC Trust Agreement shall contain terms substantially reflecting the following: subject to this Article V.J, the GUC Trust may not waive any GUC Transferred Privileges in respect of records, documents, or information related to the GUC Trust Assets without first providing to the Wind-Down Debtors reasonable advance written notice and an opportunity to protect their respective rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. The Wind-Down Debtors may not make disclosure in a manner that could effectuate a waiver of any GUC Transferred Privilege in respect of records, documents, or information related to the GUC Trust Assets without first providing to the GUC Trustee reasonable advance written notice (in no event less than five Business Days) and an opportunity to protect the GUC Trust's rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. If the GUC Trustee or the Wind-Down Debtors object to an action proposed to be taken by the other with regard to records, documents, or information related to the GUC Trust Assets that are covered by the GUC Transferred Privilege

(or a disclosure that would result in a waiver), the parties shall be permitted to raise the issue promptly with the Bankruptcy Court. The party providing advance written notice may take its proposed action unless the Bankruptcy Court determines that (a) such action would cause material adverse harm to the other party, or (b) the harm to the objecting party would substantially outweigh the benefit to the party seeking to take the proposed action. The objecting party shall bear the burden of proof. Each of the parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Disbursing Agent*

1. The Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may retain and direct a Disbursing Agent to assist with the distributions to be made under the Plan. All Plan Distributions shall be made by the applicable Disbursing Agent as required under the Plan.

2. If the Disbursing Agent is an independent third party designated to serve in such capacity, the Plan Administrator or the GUC Trustee, as applicable, shall be permitted to provide to such Disbursing Agent from the Wind-Down Account or the GUC Trust, as applicable, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable, actual, and documented out-of-pocket expenses incurred in providing post-Confirmation services directly related to distributions pursuant to the Plan.

B. *Timing, Calculation of Amounts, and Delivery of Distributions*

1. Timing and Calculation of Amounts to be Distributed

(a) Subject to any reserves or holdbacks established pursuant to the Plan, and taking into account the matters set forth in Article VI.C and Article III of the Plan, on the appropriate Distribution Date or as soon as practicable thereafter, Holders of Allowed Claims shall receive the distributions from the applicable Disbursing Agent provided for Allowed Claims in the applicable Classes as of such date.

(b) If and to the extent there are Disputed Claims as of the Effective Date, distributions on account of such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in the Plan with respect to the treatment of Allowed Claims on or as soon as reasonably practicable after the next Distribution Date that is at least 20 calendar days after each such Claim is Allowed; *provided*, that distributions on account of the Claims set forth in Article III of the Plan shall be made as set forth therein and Professional Fee Claims shall be made as soon as reasonably practicable after such Claims are Allowed by the Bankruptcy Court or as provided in any other applicable order of the Bankruptcy Court. Because of the size and complexities of the Chapter 11 Cases, the Debtors at the present time cannot accurately predict the timing of the Final Distribution Date.

(c) For all purposes associated with Plan Distributions, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor or could be asserted more than once against a single Debtor shall result in a single Plan Distribution. For the avoidance of doubt, Claims held by a single Entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor. Any such Claims shall be released and discharged pursuant to Article IX and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.

2. *De Minimis* Distributions

(a) Notwithstanding any other provision of the Plan, no Disbursing Agent, as applicable, shall be required to make any distributions to Holders of Allowed Claims aggregating less than $250.00 (whether Cash or otherwise). Cash that otherwise would be payable under the Plan to Holders of Allowed Claims but for this Article VI.B.2 of the Plan shall be available for distributions to Holders of other Allowed Claims.

(b) Notwithstanding any other provision of the Plan, no Disbursing Agent, as applicable, shall have any obligation to make any distributions on any Interim Distribution Date unless the sum of all distributions authorized to be made to all Holders of Allowed Claims on such Interim Distribution Date exceeds $10,000 in value.

3. Delivery of Distributions—Allowed Claims

(a) Distributions shall only be made to the record Holders of Allowed Claims as of the Distribution Record Date. On the Distribution Record Date, at the close of business for the relevant register, all registers maintained by the Debtors, the Wind-Down Debtors, the Plan Administrator, the Disbursing Agent, the Administrative Agent, the GUC Trustee, and each of the foregoing's respective Related Parties shall be deemed closed for purposes of determining whether a Holder of such a Claim is a record Holder entitled to distributions under the Plan. The Debtors, the Wind-Down Debtors, the Plan Administrator, the Disbursing Agent, the Administrative Agent, the GUC Trustee, and each of the foregoing's respective Related Parties shall have no obligation to recognize, for purposes of distributions pursuant to, or in any way arising from, the Plan (or for any other purpose), any Claims that are transferred after the Distribution Record Date. Instead, the foregoing parties shall be entitled to recognize only those record Holders set forth in the registers as of the Distribution Record Date, irrespective of the number of distributions made under the Plan or the date of such distributions. Furthermore, if a Claim is transferred 20 or fewer calendar days before the Distribution Record Date, the applicable Disbursing Agent shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b) If any dispute arises as to the identity of a Holder of an Allowed Claim that is entitled to receive a distribution pursuant to the Plan, the applicable Disbursing Agent may, in lieu of making such distribution to such person, make the distribution into an escrow

account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

(c) Subject to Bankruptcy Rule 9010, a distribution to a Holder of an Allowed Claim may be made by the applicable Disbursing Agent in its sole discretion to (i) the address set forth on the first page of the Proof of Claim Filed by such Holder (or at the last known address of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address), (ii) the last known address of such Holder on the books and records of the Debtors or their agents after the date of any related Proof of Claim, (iii) the address set forth in any written notice of an address change delivered to the applicable Disbursing Agent, (iv) the address set forth on the Schedules, if no Proof of Claim has been Filed and the applicable Disbursing Agent has not received a written notice of an address change, or (v) the address of any counsel that has appeared in the Chapter 11 Cases on such Holder's behalf. The foregoing shall also apply with respect to any forms or notices related to the distributions that, for the avoidance of doubt, may be sent via email to an email address that satisfies any of subclauses (i) – (v) in the previous sentence.

(d) All distributions on account of the Prepetition Loan Claims shall be made to, or at the direction of, the Administrative Agent for further distribution in accordance with the Loan Documents, and subject to the rights of the Administrative Agent to assert its charging lien under the Loan Documents. If the Administrative Agent is unable to make, or consents to the Wind-Down Debtors making, such distributions, the Wind-Down Debtors, with the cooperation of the Administrative Agent, shall make such distributions to the extent practicable to do so; *provided*, that any charging lien of the Administrative Agent shall attach to the property to be distributed in the same manner as if such distributions were made through the Administrative Agent. The Wind-Down Debtors shall reimburse the Administrative Agent for any reasonable and documented fees and expenses incurred after the Effective Date in connection with making distributions pursuant to and in accordance with the Plan.

C. *Manner of Payment Under the Plan*

At the applicable Disbursing Agent's option, any Cash payment may be made by check, wire transfer, or any other customary payment method. In the case of foreign creditors, Cash payments may be made, at the option of the applicable Disbursing Agent, in such funds and by such means as are necessary or customary in a particular jurisdiction.

D. *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Claim entitled to a distribution under the Plan is based upon any obligation or instrument that is treated for U.S. federal income tax purposes as indebtedness of any Debtor and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes.

E. *Compliance Matters*

In connection with the Plan, each Debtor, each Wind-Down Debtor, the Disbursing Agent, the GUC Trustee, and the Plan Administrator, as applicable, shall comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Allowed Claims and distributions hereunder shall be subject to any such withholding and reporting requirements. In connection with the Plan and all distributions thereunder, the applicable Disbursing Agent is authorized to take any and all actions that may be necessary or appropriate to comply with the foregoing requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms that the Debtors, the Wind-Down Debtors, the Disbursing Agent, the GUC Trustee, or the Plan Administrator, as applicable, believe are reasonable and appropriate, and all Allowed Claims and distributions hereunder shall be subject to any such withholding and reporting requirements. All Holders of Claims shall be required to provide an IRS Form W-9 or an appropriate IRS Form W-8 and any other IRS Form and any other information necessary to allow the applicable Disbursing Agent to comply with all withholding, payment, and reporting requirements with respect to such taxes. The applicable Disbursing Agent reserves the right to withhold the full amount required by law on any distribution on account of any Holder of an Allowed Claim that fails to timely provide to the applicable Disbursing Agent the required information. The Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, and the Disbursing Agent, as applicable, reserve the right to allocate and distribute all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

F. *Foreign Currency Exchange Rate*

As of the Effective Date, any Claim asserted in a currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate on the Petition Date, as quoted at 4:00 p.m., midrange spot rate of exchange for the applicable currency as published in the *Wall Street Journal*, national edition, on the day after the Petition Date.

G. *Fractional Dollars*

Notwithstanding any other provision of the Plan, the applicable Disbursing Agent shall not be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole dollar.

H. *Undeliverable or Non-Negotiated Distributions*

1. If any distribution is returned as undeliverable or is otherwise unclaimed, no further distributions to the applicable Holder of an Allowed Claim shall be made unless and until the applicable Disbursing Agent is notified in writing of such Holder's then-current address, at which time the undelivered distribution shall be made to such Holder without interest or dividends. Undeliverable distributions shall be returned to the Wind-Down Debtors or the GUC

Trustee, as applicable, until such distributions are claimed. Any Holder of an Allowed Claim that does not claim an undeliverable or unclaimed distribution within 90 calendar days after the date such distribution was returned undeliverable shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors and their Estates, the Wind-Down Debtors, the Plan Administrator, the Disbursing Agent, the GUC Trustee, and each of the foregoing's respective agents, attorneys, representatives, employees, or independent contractors and/or any of its or their property. All title to and all beneficial interests in the Cash relating to such undeliverable or unclaimed distribution, including any dividends or interest attributable thereto, shall revert to the Wind-Down Debtors or the GUC Trustee, as applicable, and such Cash shall be deposited in the Wind-Down Account or the GUC Trust, as applicable, for distribution in accordance with the Plan. The reversion of such Cash shall be free of any restrictions thereon notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

2. Checks issued on account of Allowed Claims shall be null and void if not negotiated within 120 calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the applicable Disbursing Agent by the Holder of the relevant Allowed Claim within such 120-calendar-day period. Nothing contained in the Plan shall require the Debtors, the Wind-Down Debtors, the Plan Administrator, the GUC Trustee, or any Disbursing Agent to attempt to issue a new check following such 120-calendar-day period. After such 120-calendar-day period, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and all title to and all beneficial interests in the Cash represented by any such non-negotiated check, including any dividends or interest attributable thereto, shall revert to the Wind-Down Debtors or the GUC Trustee, as applicable, and such Cash shall be deposited in the Wind-Down Account or the GUC Trust, as applicable, for distribution in accordance with the Plan. The reversion of such Cash shall be free of any restrictions thereon notwithstanding any federal or state escheat laws to the contrary.

I. *Claims Paid by Third Parties*

1. To the extent a Holder of an Allowed Claim receives a distribution on account of a Claim and also receives payment from a party that is not a Debtor, a Wind-Down Debtor, the GUC Trustee, or the Disbursing Agent on account of such Claim, such Holder shall, within fourteen (14) calendar days of receipt thereof, repay, and/or return the distribution to the applicable Wind-Down Debtor or GUC Trustee to the extent that the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of the Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the Wind-Down Debtors or the GUC Trustee, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each calendar day after the 14-day grace period specified above until the amount is repaid.

2. A Claim may be adjusted or expunged on the Claims Register without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court to the extent that a Holder receives payment in full or in part on account of such Claim; *provided*, that, to the extent the non-Debtor party making the payment is subrogated to the Holder's Claim, the non-Debtor party shall have a 30-calendar-day grace period following payment in full to notify the Claims and Noticing Agent, the Plan Administrator, and the GUC Trustee, as applicable, of such subrogation rights.

J. *Claims Payable by Third Parties*

To the extent that one or more of the Debtors' Insurers satisfies any Claim in full or in part, then immediately upon such Insurers' satisfaction, such Claim may be expunged (to the extent of such satisfaction) on the Claims Register without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that a Debtor or any Entity may hold against any other non-Debtor Entity (including Insurers) under any Insurance Contract(s), nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any defenses, including coverage defenses, held by such Insurers under any such Insurance Contract(s).

K. *Distribution to General Unsecured Claim Holders*

Notwithstanding anything in the Plan to the contrary, all distributions on account of the General Unsecured Claims shall be made by the GUC Trustee (or Disbursing Agent appointed at the GUC Trustee's direction) in accordance with the terms of the Plan and the GUC Trust Agreement. On the Effective Date, and solely for administrative purposes to facilitate distributions from the GUC Trust: (1) all General Unsecured Claims against each of the Debtors shall be deemed merged or treated as liabilities of the GUC Trust to the extent Allowed; (2) all General Unsecured Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any General Unsecured Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several General Unsecured Claim against any of the Debtors shall be deemed to be one obligation of the GUC Trust; (3) each and every General Unsecured Claim filed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one General Unsecured Claim against and obligation of the GUC Trust. For the avoidance of doubt, for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as separate entities so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may not be set off against the liabilities of any of the other Debtors. Such administrative consolidation is solely for the purpose of facilitating distributions to holders of General Unsecured Claims under this Plan and shall not affect the legal and corporate structures of the Wind-Down Debtors. Moreover, such administrative consolidation shall not affect any subordination provisions set forth in any agreement relating to any General Unsecured Claim or the ability of the GUC Trustee to seek to have any General Unsecured Claim subordinated in accordance with any contractual rights or equitable principles.

# ARTICLE VII.
# DISPUTED CLAIMS

A. *Objections to Claims*

1. If a Holder of a Claim elects to File or submit a Proof of Claim in the Chapter 11 Cases, such Holder shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to the Claim.

2. Before the Effective Date, any party in interest may object to Claims. After the Effective Date, the Plan Administrator or the GUC Trustee, as applicable, shall have the sole authority (in the case of the GUC Trustee, solely in relation to General Unsecured Claims, and in the case of the Plan Administrator, in relation to any other Claims) to object to all Claims against the Debtors or the GUC Trust, as applicable; *provided*, that the Plan Administrator or GUC Trustee, as applicable, shall not be entitled to object to any Claim that has been expressly Allowed by Final Order or under the Plan. In the event that any objection Filed by the Debtors remains pending as of the Effective Date, the Plan Administrator or GUC Trustee, as applicable, shall be deemed substituted for the Debtors as the objecting party. Any objections to Claims shall be Filed on the Bankruptcy Court's docket on or before the Claims Objection Deadline.

3. Except as otherwise provided herein or otherwise approved by the Bankruptcy Court, all Proofs of Claim Filed after the Claims Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Wind-Down Debtor or the GUC Trust, without the need for any objection by the Wind-Down Debtors, Plan Administrator, or the GUC Trustee or any further notice to or action, order, or approval of the Bankruptcy Court.

4. Claims objections Filed before, on, or after the Effective Date shall be Filed, served, and administered as permitted under the Bankruptcy Code, the Bankruptcy Rules, or as ordered by the Bankruptcy Court and with notice to the parties listed in Article XIII.J of the Plan; *provided*, that on and after the Effective Date, Filings and notices need only be served on the relevant claimants.

5. The Plan Administrator or GUC Trustee, as applicable, shall be entitled to assert all of the Debtors' and the Wind-Down Debtors' rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination and counterclaims with respect to the applicable Claims.

B. *Resolution of Disputed Claims*

On and after the Effective Date, the Plan Administrator or GUC Trustee, as applicable, shall have the sole authority (in the case of the GUC Trustee, solely in relation to General Unsecured Claims, and in the case of the Plan Administrator, in relation to any other Claims) to File, litigate, compromise, settle, otherwise resolve, or withdraw any objections to all applicable Claims, to compromise and settle any such Claims, and to administer and adjust the Claims Register to reflect any such settlement or compromise, in each case without notice to or approval by the Bankruptcy Court or any other party; *provided*, *however*, that (1) the Plan Administrator

shall provide at least seven days' prior notice to the GUC Trustee prior to seeking the reclassification, in whole or in part, of any Claim (other than a General Unsecured Claim) to a General Unsecured Claim and the GUC Trustee shall have standing to object to any such reclassification and (2) the GUC Trustee shall provide at least seven days' prior notice to the Plan Administrator prior to seeking the reclassification, in whole or in part, of any General Unsecured Claim to any Claim (other than a General Unsecured Claim) and the Plan Administrator shall have standing to object to any such reclassification. After the Effective Date, the Plan Administrator or the GUC Trustee, as applicable, shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of the Plan and the GUC Trust Agreement, as applicable.

C. *Estimation of Claims and Interests*

1. The Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may, in their sole discretion (in the case of the GUC Trustee, solely in relation to General Unsecured Claims, and in the case of the Plan Administrator, in relation to any other Claims), determine, resolve, and otherwise adjudicate all Contingent Claims, Unliquidated Claims, and Disputed Claims in the Bankruptcy Court or such other court of the Debtors', the Wind-Down Debtors', the Plan Administrator's, or GUC Trustee's, as applicable, choice having jurisdiction over the validity, nature, or amount thereof. The Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose, regardless of whether any party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but either is subject to appeal or has not become a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. If the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim for all purposes and may be used as evidence in any supplemental proceedings, and the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee, as applicable, may pursue supplementary proceedings to object to the ultimate allowance of such Claim; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

2. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such Claim unless the Holder of such Claim has Filed a motion requesting the right to seek such reconsideration on or before 20 calendar days after the date such Claim is estimated by the Bankruptcy Court.

D. *Payments and Distributions for Disputed Claims*

1. No Distributions Pending Allowance or Settlement of Causes of Action

Notwithstanding any other provision in the Plan, no payments or distributions shall be made (a) for a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim, (b) to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim, or (c) to a specific Holder of an Allowed Claim if such Holder is or may be liable to the Debtors or the Wind-Down Debtors on account of a Cause of Action unless and until such Cause of Action (to the extent applicable and without prejudice to the rights of any Holder of an Allowed Administrative Claim to argue that section 502(d) of the Bankruptcy Code is inapplicable to its Administrative Claim) has been settled or withdrawn or has been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter; *provided*, that if only a portion of an Allowed Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount. Following any such settlement or determination in clause (c) of the preceding sentence where the Holder of a Claim is liable to the Debtors or the Wind-Down Debtors on account of any Cause of Action, any such payment or distribution to such Holder may be offset against the liability such Holder has to the Debtors or the Wind-Down Debtors. Notwithstanding the foregoing or any other provision in the Plan or the Plan Documents, nothing in the Plan or the Plan Documents shall (a) constitute a determination that section 502(d) of the Bankruptcy Code is, or is not, applicable to Administrative Claims or (b) prejudice the rights of (i) any Holder of an Allowed Administrative Claim to file a motion (or prosecute a pending motion) before or after the Effective Date, seeking entry of an order compelling payment of its Allowed Administrative Claim on or after the Effective Date on the basis that section 502(d) of the Bankruptcy Code is inapplicable to its Allowed Administrative Claim, or (ii) the Debtors, the Wind-Down Debtors, the Plan Administrator, or the GUC Trustee to oppose any such motion on any grounds.

2. Distributions After Allowance

To the extent that a Disputed Claim (excluding Disputed General Unsecured Claims) becomes an Allowed Claim after the Effective Date, the applicable Disbursing Agent will distribute to the Holder thereof the distribution, if any, to which such Holder is entitled under the Plan in accordance with Article VI.B.1 of the Plan. To the extent that a Disputed General Unsecured Claim becomes an Allowed Claim after the Effective Date, the Disbursing Agent or GUC Trustee, as applicable, will, out of the GUC Trust, distribute to the Holder thereof the distribution, if any, to which such Holder is entitled under the Plan in accordance with Article VI.B.1 of the Plan. Subject to Article VII.F of the Plan, all distributions made under this Article VII.D.~~3~~2 of the Plan on account of Allowed Claims will be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property, as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Allowed Claim Holders included in the applicable Class.

E. *No Amendments to Claims*

A Claim may be amended before the Confirmation Date only as agreed upon by the Debtors and the Holder of such Claim or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules, the Local Rules, or applicable non-bankruptcy law. On or after the Confirmation Date, the Holder of a Claim (other than an Administrative Claim or a Professional Fee Claim) must obtain prior authorization from the Bankruptcy Court, the Debtors, the Wind-Down Debtors, or the GUC Trustee, as applicable, to amend a Claim.

F. *No Interest*

Other than as provided by section 506(b) of the Bankruptcy Code, the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Claim or Disputed Claim for the period from and after the Effective Date; *provided*, that, nothing in this Article VII.F of the Plan shall limit any rights of any Governmental Unit to interest under section 503, 506(b), 1129(a)(9)(A), or 1129(a)(9)(C) of the Bankruptcy Code or as otherwise provided for under applicable law.

G. *No Late-Filed Claims*

Unless otherwise consented to by the Debtors, Wind-Down Debtors, or GUC Trustee, as applicable, any Claims Filed after the Claims Bar Date and for which no Final Order has been entered by the Bankruptcy Court determining that such Claims were timely Filed shall be Disallowed and expunged from the Claims Register (including by the Claims and Noticing Agent) at the direction of the Wind-Down Debtors or GUC Trustee, as applicable, to reflect the same, without the need to File an application, motion, complaint, objection, or any other legal proceeding seeking to adjust or expunge such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable. Any distribution of the Plan on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent, and liquidated. The Wind-Down Debtors and the GUC Trustee, as applicable, have no obligation to review or respond to any Claim Filed after the Claims Bar Date unless (1) the filer has obtained a Final Order from the Bankruptcy Court authorizing it to File such Claim after the Claims Bar Date or (2) the Wind-Down Debtors or the GUC Trustee, as applicable, have consented to the Filing of such Claim in writing.

H. *Adjustment to Claims Without Objection*

Any Claim that has been paid or otherwise satisfied (in whole or in part), amended, superseded, assumed, cancelled, or otherwise Disallowed (including pursuant to the Plan), any Claim that has been Filed against the wrong Debtor, and any Claim that is duplicative or redundant of another Claim against the same Debtor, may, on or after the Confirmation Date, be adjusted on or expunged from the Claims Register (including by the Claims and Noticing Agent) at the direction of the Wind-Down Debtors or GUC Trustee, as applicable, to reflect the same, without the need to File an application, motion, complaint, objection, or any other legal

proceeding seeking to adjust or expunge such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court or the Holder of such Claim, as applicable.

I. *Reservation of Rights to Object to Claims*

The failure of the Wind-Down Debtors or the GUC Trustee, as applicable, to object to any Claim shall not be construed as an admission to the amount, priority, character, or validity of any such Claim, any portion thereof, or any other claim related thereto, whether or not such claim is asserted in any currently pending or subsequently initiated proceeding, and shall be without prejudice to the right of the Wind-Down Debtors or the GUC Trustee, as applicable, to contest, challenge the validity of, or otherwise defend against, any such Claim in the Bankruptcy Court or non-bankruptcy forum.

J. *Disallowance of Claims*

Any Claims held by an Entity from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Entity has paid the amount, or turned over any such property, for which such Entity is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions under the Plan on account of such Claims until such time as all Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full.

K. *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is Contingent as of the Effective Date, such Claim, notwithstanding section 502(j) of the Bankruptcy Code, (a) shall be deemed Disallowed as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court and (b) can be expunged from the Claims Register (including by the Claims and Noticing Agent) unless, in each case, prior to the Effective Date (A) such Claim has been adjudicated as noncontingent or (B) the Holder of such Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer Contingent.

L. *Claims Reconciliation of General Unsecured Claims*

All Claims reconciliation on account of General Unsecured Claims shall be conducted by the GUC Trustee in accordance with the terms of the Plan and the GUC Trust Agreement and the terms of the Plan and all fees, costs, and expenses incurred by the GUC Trust relating to Claims reconciliation on account of General Unsecured Claims shall be GUC Trust Fees and Expenses.

## ARTICLE VIII.
## ASSUMPTION OF D&O POLICIES AND INDEMNIFICATION OBLIGATIONS

A. *Assumption of D&O Liability Insurance Policies*

1. As of the Effective Date, the Wind-Down Debtors shall be deemed to have assumed all of the Debtors' Insurance Contracts, including the D&O Liability Insurance Policies, pursuant to sections 105 and 365(a) of the Bankruptcy Code and, after such assumption, all Insurance Contracts, including the D&O Liability Insurance Policies, shall vest, unaltered and in their entireties, in the Wind-Down Debtors. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Wind-Down Debtors' foregoing assumption of each of the Insurance Contracts, including the D&O Liability Insurance Policies. The Cure Costs for each Insurance Contract shall be $0.00. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, release, impair, alter, amend, or otherwise modify any advancement, indemnity, or other obligations of any party under the Insurance Contracts, including the D&O Liability Insurance Policies.

2. After the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled, subject to the terms and conditions of the D&O Liability Insurance Policies, to the full benefits of any such policy from the applicable Insurers for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

3. The Debtors and the Wind-Down Debtors, as applicable, shall maintain directors', officers', and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, and employee coverage upon placement. Reasonable directors' and officers' insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

B. *Assumption of Certain Indemnification Obligations*

1. Each Indemnification Obligation to a current or former director, officer, manager, or employee who was employed by any of the Debtors in such capacity on or prior to the Effective Date (including, for the avoidance of doubt, the members of the board of directors, board of managers, or equivalent body of each Debtor at any time) shall be deemed assumed effective as of the Effective Date. Each Indemnification Obligation that is deemed assumed pursuant to the Plan shall (a) remain in full force and effect, (b) not be modified, reduced, discharged, impaired, or otherwise affected in any way, (c) be deemed and treated as an Executory Contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not Proofs of Claim have been Filed with respect to such obligations, and (d) survive unaffected irrespective of whether such indemnification is owed for an act or event occurring before, on, or after the Petition Date.

2. Any obligations of the Debtors (whether pursuant to their corporate charters, bylaws, certificates of incorporation, other organizational documents, board resolutions, indemnification agreements, employment contracts, policy of providing employee indemnification, applicable state law, specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Persons or agreements, including amendments, or otherwise) entered into at any time prior to the Effective Date to indemnify, reimburse, or limit the liability of the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, in each case, based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation and, except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, that all obligations under this Article VIII.B of the Plan shall be limited solely to recovery available under applicable Insurance Contracts and, subject to Article VIII.B.3 of the Plan, neither the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, nor any of their Assets (other than the Insurance Contracts) shall be liable for any such obligations. Any Claim based on the Debtors' obligations set forth in this Article VIII.B of the Plan shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code. This provision for Indemnification Obligations shall not apply to or cover any Causes of Action against a Person that result in a Final Order determining that such Person seeking indemnification is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

3. Notwithstanding anything to the contrary in the Plan;

(a) neither the Debtors, Wind-Down Debtors, the Plan Administrator, the GUC Trust, nor the GUC Trustee shall have any liability or obligation to advance fees and expenses to or on behalf of any Person, to pay any costs, expenses, deductibles, retentions, or obligations arising under or in connection with the Insurance Contracts, D&O Liability Insurance Policies or the Indemnification Obligations or fund, replenish, or post any collateral, letter of credit, or other security from any Assets of the Wind-Down Debtors, the Estates, the Plan Administrator Reserve, or the GUC Trust except to the extent necessary to maintain the D&O Liability Insurance Policies;

(b) any cost, expense, or obligation of the Wind-Down Debtors, the Plan Administrator, the GUC Trust, or the GUC Trustee under this Article VIII shall be satisfied solely and exclusively from the applicable Insurance Contracts (including the D&O Liability Insurance Policies) and the proceeds thereof or by the Person seeking coverage thereunder except to the extent necessary to maintain the D&O Liability Insurance Policies;

(c) no director, officer, manager, employee, or other Person entitled to coverage under any D&O Liability Insurance Policy or to indemnification under any Indemnification Obligation shall have any Claim, Cause of Action, or other remedy against or recourse to the Debtors, Wind-Down Debtors, the Plan Administrator, the Plan Administrator Reserve, the Wind-Down Account, the Professional Fee Escrow Account (or any residual amounts therein), the GUC

Trust, the GUC Trust Assets, any Distributable Assets, or any other Assets of the Wind-Down Debtors or the Estates (other than the Insurance Contracts and any proceeds thereof) on account of any obligation arising under or in connection with any D&O Liability Insurance Policy or Indemnification Obligation; *provided*, that the Wind-Down Debtors have maintained the D&O Liability Insurance Policies;

(d) any Person entitled to coverage or indemnification under any Insurance Contract or D&O Liability Insurance Policy shall be solely responsible for the associated cost of pursuing coverage under the applicable Insurance Contracts at such Person's own cost and expense; and

(e) any failure of an Insurer to pay or any denial, limitation, or exhaustion of coverage under any Insurance Contract or D&O Liability Insurance Policy relating to any Indemnification Obligation shall not give rise to any Claim, Cause of Action, or other liability against the Wind-Down Debtors, the Plan Administrator, the GUC Trust, the GUC Trustee, or any of their Assets; *provided*, that the Wind-Down Debtors have maintained the D&O Liability Insurance Policies.

C. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases and actions taken in accordance therewith (1) do not alter in any way the prepetition nature of the Executory Contracts and Unexpired Leases, or the validity, priority, or amount of any Claims that may arise under the same, (2) are not and do not create post-petition contracts or leases, (3) do not elevate to administrative expense priority any Claims of the counterparties to the Executory Contracts and Unexpired Leases against any of the Debtors, and (4) do not entitle any Entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any prepetition Executory Contracts and Unexpired Leases and subsequent modifications, amendments, supplements, or restatements.

## ARTICLE IX.
## EFFECT OF CONFIRMATION OF THE PLAN

A. *Release of Liens*

1. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, on the Effective Date and concurrently with the applicable Plan Distributions being made and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date in accordance with the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, discharged, and compromised, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors or the Wind-Down Debtors, as applicable, and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Wind-Down Debtors and their successors and assigns. On and after the Effective Date, and, in the case of a Secured Claim, satisfaction in full of the portion of the

Secured Claim that is Allowed as of the Effective Date in accordance with the Plan, each party secured by such pre-Effective Date mortgages, deeds of trust, Liens, pledges, or other security interests (including, to the extent applicable, the Administrative Agent) shall execute and deliver (at the request and expense of the Wind-Down Debtors), and the Wind-Down Debtors shall be authorized to file any documents deemed necessary or appropriate to evidence such release in the name of such party secured by such pre-Effective Date mortgages, deeds of trust, Liens, pledges, or other security interests. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such pre-Effective Date mortgages, deeds of trust, Liens, pledges, or other security interests; *provided*, *however*, that, notwithstanding anything to the contrary herein or in the Confirmation Order, (a) no Lien or security interest securing the Prepetition Loan Claims, and no Adequate Protection Lien granted under the DIP Orders, shall be released, settled, discharged, or compromised, and the Administrative Agent shall have no obligation to execute any release or other documentation evidencing such release; *provided*, that as distributions under the Plan are made to Prepetition Loan Claims, Liens or security interests securing the Prepetition Loan Claims and Adequate Protection Liens shall be reduced by the amount of such distribution; and (b) the Confirmation Order shall not discharge, release, modify, or impair any Prepetition Lien or Adequate Protection Lien. Upon the Dissolution Date pursuant to the terms of the Plan, all remaining Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. For the avoidance of doubt, such Liens and security interests that remain after the Effective Date shall not affect the distributions under the Plan in any way.

2. To the extent that any Holder of a Secured Claim that has been satisfied in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or its agent) shall take any and all steps requested by the Wind-Down Debtors that are deemed reasonable, necessary, or appropriate to record or effectuate the cancellation or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

B. *Releases; Discharges*

1. The releases and discharges of Claims, Interests, and Causes of Action described in the Plan, including releases by the Debtors and by Holders, constitute good-faith compromises and settlements of the matters covered thereby and such releases are consensual. Such compromises and settlements are made in exchange for consideration, are in the best interest of Holders, are fair, equitable, and reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan.

2. Each of the release, indemnification, discharge, and exculpation provisions set forth in the Plan or in the Confirmation Order (a) is within the jurisdiction of the Bankruptcy Court under sections 1334(a), 1334(b), and 1334(e) of title 28 of the United States Code, (b) is an essential means of implementing the Plan, (c) is an integral and non-severable element of the

transactions incorporated into the Plan, (d) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors, (e) is important to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, (f) is fair, equitable, and reasonable and in exchange for good and valuable consideration, and (g) is consistent with sections 105, 1123, 1129, 1141, and other applicable provisions of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the releases, stipulations, and exculpation provisions hereof are in addition to and do not replace, the release, stipulations, and other provisions of any Final Order of the Bankruptcy Court.

3. To the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided in the Plan or the Confirmation Order: (1) all consideration distributed under the Plan shall be in complete satisfaction, settlement, discharge, and release of, or in exchange for (as applicable), all Claims and Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests; (2) the Plan shall bind all Entities who have held, hold, or may hold Claims against or Interests in the Debtors; and (3) all Entities shall be precluded from asserting against the Wind-Down Debtors, their Estates, their successors and assigns, and their Assets and properties any other Claims or Interests based upon any documents, instruments, act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. Except as otherwise expressly provided for in the Plan or the Confirmation Order, upon the Effective Date, the Debtors shall be deemed discharged and released under and to the fullest extent provided under sections 1141(d)(1)(A) and 1141(d)(3) of the Bankruptcy Code from any and all Claims and Interests of any kind or nature whatsoever, including demands and liabilities that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

C. *Term of Injunction or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the later of (1) the Effective Date or (2) the date indicated in the order providing for such injunction or stay. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

D. *Exculpation*

1. **Pursuant to sections 1123(b) and 105(a) of the Bankruptcy Code, to the fullest extent permitted by applicable law, and except as otherwise specifically provided for in the Plan or Confirmation Order, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is released, discharged, and exculpated from any Cause of Action for any claim related to, any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the formulation, preparation, marketing, dissemination, negotiation, filing, or pursuit of approval, confirmation, or consummation**

**of the DIP Facility, the DIP Documents, the Plan (including the Plan Supplement and other Plan Documents), the Disclosure Statement, the Sale Transaction, or any settlement, contract, instrument, release, or other agreement or document created or entered into in connection therewith or in the Chapter 11 Cases, and any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases, the liquidation of the Debtors, the Sale Transaction, or the administration of, or property to be distributed under, the Plan (including the issuance and distribution of any interests issued or to be issued under or in connection with the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct (including actual fraud) or gross negligence. Notwithstanding anything to the contrary herein, the scope of claims subject to exculpation pursuant to this Article IX.D is temporally limited to claims arising during the period between the commencement of the Chapter 11 Cases and the Effective Date. Each Exculpated Party shall be entitled to ~~reasonably rely~~**raise as a defense that it relied** upon the advice of counsel concerning its duties and responsibilities pursuant to, or in connection with, the Plan, to the extent permitted by and under applicable law.**

2. **The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. To the extent that any of the Exculpated Parties owed fiduciary duties to the Debtors, their Estates, or the Bankruptcy Court in connection with the Chapter 11 Cases, the Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, fully, completely, professionally, and admirably satisfied such duties.**

E. *Releases by the Debtors*

1. **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided for in the Plan or Confirmation Order, on and after the Effective Date, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties shall be deemed released and discharged by the Debtors, the Wind-Down Debtors,** and **their Estates~~, and the Plan Administrator~~ from any and all claims, obligations, debts, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal, state, foreign, or other applicable laws, or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, lender liability, joint liability, or otherwise that the Debtors, the Wind-Down Debtors,** and **their Estates~~,~~ and ~~the Plan Administrator and~~ their respective Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert derivatively for or on behalf of the Debtors, the**

**Wind-Down Debtors, or their Estates, or ~~the Plan Administrator, or~~ their respective Affiliates, based on, relating to, or in any manner arising from, in whole or in part, the following:**

(a) **the Debtors, the Wind-Down Debtors, the Plan Administrator, the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, or the formulation, preparation, marketing, dissemination, negotiation, or Filing of the DIP Facility, the DIP Documents, the Plan, the Plan Documents, the Disclosure Statement, the Loan Documents, any settlement, contract, instrument, release, or other agreement or document created or entered into in connection therewith, any prepetition transactions, or in the Chapter 11 Cases, and any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases, the liquidation of the Debtors, or the administration of, or property to be distributed under, the Plan;**

(b) **any Plan Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by, or in furtherance of, the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan or the Disclosure Statement;**

(c) **the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, or the business or contractual arrangements between the Debtors and any Released Party (excluding any assumed Executory Contract or Unexpired Lease), or the restructuring of Claims or Interests prior to or in the Chapter 11 Cases; and**

(d) **the negotiation, formulation, marketing, preparation, or performance of or under the Plan, the Disclosure Statement, the Plan Supplement, the Plan Documents, the DIP Facility, the DIP Documents, or, in each case, related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, that if any Released Party directly or indirectly brings or asserts any Claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, and such Released Party does not abandon such Claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void ab initio with respect to the Released Party bringing or asserting such Claim or Cause of Action; *provided*, *further*, that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority, or secured status of any prepetition Claim or Administrative Claim against the Debtors or (ii) any**

**release or indemnification provided for in any settlement or granted under any other Final Order (*provided*, that, in the case of the proceeding proviso, the Debtors shall retain all defenses related to any such action).**

2. **The foregoing releases in this Article IX.E shall not apply to any Retained Causes of Action or any claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including actual fraud) or gross negligence. Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument, or agreement executed to implement the Plan (including the Plan Supplement).**

3. **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is (a) in exchange for the good and valuable consideration provided by the Released Parties (including the Released Parties' contributions to facilitate the resolution of the Chapter 11 Cases and implementation of the Plan), a good faith settlement, and compromise of such claims, (b) in the best interests of the Debtors and all Holders of Claims, (c) fair, equitable, and reasonable, (d) given and made after due notice and opportunity for hearing, and (e) subject to the occurrence of the Effective Date, a bar to the Debtors or the Wind-Down Debtors asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the applicable Released Parties or their respective property.**

F. *Voluntary Releases by the Releasing Parties*

1. **Except as otherwise specifically provided for in the Plan or Confirmation Order, on and after the Effective Date and to the fullest extent authorized by applicable law, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all claims, interests, obligations, debts, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal, state, foreign, or other applicable laws, or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the following:**

(a) **the Debtors, the Wind-Down Debtors, the Plan Administrator, the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, or the formulation, preparation, marketing, dissemination, negotiation, or Filing of the DIP Facility, the DIP Documents, the Plan, the Plan Documents, the Disclosure Statement, the Loan Documents, any settlement, contract, instrument, release, or other agreement or document created**

**or entered into in connection therewith, any prepetition transactions, or in the Chapter 11 Cases, and any other prepetition or post-petition act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases, the liquidation of the Debtors, or the administration of, or property to be distributed under, the Plan;**

(b) **any Plan Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by, or in furtherance of, the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan or the Disclosure Statement;**

(c) **the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party (excluding any assumed Executory Contract or Unexpired Lease), the restructuring of Claims or Interests prior to or in the Chapter 11 Cases;**

(d) **the negotiation, formulation, marketing, preparation, or performance of or under the Plan, the Disclosure Statement, the Plan Supplement, the Plan Documents, the DIP Facility, the DIP Documents, or, in each case, related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, that if any Released Party directly or indirectly brings or asserts any claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, and such Released Party does not abandon such claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void ab initio with respect to the Released Party bringing or asserting such claim or Cause of Action; *provided*, *further*, that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority, or secured status of any prepetition Claim or Administrative Claim against the Debtors or (ii) any release or indemnification provided for in any settlement or granted under any other Final Order (*provided*, that, in the case of the proceeding proviso, the Debtors shall retain all defenses related to any such action).**

2. **The foregoing releases in this Article IX.F shall not apply to any Retained Causes of Action or any claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct (including actual fraud) or gross negligence. Notwithstanding anything contained herein to the contrary, the foregoing**

**releases shall not release any obligation of any party under the Plan or any document, instrument, or agreement executed to implement the Plan (including the Plan Supplement).**

3. **Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is (a) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement, and compromise of such claims, (b) in the best interests of the Debtors and all Holders of Claims, (c) fair, equitable, and reasonable, (d) given and made after due notice and opportunity for hearing, and (e) subject to the occurrence of the Effective Date, a bar to the Releasing Party asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the applicable Released Parties or their respective property.**

G. *Injunction*

1. **Except as otherwise specifically provided in the Plan, the Confirmation Order, or any Final Order entered by the Bankruptcy Court in the Chapter 11 Cases, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that arose prior to the Effective Date, and all other parties in interest, along with their respective Related Parties, are permanently enjoined, from and after the Effective Date, on account of, in connection with, or with respect to any such claim, interest, Cause of Action, or liability for which an Exculpated Party has been exculpated under Article IX.D of the Plan or for which a Released Party has been released under Article IX.E or Article IX.F of the Plan (as applicable), from (a) commencing or continuing in any manner any action or other proceeding on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, other than to enforce any right to a distribution pursuant to the Plan, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Released Party or Exculpated Party, or the property or interest in property thereof, on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, other than to enforce any right to a Plan Distribution, (c) creating, perfecting, or enforcing any Lien or encumbrance against any Released Party or Exculpated Party, or the property or interest in property thereof, on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, other than to enforce any right to a Plan Distribution, (d) asserting any right of setoff or subrogation against any obligation due from any Released Party or Exculpated Party, or against the property or interest in property thereof, on account of, in connection with, or with respect to any such claims, interests, Causes of Action, or liabilities released, exculpated, or settled pursuant to the Plan, notwithstanding an indication of a claim, interest, Cause of Action, or liability or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, except to the extent that (i) a right to setoff is asserted with respect to a Proof of Claim that explicitly preserves such setoff and is timely and properly Filed by the Effective Date or pursuant to section 502(h) of the Bankruptcy Code and**

**Bankruptcy Rule 3002(c)(3) or (ii) such Entity was excused from Filing or otherwise not required to File a Proof of Claim pursuant to a Final Order of the Bankruptcy Court, and (e) interfering with the implementation or Consummation of the Plan or any of the Plan Documents. Such injunction shall extend to any successors or assignees of the Released Parties and Exculpated Parties and their respective properties and interest in properties. Each of the Debtors, the Wind-Down Debtors, the Plan Administrator, the Exculpated Parties, and the Released Parties is expressly authorized hereby to seek the enforcement of such injunctions.**

2. **No Entity may commence, continue, amend, or otherwise pursue, join in, or support any other Entity commencing, continuing, amending, or pursuing, a Cause of Action or claim of any kind against any Released Party or Exculpated Party, as applicable, that arose, arises from, or is reasonably likely to arise from, or relates to or is reasonably likely to relate to, any claim subject to Articles IX.D, E, or F of the Plan without first (a) requesting a determination from the Bankruptcy Court, after notice (to all affected parties) and a hearing, that such claim or Cause of Action, as applicable, represents a colorable claim against a Debtor or a Released Party, as applicable, and is not a claim or Cause of Action that was released or exculpated under or pursuant to the Plan, which request must attach the complaint or petition proposed to be filed by the requesting Entity (which complaint or petition must satisfy the applicable Rules of Federal Procedure), and (b) obtaining from the Bankruptcy Court, in the form of a Final Order, specific authorization for such Entity to bring such claim or Cause of Action, as applicable, against a Debtor or any other Released Party or Exculpated Party, as applicable. Any such request shall include a proposed attorney fee reserve, subject to modification by the Bankruptcy Court, that shall be deposited to the Bankruptcy Court's registry to indemnify all potential defendants against costs associated with the successful defense of any claim that is allowed to proceed. For the avoidance of doubt, any Entity that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any claim or Cause of Action, not explicitly included in the authorized complaint or petition must first obtain authorization from the Bankruptcy Court *before* filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a claim or Cause of Action, is colorable and, only to the extent legally permissible, shall have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.**

H. *Setoff and Recoupment*

**Except as otherwise expressly provided for in the Plan or the Confirmation Order, each Debtor and Wind-Down Debtor, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off or recoup (to the extent applicable) against any Allowed Claim and any Plan Distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature that such Debtor or Wind-Down Debtor, as applicable, may have against the Holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to**

**the Plan or otherwise); *provided*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver, abandonment, or release by such Debtor, or Wind-Down Debtor, of any such claims, rights, and Causes of Action that they may have against such Holder. Except as otherwise specifically provided in the Plan, including Article IX.G, nothing herein shall (1) alter any rights of setoff or recoupment (to the extent available under applicable law) of any Holder of an Allowed Claim or Allowed Administrative Claim against the Debtors or Wind-Down Debtors (as applicable) or (2) constitute a waiver of the rights, claims, or defenses of the Debtors, the Wind-Down Debtors, or any other party in interest to dispute such rights of setoff or recoupment on any grounds. In no event shall any Holder of a Claim be entitled to set off any such Claim against any Claim, right, or Cause of Action of the Debtor, unless (1) such Holder has indicated in any timely and properly Filed Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise or (2) such Holder was not required to File a Proof of Claim pursuant to a Final Order of the Bankruptcy Court (including the Bar Date Order).**

I. *Preservation of Causes of Action; Waiver of Non-Insider Preference Actions*

1. The Debtors, the Wind-Down Debtors, and their Estates retain all Retained Causes of Action and may enforce all rights related thereto that they may have or choose to assert on behalf of their respective Estates, as applicable, under any provision of the Bankruptcy Code or any applicable analogous statute or non-bankruptcy law, whether such Cause of Action arose before or after the Petition Date. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Retained Causes of Action shall not include any Causes of Action of any kind that were (i) released pursuant to a Final Order of the Bankruptcy Court, (ii) assigned and transferred pursuant to the Asset Purchase Agreement, or (iii) assertable by the Debtors as of the Effective Date under section 547 of the Bankruptcy Code or any state law analogs against any non-insider, which Causes of Action are expressly waived under the Plan. Upon Consummation, the Wind-Down Debtors shall have, retain, reserve, and be entitled to commence, assert, and pursue all Retained Causes of Action. For the avoidance of doubt, the Plan Administrator shall have the right to enforce the foregoing.

2. Except as set forth in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall, or shall be deemed to, release any post-Effective Date obligations of any party under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or in connection with Consummation.

3. The Debtors' inclusion or failure to include or describe with sufficient specificity any Retained Cause of Action herein, on any Schedule of Retained Causes of Action, or in the Confirmation Order shall not be deemed an admission, denial, or waiver of any Retained Cause of Action that the Debtors or their Estates may hold. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation, including any argument of waiver on account of the failure to include or describe with sufficient specificity any Retained Cause of Action herein, on any Schedule of Retained Causes of Action, or in the Confirmation Order. For

the avoidance of doubt, in no instance shall any Retained Causes of Action include any claim or Cause of Action with respect to, or against, a Released Party that was released pursuant to the Plan.

4. **No Entity may rely on the absence of a specific reference herein, on any Schedule of Retained Causes of Action, or in the Confirmation Order to any Cause of Action against them as any indication that the Wind-Down Debtors will not pursue any and all available Causes of Action against them.**

J. *Compromise and Settlement of Claims and Controversies*

1. Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Plan Distributions and other benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, the provisions of the Plan shall also constitute a good-faith compromise and settlement of all Claims, Causes of Action, and controversies incorporated in the Plan.

2. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, controversies, and Causes of Action and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and the Holders of such Claims, and is fair, equitable, and reasonable. Subject to Article VI, all Plan Distributions made to or for the benefit of Holders of Allowed Claims in any Class are intended to be and shall be final. In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order, or approval of the Bankruptcy Court, the Debtors may compromise and settle claims and Causes of Action against other Entities and, upon Consummation, such right shall pass to the Wind-Down Debtors and the Plan Administrator.

3. Notwithstanding any other provision of this Plan, the Debtors shall not receive a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code~~; *provided*, that the collection of any claim against the Debtors following the Effective Date shall be subject to paragraph [●] of the Confirmation Order~~.

K. *No Avoidance or Clawback of Plan Distributions*

1. Notwithstanding any provision of the Bankruptcy Code, applicable non-bankruptcy law, or any contrary provision in this Plan or the Confirmation Order, all Plan Distributions made to any holder of an Allowed Claim, whether made on or after the Effective Date, shall be final, non-avoidable, and not subject to any claim, suit, action, right of recovery, avoidance, clawback, or disgorgement by the Debtors, the Wind-Down Debtors, the Estates, the Plan Administrator, the GUC Trustee, or any party acting or purporting to act on their behalf.

2. Without limiting the foregoing, no Plan Distribution, whether made on or after the Effective Date, shall be subject to avoidance or recovery under any theory, including under sections 105, 362, 502(d), 510, and 542-550 of the Bankruptcy Code, or under any federal or state fraudulent-transfer, preference, or similar recovery law. Recipients of Plan Distributions

shall be conclusively deemed to have taken such distributions in good faith and for reasonably equivalent value.

L. *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Wind-Down Debtor or any Entity with which a Wind-Down Debtor has been or is associated, solely because such Wind-Down Debtor (1) is or was a debtor under chapter 11, (2) may have been insolvent before the commencement of the Chapter 11 Cases or during the Chapter 11 Cases prior to the Effective Date, or (3) has not paid a debt that is dischargeable in the Chapter 11 Cases.

M. *Utility Deposits*

To the extent they have not already done so, all utilities or other Entities that received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases, whether pursuant to the Bankruptcy Court's *Final Order (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance* [ECF No. 282] (the "**Utilities Order**") or otherwise, are directed to return such deposits to the Wind-Down Debtors, either by setoff against post-petition indebtedness or by Cash refund, no later than 30 days after the Effective Date. Further, on or as reasonably practicable after the Effective Date, the Wind-Down Debtors (a) are authorized to withdraw the funds held in the Utility Deposit Account pursuant to and as defined in the Utilities Order and (b) shall have no further obligations to comply with the Utilities Order.

## ARTICLE X.
## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF PLAN

A. *Conditions to Effectiveness*

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied on or prior to the Effective Date or waived in accordance with Article X.B of the Plan:

1. the Confirmation Order shall have been entered and shall not be subject to a stay nor have been rescinded, vacated, or reversed on appeal, *provided* that the form of Confirmation Order shall be reasonably acceptable to the Committee and the Administrative Agent;

2. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3. any and all professional fees and expenses of Professionals already approved by the Bankruptcy Court shall have been paid in full;

4. the Professional Fee Escrow Account shall have been funded in Cash in full;

5. the Plan Administration Agreement shall have been executed by the Plan Administrator and the Debtors and the Plan Administrator shall have been appointed and assumed its rights and responsibilities under the Plan and Plan Administration Agreement;

6. the Plan Administrator Reserve shall have been created and funded in full in Cash, including the Wind-Down Account in an amount equal to the Wind-Down Reserve Amount and the Professional Fee Escrow Account in an amount equal to the Professional Fee Escrow Amount;

7. the GUC Trust Agreement shall have been executed, the GUC Trust Assets shall have vested or be deemed to have vested in the GUC Trust, and the cash portion of the GUC Trust Assets shall have been wired to the GUC Trust;

8. all documents and agreements necessary to implement the Plan, including the Plan Supplement, shall have been executed; and

9. no governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced, or entered any law or order (whether temporary, preliminary, or permanent) in any case that is in effect and that prevents or prohibits Consummation of the Plan, and no Governmental Unit shall have instituted any action or proceeding (that remains pending on what could otherwise be the Effective Date) seeking to stay, enjoin, restrain, or otherwise prohibit Plan Consummation.

B. *Waiver of Conditions to Effectiveness*

The Debtors, with the reasonable consent of the Committee and the Administrative Agent, may waive or modify any of the conditions set forth in Article X.A of the Plan at any time (other than entry of the Confirmation Order), without any notice to other parties in interest or the Bankruptcy Court and without any further notice to or formal action other than proceeding to confirm or consummate the Plan; *provided*, that the conditions in Article X.A.4-A.5 may only be waived with the express written consent (email being sufficient) of each affected Professional. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of such rights or any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A. *Plan Modifications*

1. Subject to certain restrictions and requirements set forth in section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors, with the reasonable consent of the

Committee and the Administrative Agent, may alter, amend, or modify the Plan, including the Plan Supplement, in its entirety, in part, or as to a particular Debtor, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date. In addition, should the Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Debtors reserve the right to reclassify Claims and Interests.

2. After the Confirmation Date and before substantial Consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, including the Plan Supplement or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and effects of the Plan.

3. After the Confirmation Date but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan, including the Plan Supplement, without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders or their Claims or Interests.

4. After the Effective Date, the Wind-Down Debtors may amend, supplement, or otherwise modify the Plan Documents in accordance with their terms and applicable non-bankruptcy law.

5. Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon, pursuant to section 1127(a) of the Bankruptcy Code, and a finding that such modifications to the Plan do not require additional disclosure or solicitation under Bankruptcy Rule 3019.

B. *Revocation or Withdrawal of the Plan and Effects of Nonoccurrence of Confirmation or Effective Date*

The Debtors reserve the right to revoke, withdraw, or delay consideration of the Plan as to any or all of the Debtors prior to the Confirmation Date, either entirely or as to any one or more of the Debtors, and to File subsequent plans. If the Plan is revoked, withdrawn, or delayed as to fewer than all of the Debtors, such revocation, withdrawal, or delay shall not affect the enforceability of the Plan as it relates to the Debtors for which the Plan is not revoked, withdrawn, or delayed. If the Debtors revoke or withdraw the Plan, or if the Confirmation Order is vacated pursuant to a Final Order, in each case, in its entirety, in part, or as to a particular Debtor, or if the Confirmation Date or the Effective Date does not occur, then, absent further order of the Bankruptcy Court and as to all or such Debtors, as applicable, (1) the Plan shall be null and void in all respects, (2) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), and any document or agreement executed pursuant hereto, shall be deemed null and void, and (3) nothing contained in the Plan or Confirmation Order, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims or Interests, (b)

prejudice in any manner the rights of such Debtors or any other Person or Entity (including the application of res judicata or collateral estoppel), or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on or after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(i) hear, adjudicate, decide, determine, or resolve any motion, adversary proceeding, application, contested matter, or other matter pending on the Effective Date;

(ii) hear, adjudicate, decide, determine, or resolve all matters relating to the allowance, disallowance, liquidation, classification, priority, amount, validity, or estimation of any Claim, including, but not limited to, the reclassification of any Claim under Article VII.B;

(iii) ensure that Plan Distributions to Holders of Allowed Claims are accomplished as provided herein;

(iv) hear, adjudicate, decide, determine, or resolve all applications for compensation and reimbursement of Professional Fee Claims;

(v) hear, adjudicate, decide, determine, or resolve any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(vi) hear, adjudicate, decide, determine, or resolve disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any Plan Document, any settlements, transactions, or payments contemplated hereby or in furtherance hereof, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(vii) take any action, issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, any Plan Document, or any other order of the Bankruptcy Court;

(viii) take any action or issue such orders as may be necessary or appropriate to construe, enforce, implement, execute, and consummate, or to maintain the integrity of, the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, the Plan Documents, and contracts, instruments, releases, and other agreements or documents created or entered into in connection with the Plan;

(ix) enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(x) hear, adjudicate, decide, determine, or resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(xi) hear, adjudicate, decide, determine, or resolve any other matter not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(xii) hear, adjudicate, decide, determine, or resolve any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan Documents, or any other contract, instrument, release, or other agreement or document related to the Plan, the Disclosure Statement, or the Plan Supplement; *provided*, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in a Plan Document that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court and any disputes contained in such Plan Documents shall be governed in accordance with the provisions thereof;

(xiii) recover all Assets of the Debtors and property of the Debtors' Estates, which shall be for the benefit of the Wind-Down Debtors, wherever located;

(xiv) hear, adjudicate, decide, determine, or resolve any disputes concerning whether a Person or an Entity had sufficient notice of the Chapter 11 Cases, the Confirmation Hearing, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases (including the Solicitation), or any Claims Bar Date established in the Chapter 11 Cases, in each case, for the purpose of determining whether a Claim or an Interest is discharged hereunder or for any other purpose;

(xv) hear, adjudicate, decide, determine, or resolve any rights, claims, or Causes of Action held by or accruing to the Debtors or the Wind-Down Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(xvi) enforce and interpret all orders, judgments, injunctions, releases, discharges, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity;

(xvii) enter a final decree closing the Chapter 11 Cases;

(xviii) enforce any order for the sale of property pursuant to section 363, 1123, or 1146(a) of the Bankruptcy Code;

(xix) hear, adjudicate, decide, determine, or resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including (a) with respect to the repayment or return of Plan Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII, (b) with respect to the releases, injunctions, discharges, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such provisions, (c) those that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan, or (d) related to section 1141 of the Bankruptcy Code;

(xx) hear, adjudicate, decide, determine, or resolve whether a party's potential claim or Cause of Action represents a colorable claim against a Debtor or any other Released Party or Exculpated Party, as applicable, and is not a claim that was released or exculpated hereunder;

(xxi) hear and determine any rights, claims, or Causes of Action held by, or accruing to, any Debtor pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including those set forth on the Schedule of Retained Causes of Action;

(xxii) hear, adjudicate, decide, determine, or resolve any issue or dispute that the GUC Trustee may bring to the Court relating to the GUC Trust Agreement, the GUC Trust Assets, the discharge of the GUC Trustee's duties under the Plan or GUC Trust Agreement, or any General Unsecured Claim;

(xxiii) hear, adjudicate, decide, determine, or resolve such other matters, and for such other purposes as may be provided in the Confirmation Order; and

(xxiv) hear, adjudicate, decide, determine, or resolve any and all disputes arising from or relating to the Chapter 11 Cases, any orders entered therein (including the interpretation thereof), and any of the foregoing;

(xxv) hear any other matter not inconsistent with the Bankruptcy Code.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have jurisdiction to hear and determine disputes concerning Claims that arose prior to the Effective Date.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A. *Exemption from Transfer Taxes and Recording Fees*

To the maximum extent permitted by section 1146(a) of the Bankruptcy Code and to the maximum extent permitted by law, none of (1) the issuance, distribution, transfer, or exchange of notes, securities, instruments, or documents under this Plan, (2) the creation, modification, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (3) the making, assignment, filing, or recording of any lease or sublease, (4) the transfer of title to or ownership of any of the Debtors' interest in any Assets or property, or the making or delivery of any deed, bill of sale, or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, this Plan, or any merger agreements, purchase agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under this Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in this Plan, (5) the grant of collateral under this Plan, or (6) the issuance, renewal, modification, or securing of indebtedness, and the making, delivery, or recording of any deed, bill of sale, assignment, or other instrument of transfer under, in furtherance of, contemplated by, arising out of, or in any way related to this Plan and the Plan Documents, including the Confirmation Order, shall be subject to any document recording tax, sales tax, use tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, stamp act, personal, or real property tax (including real estate transfer tax), mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment in the United States. Upon entry of the Confirmation Order, the appropriate federal, state, or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

B. *Dissolution of the Committee and Termination of the Challenge Deadline*

1. On the Effective Date, the Challenge Deadline shall irrevocably terminate and the Committee shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purposes of (a) prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Committee and its Professionals and (b) appearing in connection with any appeals taken of the Confirmation Order. The Wind-Down

Debtors and the Plan Administrator shall no longer be responsible for paying any fees or expenses incurred by the members of, or advisors to, the Committee after the Effective Date except for matters related to (a) or (b) in the immediately preceding sentence.

2. The termination of the Challenge Deadline and the dissolution of the Committee shall constitute final and irrevocable confirmation that (a) the GUC Trust established pursuant to Article V and the vesting of the GUC Trust Assets in the GUC Trust pursuant to the Plan constitute the sole consideration for the Committee's release of all challenge rights under paragraph 12 of the DIP Orders, (b) the Debtors' Stipulations and Releases set forth in paragraph F of the DIP Orders are permanently binding on all parties in interest in these Chapter 11 Cases and any successor cases, and (c) no party may seek to reopen, revive, or assert any Challenge (as defined in the DIP Orders) to the Prepetition Liens, the Prepetition Secured Obligations, or the Adequate Protection Obligations.

C. *Plan Supplement*

Draft forms of certain Plan Documents and certain other documents, agreements, instruments, schedules, and exhibits specified in the Plan shall, where expressly so provided for in the Plan, be contained in the Plan Supplement and Filed from time to time.

D. *No Admission*

Other than as expressly provided under the Plan or the Confirmation Order, nothing in the Plan or Disclosure Statement or any document or pleading Filed in connection therewith shall constitute or be deemed to constitute an admission that any of the Debtors are subject to or liable for any Claim.

E. *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

F. *Section 1125 of the Bankruptcy Code*

As of, and subject to the occurrence of, the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

G. *Nonseverability*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided*, that any such alteration or interpretation shall be reasonably

acceptable to the Debtors, the Committee, and the Administrative Agent. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors (with the reasonable consent of the Committee and the Administrative Agent), and (3) nonseverable and mutually dependent.

H. *Request for Expedited Determination of Taxes*

The Debtors or the Wind-Down Debtors, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

I. *Binding Effect*

Upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Wind-Down Debtors, all present and former Holders of Claims or Interests (whether or not such Holders shall receive or retain any property or interest in property under the Plan), and their respective heirs, executors, administrators, successors, and assigns, including the Wind-Down Debtors, the Plan Administrator, and all other parties in interest in the Chapter 11 Cases.

J. *Service of Documents*

To be effective, any notice, request, or demand to or upon, as applicable, the Debtors or the Committee must be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually received and confirmed by the relevant party as follows:

If to the Debtors:

**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Brian M. Resnick
Angela M. Libby
Stephen D. Piraino
Richard J. Steinberg
Sihui (Sophy) Ma
Mordechai Rivkin

If to the Administrative Agent:

**Faegre Drinker Biddle & Reath LLP**
2200 Wells Fargo Center

90 S. 7th Street
Minneapolis, MN 55402
Michael R. Stewart (michael.stewart@faegredrinker.com)
Adam C. Ballinger (adam.ballinger@faegredrinnker.com)

If to the Committee:

**Pachulski Stang Ziehl & Jones LLP**
1700 Broadway, 36th Floor
New York, NY 10019
Robert J. Feinstein
Bradford J. Sandler
Shirley S. Cho
Theodore S. Heckel, Sr.
(rfeinstein@pszjlaw.com; bsandler@pszjlaw.com; scho@pszjlaw.com; theckel@pszjlaw.com)

After the Effective Date, the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 shall be limited to those Entities who have Filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

K. *Waiver or Estoppel*

**Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.**

L. *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, unless otherwise ordered by the Bankruptcy Court, the nonexhibit or nondocument portion of the Plan shall govern and control.

Dated: ~~September 4~~[●], 2026

Respectfully submitted,

**SLEEP NUMBER CORPORATION** (for itself and on behalf of all Debtors)

By: */s/ DRAFT*
Name: Kent Percy
Title: Chief Restructuring Officer